UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
In re

Suffolk Regional Off-Track Betting Corporation,

                                 Debtor.
---------------------------------------------------------------------X
Jennifer Tomasino, Kevin Montano, Richard Meyer,
and Apryl L. Meyer,

                                 Plaintiffs,

-against-

Incorporated Village of Islandia, Board of Trustees
of the Incorporated Village of Islandia, Delaware
North Islandia Properties, LLC aka Delaware North,
and Suffolk Regional Off-Track Betting Corporation,

                                 Defendants.
---------------------------------------------------------------------X

Case No. 12-43503-CEC

Chapter 9

Adv. Pro. No. 18-1033-CEC

<u>PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

APPEARANCES:

Anton J. Borovina, Esq.
Law Office of Anton J. Borovina
225 Broadhollow Road, Ste. 303
Melville, NY 11747
Attorney for Plaintiffs

Paul Sabatino II, Esq.
1617 New York Avenue
Huntington Station, NY 11746
Attorney for Plaintiffs

Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 700
White Plains, NY 10606
Attorneys for Suffolk Regional Off-Track
Betting Corporation

Jarrett M. Behar, Esq.
Michael Stanton, Esq.
Sinnreich Kosakoff & Messina LLP
267 Carleton Avenue, Ste. 301
Central Islip, NY 11722
Attorneys for Incorporated Village of
Islandia and Board of Trustees of the
Incorporated Village of Islandia

Charles W. Malcomb, Esq.
Daniel A. Spitzer, Esq.
Richard L. Weisz, Esq.
Carmine J. Castellano, Esq.
Hodgson Russ LLP
140 Pearl Street
Buffalo, NY 14202
Attorneys for Delaware North Islandia
Properties, LLC

Anthony S. Guardino, Esq.
Patrick T. Collins, Esq.
John C. Stellakis, Esq.
Farrell Fritz, P.C.
100 Motor Parkway, Suite 138
Hauppauge, New York 11788
Attorneys for Delaware North Islandia
Properties, LLC

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motions of Delaware North Islandia Properties, LLC aka Delaware North ("Delaware North"), the Incorporated Village of Islandia (the "Village"), the Board of Trustees of the Incorporated Village of Islandia (the "Board"), and Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB"), seeking summary judgment in an action filed by Jennifer Tomasino, Kevin Montano, Richard Meyer, and Apryl L. Meyer (collectively, the "Plaintiffs") challenging a zoning law, Local Law No. 3-2017.  In this action, the Plaintiffs allege that the enactment of the law constituted improper contract zoning and spot zoning, and seek a permanent injunction.  Because the Defendants have shown that the Board did not bind itself in advance to enact Local Law No. 3-2017, and that the law is consistent with the Village's comprehensive plan and serves the general welfare of the community, and because the Plaintiffs did not raise a genuine issue of material fact with respect to these claims, the Defendants' motions should be granted.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case.  28 U.S.C. § 157(c)(1).  This non-core proceeding is related to this bankruptcy case because it challenges the law authorizing the operation of a video lottery terminal, which is the source of funding for Suffolk OTB's confirmed plan of reorganization.  See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate.").  However, absent consent of the parties to entry of a final order, the

bankruptcy judge is directed to submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings of fact and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. Id.  As the Plaintiffs have not consented to the entry of a final order by the bankruptcy court, see Plaintiff's Statement of Non-Consent to Entry of Judgment (ECF. No. 45), this motion is addressed by these proposed findings and conclusions.[1]

BACKGROUND

Unless otherwise noted, the following facts are undisputed, or are matters of which judicial notice may be taken.

I.      Suffolk OTB's Bankruptcy Case

On May 11, 2012, Suffolk OTB filed a petition for relief under Chapter 9 of the Bankruptcy Code. Suffolk OTB is a public benefit corporation organized under Articles V and VI of the New York Racing, Pari-Mutuel Wagering and Breeding Law. (Disclosure Statement at 13, Case No. 12-43503-CEC, ECF No. 298.)

On September 11, 2014, Suffolk OTB filed a second amended plan and second amended disclosure statement (the "Disclosure Statement"). (Case No. 12-43503-CEC, ECF Nos. 297, 298.)  On that same date, the Disclosure Statement was approved.  (Case No. 12-43503-CEC, ECF No. 300). Following a hearing on October 22, 2014, the Second Amended Plan for the Adjustment of Debts of Suffolk Regional Off-Track Betting Corporation (the "Plan") (Case No. 12-43503-CEC, ECF No. 318) was confirmed (Case No. 12-43503-CEC, ECF No. 326).

---

[1] Citations to "ECF No. []" are to documents filed in Adv. Pro. No. 18-01033-CEC, identified by docket entry number.  Citations to "Case No. 12-43503-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re Suffolk Regional Off-Track Betting Corporation, identified by docket entry number.

The Plan provides for construction of a video lottery terminal facility (the "VLT

Facility"), and the funding and feasibility of the Plan depends on its revenues. (Plan at 1-2, Case

No. 12-43503-CEC, ECF No. 318.) The Plan contemplated that the VLT Facility would be

constructed in Medford, New York. (Plan at 1-2, Case No. 12-43503-CEC, ECF No. 318.)

However, Suffolk OTB subsequently decided to locate the VLT Facility in Islandia, New York at

the site of the former Marriott Hotel at 3635 Express Drive North, Islandia, New York 11749

(the "Location").  (Status Ltr., Case No. 12-43503-CEC, ECF No. 496.)

II.      The Plaintiffs' Challenges to the VLT Facility

In 1995, the Board approved and adopted a zoning master plan entitled the

"Comprehensive Plan for the Village of Islandia, Suffolk County, New York" (the "Master

Plan"), which was applicable to the territorial jurisdiction of the Village, "to serve as a policy-

oriented, long range guide to future physical development" of the Village.  (Am. Compl. ¶13,

ECF No. 43; Master Plan at 1, Zaleski Decl. Ex. D, ECF No. 62-26.)  The Master Plan

recommended modifying the existing zoning code to create new designations and districts, and to

eliminate certain zones.[2]  (Am. Compl. ¶ 15, ECF No. 43; Master Plan at 98, 120-122, Zaleski

Decl. Ex. D, ECF No. 62-26.)  One new district recommended by the Master Plan was the

office/industrial district (the "District") to "[p]romote high quality industrial and office

development in those areas which have been established for such uses." (Am. Compl. ¶ 16, ECF

No. 43; Master Plan at 95, Zaleski Decl. Ex. D, ECF No. 62-26.)

To implement the recommendations of the Master Plan, the Board adopted Article X of

Chapter 177 of the Village of Islandia Code (the "Village Code"), which established permitted

---

[2] In August 2003, the Board approved the Comprehensive Plan Update to recommend land use policies for
remaining undeveloped parcels of land in the Village.  (Comprehensive Plan Update at 1, Zaleski Decl. Ex. E, ECF
No. 62-27.)

and non-permitted office and industrial uses of land within the District. (Am. Compl. ¶ 18, ECF No. 43; Village Code § 177-72; Use Classification Table, 177 Attachment 5, Zaleski Decl. Ex. F, ECF No. 62-28.) Chapter 177 of the Village Code provided that land in the District may be used as a hotel if the Board issued a special permit, which was subject to a public hearing. (Am. Compl. ¶ 19, ECF No. 43; Use Classification Table, 177 Attachment 5, Zaleski Decl. Ex. F, ECF No. 62-28.)

Prior to the adoption of the Master Plan, a hotel (the "Hotel") was constructed and operating at the Location. (Am. Compl. ¶ 21, ECF No. 43; Village Ans. ¶ 6, ECF No. 47; Delaware North Ans. ¶ 21, ECF No. 48.) Delaware North (Suffolk OTB's operating partner) is the current owner of the Hotel and the Location. (Am. Compl. ¶ 22, ECF No. 43; Suffolk OTB Ans. ¶5, ECF No. 46; Village Ans. ¶ 7, ECF No. 47; Delaware North Ans. ¶ 22, ECF No. 48.)

On March 28, 2016, Delaware North applied for a special permit authorizing the construction and use of the VLT Facility, including an off-track betting simulcast facility, as an accessory use of the Hotel (the "Special Permit Application"). (Delaware North Rule 7056-1 Stmt. ¶ 19, ECF No. 62-1; Pls. Counter-Stmt. ¶ 19, ECF No. 76.) The Board approved the Special Permit Application and issued the special permit (the "Special Permit") to Delaware North on August 12, 2016. (Delaware North Rule 7056-1 Stmt. ¶ 37, ECF No. 62-1; Pls. Counter-Stmt. ¶ 37, ECF No. 76; Resolution Granting Special Permit, Zaleski Decl. Ex. A, ECF No. 62-22.)

Four days later, on August 16, 2016, Delaware North and the Village executed an agreement entitled The Taxpayer Relief Agreement Between the Village of Islandia and Delaware North Islandia Properties, LLC (the "TRA"), whereby Delaware North agreed to pay the Village $1,532,400 "to be used by the Village to pay for the construction and development by

the Village of the ballfields and associated improvements at First Responders Park" (the "Initial Capital Improvement Payment"), followed by three annual payments of $2,000,000, and thereafter followed by annual payments of $2,250,000 through 2037 (the "Taxpayer Relief Payments").  (Delaware North Rule 7056-1 Stmt. ¶ 40, ECF No. 62-1; Pls. Counter-Stmt. ¶ 40, ECF No. 76; TRA ¶¶ 1,4, 5, Dorman Decl. Ex. C, ECF No. 62-16.)

On September 13, 2016, two of the plaintiffs in this action, Jennifer Tomasino and Apryl Meyer, together with other residents and interested parties, commenced an Article 78 proceeding in Supreme Court, Suffolk County ("State Court"), Index. No. 2016-8907, against the Board, the Village, Delaware North, and Michael Zaleski (a member of the Board), challenging the Special Permit granted by the Board to Delaware North.  (Delaware North Rule 7056-1 Stmt. ¶ 41, ECF No. 62-1; Pls. Counter-Stmt. ¶ 41, ECF No. 76; Dorman Decl. Ex. D, ECF No. 62-17.)  The complaint alleged, among other things, that the VLT Facility is not a permitted accessory use of a hotel, and that the Board failed to comply with the requirements of the State Environmental Quality Review Act ("SEQRA"). (Dorman Decl. Ex. D, ECF No. 62-17.)

On September 7, 2017, the State Court issued a decision and order which, among other things, found that the VLT Facility, including the off-track betting simulcast facility, is not a permitted accessory use of a hotel in the District under Chapter 177 of the Village Code, and vacated the Special Permit.  (Delaware North Rule 7056-1 Stmt. ¶ 44, ECF No. 62-1; Pls. Counter-Stmt. ¶ 44, ECF No. 76; State Court Decision at 4-5, Zaleski Decl. Ex. B, ECF No. 62-23.)  The remaining claims, including the challenge under SEQRA, were voluntarily discontinued by stipulation dated December 11, 2017.  (Delaware North Rule 7056-1 Stmt. ¶ 43, ECF No. 62-1; Pls. Counter-Stmt. ¶ 43, ECF No. 76; Stip. of Discontinuance, Dorman Decl. Ex. E, ECF No. 62-18.)

5

On November 28, 2017, after the State Court's ruling vacating the Special Permit on the grounds that gaming was not a permitted accessory use to a hotel under existing law, the Board adopted Local Law No. 3-2017, amending Article X of Chapter 177 of the Village Code, to provide for a Hotel/Gaming Facility as a permitted use in the District, thereby permitting the Hotel to be used as a VLT Facility with an off-track betting simulcast facility. (Delaware North Rule 7056-1 Stmt. ¶¶ 48, 49, 63, ECF No. 62-1; Pls. Counter-Stmt. ¶¶ 48, 49, ECF No. 76; Local Law No. 3-2017 §§ 1.4, 2.2, Dorman Decl. Ex. F, ECF No. 62-19.)

Local Law No. 3-2017 defines a "Hotel/Gaming Facility as:

> A Hotel with more than 150 rooms with an indoor facility containing video lottery terminals (VLTs) authorized by Section 1617-a of the New York State Tax Law and licensed by the New York State Gaming Commission and/or simulcast off-track betting simulcast facilities authorized pursuant to the New York State Racing, Pari-Mutuel Wagering and Breeding Law, located on a site having a minimum lot area of seven (7) acres and at least 600 feet of frontage on the Long Island Expressway (Interstate 495) and/or a Long Island Expressway Service Road. A restaurant and/or other such uses which are primarily intended for use by visitors, guests or customers of the Hotel/Gaming Facility may be provided and/or operated.

(Local Law No. 3-2017 § 2.1.2, Dorman Decl. Ex. F, ECF No. 62-19.)

Local Law No. 3-2017 became effective on November 29, 2018, upon filing with the New York Secretary of State. (Delaware North Rule 7056-1 Stmt. ¶ 64, ECF No. 62-1; Pls. Counter-Stmt. ¶ 64, ECF No. 76.)

On January 12, 2018, pursuant to Local Law No. 3-2017, Delaware North was granted a certificate of occupancy authorizing the use and occupancy of the Hotel as a VLT Facility with an off-track betting simulcast facility. (Am. Compl. ¶ 43, ECF No. 43; Suffolk OTB Ans. ¶ 16, ECF No. 46; Village Ans. ¶ 23, ECF No. 47.) Thereafter, the Board and Delaware North executed the Amended and Restated Taxpayer Relief Agreement Between the Incorporated

Village of Islandia and Delaware North Islandia Properties, LLC (the "Amended TRA").[3] (Delaware North Rule 7056-1 Stmt. ¶ 65, ECF No. 62-1; Pls. Counter-Stmt. ¶ 65, ECF No. 76; Am. TRA ¶¶ 12, 13, Dorman Decl. Ex. G, ECF No. 62-20.) The Amended TRA acknowledges that Delaware North already made the Initial Capital Improvement Payment of $1,532,400 in February 2017 pursuant to the TRA. (Am. TRA at 1, Dorman Decl. Ex. G, ECF No. 62-20.)

On February 12, 2018, the Plaintiffs commenced this action challenging Local Law No. 3-2017 on the grounds that the Board (1) engaged in unlawful zoning by contract, (2) engaged in spot zoning, and (3) violated the requirement of Municipal Home Rule Law ("MHRL") § 23(2)(f) for a mandatory referendum. The Plaintiffs also sought to vacate the certificate of occupancy and sought a permanent injunction. Suffolk OTB moved to intervene in the action, and upon the State Court's decision and order authorizing Suffolk OTB to intervene as a defendant, Suffolk OTB removed the action to this Court.

Delaware North, the Village, the Board, and Suffolk OTB (as intervening defendant) moved to dismiss the claim under MHRL § 23(2)(f), the claim to vacate the certificate of occupancy, and the claim for a permanent injunction. (Mots. to Dismiss, ECF Nos. 17, 18, 19.) A hearing was held on July 11, 2018, and for the reasons stated on the record at that hearing, the Court issued an order on August 2, 2018, dismissing the claim to vacate the certificate of occupancy and the claim for a permanent injunction, and reserving decision on the claim under MHRL § 23(2)(f). Prior to the issuance of the August 2, 2018 order, and based upon the rulings made at the July 11, 2018 hearing, the Plaintiffs filed an amended complaint on July 26, 2018, omitting the claim to vacate the certificate of occupancy. On September 27, 2018, the Court issued a decision and order dismissing the claim under MHRL § 23(2)(f).

---

[3] Delaware North executed the Amended TRA on January 31, 2018, and the Board executed it on February 1, 2018. (Am. TRA, Dorman Decl. Ex. G, ECF No. 62-20.)

On October 29, 2018, the Defendants filed these motions seeking summary judgment on the claims of contract zoning and spot zoning, and on the claim for a permanent injunction. The Plaintiffs oppose the motions. Oral argument was heard on November 28, 2018.[4]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)), cert. denied, 540 U.S. 811 (2003). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

## DISCUSSION

I. Zoning by Contract

The Plaintiffs allege that the Board engaged in zoning by contract because it agreed to enact Local Law No. 3-2017 in exchange for Delaware North's payments under the Amended TRA. The Defendants argue that the Amended TRA is a typical host community agreement, often entered into in connection with development projects, and that nothing in the Amended

---

[4] The transcript of the hearing will be cited to herein as "Tr. at [page], ECF No. 96."

TRA obligated the Board to enact Local Law No. 3-2017, or otherwise controlled or limited the exercise of its legislative powers.

"A legislature cannot bargain away or sell its powers," Church v. Town of Islip, 8 N.Y.2d 254, 259 (N.Y. 1960), nor can it "make contracts that control or limit it in the exercise of its legislative powers and duties," Collard v. Inc. Vill. of Flower Hill, 52 N.Y.2d 594, 601 (N.Y. 1981). "[R]estrictive agreements made by a municipality in conjunction with a rezoning are sometimes said to violate public policy." Collard, 52 N.Y.2d at 601. "Thus, an agreement whereby a legislature binds itself in advance to exercise its zoning authority in the future for the benefit of a landowner upon the landowner's provision of a consideration would be unlawful, and an ordinance enacted pursuant to such an agreement may be subject to attack on the ground that the enactment constitutes zoning by contract." Tuxedo Land Tr., Inc. v. Town of Tuxedo, 950 N.Y.S.2d 611, 2012 WL 716626, at *13 (N.Y. Sup. Ct. 2012), aff'd sub nom. Tuxedo Land Tr., Inc. v. Town Bd. of Tuxedo, 977 N.Y.S.2d 272 (N.Y. App. Div. 2013). However, the existence of an agreement by the landowner to provide certain benefits or to satisfy conditions upon a zoning determination does not automatically result in illegal contract zoning. See Id. ("[I]t is not unlawful for a municipality to require that an applicant donate land or property rights or record a restrictive covenant—even if the applicant's obligation to do so is conditioned upon its receipt of necessary approvals—so long as the municipality had not committed itself to a specific course of action with respect to the zoning amendment as consideration therefor."); see also Cram v. Town of Geneva, 190 A.D.2d 1028, 1028-29 (N.Y. App. Div. 1993).

As explained by the New York Court of Appeals:

> While permitting citizens to be governed by the best bargain they
> can strike with a local legislature would not be consonant with
> notions of good government, absent proof of a contract purporting
> to bind the local legislature in advance to exercise its zoning

> authority in a bargained-for manner, a rule which would have the
> effect of forbidding a municipality from trying to protect
> landowners in the vicinity of a zoning change by imposing
> protective conditions based on the assertion that body is
> bargaining away its discretion, would not be in the best interests of
> the public.

Collard, 52 N.Y.2d at 601.

The Plaintiffs argue that the Board sold its zoning powers by agreeing to adopt Local

Law No. 3-2017 in exchange for Delaware North's payments under the Amended TRA.  In

support, the Plaintiffs rely on Citizens to Save Minnewaska v. New Paltz Central School District,

468 N.Y.S.2d 920 (N.Y. App Div. 1983), and Levine v. Town of Oyster Bay, 259 N.Y.S.2d 247

(N.Y. Sup. Ct. 1964).  The Defendants, on the other hand, rely on De Paolo v. Town of Ithaca,

694 N.Y.S.2d 235 (N.Y. App. Div. 1999), arguing that the Board did not engage in zoning by

contract because no contract bound the Board in advance to adopt Local Law No. 3-2017.  For

the following reasons, the Plaintiffs' argument should be rejected.

Nothing in the TRA or the Amended TRA (which was executed after the adoption of

Local Law No. 3-2017) bound the Board in advance to amend the zoning law to authorize

gaming as a permitted use in the District, or otherwise to approve a permit for the VLT Facility.

Rather, the TRA and Amended TRA were negotiated, and the payments thereunder were

designated, to make capital improvements to a ballfield and park, to address and mitigate any

increased cost in infrastructure and services that would be required in the event the VLT Facility

was authorized to operate, and to provide tax relief to the taxpayers of the Village.  As the TRA

states:

> WHEREAS, the Village Board deems it advisable and in the best
> interest of the Village and its residents for the Village and [Delaware
> North] to enter into a Taxpayer Relief Agreement which provides
> for a one-time payment to the Village for capital improvements and
> subsequent annual payments to the Village . . . to (i) promote

community development in the Village, (ii) to offset the increase in
the infrastructure, public safety and emergency services cost of the
Village incurred as a result of approving the Application and (iii) to
reduce real property taxes of Village residents . . . .

(TRA at 2-3, Dorman Decl. Ex. C, ECF No. 62-16.)

The Amended TRA acknowledged Delaware North's prior payment of the Initial Capital

Improvement Payment, and Delaware North reaffirmed the commitment to make the annual Tax

Relief Payments in the amount of $2,000,000 for 2018, 2019, and 2020, and in the amount of

$2,250,000 for 2021 through 2037. (Am. TRA at 2 and ¶¶ 12, 13, Dorman Dec. Ex. G, ECF No.

62-20.)  The Amended TRA also imposed certain conditions and restrictions on Delaware North,

such as prohibiting the use of the word "casino" on any signage, prohibiting Delaware North

from challenging the tax assessments by the Village, and specifically requiring any sale of the

Hotel to include an assumption by the purchaser of the obligations under the Amended TRA

(Am. TRA ¶¶ 9, 10, 18, Dorman Decl. Ex. G, ECF No. 62-20.)

The existence of the TRA and the Amended TRA does not result in the conclusion that

Local Law No. 3-2017 constituted contract zoning.  See Tuxedo, 2012 WL 716626 at *13.

Indeed, an agreement to mitigate increased costs to the community is required by New York

Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6), which provides that applicants for a

gaming license must "identify the infrastructure costs of the host municipality incurred in direct

relation to the construction and operation of a gaming facility and commit to a community

mitigation plan for the host municipality."  N.Y. Pari-Mut. & Breed. L. § 1316(6).  See Tyre ex

rel. Dawley v. Town Board of Tyre, 27 N.Y.S.3d 350, 357 (N.Y. Sup. Ct. 2016) (explaining that

the community mitigation plan at issue "includes mitigation measures . . . such as payments to

the Fire Department for Fire Protection benefits and community issues that are . . . required to be

addressed under the Gaming Act" (citations omitted)).  If the existence of such an agreement

constitutes contract zoning, then compliance with New York Racing, Pari-Mutuel Wagering and

Breeding Law § 1316(6) would automatically result in a voidable zoning determination.  The

absurdity of that result is evident.

The Plaintiffs contend that the Amended TRA is being couched as an impact mitigation

agreement, but in reality, is an impermissible contract providing consideration in exchange for a

favorable zoning determination because the Village is not responsible for the cost of public

safety and emergency services for the Village.   In support of that argument, the Plaintiffs rely on

an affidavit of Neil Munro (the "Munro Affidavit"), the former Deputy Mayor of the Village and

a former trustee on the Board, and a plaintiff in the prior state court actions challenging the VLT

Facility. [5]  The Plaintiffs further argue that Board's SEQRA evaluation resulted in a

determination that the VLT Facility would have no negative impact, and therefore there is no

reason for impact mitigation, and point out that the Initial Capital Improvement Payment is

entirely unrelated to the operation of the VLT Facility.[6]

These arguments should be rejected.  As will be discussed below, the TRA and Amended

TRA did not bind the Board in advance to authorize the VLT Facility.  And, if (as the Plaintiffs

contend) the Village does not bear the burden of substantially increased costs for public safety

and emergency services from the operation of the VLT Facility, the result of the TRA and the

Amended TRA is that the Village will have more funds available to put to other local uses,

including community development in the Village and reducing the tax burden of Village

---

[5] The Defendants sought to strike the Munro Affidavit on the grounds that the Plaintiffs failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7026 of the Federal Rules of Bankruptcy Procedure, because Mr. Munro was not disclosed as an expert and no expert report was provided.  (ECF Nos. 81, 8, 82.) The Plaintiffs contend that Mr. Munro is a fact witness, and not an expert witness.  Even if the Munro Affidavit was considered, it does not raise a genuine issue of material fact, and therefore, it is unnecessary to rule on the motions to strike it.
[6] This argument is actually asserted in connection with Plaintiffs' spot zoning claim, but it seems appropriate to address it in connection with the contract zoning claim.

residents.   It is not impermissible for a board to issue a zoning determination if unrelated local benefits are provided, <u>see</u> <u>Residents for Reasonable Dev. v. City of New York</u>, 11 N.Y.S.3d 116 (N.Y. App. Div. 2015) (payment to improve parkland in connection with approval of a project was permissible incentive zoning), and there is no allegation that the funds will be used for non-local purposes.   <u>Cf.</u> <u>Mun. Art Soc'y of N.Y. v. City of New York</u>, 522 N.Y.S.2d 800, 803, 804 (N.Y. Sup. Ct. 1987) (the monetary benefit to the city was "not earmarked for the improvement of any local facility," and would be paid "into the City's coffers for citywide use").

The timing of the contracts reflect that the Board did not "<u>bind[] itself in advance</u> to exercise its zoning authority in the future for the benefit of a landowner upon the landowner's provision of a consideration." <u>Tuxedo</u>, 2012 WL 716626, at *13 (emphasis added).  The terms of the TRA were agreed to in connection with the Special Permit Application, and the adoption of Local Law No. 3-2017 was not contemplated at that time.  Though the terms of the Amended TRA were negotiated prior to the enactment of Local Law No. 3-2017, it was not executed until after the law was passed, and, in any event, no provision of the Amended TRA obligated the Board to authorize the VLT Facility or adopt Local Law No. 3-2017.  To the contrary, Paragraph 9 of the Amended TRA, in which Delaware North agrees not to use the word "casino" on any signage on the premises, provides: "there shall be no application or granting of a variance of the signage regulations of the Village to allow for the use of the word 'casino' on any signage on the [p]remises."  (Am. TRA ¶ 9, Dorman Decl. Ex. G, ECF No. 62-20.)  Although Paragraphs 19 and 20 recite that Delaware North "agrees that the Hotel/Gaming Permit is conditioned on the compliance" with the Amended TRA, and provides for the revocation of the Hotel/Gaming Permit in the event Delaware North fails to make any of the Taxpayer Relief Payments or otherwise breaches its obligations under the Amended TRA, (TRA ¶¶ 19, 20, Dorman Decl. Ex.

G, ECF No. 62-20), nothing in the Amended TRA bound the Board to approve the VLT Facility or prevents the Board from amending or revoking Local Law No. 3-2017 and terminating the Amended TRA.

The circumstances presented here are distinguishable from <u>Levine</u>, 259 N.Y.S.2d 247, and <u>Citizens to Save Minnewaska</u>, 468 N.Y.S.2d 920, relied upon by the Plaintiffs.  In <u>Levine</u>, homeowners challenged an ordinance adopted by the Town of Oyster Bay reclassifying the zoning of a parcel of real property from residential to industrial, on the condition that certain terms were satisfied, including "that the grade of the entire parcel be bought down to the grade of Brush Hollow Road in accordance with the Town Engineer's approval of grades and specifications." <u>Levine</u>, 259 N.Y.S.2d at 249. The homeowners asserted that the board (1) did not comply with process outlined in the applicable town law regarding notices of hearing; (2) engaged in spot zoning; and (3) improperly reclassified the zoning contingent upon conditions being satisfied, among other claims.  <u>Id.</u>  The state court, noting that that the landowner requested the regrading condition from the board (which must also approve a permit for such regrading after public notice and a public hearing), held that the board impermissibly engaged in zoning by contract.  <u>Id.</u> at 251-52.  The court, citing <u>Church v. Town of Islip</u>, 8 N.Y.2d 254, explained that, although imposition of conditions in connection with zoning decisions is permissible, the resolution in <u>Levine</u> could not be upheld because it "purport[ed] to change the zoning 'in future'," and did not "grant the change of zoning from residential to industrial until certain conditions are performed."  <u>Id.</u> at 251.  The court noted that the facts before it were different from permissible conditional zoning where the zoning determination or modification is effective immediately, with the conditions to be satisfied afterward.  <u>Id.</u> at 251-52.

Unlike the resolution in <u>Levine</u>, Local Law No. 3-2017 became effective immediately upon filing it with the New York Secretary of State on November 28, 2017, and the certificate of occupancy was conditioned on the continued performance of Delaware North under the Amended TRA.

In <u>Citizens to Save Minnewaska</u>, 468 N.Y.S.2d 920, the New York Appellate Division voided a resolution recommending an applicant for a tax exemption based upon the applicant's offer to "pay 100% of the assessed taxes but such payment would be in lieu of taxes," which "offer was in the form of a written contract which recited, *inter alia*, that it would be binding upon [the applicant] if defendant adopted as its consideration the required resolution." <u>Citizens to Save Minnewaska</u>, 468 N.Y.S.2d at 921. The state court concluded that the "defendant legislated pursuant to the terms of a contract." <u>Id.</u> at 922.

In this case, however, there was no prior agreement in exchange for the approval of the permit or the adoption of Local Law No. 3-2017. The circumstances here are similar to those in <u>De Paolo</u>, 694 N.Y.S.2d 235, cited by the Defendants. In that case, the town board amended its zoning ordinance to accommodate Cornell University's plan for a new cooling system. <u>De Paolo</u>, 694 N.Y.S.2d at 237-38. The zoning amendment was enacted "in exchange for Cornell's granting the [t]own a 99-year license to use certain property as public park, thereby allowing continued public access to Cayuga Lake." <u>Id.</u> at 238. The court rejected a contract zoning claim against the zoning ordinance, explaining:

> Nothing in its agreement with Cornell committed the Town to a specific course of action with respect to the zoning amendment . . . . While Cornell's grant of the license to the Town was conditioned upon its receipt of all approvals required for the project, including rezoning, no provision in the agreement obligated the Town to issue such approvals or approve Cornell's rezoning application. Consequently, we see no parallel between these circumstances and the situations presented in either <u>Citizens to Save Minnewaska v.</u>

> New Paltz Cent. School Dist., 95 A.D.2d 532, 468 N.Y.S.2d 920,
> lvs. dismissed 61 N.Y.2d 605, 473 N.Y.S.2d 1026, 462 N.E.2d 156,
> 61 N.Y.2d 853, 473 N.Y.S.2d 975, 462 N.E.2d 152 or City of New
> York v. 17 Vista Assocs., 84 N.Y.2d 299, 618 N.Y.S.2d 249, 642
> N.E.2d 606 as the Town neither "legislated pursuant to the terms of
> a contract" (Citizens to Save Minnewaska v. New Paltz Cent. School
> Dist., supra, at 534, 468 N.Y.S.2d 920) nor agreed "in exchange for
> a predetermined [consideration] * * * [to provide] an expedited and
> favorable determination" (City of New York v. 17 Vista Assocs.,
> supra, at 306, 618 N.Y.S.2d 249, 642 N.E.2d 606).

Id. at 238–39 (alterations in the original).

The Plaintiffs further argue that the Board's decision to enact Local Law No. 3-2017 to authorizing gaming as a permitted use "forfeited [its legislative] power with respect to subsequent owners" of the Location.  (Pls. Mem. Of Law in Opp'n at 24, ECF No. 78.)  This argument should be rejected.  Nothing in the TRA or the Amended TRA obligates the Board to continue the Hotel/Gaming Facility as a permitted use in the District.  Additionally, the Amended TRA specifically requires Delaware North to assign the TRA to a new owner in connection with any sale of the Location, and obligates the subsequent owner to make the annual Tax Relief Payments.  (Am. TRA ¶¶ 16, 18, Dorman Decl. Ex. G, ECF No. 62-20.)  In the event Delaware North or a subsequent owner defaults under the Amended TRA, the certificate of occupancy may be terminated.  (Am. TRA ¶ 20, Dorman Decl. Ex. G, ECF No. 62-20.)  The adoption of Local Law No. 3-2017 is no different than the adoption of any other zoning ordinance which may be vacated, modified, or amended in the future pursuant to applicable statutes, rules, and law.

The Plaintiffs argue that, because Local Law No. 3-2017 created an as of right use for a Hotel/Gaming Facility, the law cannot be vacated or repealed, because such action would constitute a taking in violation of the Fifth Amendment to the United States Constitution.  (Tr. at 131.)  This argument should also be rejected. The Fifth Amendment "requires the payment of

16

compensation whenever the government acquires private property for a public purpose." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 321 (2002). "Land-use regulations are ubiquitous and most of them impact property values in some tangential way—often in completely unanticipated ways. Treating them all as *per se* takings would transform government regulation into a luxury few governments could afford." Id. at 324. Unless a regulation "deprives a landowner of '*all* economically beneficial uses' of his land," it must be evaluated under an ad hoc, fact specific inquiry to determine whether it constitutes a taking requiring compensation. Id. at 326, 330 (quoting and citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 1019 (1992)). The same analysis is applied by New York State courts. See Friedenburg v. New York State Dep't of Envtl. Conservation, 767 N.Y.S.2d 451, 456-58 (N.Y. App. Div. 2003). In the event the Board modified or repealed Local Law No. 3-2017, and if such action were determined to constitute a regulatory taking, the Village could be required compensate the owner accordingly. The possibility that the Village, at some point in the future, could become obligated to provide compensation for a regulatory taking in the event that the Board exercises its legislative authority in the future to modify or repeal Local Law No. 3-2017 does not result in the conclusion that the Board has bargained away or sold its legislative powers, or raise a genuine issue of material fact that the Board engaged in contract zoning.

The Plaintiffs next argue that, in the event New York State law is expanded to permit more gaming licenses, another property owner in the District would have the right to obtain a permit for a Hotel/Gaming Facility. (Pls.' Mem. of Law in Opp'n at 25, ECF No. 78.) This argument is entirely irrelevant to whether the Board engaged in contract zoning. Additionally, speculation is insufficient to raise a genuine issue of material fact to defeat a motion for

summary judgment. <u>Major League Baseball Props., Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 306 (2d Cir. 2008).

For these reasons, the Plaintiffs have not raised a genuine issue of material fact with respect to its claim of contract zoning, and it is recommended that the Defendants' motions for summary judgment be granted on that claim.[7]

II.      <u>Spot Zoning</u>

The Plaintiffs next argue that the Board engaged in illegal spot zoning when it enacted Local Law No. 3-2017, because the law affects only a single parcel of land, <u>i.e.</u> the Location. The Defendants argue that the spot zoning claim must fail because the Board reasonably determined that a hotel and gaming facility is consistent with the current uses of the District, the physical location, and the Master Plan, and benefits the community as a whole.

"The power to zone is derived from the Legislature and must be exercised in the case of towns and villages in accord with a 'comprehensive plan' or in the case of cities in accord with a 'well considered plan.'" <u>Asian Ams. for Equal. v. Koch</u>, 72 N.Y.2d 121, 131 (N.Y. 1988) (citations omitted). "The requirement of a comprehensive or well-considered plan not only insures that local authorities act for the benefit of the community as a whole but protects individuals from arbitrary restrictions on the use of their land." <u>Id.</u> "When a zoning ordinance is amended, the court decides whether it accords with a well-considered plan in much the same way, by determining whether the original plan required amendment because of the community's change and growth and whether the amendment is calculated to benefit the community as a whole as opposed to benefiting individuals or a group of individuals." <u>Id.</u> (citations omitted).

---

[7] Given this recommendation, there is no need to address the Defendants' argument that the Plaintiffs lack standing to challenge the conditions Delaware North agreed to satisfy.

It is well established that the determination of a zoning board "is entitled to great deference, and must be sustained where . . . it has a rational basis and is supported by substantial evidence." <u>Farrell v. Johnson</u>, 697 N.Y.S.2d 900, 901 (N.Y. App. Div. 1999). "[T]he analysis follows traditional due process rules: if the zoning ordinance is adopted for a legitimate governmental purpose and there is a 'reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end,' it will be upheld." <u>Asian Ams. for Equal.</u>, 72 N.Y.2d at 131-132. "An amendment which has been carefully studied, prepared and considered meets the general requirement for a well-considered plan and satisfies the statutory requirement.  The court will not pass on its wisdom." <u>Id.</u> at 132 (citations omitted).

Spot zoning, "the very antithesis of planned zoning," is "[d]efined as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." <u>Rodgers v. Vill. of Tarrytown</u>, 302 N.Y. 115, 123, 124 (N.Y. 1951) "Zoning is not invalid per se merely because only a single parcel is involved or benefited."  <u>Collard</u>, 52 N.Y.2d at 600 (citation omitted).  Factors to consider are "whether the rezoning is consistent with a comprehensive land use plan, whether it is compatible with surrounding uses, the likelihood of harm to surrounding properties, the availability and suitability of other parcels, and the recommendations of professional planning staff." <u>Citizens for Responsible Zoning v. Common Council of Albany</u>, 56 A.D.3d 1060, 1062 (N.Y. App. Div. 2008).  Notwithstanding these factors, "the real test for spot zoning is whether the change is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community." <u>Collard</u>, 52 N.Y.2d at 600. "To prevail on their allegation of illegal spot zoning, petitioners [bear] the burden

of overcoming, beyond a reasonable doubt, the strong presumption of validity attached to the . . . zoning determination." Citizens for Responsible Zoning, 56 A.D.3d at 1062.

The Plaintiffs argue that the adoption of Local Law No. 3-2017 was illegal spot zoning because (1) it was not adopted in accordance with the Master Plan; (2) the Board's evaluation of the environmental impact of the VLT Facility was deficient; (3) the Board failed to consider alternative locations; and (4) the VLT Facility will have a harmful impact on the Plaintiffs' safety and use and enjoyment of their properties.[8]

The Defendants argue that the record upon which the Board relied when enacting Local Law No. 3-2017 amply supports the Board's conclusion that the law is consistent with the Master Plan and is calculated to serve the general welfare of the community. The Defendants rely on the affidavits of Allan M. Dorman, the Mayor of the Village and a member of the Board and Michael Zaleski, the Deputy Mayor of the Village and a member of the Board. (Dorman Aff., ECF No. 62-11; Zaleski Aff., ECF No. 62-21.)

In his affidavit, Deputy Mayor Zaleski explains that the Board, in considering the Special Permit Application, conducted an extensive review of a full environmental assessment form (the "2016 EAF") under SEQRA, "which was supplemented by an expanded environmental assessment and traffic study." (Zaleski Decl. ¶3, ECF No. 62-21.) Thereafter, the Special Permit Application was referred to the Suffolk County Planning Commission, which issued a report finding that "[i]n terms of the compatibility of land uses, the principal use (hotel) has not changed and the physical properties of the site remain constant, the physical character of the

---

[8] In support of the argument that Local Law No. 3-2017 is inconsistent with the Master Plan, the Plaintiffs rely on an affidavit of Stephen M. Jones (the "Jones Affidavit"), a land use and zoning expert. The Defendants filed motions to strike the Jones Affidavit on the grounds that the Plaintiffs failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7026 of the Federal Rules of Bankruptcy Procedure, because Mr. Jones was not disclosed as an expert and no expert report was provided. (ECF Nos. 81, 8, 82.) At the hearing on the motions, the Plaintiffs agreed to withdraw the Jones Affidavit for purposes of the summary judgment motions, but reserved the right to introduce the expert opinion at trial. Tr. at 38 (ECF No. 96).

community remains unchanged by the proposal as there are no major modifications to the exterior of the principal building." (Zaleski Decl. ¶ 3, ECF No. 62-21; Staff Report at 3, Spitzer Decl. Ex. B, ECF No. 62-5.) Deputy Mayor Zaleski further stated that the Board "conducted public meetings and public hearings, evaluated the Village's zoning code, and utilized its own engineers and consultants to review the material submitted by Delaware North." (Zaleski Decl. ¶ 3, ECF No. 62-21.) At the conclusion of that process, the Board issued a negative declaration under SEQRA (the "2016 Negative Declaration"). (Zaleski Decl. ¶ 3, ECF No. 62-21; 2016 Negative Decl. and 2016 EAF, Dorman Decl. Ex. B, ECF Nos. 62-13, 62-14, 62-15.)

Deputy Mayor Zaleski stated that, after the Special Permit was vacated by the Supreme Court, the Board, in considering the adoption of Local Law No. 3-2017, rereviewed the record from the Special Permit Application and a new EAF (the "2017 EAF"), and again issued a negative declaration under SEQRA (the "2017 Negative Declaration"). (Zaleski Aff. ¶¶ 10, 12, ECF No. 62-21; 2017 EAF, Zaleski Decl. Ex. C, ECF No. 62-24.) Deputy Mayor Zaleski points out that the 2017 EAF inquires whether "[t]he proposed action is not consistent with the adopted land use plans," to which the Board answered "no," together with a full analysis annexed thereto. (Zaleski Decl. ¶ 13, ECF No. 62-21; 2017 EAF at Question 17 (page ISL003013), Zaleski Decl. Ex. C, ECF No. 62-15.)

Deputy Mayor Zaleski further stated that the Board also considered the Master Plan, including its provisions that areas in the District "'display a more mixed land use character' and that industrial uses should be encouraged because 'to restrict such areas to purely office use[s] would create a high number of unnecessary nonconforming uses and deny the existence and legitimacy of lighter industrial uses being able to coexist with office uses.'" (Zaleski Decl.

¶ 15(a), ECF No. 62-21.)  The Board noted that the Master Plan contemplated that the District would include "more intensive uses," including manufacturing and warehousing uses.  (Zaleski Decl. ¶ 15(a), ECF No. 62-21.)  The Board also relied on its knowledge of the community and other uses near the Location, "including a truck distribution facility, a park and ride, office uses, and a wholesale shopping facility."  (Zaleski Decl. ¶ 15(c), ECF No. 62-21.)

In evaluating whether Local Law No. 3-2017 was in the best interests of the community, Deputy Mayor Zaleski stated that the Board noted the Location's "deteriorating condition," and considered the "opportunity for reuse and repurposing of an existing structure in the Village." (Zaleski Decl. ¶ 15(d), ECF No. 62-21.) Similarly, Mayor Dorman stated that the Board considered the law a benefit to the community by "preventing the hotel site from becoming a large unoccupied and blighted property that would create a drag on Village property values as a whole, especially considering a significant decline of employees located at the former Computer Associates building located less than one mile away, and the creation of approximately 300 jobs."  (Dorman Decl. ¶ 20, ECF No. 62-11.)

The Plaintiffs assert that the Board's review was tainted because David Wortman (retained by Delaware North) and Joseph Iannucci (retained by the Village), the consultants retained to review and analyze the zoning, traffic, and environmental impacts, limited their analysis to the findings contained in the 2016 EAF and operated based upon certain incorrect assumptions.  (Pls. Mem of Law in Opp'n at 5, 11-115).  In other words, the Plaintiffs appear to argue that no new analysis on the impact of authorizing the VLT Facility was undertaken, and that the existing evaluations were deficient, and therefore, the Board did not rely on a proper record when considering Local Law No. 3-2017.

The Plaintiffs' argument should fail. No reasonable explanation was given why the zoning, traffic, and environmental impact analysis completed in connection with the Special Permit Application in 2016 would not be applicable to determining the impact of the adoption of Local Law No. 3-2017, which was adopted shortly after the Special Permit was vacated by the State Court.  The Plaintiffs have not articulated a reason why the Board would have been required to reinvent the wheel. The analysis in both situations is the same: the impact of the VLT Facility at the Location.  The means of implementation, whether by special permit or by a local law creating an as of right use, is irrelevant.  See Boyles v. Town Bd. of Bethlehem, 278 A.D.2d 688, 691(N.Y. App. Div. 2000) (finding that, in deciding on a building project approval, the board did not err by relying on a prior SEQRA review in connection with a rezoning determination). Moreover, as the Defendants have established, a new EAF was completed in 2017 and reviewed prior to the adoption of Local Law No. 3-2017.  (2017 EAF, Zaleski Decl. Ex. C, ECF No. 62-15.)

Notably, the challenge to the 2016 Negative Declaration was withdrawn, and the Plaintiffs have not challenged the 2017 Negative Declaration.   Though the Plaintiffs argue there is no need to separately challenge the 2017 Negative Declaration because the complaint challenges the whole process (Tr. at 175-176, ECF No. 96), this argument should be rejected. Nothing in the complaint challenges the 2017 Negative Declaration, and the challenge to the 2016 Negative Declaration was withdrawn.  The only claims at issue in this case are contract zoning and spot zoning, and therefore, the determination whether the Board complied with SEQRA is beyond the scope of review.  See Farrell, 697 N.Y.S.2d at 901 ("The petition does not challenge the sufficiency of the ZBA's environmental review pursuant to SEQRA or the ZBA's

action in issuing a negative declaration. The court erred, therefore, in addressing the issue of the

ZBA's compliance with SEQRA." (citation omitted).)

Plaintiffs Tomasino, Montano, Richard Meyer, and Apryl Meyer filed affidavits asserting

that the VLT Facility has negatively impacted their quality of their life, expressing safety

concerns based upon two criminal incidents that occurred at the VLT Facility and increasing

crime statistics, and contending that the value of their properties across from the Hotel have

declined. (ECF Nos. 69-72.) While these affidavits may establish standing to challenge the

enactment of Local Law No. 3-2017, and appear to relate solely to their claim for a permanent

injunction, it is important to note that the Plaintiffs' affidavits do not raise a genuine issue of fact

with respect to whether Local Law No. 3-2017 was calculated to serve the community as a

whole.

As explained by the New York Court of Appeals:

> While stability and regularity are undoubtedly essential to the
> operation of zoning plans, zoning is by no means static. Changed or
> changing conditions call for changed plans, and persons who own
> property in a particular zone or use district enjoy no eternally vested
> right to that classification if the public interest demands otherwise.
> Accordingly, the power of a village to amend its basic zoning
> ordinance in such a way as reasonably to promote the general
> welfare cannot be questioned. Just as clearly, decision as to how a
> community shall be zoned or rezoned, as to how various properties
> shall be classified or reclassified, rests with the local legislative
> body; its judgment and determination will be conclusive, beyond
> interference from the courts, unless shown to be arbitrary, and the
> burden of establishing such arbitrariness is imposed upon him who
> asserts it.

Rodgers, 302 N.Y. at 121.

The Plaintiffs also argue that the Board's process was flawed because it failed to consider

other locations, such as the Hampton Inn, which has fewer than 150 rooms that is required by

Local Law No. 3-2107.  This is irrelevant because no other hotel was seeking to operate a VLT

Facility. In the event another hotel is granted a gaming license by New York State and does not meet the requirements of Local Law No. 3-2017, the Board has the option of amending the Village Code accordingly after complying with applicable law.  Moreover, the availability of alternative sites is just one factor in the spot zoning analysis, and the failure to consider it should not be fatal because the record amply establishes that the Board considered the other, more important, factors.

The Defendants have established that the Board did not engage in spot zoning in adopting Local Law No. 3-2017.  Mayor Dorman and Deputy Mayor Zaleski detailed the evaluation completed and procedural process followed in connection with the Special Permit Application and the adoption of Local Law No. 3-2017.  The Board considered the impact the law would have by reviewing the SEQRA analysis, the consistency with the Master Plan, and the benefit to the Village by rejuvenating the Hotel and increasing jobs.   The Location remains in the District and was not rezoned to another designation, its appearance was not significantly changed, and it is in an area with other industrial uses.  (Delaware North Rule 7056-1 Stmt. ¶¶ 14, 20, ECF No. 62-1; Pls. Counter-Stmt. ¶ 21, ECF No. 76; Pls. Mem. of Law in Opp'n at 29, ECF No. 78.)

Though the Plaintiffs are correct that economic benefit may not be the sole basis for a zoning determination, Yellow Lantern Kampground v. Town of Cortlandville, 279 A.D.2d 6, 10 (N.Y. App. Div. 2000), the record reflects that, in this case, the Board sufficiently evaluated the applicable factors.  Contrary to the Plaintiffs' assertion, the Defendants have not created "post-enactment rationalizations," for the adoption of Local Law No. 3-2017. (Pls. Mem. Of Law in Opp'n at 32, ECF No. 78.) For these reasons, the Plaintiffs have not raised a genuine issue of material fact to defeat the Defendants' motion for summary judgment on the spot zoning claim.

25

III.    Uniformity

The Plaintiffs argue that Local Law No. 3-2017 violates N.Y. Village Law § 7-702, which provides that all "[district] regulations shall be uniform for each class or kind of buildings throughout each district."  N.Y. Village Law § 7-702.  This claim cannot be raised for the first time in the Plaintiffs' opposition to the motions for summary judgment.  Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (stating that claims raised for the first time in opposition to summary judgment "need not be considered").

IV.    Permanent Injunction

The Plaintiffs concede that their claim for permanent injunction is dependent on the success of their contract zoning and spot zoning claims.  (Pls. Mem of Law in Opp'n at 38, ECF No. 78).  "An injunction is a remedy, a form of relief that may be granted against a defendant when its proponent establishes the merits of its substantive cause of action against that defendant." Weinreb v. 37 Apartments Corp., 943 N.Y.S.2d 519, 523 (N.Y. App. Div. 2012). Because the Defendants should be granted summary judgment on Plaintiffs' contract zoning and spot zoning claims, the Plaintiffs' claim for a permanent injunction should fail as well.

<u>CONCLUSION</u>

For the foregoing reasons, it is recommended that the Defendants' summary judgment motions be granted.

**Dated: Brooklyn, New York**
**December 17, 2018**

**Carla E. Craig**
**United States Bankruptcy Judge**