| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | **MOTION RETURN DATE AND TIME:**<br>November 28, 2018 at 2:00 p.m. |

In re:

SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

                      Adjusted Debtor

CHAPTER 9
CASE NO. 12-43503-CEC

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER, APRYL MEYER,

                      Plaintiffs,

v.

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE
INCORPORATED VILLAGE OF ISLANDIA,
DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, a/k/a DELAWARE
NORTH, and SUFFOLK REGIONAL OFF-
TRACK BETTING CORPORATION,

                      Defendants.

Adv. Proc. No. 1-18-01033-CEC

## **STATEMENT OF UNDISPUTED MATERIAL FACTS**

        Defendant Delaware North Islandia Properties, LLC, a/k/a Delaware North ("Delaware North") submits the following statement of material facts as to which there is no genuine issue to be tried, in accordance with Federal Rule of Civil Procedure 56, Local Rule of Civil Procedure 56.1, Federal Rule of Bankruptcy Procedure 7056, and Local Rule of Bankruptcy Procedure 7056-1.

## PLAINTIFFS' PROPERTIES

1. Plaintiffs herein own their respective properties on Dawson Court in the Village of Islandia (the "Village"). Docket No. 43, Amended Complaint dated July 25, 2018 ("Amended Complaint"), ¶¶ 1-4.

2. Plaintiffs Jennifer Tomasino and Kevin Montano own property at 4 Dawson Court and Plaintiffs Richard and Apryl Meyer own property at 1 Dawson Court (the "Plaintiffs' Properties"). Docket No. 43, Amended Complaint, ¶¶ 1-4.

3. Plaintiffs' Properties are located adjacent to the Village's Office/Industry ("OI") Zoning District. Declaration of Michael Zaleski, dated October 26, 2018 ("Zaleski Decl."), ¶ 15(c); Declaration of Daniel A. Spitzer, dated October 29, 2018 ("Spitzer Decl."), Ex. D (Montano Deposition Transcript ("Dep.") at 13:21-25, 14:2-3).

4. Plaintiffs' Properties are located in an area serviced by major highways, including the Long Island Expressway and the Long Island Motor Parkway. Zaleski Decl., ¶ 15(c); Deposition of Mayor Allan M. Dorman, dated October 26, 2018 ("Dorman Decl."), Ex. B (Expanded Environmental Assessment, Figure 1 – Site Location).

5. Plaintiffs' Properties are located near heavy commercial and industrial uses, including a truck distribution facility, a park-and-ride lot, office uses, and a wholesale shopping facility. Zaleski Decl. ¶ 15(c); Spitzer Decl., Ex. B at 3.

6. When Plaintiffs purchased Plaintiffs' Properties, they did not first review the Village's comprehensive plan (the "Comprehensive Plan"), the Village's zoning law, or the Village's 2003 comprehensive plan update (the "Comprehensive Plan Update"). Spitzer Decl.,

Exs. D, E, F, and G (A. Meyer Dep. at 16:11-23, 87:13-24; R. Meyer Dep. at 12:17-25, 14:14-22; Montano Dep. at 11:20-25, 12:2-11; Tomasino Dep. at 14:20-25, 15:2-5).

7. Plaintiffs were aware, before they bought Plaintiffs' Properties, that the property at 3635 Express Drive N in the Village (the "Property") was used as a hotel. Spitzer Decl., Exs. D, E, F, and G (Montano Dep. at 12:12-14; R. Meyer Dep. at 14:23-25, 15:2-8; A. Meyer Dep. at 17:11-21; Tomasino Dep. at 17:15-19).

### THE VILLAGE'S COMPREHENSIVE PLAN AND ZONING LAW

8. The OI Zoning District's purpose and intent, as set forth in the Village's zoning law is as follows: "The intent of the Office/Industry District is to continue the orderly mixed-use development consisting of high quality, nonintensive light ***industrial*** and ***warehouse uses*** along with office development in accordance with appropriate standards of design and site development." Zaleski Decl., Ex. F (Village of Islandia Code (the "Village Code") § 177-71(B) (emphasis added)).

9. Uses permitted (by special use permit or otherwise) in the OI Zoning District include "[m]anufacturing and warehouse uses not otherwise regulated or prohibited in an industrial district" and "[w]holesale distribution station, supply house, and wholesale establishment." Zaleski Decl., Ex. F (Village Code, Attachment 5).

10. The Comprehensive Plan provides as follows: "The Office/Industrial District would be a combination of provisions from the Office District and the Industrial District." Zaleski Decl., Ex. D at 122.

11. The Comprehensive Plan sets a goal for the OI Zoning District as follows: "Office/Industrial Uses. **Goal.** Promote high quality industrial and office development in those areas which have been established for such uses and in a manner which minimizes the potential negative environmental and community design impacts. Encourage the redevelopment and improvement of environmental and aesthetic conditions in the older industrial areas and encourage the re-tenanting of vacant industrial and office buildings." Zaleski Decl., Ex. D at 95.

12. The Comprehensive Plan addressed the hotel use at the Property and noted its convenient location with respect to the Long Island Expressway. Zaleski Decl., Ex. D at 24.

13. The Comprehensive Plan states that Office/Industry areas "display a more mixed land use character" and that industrial uses should be encouraged because "[t]o restrict such areas to purely office use[s] would create a high number of unnecessary non-conforming uses and deny the existence and legitimacy of lighter industrial uses being able to coexist with office uses." Zaleski Decl., Ex. D at 107.

14. The Village maintained a mix of hotel, industrial, office, and heavy retail in its Office/Industry areas. *Id.*

15. The Comprehensive Plan Update reiterated the above principles, noting that the OI Zoning District, in addition to office uses, "permits manufacturing and warehousing uses . . . ." Zaleski Decl., Ex. E at 15.

## DELAWARE NORTH'S SPECIAL USE PERMIT APPLICATION AND THE TAXPAYER RELIEF AGREEMENT

16. Delaware North owns the Property, which is approximately 7.88 acres. Docket No. 43, Amended Complaint, ¶¶ 21-22; Docket No. 48, Delaware North's Answer to Plaintiffs' Amended Complaint, ¶¶ 21-22.

17. The Property is located in the Village's OI Zoning District. Dorman Decl., Ex. B (full environmental assessment form ("EAF") at C.3.a.).

18. At the time Delaware North acquired the Property, it was already improved with a 216,650 sq. ft., ten-story hotel and associated asphalt parking lot. Spitzer Decl., Ex. B at 2.

19. Delaware North submitted an application to the Village in or about March 2016 for a special use permit ("SUP Application") to operate a video lottery terminal facility ("VLT Facility") with an off-track-betting ("OTB") simulcast facility as an accessory use to the existing hotel. Zaleski Decl., Ex. A (Resolution Granting Special Permit at 1).

20. No physical changes were made to the outside of the hotel or the parking lot as a result of the opening of the VLT Facility, except 1) a fence was built along the edge parking lot bordering Dawson Court, 2) an overhead "sally port" was constructed at the entrance to the hotel, and 3) an additional light in the parking lot. Spitzer Decl., Ex. B at 2; Spitzer Decl., Ex. D (Montano Dep. at 12:21-25, 13:2-25, 14:2-25, 15:2-6); *see generally* Dorman Decl., Ex. B ("Notice of Determination of Non-Significance Negative Declaration," at 1-2).

21. Prior to Delaware North's acquisition, the hotel was in financial difficulty and in a deteriorating condition. Zaleski Decl. ¶ 15(d); Dorman Decl., ¶ 20.

5

22. The Board conducted a review of the SUP Application pursuant to the New York State Environmental Quality Review Act ("SEQRA"). Dorman Decl., ¶¶ 3-7, Ex. B; Zaleski Decl., ¶¶ 3-4.

23. Delaware North submitted a full EAF, Part 1 with its application materials, which was supplemented by an expanded environmental assessment and traffic study. Dorman Decl., Ex. B.

24. The Board referred the SUP Application to the Suffolk County Department of Economic Development and Planning, the staff of which prepared a report (the "County Staff Report"). Zaleski Decl., ¶ 3; Spitzer Decl., Ex. B.

25. The County Staff Report provided as follows: "The surrounding zoning and land use pattern in the vicinity of the subject property are predominantly a mix of light industrial (consisting of office and distribution/warehouse) uses, and vacant Office Industry zoned lands to the north and west" as well as a "'park & ride' lot" and "the Long Island Expressway . . . ." Spitzer Decl., Ex. B at 3.

26. The County Staff Report further provided: "In terms of the compatibility of land uses, the principal use (hotel) has not changed and the physical properties of the site remain constant, ***the physical character of the community remains unchanged by the proposal as there are no major modifications to the exterior of the principal building***." Spitzer Decl., Ex. B at 3 (emphasis added).

27. The Suffolk County Department of Economic Development and Planning adopted the County Staff Report. Spitzer Decl., Ex. C.

28. The Village conducted public meetings and hearings on the SUP Application, evaluated the Village's zoning code, and utilized its own attorney, engineers, and consultants to review the materials submitted by Delaware North. Zaleski Decl., ¶ 3, Ex. A.

29. As part of the SUP Application, Delaware North included the concept of SEQRA impact mitigation as part of its proposal by way of an agreement to mitigate impacts from the proposed VLT Facility. Dorman Decl., ¶ 7.

30. Delaware North consented to a condition on the SUP Application that would require impact mitigation. Dorman Decl., ¶ 7, Ex. A.

31. The impact mitigation provided with the SUP Application was memorialized in a host community agreement entitled the "Taxpayer Relief Agreement between the Village of Islandia and Delaware North Islandia Properties, LLC" (the "TRA"). Dorman Decl., ¶ 8, Ex. C.

32. The plain language of the TRA identifies its purpose as impact mitigation, providing that payments from Delaware North to the Village were to promote community development, offset infrastructure, public safety, and emergency services burdens on the Village as the result of the SUP Application. Dorman Decl., ¶ 9, Ex. C at 3.

33. The TRA required the construction of recreational resources in the form of ballfields and associated improvements at a park, which is also critical impact mitigation. *Id.*

34. There is no provision in the TRA requiring the Board to take any legislative action. Dorman Decl., ¶ 25, Ex. C.

35. The TRA does not obligate or bind the Board with respect to its legislative authority. Dorman Decl., ¶ 25, Ex. C.

36. The Board issued a negative declaration under SEQRA with respect to the SUP Application, relying upon the mitigation proposed by Delaware North in the form of the TRA. Dorman Decl., ¶ 7, Ex. B.

37. On August 12, 2016, the Board determined to grant the SUP Application and adopted a 21-page decision document setting forth the Board's findings and determination. Zaleski Decl., Ex. A.

38. The Board unanimously determined that a VLT Facility was an accessory use allowed by special use permit in the OI Zoning District. *Id.*

39. The Board specifically found, when granting the SUP Application, that the VLT Facility was consistent with the community, appropriate in the OI Zoning District, and would be "in harmony with and promote the general purposes and intent of Chapter 177." Zaleski Decl., Ex. A at 12.

40. The TRA was not entered into until August 16, 2018. Dorman Decl., ¶ 8, Ex. C.

41. Village residents, including Plaintiffs, commenced an Article 78 proceeding (the "Article 78 Proceeding") in Supreme Court, Suffolk County challenging the Board's decision to grant the SUP Application. Zaleski Decl., ¶ 7, Ex. B; Dorman Decl., ¶ 11.

42. Plaintiffs never challenged the TRA in their Article 78 Proceeding. Dorman Decl., ¶ 12, Ex. D.

43. Plaintiffs abandoned their SEQRA challenge to the SUP Application in the Article 78 Proceeding by stipulation. Dorman Decl., ¶ 12, Ex. E.

44. Supreme Court, Suffolk County annulled the VLT Facility special use permit. Zaleski Decl., Ex. B.

45. The Board only began contemplating a legislative change to the Village Code with respect to the "hotel/gaming facility" use in the OI Zoning District after Supreme Court, Suffolk County's decision annulling the VLT Facility special use permit. Dorman Decl., ¶¶ 14-15; Zaleski Decl., ¶ 10.

## THE BOARD'S CONSIDERATION OF THE PROPOSED LOCAL LAW

46. While Supreme Court, Suffolk County annulled the special use permit for the VLT Facility on the basis that it was not allowed as an accessory use, it specifically noted that zoning laws and standards may be modified to allow new uses. Zaleski Decl., ¶ 8, Ex. B at 6; Dorman Decl., ¶ 13.

47. Specifically, Supreme Court, Suffolk County stated as follows: "Local standards, of course, may change over time." Zaleski Decl., Ex. B at 6.

48. Following Supreme Court, Suffolk County's decision, the Board began considering proposed Local Law No. 3 of 2017 (the "Local Law"). Dorman Decl., ¶¶ 14-15; Zaleski Decl., ¶ 10.

9

49. The Local Law would, among other things, add a hotel/gaming facility as an allowed use in the Village's OI Zoning District. Dorman Decl., Ex. F.

50. The Board conducted a SEQRA review with respect to the proposed Local Law. Zaleski Decl., ¶ 11, Ex. C.

51. In completing the SEQRA review, the Board evaluated the EAF and the SUP Application record, including traffic analyses and information from planning and engineering consultants. Zaleski Decl., ¶ 12.

52. The Board issued a negative declaration under SEQRA, considering the impacts of the VLT Facility and the mitigation measures that Delaware North proposed as part of the SUP Application and memorialized in the TRA. Dorman Decl., ¶ 16.

53. Plaintiffs have not challenged the Board's determinations under SEQRA with respect to the Local Law. *See generally* Docket No. 43, Amended Complaint.

54. As part of the SEQRA review, the Board made determinations with respect to the Local Law's "consistency with community plans" and "consistency with community character" as set forth on Part 2 of the EAF. Zaleski Decl., ¶¶ 13-14, Ex. C (EAF Part 2 at 10).

55. Specifically, the Board determined that the Local Law is consistent with the Comprehensive Plan and community character. *Id.*

56. In considering the Local Law, the Board evaluated the Comprehensive Plan and Comprehensive Plan Update. Zaleski Decl., ¶ 15(a).

57. The Local Law is consistent with the Village's Comprehensive Plan. Dorman Decl., ¶ 19; Zaleski Decl., ¶¶ 13-16.

58. The Local Law furthers the intent and goals of the Village's OI Zoning District. Zaleski Decl., ¶ 15(b).

59. In considering the Local Law, the Board evaluated land uses surrounding the Property. Zaleski Decl., ¶ 15(c).

60. In considering the Local Law, the Board evaluated the condition of the Property and the deteriorating condition of the existing hotel as well as the opportunity for reuse and repurposing of an existing structure in the Village. Zaleski Decl., ¶ 15(d); Dorman Decl., ¶ 20.

61. The Local Law was adopted in the best interests of the Village as a whole. Zaleski Decl., ¶ 16; Dorman Decl., ¶ 26.

62. The Local Law is consistent with land uses in the vicinity of the Property. Zaleski Decl., ¶ 15(c).

63. The Board adopted the Local Law on November 28, 2017. Dorman Decl., Ex. F.

64. The Local Law became effective upon filing with the New York Secretary of State on November 29, 2018. Dorman Decl., Ex. F.

65. Delaware North and the Village entered into the "Amended and Restated Taxpayer Relief Agreement between the Incorporated Village of Islandia and Delaware North

Islandia Properties, LLC" (the "Amended TRA") on February 1, 2018.  Dorman Decl., ¶ 21, Ex. G.

66.	The Amended TRA reflected Delaware North's continued commitment to the SEQRA impact mitigation that it proposed as part of its SUP Application that was relied upon when the Board issued a negative declaration for the Local Law.  Dorman Decl., ¶ 22.

67.	There is no provision in the Amended TRA requiring the Board to take any legislative action.  Dorman Decl., ¶ 25, Ex. G.

68.	The Amended TRA does not obligate or bind the Board with respect to its legislative authority.  Dorman Decl., ¶ 25, Ex. G.

69.	Additional provisions in the Amended TRA demonstrate its impact-mitigation purpose, including the obligation to operate valet parking service at the Property at all times and limiting hours of operation of the restaurant, food, and service locations.  Dorman Decl., Ex. G at 5-6.

### **PLAINTIFFS' CLAIMS OF HARM ARE ALL BASED ON RUMOR, HEARSAY, QUESTIONABLE SOURCES, AND RAMPANT SPECULATION**

70.	While Plaintiffs admitted calling the police several times to complain about the operation of the VLT Facility, they are unaware of any person that was arrested or charged with a crime related to their complaints.  Spitzer Decl., Exs. F and G (Tomasino Dep. at 50:16-21; A. Meyer Dep. at 97:9-18).

71. Plaintiffs' specific allegations of criminal conduct are based on rumors and gossip from unnamed sources. Spitzer Decl., Exs. F and G (Tomasino Dep. at 7:2-12; A. Meyer Dep. at 56: 14-24, 66:10-23; 66:24-25, 67:2-4).

72. Plaintiffs are unaware of any specific prostitution activity or arrests. Spitzer Decl., Exs. D and E (Montano Dep. at 31:17-20, 35:4-10; R. Meyer Dep. at 31:10-17).

73. Plaintiffs' allegations of harm are based on gaming uses in general, not Delaware North's specific VLT Facility. Spitzer Decl., Ex. F (A. Meyer Dep. at 61:6-10).

74. Plaintiffs have not alleged that they themselves have suffered from drug addiction. *See generally* Docket No. 43, Amended Complaint.

75. Plaintiff Apryl Meyer refused to answer questions at her deposition regarding the basis of the allegations in the Amended Complaint. Spitzer Decl., Ex. F (A. Meyer Dep. at 56: 14-24, 66:10-23; 69:3-14).

76. Plaintiffs have nothing more than their own internet research and speculation to support their allegations of diminution in property value. Spitzer Decl., Ex. D, E, F (Montano Dep. at 39:15-25, 40:2-5; R. Meyer Dep. at 12:9-12; A. Meyer Dep. at 44:4-25, 45:2-3).

77. No expert of any kind was ever retained or consulted to evaluate Plaintiffs' property values. Spitzer Decl., Exs. F and G (A. Meyer Dep. at 45:23-25, 46:2-12; *see also* Tomasino Dep. at 24:9-25).

Dated: October 29, 2018
       Buffalo, New York

    **HODGSON RUSS LLP**
    *Attorneys for Defendant Delaware North Islandia Properties, LLC*

    By:    s/ Charles W. Malcomb
        Charles W. Malcomb
        Daniel A. Spitzer
        Carmine J. Castellano
        Richard L. Weisz
    The Guaranty Building
    140 Pearl Street, Suite 100
    Buffalo, New York 14202
    (716) 856-4000
    *cmalcomb@hodgsonruss.com*
    *dspitzer@hodgsonruss.com*
    *ccastell@hodgsonruss.com*
    *rweisz@hodgsonruss.com*

    and

    **FARRELL FRITZ, P.C.**
    *Attorneys for Defendant*
    *Delaware North Islandia Properties, LLC*
    Anthony S. Guardino
    John C. Stellakis
    Patrick T. Collins
    100 Motor Parkway, Suite 138
    Hauppauge, New York 11788
    (631) 367-0716
    *aguardino@farrellfritz.com*
    *jstellakis@farrellfritz.com*
    *pcollins@farrellfritz.com*