# EXHIBIT G

1

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------X
In re:                                    Chapter 9

SUFFOLK REGIONAL OFF-TRACK BETTING     Case No.
CORPORATION,                           12-43503-CEC

                Adjusted Debtor.
------------------------------------------X
JENNIFER TOMASINO, KEVIN MONTANO, RICHARD
MEYER, and APRYL L. MEYER,

                Plaintiffs,


         -against-                     Adv. Proc. No.
                                       18-1033-CEC

INCORPORATED VILLAGE OF ISLANDIA, BOARD OF
TRUSTEES OF THE VILLAGE OF ISLANDIA, DELAWARE
NORTH ISLANDIA PROPERTIES, LLC, aka DELAWARE
NORTH, and SUFFOLK REGIONAL OFF-TRACK BETTING
CORPORATION,

                Defendants.
------------------------------------------X
                 October 15, 2018
                 2:11 p.m.

                 100 Motor Parkway
                 Hauppauge, New York


     DEPOSITION of JENNIFER TOMASINO, a

Plaintiff herein, taken by Adversarial Parties,

pursuant to Federal Rules of Civil Procedure,

and Notice, held at the above-mentioned time and

place, before Edward Leto, a Notary Public of

the State of New York.

```
 1

 2    A P P E A R A N C E S:

 3

 4        LAW OFFICES OF ANTON J. BOROVINA
              Attorneys for Plaintiffs
 5            225 Broad Hollow Road, Suite 303
              Melville, New York  11747
 6
          BY:  ANTON J. BOROVINA, ESQ.
 7

 8
          SINNREICH KOSAKOFF MESSINA, LLP
 9            Attorneys for Defendants Incorporated
              Village of Islandia and Board of
10            Trustees of the Village of Islandia
              267 Carleton Avenue, Suite 301
11            Central Islip, New York  11722

12        BY:  MICHAEL STANTON, ESQ.

13

14        HODGSON RUSS, LLP
              Attorneys for Defendants Delaware
15            North Islandia Properties, LLC aka
              Delaware North
16            140 Pearl Street, Suite 100
              Buffalo, New York  14202
17
          BY:  CHARLES W. MALCOMB, ESQ.
18

19
          ECKERT SEAMANS CHERIN & MELLOTT, LLC
20            Attorneys for Adjusted
              Debtor/Defendant Suffolk Regional
21            Off-Track Betting Corporation
              10 Bank Street, Suite 700
22            White Plains, New York 10606

23        BY:  CHRISTOPHER F. GRAHAM, ESQ.
               REN-ANN WANG, ESQ., of Counsel
24

25
```

1

2                FEDERAL STIPULATIONS

3

4        IT IS HEREBY STIPULATED AND AGREED by

5    and between the parties hereto, through their

6    respective counsel, that the certification,

7    sealing and filing of the within examination

8    will be and the same are hereby waived;

9        IT IS FURTHER STIPULATED AND AGREED

10   that all objections, except as to the form of

11   the question, will be reserved to the time of

12   the trial;

13       IT IS FURTHER STIPULATED AND AGREED that

14   the within examination may be signed before any

15   Notary Public with the same force and effect as

16   if signed and sworn to before this Court.

17

18

19

20

21

22

23

24

25

1                    J. Tomasino
2    J E N N I F E R   T O M A S I N O, the Witness
3        herein, having been first duly sworn by a
4        Notary Public in and of the State of New
5        York, was examined and testified as
6        follows:
7    EXAMINATION BY
8    MR. MALCOMB:
9            Q     Please state your full name for
10   the record.
11           A     Jennifer Tomasino.
12           Q     What is your current address?
13           A     4 Dawson Court, Islandia, New York
14   11749.
15                 (J. Tomasino Exhibit A,
16                 Amended Complaint, was marked for
17                 identification, as of this date.)
18           Q     Hi, Ms. Tomasino.  My name is
19   Chuck Malcomb.  I'm an attorney representing
20   Delaware North, and we're here today to take
21   your deposition.
22                 Just a quick question before we
23   get started, have you ever been deposed?
24           A     No.
25           Q     So this is your first time?

 1                    J. Tomasino

 2         Q     If you take a look at the second

 3    page, right before your signature line you said

 4    "I know nothing about 58 police reports.  We

 5    have heard rumors of prostitution and drugs on

 6    the fourth floor and know there are undercover

 7    police in there."

 8                 Can you tell me how you know that

 9    there's undercover police in the hotel?

10         A     From rumors.  But we now know it

11    was true from the news and the recent undercover

12    drug bust that was done over there.

13         Q     Well, you said that there was

14    rumors.  What rumors did you hear?

15         A     From Facebook posts or people

16    just -- people that know I live so close like to

17    tell me as much information as possible.

18         Q     Did Apryl Meyer tell you about

19    undercover operations relating to prostitution

20    in the hotel?

21         A     No.

22         Q     You never discussed it with her?

23         A     I discussed it with her after I

24    heard about it.

25         Q     She didn't confirm to you that

```
                                                              14
 1                      J. Tomasino
 2         A      I didn't say businesses.
 3         Q      Or you know, residences, it would
 4   be convenient for everybody, the Long Island
 5   Expressway is right there, right?
 6         A      It depends on the person.
 7         Q      Would other people agree with you
 8   do you think?
 9                      MR. BOROVINA:  Objection to
10                the question.
11         Q      Do you think it's convenient?
12         A      For me it's convenient.
13         Q      Because of access, right?
14         A      Yes.
15         Q      And because it's easy to get to?
16         A      Yes.
17         Q      If you know, do you think that's a
18   criterion that businesses would look at?
19         A      I don't know.
20         Q      If you don't know, you don't know.
21   When you bought your house, did you review the
22   Village's zoning ordinance?
23         A      No.
24         Q      Did you review the Village's
25   Master Plan?
```

15
1                    J. Tomasino
2         A     No.
3         Q     Have you ever reviewed the
4    Village's Master Plan?
5         A     No.
6         Q     Have you ever reviewed the
7    Village's zoning ordinance?
8         A     Some of it.
9         Q     What sections have you reviewed?
10        A     The activity that's prohibited.
11        Q     Specifically?
12        A     I know that drugs are prohibited.
13   I know that hookah bars are prohibited.  I
14   believe apartments are prohibited and open
15   alcoholic beverages.
16        Q     Do you know what a zoning district
17   is?
18        A     I have some knowledge.
19        Q     What do you know?
20        A     That a district is zoned.  A type
21   of zoning.
22        Q     What does that mean to you?
23        A     I don't know.
24        Q     Did you review the uses that were
25   permitted under the zoning code around your

17

1                    J. Tomasino
2    with?
3         A    A woman named Susan.  I don't
4    recall her last name.
5         Q    But she's the person you dealt
6    with at the contractor's office?
7         A    No, I dealt with the contractor
8    personally.
9         Q    Oh, the owner?
10        A    Yes.
11        Q    So, when you decided to sign a
12   contract and decided what you wanted, you talked
13   directly with Victor?
14        A    Victor, yes.
15        Q    Did you ask him any questions
16   about the surrounding land uses and the
17   surrounding zoning district?
18        A    We did speak about the hotel that
19   was there for, like, over, you know, 20 years.
20        Q    Anything else?
21        A    No.
22        Q    Anything about the Park & Ride?
23        A    No, I didn't ask him any questions
24   about it.
25        Q    How much did you pay for your

24

1              J. Tomasino
2   properties," did I read that statement correct?
3        A    Yes.
4        Q    Do you agree with that statement?
5        A    I do.
6        Q    Did you review this statement
7   before your attorney filed this with the court?
8        A    Yes.
9        Q    Could you explain the basis behind
10  your statement that there's been a diminution in
11  value of your property?
12       A    Based upon the research that I did
13  when I first got knowledge of the casino coming,
14  the mayor told me there would be a diminishment
15  in the property.  That's basically what sparked
16  my interest in researching it.
17            Over 1,000 people protested the
18  other locations on Long Island.  That was a
19  major complaint.  They had sent me a bunch of
20  information.  Actually handed me a bunch of
21  information at one of the meetings and that's my
22  knowledge of it.
23       Q    So, there's no specific study with
24  respect to your property, correct?
25       A    No.

50

1                    J. Tomasino
2       Q      Did they follow up with you?
3       A      No, they did not.
4       Q      How many times did you call the
5    police with respect to the VLT facility?
6       A      A handful of times.  Not nearly as
7    much as I've called the security or the Village
8    security.
9       Q      More than five?
10      A      Possibly.  I don't know exactly.
11      Q      But it was more than one for sure?
12      A      Yes.
13      Q      But not quite as many times as the
14   hotel security?
15      A      No, not nearly.
16      Q      To your knowledge, as a result of
17   one of your complaints, has anybody been charged
18   with a crime or arrested or a ticket was issued?
19      A      To my knowledge, I don't know.
20      Q      So, to your knowledge no?
21      A      No.
22                    MR. MALCOMB:  This will be
23              Exhibit F.
24                    (J. Tomasino Exhibit F,
25              text message, was marked for

66

C E R T I F I C A T E

I, EDWARD LETO, a Notary Public in and for the State of New York, do hereby certify:

THAT the witness whose testimony is hereinbefore set forth, was duly sworn by me; and

THAT the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related, either by blood or marriage, to any of the parties in this action; and

THAT I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of October, 2018.

EDWARD LETO