UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

CHAPTER 9
CASE NO. 12-43503-CEC

Adjusted Debtor

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER, APRYL MEYER,

Plaintiffs,

v.

Adv. Proc. No. 1-18-01033-CEC

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF ISLANDIA, DELAWARE NORTH
ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE
NORTH, and SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

Defendants.

## DECLARATION OF MAYOR ALLAN M. DORMAN

Allan M. Dorman, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

1. I am the Mayor of the Village of Islandia (the "Village") and serve as a member of the Village Board of Trustees (the "Board"). My service as Mayor includes the time periods during which the Village considered Delaware North Islandia Properties, LLC's ("Delaware North") application for a video lottery terminal facility ("VLT Facility") at 3635

Expressway Drive N in the Village of Islandia (the "Property") and the Board's consideration and adoption of Local Law No. 3 of 2017 (the "Local Law"). As such, I am fully familiar with the facts and circumstances addressed herein.

2. Delaware North submitted an application for a special use permit to the Board on March 28, 2016 (the "SUP Application"). The SUP Application sought approval for an accessory use to the existing hotel at the Property, which would include a VLT Facility.

3. Before the Village could render a decision on Delaware North's SUP Application, my fellow Trustees and I were required to evaluate the environmental impacts of the proposal, which we did pursuant to SEQRA.

4. SEQRA requires the Board to mitigate adverse environmental impacts to the maximum extent practicable and the Board has the authority and obligation to utilize its jurisdiction to impose conditions on projects to achieve that end.

5. Sometimes, when an applicant presents a proposal to the Board, in a proactive fashion, the applicant incorporates mitigation measures into the development proposal itself or agrees to the imposition of certain conditions to achieve impact mitigation.

6. A perfect and simple example of this concept is when a developer includes a vegetative buffer in its development plans to screen neighboring properties. Thus, the SEQRA impact mitigation is actually presented to the Village as part of the application.

7. Delaware North, when it presented its SUP Application, included the concept of SEQRA impact mitigation as part of its proposal by way of an agreement to mitigate impacts from the proposed VLT Facility. Delaware North also consented to a condition on the

- 2 -

SUP Application that would require this impact mitigation. A copy of the Board's resolution granting the SUP Application is attached as **Exhibit A**. This mitigation, incorporated into the SUP Application, was considered by the Board when it issued a negative declaration under SEQRA. Attached as **Exhibit B** is the SEQRA negative declaration for the SUP Application, together with the full environmental assessment form ("EAF") and supporting documentation.

8. Thus, on August 16, 2016, after the Board granted Delaware North's SUP Application, the Village and Delaware North entered into a host community agreement, entitled the "Taxpayer Relief Agreement between the Village of Islandia and Delaware North Islandia Properties, LLC" (the "TRA"). A copy of the TRA is attached as **Exhibit C**.

9. The language of the TRA itself spelled out its purpose: environmental impact mitigation. The TRA noted that the payments due form Delaware North to the Village were to promote community development in the Village and to offset infrastructure, public safety, and emergency services burdens on the Village as the result of the SUP Application. Ex. C, pp. 2-3. The TRA required the construction of recreational resources in the form of ballfields and associated improvements at a park, which is also critical impact mitigation. Ex. C, p. 3.

10. It is my understanding that host community agreements, like the TRA, are common land use tools used all across the State to address the mitigation of impacts under SEQRA. The TRA was an appropriate exercise of the Board's land use and SEQRA authority. It demonstrated that we, as public officials, did our job to protect the Village.

11. After the Board granted Delaware North's SUP Application, Village residents, including the Plaintiffs in this action, commenced an Article 78 proceeding in Supreme Court, Suffolk County arguing, among other things, that a VLT Facility was not an allowed

accessory use in the Village's Office/Industry ("OI") Zoning District. Supreme Court, Suffolk County ultimately determined that a VLT Facility could not be an accessory use because it was not "customarily incidental" to the principal use (a hotel). Supreme Court focused on the fact that VLT Facilities are rare, ignoring that they are rare because the State of New York limits the number of licenses that are issued. Delaware North and the Village have appealed Supreme Court's decision and the Appellate Division, Second Department has stayed the appeal pending the outcome of the instant Adversary Proceeding.

12. Importantly, Plaintiffs never challenged the TRA when it was approved by the Board in August 2016, and they stipulated to dismissal of their SEQRA claims, which prohibited any challenge they could have brought to the SEQRA mitigation relied upon by the Board, *i.e.*, the TRA. Attached as **Exhibit D** is Plaintiffs' petition in their 2016 lawsuit, demonstrating that they never challenged the TRA. Attached as **Exhibit E** is the stipulation whereby Plaintiffs dismissed their SEQRA claim, with prejudice, demonstrating that they abandoned any challenge to the TRA.

13. While the Supreme Court annulled the special use permit for the VLT Facility on the basis that it was not permitted as an accessory use, it specifically recognized the Board's legislative authority, noting that zoning laws and standards may be modified to allow new uses. The Court recognized that, as a legislative body, the Board had the power and authority to amend the Village's zoning code to clarify that a VLT Facility is indeed permitted and is an appropriate use within the OI Zoning District.

14. Thus, while the Village disagreed with Supreme Court's decision, it responded as the Court said it could, by clarifying that a VLT Facility is indeed a permitted use in the OI Zoning District.

15. The Board considered the proposed Local Law. The Local Law would add a hotel/gaming facility as an allowed use in the Village's OI Zoning District. A copy of the Local Law is attached as **Exhibit F**. When the Board approved Delaware North's SUP Application in 2016, ***the Board already determined that a VLT Facility is an appropriate use in the OI Zoning District***. And consistent with this prior determination, and following the Supreme Court's decision, the Board enacted the Local Law.

16. In considering the Local Law, the Board was again required to comply with SEQRA by evaluating the potential adverse environmental impacts that would result from its adoption. Given that Delaware North's operating VLT Facility was the only State-licensed gaming facility in the Village, the Village considered the impacts from the Delaware North VLT Facility as part of its review of the Local Law. Thus, it relied upon information submitted by Delaware North, as reviewed by the Village's officials, attorney, and engineer, to complete the SEQRA review. The Board also considered the impact mitigation set forth in the TRA.

17. In completing the SEQRA review, the Board evaluated the EAF and the SUP Application record, including the traffic analyses and information from planning and engineering consultants. The Board determined to issue a SEQRA negative declaration.

18. In addition to SEQRA and the information the Board evaluated for purposes of the environmental impact review, the Board acted in its capacity as a legislative body when adopting the Local Law and considered the Village's comprehensive plan (the

"Comprehensive Plan"), the Village's comprehensive plan update (the "Comprehensive Plan Update"), the Village's current zoning law, including the regulations and permitted uses in the OI Zoning District, Board members' knowledge of the community and the surrounding land uses where the existing VLT Facility is located, and the condition of the Property and existing hotel.

19. The Board determined that the Local Law was consistent with the Comprehensive Plan, consistent with the character of the community, and that re-development of the property to include a VLT Facility was in the best interest of the Village as a whole. Thus, on November 28, 2017, the Board adopted the Local Law.

20. In addition, the Board also considered, among other things, benefits to the Village as a whole prior to enacting the Local Law, including preventing the hotel site from becoming a large unoccupied and blighted property that would create a drag on Village property values as a whole, especially considering the significant decline of employees located at the former Computer Associates building located less than one mile away, and the creation of approximately 300 jobs within the Village

21. Two months later, following the Village's adoption of the Local Law, the Village and Delaware North amended and restated the host community agreement, entitled "Amended and Restated Taxpayer Relief Agreement between the Incorporated Village of Islandia and Delaware North Islandia Properties, LLC" (the "Amended TRA"). The Amended TRA is attached hereto as **Exhibit G**.

22. Essentially, the Amended TRA was nothing new, but reflected Delaware North's continued commitment to the SEQRA impact mitigation that it proposed as part of its

SUP Application and that was relied upon when the Board issued a negative declaration for the Local Law.

23. Both the Village and Delaware North desired to enter into the Amended TRA because a special use permit (and the conditions previously imposed) were no longer in effect, given Supreme Court's decision and the new Local Law. Thus, for the avoidance of doubt, the parties entered into the Amended TRA to ensure that the mitigation would be a part of the VLT Facility regardless of how it was permitted under the law (either by special use permit with conditions or as-of-right). Ex. G, p. 4 ("WHEREAS, in connection with the issuance of the Hotel/Gaming Permit, the Village and the Owner desire to maintain the covenants and obligations made to each other in . . . connection with the prior zoning approval and, therefore, desire to amend and restate the Original Agreement in its entirety in the manner set forth herein.").

24. Plaintiffs did not assert a SEQRA claim with respect to the Local Law and thus failed to assert any challenge with respect to impact mitigation, *i.e.*, the TRA or the Amended TRA.

25. Plaintiffs' allegation that the Board somehow bargained away its legislative authority is simply incorrect. The Board at all times maintained its legislative discretion to evaluate the proposed Local Law and render a determination consistent with the Comprehensive Plan and the best interests of the Village. Neither the TRA nor the Amended TRA, by their own plain terms, obligate the Board to make any type of legislative decision one way or the other. Indeed, the Board maintains that discretion to this day.

26. At all times, the Board represented what was in the best interests of all residents of the Village and, as Board members, we made our decisions accordingly. The Board determined that a VLT Facility was appropriate where it was proposed and operating. It used its legislative judgment to amend the zoning law to remove all doubt that the VLT Facility was allowed, which was entirely within the Board's authority and was consistent with its prior determination in 2016.

**WHEREFORE,** the declarant respectfully requests that the Court grant Defendants' motion for summary judgment in its entirety.

Dated:		October 26, 2018

_____
Allan M. Dorman