# EXHIBIT A

BOARD OF TRUSTEES

VILLAGE OF ISLANDIA

RESOLUTION GRANTING SPECIAL PERMIT

Application of Delaware North Islandia Properties, LLC
3635 Express Drive North, Village of Islandia
SCTM# 504-8-2-58.2

WHEREAS Delaware North Islandia Properties LLC ("Applicant") submitted an

application to the Board of Trustees of the Village of Islandia on March 28, 2016, for a special

permit for an accessory indoor amusement establishment with video terminals, OTB simulcast,

food and beverage locations and back of house support areas for the operator of the hotel, as an

accessory use to a hotel (the "Application"), for the property located at 3635 Expressway Drive

North, Islandia, New York SCTM# 0504-8-2-58.2; and

WHEREAS the Applicant submitted an EAF Long Form Part 1 with the Application, and

then submitted an Expanded Environmental Assessment and Traffic Study in June, 2016, and

thereafter after receiving comments from the Village engineer, Cashin Associates P. C. and the

Village traffic consultant KLD Consultants, the Applicant submitted an Amended Expanded

Environmental Assessment and Traffic Study on July 15, 2016, and the Board of Trustees

completed a Long Form Environmental Assessment Form Part 2 and Part 3; and

WHEREAS the Suffolk County Planning Commission determined by a letter dated April

26, 2016 and a resolution of the Commission dated August 3, 2016 that the Application is a matter

for local determination; and

WHEREAS the Board of Trustees adopted a resolution on August 12, 2016 whereby the

Board of Trustees adopted lead agency status for purposes of SEQRA, determined that the granting

of the Application for Special Permit is an unlisted action and that the granting of the Application

DN0000118

for a special permit would not result in a negative impact on one or more aspects of the

environment, and adopted a negative declaration regarding SEQRA; and,

WHEREAS a duly noticed public hearing was held on the Application by the Board of

Trustees on July 5, 2016; and

WHEREAS the Board of Trustees has duly reviewed and considered the materials, public

comments, files and records of the Village of Islandia with respect to this Application; and

WHEREAS a Findings and Determination determining the Application has been prepared

and submitted for consideration by the Board of Trustees; it is therefore;

RESOLVED that the Board of Trustees grants the Application for a Special Permit for an

accessory indoor amusement establishment with video terminals, OTB simulcast, food and

beverage locations and back of house support areas for the operator of the hotel, as an accessory

use to a hotel and approves and adopts the Findings and Determination annexed hereto subject to

the Village of Islandia and Delaware North Islandia Properties LLC entering a Taxpayer Relief

Agreement within five days in a form approved by the Village Attorney.

Dated:   August 12, 2016

Upon motion of ~~Trustee Dorman~~ MAYOR seconded by Trustee ZALESKi'

Who moved this Resolution to adoption. The resolution is carried upon roll call as follows:

Deputy Mayor Zaleski        AYE
Trustee Lacey                     AYE
Trustee Peters                    AYE
Trustee Olk-                        ABSENT
Mayor Dorman                    AYE

CONFIDENTIAL

DN0000119

## BOARD OF TRUSTEES
## VILLAGE OF ISLANDIA

## FINDINGS AND DETERMINATION

### Application of Delaware North Islandia Properties LLC
### 3635 Express Drive North
### SCTM No. 0504-8-2-58.2

### <u>Application</u>

Delaware North Islandia Properties LLC, successor in interest to Delaware North Companies Parks & Resorts, Inc. ( "Delaware North" or "Applicant"), of 250 Delaware Avenue, Buffalo, New York 14202, by its representative Farrell Fritz LP, Anthony Guardino, Esq., of 100 Motor Parkway, Hauppauge, New York 11788, submitted an application to the Board of Trustees of the Village of Islandia ("Board of Trustees") for a special permit for accessory indoor amusement establishment with video lottery terminals (VLTs), an OTB simulcast facility, food and beverage locations and back of house support areas, as an accessory use to {a} the existing hotel, on March 28, 2016 (the "Application") for the property located at 3635 Express Drive North, Islandia, SCTM No. 0504-8-2-58.2 (the "Premises"), which is currently operated as the Islandia Marriott Long Island Hotel; and

On or about April 15, 2016 the Board of Trustees referred the Application to the Suffolk County Planning Commission ("SCPC") as required by New York State General Municipal Law §239-m and Article XIV of the Suffolk County Administrative Code and the SCPC having issued a letter of local determination dated April 26, 2016.

On or about July 21, 2016, SCPC Expanded Environmental Assessment Form dated June 21, 2016, last revised dated July 15, 2016, together with the Traffic Impact Study prepared by the Applicant's consultant VHB Engineering, Surveying and Landscape Architecture PC ("VHB"). On

1

DN0000120

or about August 3, 2016, the SCPC adopted a resolution determining that the Application is a matter of local determination; and

The Board of Trustees having duly conducted an environmental review of the Application that is required by Article 8 of the Environmental Conservation Law and its implementing regulations at 6 NYCRR Part 617 (collectively "SEQRA") and Chapter 70 of the Village of Islandia Code; and

On July 5, 2016, the Board of Trustees duly conducted a public hearing on the Application to hear all members of the public for or against the Application; and

On August 12, 2016, the Board of Trustees having reviewed and considered the Application, and all related materials, the comments and recommendations made by the Cashin Associates P.C., the Village of Islandia's planning consultant, and KLD Consultants, the Village of Islandia's traffic engineer, following a review of said Application and related materials, the records of the Village of Islandia, the written and oral comments submitted to the Village of Islandia, and other relevant materials, the Board of Trustees adopted a resolution issuing among other things a negative declaration under SEQRA, and

WHEREAS, the Board of Trustees therefore now determines the Application as follows:

### Background

The property that is the subject of this Application is known as 3635 Express Drive North, Islandia, SCTM No. 0504-8-2-58.2 (The "Premises"). The Premises is 7.88 acres in area and is located on the north side of Express Drive North, west of Long Island Expressway Exit 58, and east of Long Island Expressway Exit 57, which is the intersection of Veterans Memorial Highway and the Long Island Expressway, in the Village of Islandia.

2

CONFIDENTIAL

DN0000121

In 1989, Columbia Properties Islandia, the owner of the Premises, received approval from the Village of Islandia to construct and operate a 216,650 square foot, 10-story, 277-room hotel with banquet facilities, a restaurant, a nightclub, meeting rooms and swimming pool, together with an associated parking lot, which became known as the Islandia Marriot Long Island Hotel. The hotel has operated continuously since its opening in 1989 and currently has 278 rooms, including 13 suites, a large ballroom, convention space, bar, restaurant and other public assembly areas, and has parking for 649 vehicles.

The Premises receives police, fire and emergency services from the Suffolk County Police Department, the Central Islip Fire District, the Hauppauge Fire District, and the Central Islip Hauppauge Ambulance. The property is located in the Hauppauge School District.

The wastewater from the Premises is serviced by a connection to the Suffolk County Sewer District No. 13-Windwatch. The current wastewater flow of the hotel is calculated to be 43,853 gallons per day. The wastewater capacity of the sewer line connection is approximately 56,000 gallons per day. The projected flow of the Premises, including the proposed accessory use under the special permit, is 39,750 gallons per day.

New York State has approved the Suffolk County Off Track Betting Corporation ("Suffolk County OTB") to operate a 1,000 VLT gaming facility in a location in Suffolk County. Suffolk County OTB entered an agreement with the Delaware North to locate and manage said facility. Delaware North's application for a special permit to install and operate the 1,000 VLTs and an OTB simulcast facility in the hotel building on the Premises is pursuant to its agreement with Suffolk County OTB.

As set forth in the Application, Delaware North proposes to undertake the installation of a VLT gaming facility, and OTB simulcast facility and related alterations to the interior of the hotel.

3

DN0000122

The proposed interior alterations call for the removal of certain interior meeting or public gathering spaces and replacement of those spaces with the gaming facility and related improvements. Specifically, Delaware North proposed to convert 2 suites and 31 guest rooms, the existing meeting rooms, banquet rooms, convention space and the pool, to 30,255 square feet of gaming area for the VLTs, two Suffolk County OTB quick bet kiosks, VLT offices and support areas, and OTB offices.

Delaware North also proposes to enclose an existing covered area of approximately 1,610 square feet beneath the upper floors of the building to construct a secure entry to the building or "sally port". As designed, the "sally port" will eliminate 6 of the 649 existing parking spaces to result in a total of 643 remaining parking spaces on the Premises. The construction of the "sally pot" will not alter the footprint of the existing building.

Delaware North anticipates that the parking required for the proposed accessory use will exceed the 643 available parking spaces existing on the Premises. Delaware North has, therefore, proposed that it will establish and maintain a valet parking operation at all times necessary to accommodate the parking required for the uses at the Premises.

### Proceedings

The Application together with the Full EAF and supporting documentation was filed with the Village of Islandia on March 28, 2016.

The Application was referred to the SCPC as required by New York State General Municipal Law §239-m and Article XIV of the Suffolk County Administrative Code on April 12, 2016, and the SCPC responded with a local jurisdiction determination letter on April 26, 2016.

At the request of the Board of Trustees, the Applicant submitted an Expanded Environmental Assessment ("Expanded EA") on June 22, 2016 (which was subsequently amended

CONFIDENTIAL

DN0000123

and submitted to the Board of Trustees on or about July 15, 2016), and a Traffic Impact Study ("TIS"), both prepared by VHB Engineering on June 22, 2016.

The Board of Trustees scheduled a public hearing on the Application for July 5, 2016.

The notice of the July 5, 2016 public hearing on the Application for a special permit was duly published in the Islip Bulletin, the official newspaper of the Village of Islandia on June 23, 2016.

On June 22, 2016, notices of the public hearing were mailed by certified mail return receipt requested to nearby landowners by the Applicant and proof of service of such notices was filed with the Village as required under Section 177-122 of the Village of Islandia Code ("Village Code").

On June 23, 2016, Delaware North posted a total of thirteen (13) legal notice signs along the various road frontages of the Premises, giving adequate notice of the July 5th public hearing on the Application.

The Applicant, its local zoning counsel, Farrell Fritz, P.C., and its environmental consultant, VHB, made a brief presentation to the Board of Trustees at its June 28, 2016 work session meeting, and then responded to questions and comments from the Board of Trustees.

Cashin Associates, P.C., as the engineering firm for the Village of Islandia, reviewed the Application, the Full Environmental Assessment Form and the Expanded EA, and provided a comment letter for the Village of Islandia on July 1, 2016, together with a letter from KLD Consultants regarding the TIS that was an exhibit to the Expanded EA.

The Board of Trustees opened the public hearing on July 5, 2016 Delaware North and its representatives made a comprehensive presentation of the special permit application to the Board of Trustees and the public. At the conclusion of the Applicant's presentation, the Board of Trustees accepted public comments and questions during the public hearing.

5

DN0000124

The public hearing was attended by one hundred and seventy-seven (177) members of the public which included only about fifty (50) residents of the Village of Islandia. Fifty-one (51) of the people in attendance spoke to the Board or Trustees with comments, and of the fifty-one (51) that spoke, twenty-seven (27) did not reside in the Village and twenty-four (24) were Village residents. Of the twenty-four (24) Village residents, ten (10) were from one street, Brandoncrest Drive and four (4) from Dawson Court. The comments about the Application that were made by the Village residents were mixed, with some people speaking in favor of the Application and some speakers speaking in opposition. The twenty-seven (27) non-village residents that spoke were from Lindenhurst, Patchogue, Medford, Ronkonkoma and Hauppauge. Several of those who spoke in opposition were opposed to a similar application to locate the VLT gaming facility and OTB simulcast facility in the hamlet of Medford in the Town of Brookhaven.

The Board of Trustees, having heard all members of the public wishing to speak for or against the Application, closed the public hearing on July 5, 2016.

On or about July 15, 2016, the Applicant's consultant, VHB, submitted a revised Expanded EA, which addressed comments from the Village's consultants, the Board of Trustees and the public, including the use of the valet parking at the Premises.

On July 21, 2016, the Village of Islandia made additional referral to the SCPC and provided copies of the additional documents that it had received from Delaware North in response to a request by the Board of Trustees to ensure that the SCPC was in possession of a "full statement of the application," as required by General Municipal Law §239-m, and Article XIV of the Suffolk County administrative Code along with a request that the SCPC either issue a new determination based on the additional information submitted, or that it confirm its original local jurisdiction determination.

6

On August 3, 2016, the SCPC, having reviewed the materials additional referral and provided by the Village, and hearing comment from the public as well as Delaware North and its representatives regarding the Application, adopted a resolution which determined that the Application did not involve any county-wide impacts and was a matter for local determination.

Thereafter, on August 12, 2016, the Board of Trustees considered the Application, the testimony from the public meetings and public hearings, reviewed and considered the materials submitted with the Application, and then adopted a resolution for purposes of SEQRA which resolution confirmed the Board of Trustees Lead Agency status, determined that the Application is an Unlisted Action and determined that the Application will not have a significant negative impact on the environment, and adopted a negative declaration for purposes of SEQRA.

On or about August 12, 2016, the Board of Trustees then considered this Resolution to determine the Application.

### Islandia Village Code

Chapter 177 of the Village Code contains the zoning laws of the Village of Islandia.

In its consideration of an application for a special permit use, the Board of Trustees is guided by the same procedures that apply to the Board of Appeals in its consideration of special permit uses. These procedures, which are found in Village Code §177-109 and §177-110, provide as follows:

Village Code §177-109. Special permit determination.

Before such approval for such special exception, the Board of [Trustees] shall determine that:

A.    The use shall not prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts.

7

DN0000126

B.      The use shall not prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts.

C.      The safety, health, welfare, comfort, convenience or order of the Village shall not be adversely affected by the proposed use and its location.

D.      The use shall be in harmony with and promote the general purposes and intent of this chapter.

Village Code § 177-110.   Special permit considerations.

In making a determination for a special permit approval, the Board of [Trustees] shall, among other things, give consideration to the following:

A.     The character of the existing and probable development of uses in the district and the peculiar suitability of such district for the location of any such permissive uses.

B.     The conservation of property values and the encouragement of the most appropriate uses of land.

C.     The effect that the location of the proposed use may have upon the creation of undue increase of vehicular traffic congestion on public streets, highways or waterways.

D.     The availability of adequate and proper public or private facilities for the treatment, removal or discharge of sewage, refuse or other effluent (whether liquid, solid, gaseous or otherwise) that may be caused or created by or as a result of the use.

E.     Whether the use or materials incidental thereto or produced thereby may give off obnoxious gases, odors, smoke or soot.

F.     Whether the use shall cause disturbing emission of electrical discharges, dust, light, vibration or noise.

G.     Whether the operations in pursuance of the use shall cause undue interference with the orderly enjoyment by the public of parking or of recreational facilities if existing or if proposed by the Village or by other competent governmental agency.

8

CONFIDENTIAL

H.    The necessity for bituminous-surfaced space for purposes of off-street parking of vehicles incidental to the use and whether such a space is reasonably adequate and appropriate and can be furnished by the owner of the plot sought to be used within or adjacent to the plot wherein the use shall be had.

I.    Whether a hazard to life, limb or property because of fire, flood, erosion or panic may be created by reason or as a result of the use or by the structures to be used therefore or by the inaccessibility of the property or structures thereon for the convenient entry and operation of fire and other emergency apparatus or by the undue concentration or assemblage of persons upon such plot.

J.    Whether the use or the structures to be used therefore shall cause an overcrowding of land or undue concentration of population.

K.    Whether the plot area is sufficient, appropriate and adequate for the use and the reasonably anticipated operation and expansion thereof.

L.    The physical characteristics and topography of the land.

M.    Whether the use to be operated is unreasonably near to a church, school, theater, recreational area or other place of public assembly."

## Findings

In accordance with Village Code § 177-109(A-D), the Board of Trustees makes the following findings:

A..    The use will not prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts because the Premises is currently developed with a 10-story hotel, which will continue as the principal use of the Premises upon the grant of the special permit. Moreover, the peak hours of activity associated with the indoor amusement area will be evenings and weekends, which is similar to the peak hours of use for the existing hotel.  The replacement of facilities for events such as weddings, receptions, conferences and the like with facilities for the VLT gaming facility and OTB simulcast operations creates no new or significant changes in the use of the Premises. The only proposed modifications to the existing building are the conversion of a

9

DN0000128

portion of the existing first and second floor interior spaces to be replaced with remodeled areas to accommodate the proposed accessory use[1], and the enclosure of a small space below an existing overhang in the northeast corner of the building (approximately 1,610 sf) to create a secure "sally port" entrance which will not increase the building footprint. The provision of a combination of self-park and valet parking spaces on-site has been demonstrated to accommodate the parking demand for both the hotel and the proposed accessory uses (see Expanded EA). As such, the use of the Premises will be substantially similar to the operation of the existing hotel on the Premises.

B.    The use will not prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts because the proposed accessory use will be complimentary to and harmonious with the existing hotel use. Existing interior areas of the hotel which are currently used as public gathering spaces, such as banquet and conference rooms, will be modified and converted to accommodate the proposed indoor amusement accessory use, thereby reducing the number of events the hotel can accommodate. As a result, any increase in visitation that would result from the proposed accessory indoor amusement use would be partially accounted for by the reduction in events and/or functions held in the meeting and banquet spaces. It is anticipated that peak hours of activity associated with the indoor amusement area will be evenings and weekends, which is similar to the peak hours of use for the existing hotel. The use of self-parking and valet parking will enable all anticipated parking need to be met on-site thereby avoiding or preventing any impacts on surrounding uses from visitors to the Premises from parking on surrounding properties or neighborhoods (see Expanded EA). Similarly, given the similar peak usage hours for the hotel and the accessory indoor amusement use, together with the loss of traffic from the conversion of

---

[1] This conversion affects only 13.9% of the interior space of the overall 216,650 square foot hotel.

10

DN0000129

public gathering areas such as banquet and conference rooms, no significant traffic impacts are anticipated to arise that could impact the surrounding properties or neighborhoods. In addition, the surrounding area is developed primarily with office/commercial and industrial uses, proximate to major transportation corridors (i.e., the Long Island Expressway and Motor Parkway). As the current hotel use is expressly permitted in the district and the proposed accessory use is complimentary to the hotel use, makes only minor modifications to the existing building and accommodates all anticipated parking needs, the issuance of the special permit will not prevent the orderly or reasonable uses within the district from operation.

      C.    The safety, health, welfare, comfort, convenience or order of the Village will not be adversely affected by the proposed use and its location because the proposed accessory use is complimentary and harmonious with the existing hotel use on the Premises. The modification and conversion of interior spaces within the hotel will accommodate the accessory use and support activities associated therewith (e.g., VLT offices, OTB office) [2]. All parking needs for both the hotel and indoor amusement accessory use will be accommodated on-site. As set forth in the Expanded EA, existing water and sewer connections have been demonstrated to be adequate for both the existing hotel and the proposed accessory indoor amusement use. Police, fire and emergency services provided to the hotel have been demonstrated to be sufficient to address any demands created by the proposed accessory indoor amusement use. All building modifications will be done in accordance with applicable building codes, and in consultation with Village officials and staff to ensure there are no safety concerns. The location of the existing hotel, on the north service road of the Long Island Expressway, provides convenient access to the subject property, while minimizing

---

[2] A small exterior modification will result from the enclosure of an existing overhang area to create a secure entry into the hotel called a "sally port". This modification will not change the existing building footprint.

11

DN0000130

potential impacts to the Village's roadways. The TIS submitted by the Applicant and reviewed by the Village's consultants demonstrates that no significant traffic impacts will occur to the Village's roadways.

     D.  The proposed accessory indoor amusement use shall be in harmony with and promote the general purposes and intent of Chapter 177 as it has been demonstrated to be complimentary to and in harmony with the existing hotel, which is permitted in the Office/Industry ("O/I") District with a special permit. The existing hotel is a particularly well-suited, appropriate, and harmonious location for the accessory indoor amusement use, as the usage patterns, peak usage times and parking demands for the existing hotel with its usage of public gathering spaces for conferences, weddings, receptions and the like are similar to those that will occur at the hotel once the accessory indoor amusement use replaces the current public gathering uses. This similarity results from the fact that nearly all of the modifications proposed are for the conversion of interior spaces of the hotel that are already used for public gathering purposes to another public gathering purpose. The proposed accessory use does not require the construction of new buildings or facilities that could overburden the Premises or the surrounding area[3]. The existing hotel currently is well suited in the district as the surrounding area is mostly developed with commercial and industrial uses. The existing hotel is conveniently located on Express Drive North, adjacent to the Long Island Expressway, and as demonstrated in the Expanded EA and TIS, will have minimal impacts to local/Village roadways. The operation of the proposed indoor amusement use, which is consistent with the existing and permitted hotel use will not be detrimental to any of the surrounding uses.

---

[3] Only one minor change to the exterior of the building is necessary to accommodate the "sally port" entrance and will not increase the building footprint.

CONFIDENTIAL

DN0000131

In making the above findings, the Board of Trustees has given consideration to the criteria set forth in Village Code § 177-110(A-M), and has determined as follows:

A.     The proposed accessory indoor amusement use will not alter the character of the existing and probable development of uses in the district or the peculiar suitability of such district for the location of any such permissive uses because the proposed accessory use is complimentary to and harmonious with the existing hotel use, which is permitted in the O/I District by special permit, and has been operating on the subject property for approximately 30 years.  Moreover, the proposed accessory use to the existing hotel will take place entirely within the existing hotel building, and within modified and converted spaces that are currently being used for banquets, conferences and public gatherings.  The one minor exterior change to the building to accommodate the "sally port" entrance will be created by enclosing space beneath an existing exterior overhang and, therefore, will not increase the building footprint or result in any substantial or noticeable exterior alterations to the building or subject property.  The O/I District in which the existing hotel is located is primarily designated for and developed with office and industrial uses.

B.     The proposed accessory use will conserve property values and encourage the most appropriate uses of land.  The subject property has been developed with the hotel, which has been in operation since the late 1980s, as have many of the surrounding commercial and industrial uses. The only exterior modification to the building will be in the northeast corner of the building, and will not be discernible from the surrounding area. Based on the traffic evidence provided by the Applicant's professional traffic engineers, VHB Engineers, Surveyors and Landscape Architects, P.C. ("VHB") and reviewed by the Village's independent traffic consultant, it is anticipated that peak hours of activity associated with the indoor amusement area will be evenings and weekends, which is similar

13

DN0000132

to the peak hours of use for the existing hotel. Existing banquet, conference and public gathering spaces will be replaced by the proposed indoor amusement area, thereby, reducing the number of events the hotel can accommodate. Any increase in visitation that will result from the proposed accessory indoor amusement use will be largely accounted for by the reduction in events and/or functions held in the banquet and meeting spaces. Since the neighborhood character has been established by the existing hotel and surrounding commercial and industrial uses, and will not change as a result of the proposed accessory indoor amusement use within the existing hotel, the proposed use is expected to conserve property values.

        C.     The location of the proposed accessory indoor amusement use will not create an undue increase of vehicular traffic congestion on public streets, highways or waterways because the existing hotel is located on Express Drive North, the north service road of the Long Island Expressway (Interstate 495). The subject property also has access to and from Motor Parkway (County Road No. 67), by way of Bedford Avenue. As such, it is not expected that the proposed accessory use to the hotel would cause the creation of undue vehicular traffic that would create congestion on public streets or highways.

        D.     The existing hotel is generating less sanitary flow than the 56,000 gallons per day (gpd) that was allocated to it when Sewer District #13-Windwatch was created. The proposed accessory indoor amusement area, which will result in the reduction of 33 guest rooms and the conversion of existing banquet and conference rooms and other gathering spaces, is estimated to have a wastewater flow of approximately 39,750 gpd, and will continue to be handled by existing connections to Sewer District #13. Accordingly, there are no permits or approvals required from the Suffolk County Department of Public Works (SCDPW) or Suffolk County Sewer Agency (SCSA).

CONFIDENTIAL

DN0000133

E.    The proposed accessory indoor amusement area, complimentary to the existing hotel, will not use or produce materials that will give off obnoxious gases, odors, smoke or soot. The proposed action involves the modification and reallocation of interior spaces to accommodate the VLT gaming facility, the OTB simulcast facility and associated support services, and the enclosing of space beneath the existing building for a "sally port" entrance. There is no manufacturing or industrial use occurring or proposed on the Premises nor any new restaurant or other operation producing odors or noise. In addition, as the TIS demonstrates, there will be no significant adverse traffic impacts and, therefore, no impacts to air quality from idling vehicles will occur.

F.    The accessory indoor amusement use will be complimentary to the existing hotel. There is no manufacturing or industrial use occurring or proposed on the subject property. The proposed action primarily involves interior modifications, with one exterior modification enclosing an existing overhang for the sally port entrance, which will not increase the building footprint. The use of converted public gathering spaces for the VLT gaming facility, the OTB simulcast facility and related areas will be similar to the use that has been in place for the past 30 years of operation of the hotel on the Premises. As such, there will be no disturbing emission of electrical discharges, dust, light, vibration or noise.

G.    The subject property is currently developed with an existing 10-story hotel and associated 649-space accessory parking lot, which will be reduced by only six (6) spaces to accommodate the "sally port" entrance. The surrounding properties are developed with primarily industrial and commercial uses, many of which front on or have easy access to Express Drive North. There are on-street parking restrictions posted on the west side of Bedford Avenue only. It is

15

DN0000134

anticipated that peak hours of activity associated with the indoor amusement area will be evenings and weekends, which is similar to the peak hours of use for the existing hotel. A portion of the existing parking area would be dedicated to valet parking, which will enable the Applicant to accommodate anticipated peak parking demands on-site. The operations of the accessory use will also not cause undue interference with or the orderly enjoyment by the public of recreational facilities. Due to the location of the Premises near the Long Island Expressway and the ease of access thereto from the Premises, guests seeking other recreational opportunities will continue to do so easily. While guests of the hotel may want to use other Village recreational facilities and resources during a stay at the hotel, it is not expected that any interference will be caused by guests visiting the hotel to enjoy the VLT or OTB simulcast facilities.

H.    As discussed in the revised Expanded EA and TIS, upon completion of the proposed action, the existing parking would be reduced by only six (6) spaces (from 649 to 643). While this level of parking still exceeds the Village Code's parking requirement for hotel uses by 170 spaces, the proposed accessory use does not lend itself to direct application of the Village Code in determining parking sufficiency. The conservative estimate of peak parking demands included in the TIS indicates an approximate peak need of between 750 and 800 parking spaces for the existing hotel and the proposed accessory use. The Applicant's valet parking plan shows that this demand will be accommodated by the use of a combination of valet parking and self-parking, which will allow the site to accommodate up to 827 parking spaces (see Expanded EA). The western portion of the existing parking area would be allocated for valet-parked vehicles. Accordingly, there will be no need to increase the overall size of the existing parking lot.

I.    The Premises is developed with the existing hotel and associated parking areas Minimal changes to the exterior of the existing building are proposed. There are three access points

16

DN0000135

to the property; Express Drive North, Bedford Avenue, and Kosciusko Street.   As set forth in the Expanded EA and the TIS, there is sufficient maneuverability within the Premises for emergency vehicles to have access the building.  Existing interior spaces, such as conference rooms, the pool and banquet spaces, would be converted to accommodate the accessory indoor amusement use. Thus, there will not be an undue concentration or assemblage of persons, in accordance with permitted maximum occupancies that will be posted and enforced.  Moreover, as the only exterior modification would be to enclose an existing overhang area, which would not increase the building footprint, there will be no increase in storm water runoff or risk of erosion.  Accordingly, there will be no hazards to life, limb or property because of fire, flood, erosion or panic created as a result of the proposed interior accessory use to the existing hotel.

      J.     The Premises is developed with a hotel and associated parking areas. There are no new structures proposed. Interior modifications would convert existing public gathering spaces to accommodate the accessory indoor amusement use.  An existing overhang area, in the northeast corner of the building, will be enclosed, and will not increase the building footprint. Moreover, the existing hotel and the proposed accessory indoor amusement use will conform to the applicable occupancy and fire code standards for the number of people in the hotel or gaming areas. As such, the proposed accessory indoor amusement area will not cause an overcrowding or undue concentration of population.

      K.    The proposed accessory use to the hotel, which has been in operation for over 30 years, would be within the interior of the existing hotel and complimentary and harmonious thereto.

CONFIDENTIAL

DN0000136

Moreover, the subject property is located within the O/I zoning district, which permits commercial and industrial uses, and is surrounded primarily by such similarly permitted uses. In addition, the Applicant has revised its plan to provide valet parking on-site to accommodate peak period parking demands. As such, the Premises is sufficient, appropriate and adequate for the existing hotel and proposed accessory indoor amusement use.

L.   The Board of Trustees considered the physical characteristics of the Premises in adopting this determination. The Premises is developed with the existing hotel and associated parking areas, as well as landscaping.   Only one minor exterior modification is proposed in the northeast corner of the property for a "sally port" entrance under an existing portion of the building, which will not increase the building footprint.   As a result, the proposed indoor amusement use will have no noticeable effect the physical characteristics or topography of the land.

M   The nearest church, school, recreational area or other place of public assembly{-} in relation to the subject property, are as follows:

> 0.25±-mile – Nichols Road Park (southeast)
>
> 0.50±-mile – Andrew T. Morrow Elementary School (southwest)
> 0.50±-mile – Hamlet Windwatch Golf & Country Club (northwest)
> 1.24±-miles – Calvary Lutheran Church (northwest)

Given that the proposed accessory indoor amusement use will be located within an existing hotel that has been operating as such since the late 1980s and essentially replace the current public gathering use of the existing hotel for weddings, banquets, meetings and the like. As such, it is not anticipated that there will be any significant adverse impacts to any of these resources caused by the issuance of the special permit.

18

CONFIDENTIAL

## Determinations

The Special Permit for an accessory indoor amusement establishment with up to one thousand (1,000) video lottery terminals, OTB simulcast facilities, food and beverage locations and back of house support areas, as an accessory use to the existing hotel on the Premises, is granted, subject to the following conditions:

1.    The term of the special permit shall be twenty (20) years.

2.    There shall be a mandatory review period every two years of the term of the Special Permit at which time the compliance of the Applicant with the Village Code and the provisions of this Resolution and any accompanying agreements and any complaints received about the Applicant or the Premises shall be reviewed by the Board of Trustees.

3.    The Applicant shall operate and maintain a valet parking service at the Premises at all times. The hours of operation of the accessory indoor amusement establishment shall be from 9:00 a.m. until 4:00 a.m.

4.    The Applicant and the Village of Islandia shall enter a Taxpayer Relief Agreement within five days of the granting of the Special Permit whereby the Applicant shall have financial obligations to the Village in order to relieve the Village and its taxpayers from any unanticipated burden or expenses on Village services and facilities resulting from the proposed VLT gaming facility and OTB simulcast facility, administration and management, and the Village infrastructure. The Special Permit shall be conditioned on the entry and compliance of the Applicant with the terms of the Taxpayer Relief Agreement. In the event that there is a default on the Taxpayer Relief Agreement by the Applicant, or termination of that Agreement, the Village shall have the right on thirty (30) days written notice to the Applicant to terminate the Special Permit following a public hearing.

19

CONFIDENTIAL

DN0000138

5.    The Special Permit shall not be assignable without the approval of the Village, and the Special Permit and Taxpayer Relief Agreement shall be recorded against the Premises as required herein. In the event of a filing of a Voluntary or involuntary bankruptcy petition by the Applicant, or one of the Applicant's members, the Village shall have the right to terminate the Special Permit.

6.    The Applicant shall file an exterior lighting plan and signage plan and application with the Village of Islandia prior to changing or adding any lighting or signing on the Premises.

7.    The Applicant shall install not less than one thousand seven hundred (1,700) linear feet of eight foot (8') high fencing with slats sufficient to enclose the perimeter of the houses and street on Dawson Court, and an additional five hundred feet (500') of six foot (6') high vinyl fence with four (4) gates.

8.    All exterior changes to the Premises or interior changes to the improvements on the Premises shall be subject to the Islandia Village Code and the rules and regulations of the Village of Islandia and any other applicable State or local code. The word "casino" shall not be used in any signage on the Premises, and there shall be no application or granting of a variance of the signage regulations of the Village of Islandia.

9.    The Special Permit shall remain in effect for so long as the Applicant has a gaming license with the State of New York or agreement with the Suffolk County OTB to manage the Video Lottery Terminal and OTB simulcast facility at the Premises.

10.    The Village may terminate this Special Permit in the event that the Premises should become exempt from real property taxes or if the Applicant or Applicant's successor files for a reduction, abatement or exemption of real property tax assessment or real property taxes.

11.    The Applicant and or any successor in interest to the Applicant or the ownership of the Premises shall not file a tax certiorari for a reduction of Village of Islandia or other taxing authority

20

CONFIDENTIAL

DN0000139

property taxes on the Premises or an application for tax exemption or relief through an Industrial

Development Agency or similar authority in any way that will encumber or reduce the Village of

Islandia or other taxing authority real property taxes on the Premises.

12.    The Applicant, at Applicant's expense, shall prepare covenants to the satisfaction of

the Village Attorney, and record the covenants at the office of the Suffolk County Clerk, which

covenants shall contain the conditions of this Special Permit and shall contain this Special Permit

and the Taxpayer Relief Agreement as Exhibits A and B thereto, and the Covenants and Special

Permit as Exhibit A and Taxpayer Relief Agreement as Exhibit B shall be recorded at the Office of

the Suffolk County Clerk prior to the issuance of a building permit.

On motion by ~~Trustee~~ Mayor DORMAN, seconded by Trustee ZALESKI, the foregoing

Findings and Determination was adopted by vote as follows:

Allan M. Dorman, Mayor           AYE -
Michael Zaleski Deputy Mayor     AYE -
Barbara Lacey, Trustee           AYE -
Patty Peters, Trustee            AYE -
Diane F. Olk, Trustee            ABSENT -

Dated:  August 12, 2016
Islandia, New York

Filed in the Office of the Village Clerk:

August 15, 2016
Islandia, New York

21