# EXHIBIT C

# TAXPAYER RELIEF AGREEMENT

## BETWEEN THE

## VILLAGE OF ISLANDIA AND

## DELAWARE NORTH ISLANDIA PROPERTIES, LLC

THIS AGREEMENT (the "Agreement"), made this 16th day of August, 2016, by and between the VILLAGE OF ISLANDIA, a municipal corporation with offices located at 1100 Old Nicholas Road, Islandia, New York 11749 (the "Village") and DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a limited liability company formed and existing under the laws of the State of Delaware, with offices located at 250 Delaware Avenue, Buffalo, New York 14202, (the "Owner or Applicant"), and together with the Village hereinafter collectively referred to as the "Parties").

WHEREAS, on or about March 28, 2016, an Affiliate (as defined below) of Owner, Delaware North Companies Parks & Resorts, Inc., as the applicant, applied to the Village for a special permit for an accessory use to permit an indoor amusement establishment with video lottery terminals (the "VLT Facility"), an OTB simulcast facility, food and beverage locations and back of house support areas (the "Application") for the real property located at 3635 Express Drive North, Islandia, New York, SCTM No. 05048-2-58.2 (the "Premises"). The Premises is currently zoned, approved for operation as a hotel and operated as the Islandia Marriott Long Island Hotel; and

WHEREAS, on July 1, 2016 Owner, as assignee of and successor in interest to Delaware North Companies Parks & Resorts, Inc. amended and revised the Application to reflect that Owner was the applicant and filed the revised Application with the Village;

1

WHEREAS, the Board of Trustees of the Village of Islandia (the "Village Board"), in its capacity as the lead agency for purposes of compliance with the requirements of the State Environmental Quality Review Act as set forth in Article 8 of the Environmental Conservation Law and its implementing regulations at 6 NYCRR Part 617 (collectively "SEQRA") has reviewed: (i) the Application (as revised), (ii) the Full Environmental Assessment Form ("FEAF") Part 1, dated March 25, 2016, and last revised on July 15, 2016 prepared by VHB Engineering, Surveying and Landscape Architecture, P.C. ("VHB"), (iii) an Expanded Environmental Assessment and Traffic Impact Study, dated June 2016 and last revised July 15, 2016, prepared by VHB, (iv) the comments made by Cashin Associates, P.C., the Village's planning consultant and KLD Consultants, the Village's traffic consultant and the responses thereto provided by the Applicant's consultants; (v) the completion of FEAF Parts 2 and 3; and (vi) the comments from the Suffolk County Planning Commission from its August 3, 2016 meeting, and, after review of the foregoing, has determined that, if granted, the proposed action will not have any significant adverse impacts on the environment and, therefore, on August 12, 2016 issued a SEQRA Negative Declaration; and

WHEREAS, the Village Board deems it advisable and in the best interest of the Village and its residents for the Village and the Applicant to enter into a Taxpayer Relief Agreement which provides for a one-time payment to the Village for capital improvements and subsequent annual payments to the Village, the amount of which are determined based on Net Operational Revenues (as defined below in Section 3) generated in connection with the VLT Facility at the times described below while the Special Permit (as defined herein) is in effect (each subsequent payment is referred to herein as a "Taxpayer Relief Payment") to (i) promote community development in the Village, (ii) to offset the increase in the infrastructure, public safety and

CONFIDENTIAL                                                                                                                     DN0000093

emergency services cost of the Village incurred as a result of approving the Application and (iii) to reduce real property taxes of Village residents is in the best interests of the Village and its residents.

WHEREAS, by resolution dated August 12, 2016, the Board of Trustees of the Village ("Village Board") conditionally approved the application and granted a special permit (the "Special Permit"), subject to the Parties entering into this Taxpayer Relief Agreement and the Owner's compliance with all of the other conditions of the Special Permit (the "Resolution");

NOW, THEREFORE, the Village and the Owner, for and in consideration of the promises and agreements of the other party hereto, and for purposes of complying with the conditions of the Village Board's Resolution, granting approval of the Application and the issuance of the Special Permit, dated August 12, 2016, do hereby covenant and agree as follows:

1. The Owner shall pay to the Village the amount of One Million Five Hundred Thirty Two Thousand Four Hundred Dollars ($1,532,400) to be used by the Village to pay for the construction and development by the Village of the ballfields and associated improvements at First Responders Park located on Old Nichols Road in the Village of Islandia (the "Park"). Said payment shall be made fifteen (15) days after the expiration of any applicable statute of limitations or rights of appeal deadlines which could challenge the issuance of the Special Permit or the operation of the VLT Facility and the OTB simulcast facility at the Premises, provided, however, that if there is a claim made during the applicable statute of limitations or appeals period, the payment shall be made on the first to occur of either: (a) fifteen (15) days after the issuance of a non-appealable final decision or judgment made by a court in connection with any litigation or administrative proceeding upholding the Special Permit and/or Owner's right to operate the VLT Facility and OTB simulcast facility at the Premises from within the existing

CONFIDENTIAL                                                                                                                                    DN0000094

hotel or (b) the issuance by the Village of a certificate of occupancy for the Temporary Facility or a Full Facility, whichever is earlier. "Temporary Facility" means the installation of between 1 and 949 video lottery terminals. "Temporary Facility Opening Date" means the date on which between 1 and 949 video lottery machines are installed at the Premises and the Temporary Facility is open to the general public. The "Full Facility" means the installation of between 950 and 1,000 video lottery terminals. The "Full Facility Opening Date" means the date on which between 950 and 1,000 video lottery terminals are installed at the Premises and the VLT Facility is open to the general public.

2. The Owner shall pay to the Village the initial installment of the Taxpayer Relief Payment in the amount of One Million Dollars ($1,000,000), fifteen (15) days after the expiration of any applicable statute of limitations or rights of appeal deadlines which could challenge the issuance of the Special Permit or the operation of the VLT Facility and the OTB simulcast facility at the Premises, provided, however, that if there is a claim made during the applicable statute of limitations or appeals period, the payment shall be made on the first to occur of either: (a) fifteen (15) days after the issuance of a non-appealable final decision or judgment made by a court in connection with any litigation or administrative proceeding upholding the Special Permit and/or Owner's right to operate the VLT Facility and OTB simulcast facility at the Premises from within the existing hotel or (b) the issuance by the Village of a certificate of occupancy for the Temporary Facility or a Full Facility.

3. The following terms shall have the following meanings as used in this Agreement. "Net Operational Revenues" means the total amount wagered on the video lottery machines at the VLT Facility by patrons of the VLT Facility (excluding the amount of promotional non-cash "free play" wagered by those patrons) reduced by the sum of all winnings and prizes paid to

CONFIDENTIAL                                                                                      DN0000095

players of the video lottery machines. "Subsequent Taxpayer Relief Date" shall mean the earlier of the Temporary Facility Opening Date or (b) the Full Facility Opening Date. For purposes of this Agreement an "Affiliate" of, or entity affiliated with, a specified entity, is a entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the entity specified; (provided however, that, for purposes of this Agreement in no case will Suffolk Regional Off-Track Betting Corporation be considered to be an Affiliate of the Owner).

4. On the first three anniversaries of the Subsequent Taxpayer Relief Date, the Owner shall pay a Taxpayer Relief Payment in the amount of Two Million Dollars ($2,000,000);

5. Commencing on the fourth anniversary of the Subsequent Taxpayer Relief Date and on each anniversary thereafter during which the Special Permit is in full force and effect on the same terms and conditions as on the date of original issuance and the Owner is the owner of the Premises, the Owner shall make a Taxpayer Relief Payment of Two Million Two Hundred Fifty Thousand Dollars ($2,250,000). In the event that none of the Owner or any Affiliate is any longer the owner of the Premises, the Village agrees that only such non-Affiliated owner of the Premises and not the Owner, shall be responsible for paying the Taxpayer Relief Payments.

6. The Owner, or its successor shall provide the Village with a detailed statement of the Net Operational Revenues within fifteen (15) days after the end of each calendar year.

7. The Special Permit cannot be assigned without the Village's consent, which consent shall not be unreasonably withheld; provided; however; that Owner shall be entitled to assign the Special Permit to an Affiliate, without obtaining the Village's consent. The Special Permit shall not be revoked in the event that Owner sells the Premises but, rather, shall be transferred, upon the Village's consent which shall not be unreasonably withheld, to the

CONFIDENTIAL                                                                                                    DN0000096

successor owner and the successor owner of the Premises, not the Owner, shall be responsible for the payments required after Owner's sale of the Premises or the Village approved transfer pursuant to this Agreement (except in the case of a transfer to an owner that is an Affiliate of the Owner, in which case the Owner will remain responsible for making such payments). Owner shall only be required to make the Taxpayer Relief Payment for so long as the Special Permit is in full force and effect on the same terms and conditions as on the date of original issuance and only if Owner is the Owner of the Premises.

8. The Special Permit is conditioned on the compliance by the Owner or the Owner's successor with this Agreement, and this Agreement being in full force and effect. In the event that the Owner, or a successor owner of the Premises fails to pay the required Taxpayer Relief Payment in accordance with the terms and conditions of this Agreement, whether by default, filing or assignment in bankruptcy or other event, and such failure is not cured within fifteen (15) business days of written notice of such failure, then the Village Board may elect to terminate this Agreement and revoke the Special Permit upon written notice to the Owner of its intent to terminate the Agreement and following a public hearing. In the event that this Agreement is terminated, the Special Permit can only be revoked to the extent that it would then prohibit operation of the VLT Facility and the OTB simulcast facility at the Premises and such termination and/or revocation will not affect the operation of the hotel or the other services (including but not limited to food and beverage services) offered at the Premises.

9. In the event that the Village receives state aid payments in connection with the operation of the VLT Facility, the Village Board shall notify the Owner, in writing within five (5) business days of notification of the award by the state and shall credit the entire amount of state aid against the payment by the Owner of that year's (and subsequent years if the state aid is

CONFIDENTIAL                                                                                                              DN0000097

for more than one year) against Owner's Taxpayer Relief Payment for such year or years. Nothing set forth in this Agreement shall prohibit the Owner and its Affiliates from actively attempting to procure state aid in connection with the VLT Facility.

10. This Agreement may not be amended, modified or changed except by written agreement signed by the parties hereto.

11. This Agreement shall be binding upon the parties hereto, and their successors and assigns.

12. The Resolution authorized Mayor Allan M. Dorman to execute this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the 16th day of August, 2016.

**VILLAGE OF ISLANDIA**

By: _____
    Allan M. Dorman, Mayor

**DELAWARE NORTH ISLANDIA PROPERTIES, LLC**

By: _____
    E. Brian Hansberry, President

132891.7

7

ACKNOWLEDGEMENT OF PRINCIPAL OF DELAWARE NORTH ISLANDIA PROPERTIES, LLC

STATE OF __N.Y.__ )
)ss:
COUNTY OF __Suffolk__ )

On this __16__ day of __August__, 20__16__, before me personally appeared __E. Brian Hansberry__ to me known and known to me to be the person described and who executed the foregoing instrument and acknowledged that he executed the same.

(SEAL) PATRICIA DORMAN
NOTARY PUBLIC, State of New York
No. 01DO6177933
Qualified in Suffolk County
Commission Expires November 19, 20 __19__

_____
Notary Public

ACKNOWLEDGEMENT OF VILLAGE

STATE OF NEW YORK

COUNTY OF SUFFOLK

On this __16__ day of __August__, 20__16__, before me personally appeared __Allan Dorman__ to me known to be the person described as such in and who as such executed the foregoing instrument and he acknowledged to me that he executed the same as for purposes therein mentioned.

(SEAL) PATRICIA DORMAN
NOTARY PUBLIC, State of New York
No. 01DO6177933
Qualified in Suffolk County
Commission Expires November 19, 20 __19__

_____
Notary Public

8

CONFIDENTIAL        DN0000099