# EXHIBIT G

# AMENDED AND RESTATED TAXPAYER RELIEF AGREEMENT
# BETWEEN THE
# INCORPORATED VILLAGE OF ISLANDIA AND
# DELAWARE NORTH ISLANDIA PROPERTIES, LLC

THIS AMENDED AND RESTATED TAXPAYER RELIEF AGREEMENT, by and between the INCORPORATED VILLAGE OF ISLANDIA, a municipal corporation with offices located at 1100 Old Nicholas Road, Islandia, New York 11749 (the "Village") and DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a limited liability company formed and existing under the laws of the State of Delaware, with offices located at 250 Delaware Avenue, Buffalo, New York 14202, (the "Owner"), and together with the Village hereinafter collectively referred to as the "Parties") is made this 1st day of February, 2018 (the "Agreement"); and

WHEREAS, on or about November 16, 2016, an Affiliate (as defined below) of Owner received a building permit from the Village for work associated with a hotel and indoor gaming facility with video lottery terminals (the "VLT Facility"), an Off-Track Betting ("OTB") simulcast facility ("OTB Simulcast Facility"), and a restaurant, food and beverage locations and related support areas to be located at 3635 Express Drive North, Islandia, New York, SCTM No. 05048-2-58.2 (the "Premises"), said Premises being located in the Village's "OI" zoning district; and

WHEREAS, on August 16, 2016, as a condition of the prior zoning approval granted by the Village Board, the Village and the Owner entered into a Taxpayer Relief Agreement which provided for, among other things, a one-time payment to the Village of One-Million Five-Hundred Thirty-Two Thousand Four Hundred Dollars ($1,532,400.00) to be used by the Village to pay for the construction and development by the Village of the ballfields and associated

1

improvements at First Responders Park located on Old Nichols Road in the Village of Islandia (the "Initial Capital Improvement Payment") and subsequent annual payments to the Village while the prior zoning approval remained in effect (each a "Taxpayer Relief Payment"), in each case, to (i) promote community development in the Village, (ii) to offset the increase in the infrastructure, public safety and emergency services costs of the Village incurred as a result of the operation of the hotel and/or restaurant, VLT Facility, OTB Simulcast Facility at the Premises and (iii) to reduce real property taxes of Village residents is in the best interests of the Village and its residents (the "Original Agreement"); and

WHEREAS, on or about February 2017, the Owner made the Initial Capital Improvement Payment and the Owner is due to make the first Taxpayer Relief Payment on February 1, 2018; and

WHEREAS, pursuant to the building permit issued on November 16, 2016, and any subsequent permits thereafter, Owner completed construction and opened the hotel and gaming facility together with a new restaurant under the name "Jake's 58" and the Premises now includes a 212 room hotel and gaming facility containing 1,000 VLT terminals, the OTB Simulcast Facility, a restaurant, food and beverage locations and back of the house support areas ("Hotel/Gaming Facility"); and

WHEREAS, on May 19, 2017, the Village issued a certificate of occupancy for the Hotel/Gaming Facility; and

WHEREAS, subsequent to the issuance of the 2017 Certificate of Occupancy, the Village Board determined to undertake a review of the portions of the Village of Islandia Code (the "Village Code") pertaining to zoning and land use (the "Village Zoning Code") to address a number of pending zoning matters, including the zoning for hotels with gaming uses including

video lottery terminals and/or OTB simulcast facility, restaurant and related support uses; and

WHEREAS, the Village Board deemed it advisable and in the best interests of the Village and its residents to amend the Village Zoning Code, to, among other things, amend Section 177-3(B) to add definitions for Hotel/Gaming Facility and Game Room, and to amend attachments 5 and 7 of Section 177, to add Hotel/Gaming Facility as a permitted use in the Office/Industrial District and to establish parking requirements for the Hotel/Gaming Facility use and introduced Local Law No. 3 of 2017 entitled "A Local Law amending Chapter 177-3 B. Definitions and Attachments 5 and 7 of Chapter 177 of the Islandia Village Code to Provide for Hotel/Gaming Facility as a Permitted Use in the Office/Industry District of the Village of Islandia and to Establish Parking Requirements for the Hotel/Gaming Facility Use" (the "Local Law"); and

WHEREAS, on November 28, 2017, the Village Board, as lead agency under SEQRA, reviewed the proposed action, particularly the provisions related to the Hotel/Gaming Facility use, identified potential areas of environmental concern, including traffic, community character, noise and other potential impacts, evaluated the Full Environmental Assessment Form ("FEAF") dated November 13, 2017, the comments received from the public, Cashin Associates, P. C., the Village's consultant, and the Suffolk County Planning Commission dated November 22, 2017, completed Parts 2 and 3 of the FEAF, evaluated these materials in accordance with the criteria established under SEQRA and determined that the proposed action will not have any significant adverse impacts on the environment and, therefore, issued a negative declaration under SEQRA; and

WHEREAS, on November 28, 2017, the Village Board approved a resolution adopting Local Law No. 3 of 2017 and thereafter caused the Local Law to be filed with the NY Secretary



of State; and

WHEREAS, concurrently with the execution of this Agreement, the Village issued to the Owner a certificate of occupancy for the Hotel/Gaming Facility pursuant to the Local Law (the "Hotel/Gaming Permit"); and

WHEREAS, in connection with the issuance of the Hotel/Gaming Permit, the Village and the Owner desire to maintain the covenants and obligations made to each other in the in connection with the prior zoning approval and, therefore, desire to amend and restate the Original Agreement in its entirety in the manner set forth herein; and

WHEREAS, this Agreement, was presented to and approved by the Village of Islandia Board of Trustees ("Board of Trustees") at a meeting on December 5, 2017, and the Village Board authorized and directed the Mayor of the Village to execute this Agreement on behalf of the Village (the "Authorization").

**NOW, THEREFORE**, the Parties, for and in consideration of the mutual promises and agreements of the other party hereto and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the parties, and intending to be legally bound, do hereby amend and restate the Original Agreement in its entirety and their mutual obligations thereunder and hereby further agree as follows:

1. Notwithstanding any presumptions, rights or benefits otherwise conferred by the Hotel/Gaming Permit, the Owner expressly agrees that the Hotel/Gaming Facility shall remain in operation for so long as the Owner has (a) a license with the State of New York that permits it to own or operate a video gaming facility or casino gaming facility at the Premises, or (b) an agreement with Suffolk Regional Off-Track Betting Corporation (or any Affiliate thereof or successor thereto) to manage the gaming facility and/or the OTB simulcast facility at the

Case 1-18-01033-cec    Doc 62-20    Filed 10/29/18    Entered 10/29/18 14:19:01

Premises.

2. Term. Unless otherwise extended by mutual written agreement of the parties or terminated pursuant to this Agreement, this Agreement shall expire by its terms on February 28, 2037, at which time the Parties agree to consider a mutually agreeable extension or replacement agreement or the Owner shall cease operation of the VLT Facility and the OTB Simulcast Facility in accordance with Paragraph 20 of this Agreement.

3. The Owner shall be permitted, subject to the amendment of the Hotel/Gaming Permit, to operate as many video lottery terminals (as defined by applicable New York State laws) as permitted by applicable New York State laws, which as of the date hereof is one thousand (1,000) video lottery terminals pursuant to NY Tax Law §1617-a. In the event that (a) the statutory limit for VLTs is increased and (b) a new, amended or modified license is issued by the NYS Gaming Commission to Owner, the parties mutually agree to negotiate in good faith to enter into a supplemental agreement to accommodate the increased number of VLTs.

4. Notwithstanding any presumptions, rights or benefits otherwise conferred by the Hotel/Gaming Permit, the Owner expressly agrees that the Owner and the Village Mayor and/or the Deputy Mayor, the Code Enforcement Officer and Fire Marshall or other appropriate representative shall meet every two years of the term of this Agreement to review the compliance of the Owner with the applicable provisions of the Village Code, the NYS Uniform Fire Prevention and Building Code ("Building Code") and the terms and conditions of this Agreement. At each such meeting, any complaints received about the Owner or the Premises may be discussed.

5. The Owner shall operate and maintain a valet parking service at the Premises at all times. The hours of operation of the restaurant, food and service locations and VLT Facility,

5



ISL001555

OTB Simulcast Facility or casino gaming facility shall be from 8:00 a.m. until 4:00 a.m.

6.  In addition to any other requirements in the Village Code and/or the Building Code, the Owner shall file an exterior lighting plan and signage plan and application with the Village prior to changing or adding any exterior lighting or signage on the Premises.

7.  As part of the prior approval, Owner was obligated to install at its cost fencing at certain locations to screen certain areas determined by the Village Board to be appropriate. The Parties agree that Owner shall install the fencing in areas determined but the Village Board and that the cost of installation this fencing shall not exceed Fifty-eight thousand seven hundred sixty dollars ($ 58,760.00).

8.  All exterior changes to the Premises or interior changes to the improvements on the Premises shall be subject to the Village Code, the Building Code and the rules and regulations of the Village and any other applicable law.

9.  Notwithstanding any presumptions, rights or benefits otherwise conferred by the Hotel/Gaming Permit, the Owner expressly agrees that word "casino" shall not be used in any signage on the Premises, and there shall be no application or granting of a variance of the signage regulations of the Village to allow for the use of the word "casino" on any signage on the Premises.

10.  Notwithstanding this Agreement, the Owner shall pay all real property taxes assessed on the Premises. The Parties agree that the Owner shall not file a tax certiorari against the assessment of the Village of Islandia and that the Village shall maintain a fair assessment of the Premises. The Owner shall retain the right to file a tax certiorari against other taxing jurisdictions to seek reduction of the assessment and/or real property taxes on the Premises pursuant to applicable statutes and regulations.



11. Owner shall be permitted to take advantage of any program which is generally available to business taxpayers in the State of New York so long as it does not reduce the real property taxes payable by the Owner to the Village.

12. On February 1 of each of 2018, 2019 and 2020, provided that the Hotel/Gaming Permit is then in full force and effect on the same terms and conditions as on the date of original issuance, the Hotel/Gaming Facility remains open to the public and the Owner owns the Premises, Owner shall pay a Taxpayer Relief Payment to the Village in the amount of Two Million Dollars ($2,000,000.00);

13. Commencing on February 1, 2021 and continuing until February 1, 2037 so long as the Hotel/Gaming Permit is in full force and effect on the same terms and conditions as on the date of original issuance and the Owner owns the Premises, the Owner shall make a Taxpayer Relief Payment of Two-Million Two-Hundred Fifty Thousand Dollars ($2,250,000.00).

14. The Owner shall provide the Village with a detailed statement of the Net Operational Revenues for the VLT Facility within fifteen (15) days after the end of each calendar year. For purposes of this Agreement, "Net Operational Revenues" means the total amount wagered on the video lottery machines at the VLT Facility by patrons of the VLT Facility (excluding the amount of promotional non-cash "free play" wagered by those patrons) reduced by the sum of all winnings and prizes paid to players of the video lottery machines.

15. Owner shall only be required to make the Taxpayer Relief Payments for so long as the Hotel/Gaming Permit is in full force and effect on the same terms and conditions as on the date of original issuance and only if Owner (or an Affiliate of the Owner) is the Owner of the Premises. For purposes of this Agreement, an "Affiliate" of, or entity affiliated with, a specified entity, is an entity that directly, or indirectly through one or more intermediaries, controls or is



controlled by, or is under common control with, the entity specified; provided however, that, for purposes of this Agreement in no case will Suffolk Regional Off-Track Betting Corporation be considered to be an Affiliate of the Owner.

16. Owner hereby agrees that the Hotel/Gaming Permit and this Agreement cannot be assigned to a Non-Affiliate without the Village's consent, which consent shall not be unreasonably withheld, provided, that that the Assignee shall be fully responsible for all obligations of the Owner under this Agreement including without limitation, the Taxpayer Relief Payments. Upon an application for assignment to a Non-Affiliate, the Owner or the proposed Assignee shall provide such information regarding the proposed Assignee as may be reasonably requested by the Village. Upon receiving the Village's consent to assign this Agreement and the Hotel/Gaming Permit to a Non-Affiliate, the Owner shall be released from all obligations under this Agreement and the Hotel/Gaming Permit.

17. Owner shall be entitled to assign this Agreement and the Hotel/Gaming Permit to an Affiliate (as defined in Paragraph 15 of this Agreement) upon prior written notice to the Village but without obtaining the Village's consent.

18. In the event that Owner sells the Premises, this Agreement and the Hotel/Gaming Permit shall be transferred, upon the Village's consent, which shall not be unreasonably withheld, provided that the successor owner of the Premises shall be fully responsible for all obligations of the Owner under this Agreement including without limitation, the Taxpayer Relief Payments required after Owner's sale of the Premises.

19. Notwithstanding any presumptions, rights or benefits otherwise conferred by the Hotel/Gaming Permit, the Owner expressly agrees that the Hotel/Gaming Permit is conditioned on the compliance by the Owner, or Owner's Assignee, as provided herein with this Agreement,

8



ISL001558

and this Agreement being in full force and effect.

20. In the event that the Owner (a) fails to pay the required Taxpayer Relief Payment in accordance with the terms and conditions of this Agreement, whether by default, filing or assignment in bankruptcy or other event, and such failure is not cured within fifteen (15) business days of written notice of such failure, (b) breaches any other provision of this Agreement in any material respect and fails to cure such breach within thirty (30) business days of written notice of such breach, or (c) makes a filing for bankruptcy or any involuntary bankruptcy petition is filed against the Owner which is not discharged within ninety (90) days from receipt of written notice thereof, the Village Board may elect to terminate this Agreement and revoke the Hotel/Gaming Permit; provided that the Village delivers prior written notice to the Owner of its intent to terminate this Agreement and to revoke the Hotel/Gaming Permit and after holding a duly noticed public hearing, to be held no sooner than fifteen (15) days after the delivery of the notice to Owner.

21. In the event that this Agreement is terminated or expires, and/or the Hotel/Gaming Permit is revoked or expires, the Owner agrees to remove the VLT Facility and the OTB Simulcast Facility from the Premises and the Village agrees that the Owner may continue to operate a hotel with a restaurant, and food and beverage services and other complimentary services (other than the VLT Facility and the OTB simulcast facility) at the Premises as a legal, prior non-conforming use and will issue a certificate of occupancy and any other permits, certificates or authorizations necessary to permit such activities with effectiveness from and immediately after the effectiveness of the termination of this Agreement and/or Hotel/Gaming Permit. The Parties agree that no Annual Taxpayer Relief Payments shall be made subsequent to the termination of this Agreement for the operation of the Hotel and

complimentary uses. The failure of the Village to issue such substitute certificate of occupancy and any other permits, certificates or authorizations to operate the hotel and complimentary uses without just cause shall constitute a material breach of this Agreement. The Village agrees that any such breach will cause Owner to suffer an irreparable injury for which money damages are not an adequate remedy and as a result will entitle the Owner to a remedy of specific performance of the terms of this section and such other injunctive or other equitable relief as is necessary to allow the Owner to continue to operate the hotel and complimentary services with a restaurant, food and beverage services and other complimentary services (other than the VLT Facility and the OTB simulcast facility) at the Premises related without a requirement to post a bond or any other form of security.

22. If the Village receives state aid payments in connection with the operation of the Hotel/Gaming Facility, the Village Board shall notify the Owner, in writing, within five (5) business days of notification of the award by the State of New York (or any agency thereof) and receipt thereof. The Village shall credit the amount of any such payment against the next Taxpayer Relief Payment due from Owner. The Parties agree that any state aid payments so received that are in excess of the next Taxpayer Relief Payment due from Owner shall be applied to the succeeding Taxpayer Relief Payment(s) due from Owner so that the Owner shall receive a credit for any state aid payment received by the Village arising from Owner's use of the Promises. Nothing in this Agreement shall prohibit the Owner and its Affiliates from actively attempting to procure state aid for the Hotel/Gaming Facility.

23. This Agreement may not be amended, modified or changed except by written agreement signed by the parties hereto.

24. This Agreement shall be binding upon the parties hereto, and their successors and



assigns.

25. All notices, consents, requests, or other communications provided for or permitted to be given hereunder by a Party must be in writing and will be deemed to have been properly given or served upon the personal delivery thereof, via courier delivery service, by hand, or by certified mail, return receipt requested. Such notices shall be addressed or delivered to the Parties at their respective addresses shown below.

If to Owner:

Delaware North Islandia Properties, LLC
Attn: E. Brian Hansberry, President
250 Delaware Avenue
Buffalo, New York 14202

With a copy to:

Delaware North Companies
Attn: General Counsel
250 Delaware Avenue
Buffalo, New York 14202

If to Village:

Village of Islandia Board of Trustees
Attn: Mayor
1100 Old Nichols Road
Islandia, New York 11947

With A copy to:

Joseph Prokop, Esq.
267 Carleton Avenue
Islip NY 11751

Any such addresses for the giving of notices may be changed by either Party by given written notice as provided above to the other Party. Notice given by counsel to the Party shall be effective as notice from such Party.

26. Applicable Law. This Agreement will be made and interpreted in accordance with

11



the laws of the State of New York. Owner and Village each consent to the jurisdiction of the New York courts in and for the County in which the Project is located or other applicable agencies of the State of New York regarding any and all matters, including interpretation or enforcement of this Agreement or any of its provisions. Accordingly, any litigation arising hereunder shall be brought solely in such courts.

27. Pursuant to the Authorization, the Village represents the Village Board has duly approved this agreement and authorized the Mayor to execute this Agreement on behalf of the Village.

*[Signature pages to follow]*



IN WITNESS WHEREOF, the Parties have executed this Agreement as of the 1st day of February, 2018.

INCORPORATED VILLAGE OF ISLANDIA

By: _____
Allan M. Dorman, Mayor

**DELAWARE NORTH ISLANDIA PROPERTIES, LLC**

By: _____



ISL001563

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the ____ day of January, 2018.

                          **INCORPORATED VILLAGE OF ISLANDIA**

By: _____
      Allan M. Dorman, Mayor

                          **DELAWARE NORTH ISLANDIA PROPERTIES, LLC**

By: *[signature]* _____
      Brian Hansberry, President

13

STATE OF NEW YORK            )
                             ) ss:
COUNTY OF SUFFOLK            )

On the __1__ day of ~~January~~ February, 2018 before me, the undersigned, personally appeared Allan M. Dorman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

PATRICIA DORMAN
NOTARY PUBLIC, State of New York
No. 01DO6177933
Qualified in Suffolk County
Commission Expires November 19, 20 _19_

STATE OF NEW YORK            )
                             ) ss:
COUNTY OF ERIE               )

On the _____ day of January, 2018 before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

14



ISL001565

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss: |
| COUNTY OF SUFFOLK | ) |

On the _____ day of January, 2018 before me, the undersigned, personally appeared Allan M. Dorman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss: |
| COUNTY OF ERIE | ) |

On the 31st day of January, 2018 before me, the undersigned, personally appeared Brian Hansberry, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

*Annette M. Balon*
Notary Public

ANNETTE M. BALON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 01/31/ 2022