UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

                Adjusted Debtor

CHAPTER 9
CASE NO. 12-43503-CEC

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER, APRYL MEYER,

                Plaintiffs,

v.

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF ISLANDIA, DELAWARE NORTH
ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE
NORTH, and SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

                Defendants.

Adv. Proc. No. 1-18-01033-CEC

# DECLARATION OF MICHAEL ZALESKI

      MICHAEL ZALESKI, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares the following to be true and correct:

      1.     I am the deputy mayor of the Incorporated Village of Islandia (the "Village"), and a member of the Village Board of Trustees (the "Board"). My service on the Board includes the time periods during which the Village considered Delaware North Islandia Properties, LLC's ("Delaware North") application for a video lottery terminal facility ("VLT

Facility") at 3635 Expressway Drive N in the Village of Islandia (the "Property") and the Board's consideration and adoption of Local Law No. 3 of 2017 (the "Local Law"). As such, I am fully familiar with the facts and circumstances addressed herein.

2. Delaware North submitted an application for a special use permit to the Board on March 28, 2016 (the "SUP Application"). The SUP Application sought approval for an accessory use to the existing hotel at the Property, which would include a VLT Facility.

3. The Village conducted an extensive review of the SUP Application. Delaware North submitted a full environmental assessment form ("EAF") under the New York State Environmental Quality Review Act ("SEQRA"), which was supplemented by an expanded environmental assessment and traffic study. The Board referred the SUP Application to the Suffolk County Planning Commission, conducted public meetings and public hearings, evaluated the Village's zoning code, and utilized its own engineers and consultants to review the material submitted by Delaware North.

4. Following this comprehensive process, including the issuance of a negative declaration under SEQRA, the Board adopted a resolution granting Delaware North's SUP Application and issued a 21-page decision document setting forth the Board's findings and determination (the "Decision"). A copy of the Decision is attached hereto as **Exhibit A**.

5. As set forth in the Decision, the Board unanimously determined that a VLT Facility was an accessory use allowed by special use permit in the Village's Office/Industry ("OI") Zoning District. Ex. A, pp. 7-18. As part of its Decision, the Board specifically found that the VLT Facility, as part of the existing hotel, was consistent with the community,

appropriate in the OI Zoning District, and would be "in harmony with and promote the general purposes and intent of Chapter 177." Ex. A, p. 12.

6. The Decision demonstrates that the Board unanimously determined back in 2016 that the VLT Facility was consistent with the Village's comprehensive plan, allowed by the zoning law, consistent with uses permitted in the OI Zoning District, and would further the Village's land use purposes and goals.

7. Following the Board's Decision, Village residents, including the Plaintiffs in this action, commenced an Article 78 proceeding in Supreme Court, Suffolk County arguing, among other things, that a VLT Facility was not an allowed accessory use in the OI Zoning District. The court ultimately determined that a VLT Facility could not be an accessory use because it was not "customarily incidental" to the principal use (a hotel). The court focused on the fact that VLT Facilities are rare, ignoring that they are rare because the State of New York limits the number of licenses that are issued. A copy of Supreme Court, Suffolk County's decision is attached as **Exhibit B**. Delaware North and the Village have appealed Supreme Court's decision and the Appellate Division, Second Department has stayed the appeal pending the outcome of the instant Adversary Proceeding.

8. While the court annulled the special use permit for the VLT Facility on the basis that it was not allowed as an accessory use, it specifically noted that zoning laws and standards may be modified to allow new uses, but that the Board would need to do so with respect to a VLT Facility, rather than permit it as a use "customary and incidental" to a hotel. *See* Ex. B, p. 6 ("Local standards, of course, may change over time. Until then, Delaware

North's attempt to shoehorn its application to fit the existing law regarding accessory uses is a bridge too far.").

9. The Board disagreed with the court's decision. And as the court acknowledged, as a legislative body, the Board had the power to amend the zoning code to clarify that a VLT Facility is indeed permitted and is an appropriate use in the OI Zoning District.

10. Thus, consistent with its prior determination, and following the court's decision annulling the VLT Facility special use permit, the Board considered the adoption of the Local Law, which would add a hotel/gaming facility as an allowed use in the Village's OI Zoning District.

11. In considering the Local Law, my fellow Trustees and I were required to comply with SEQRA by evaluating the potential adverse environmental impacts that would result from its adoption. Given that Delaware North's operating VLT Facility was the only State-licensed gaming facility in the Village, the Village considered the impacts from the Delaware North VLT Facility as part of its review of the Local Law. Thus, it relied upon information submitted by Delaware North, as reviewed by the Village's officials, attorney, and engineer, to complete the SEQRA review. Because SEQRA does not require the evaluation of speculative impacts, and since any future gaming facility application would be subject to its own SEQRA review if one were ever proposed, the Village properly evaluated the actual potential impacts from Delaware North's VLT Facility.

12.     In completing the SEQRA review, the Board evaluated the EAF and the SUP Application record, including the traffic analyses and information from planning and engineering consultants. The Board determined to issue a SEQRA negative declaration.

13.     Importantly, my attorneys inform me that the Plaintiffs have not challenged the Village's SEQRA determination that no significant adverse impacts occurred. A mandatory portion of the SEQRA review — full EAF question 17 — is "Consistency with Community Plans," which asks if "[t]he proposed action is not consistent with the adopted land use plans." We answered "no" (signifying the Local Law was consistent with the Village's Comprehensive Plan), and Plaintiffs have not challenged our determination. The Full EAF is attached hereto as **Exhibit C**.

14.     Additionally, question 18 is "Consistency with Community Character," which asks if "[t]he proposed project is inconsistent with the existing community character." We again answered "no" (signifying the Local Law was consistent with the community character), and Plaintiffs have not challenged our determination. *See* Ex. C.

15.     The SEQRA review was not the only time consistency with the Comprehensive Plan was considered. In addition to SEQRA and the information the Board evaluated for purposes of the environmental impact review, the Board acted in its capacity as a legislative body when adopting the Local Law and considered the following:

   a.   The Village's comprehensive plan (the "Comprehensive Plan"), attached hereto as **Exhibit D** and the Village's comprehensive plan update (the "Comprehensive Plan Update"), attached hereto as **Exhibit E**. Specifically, the Comprehensive Plan addressed the hotel use at the Property and noted its convenient location with respect to the Long Island Expressway. Ex. D, p. 24. The Comprehensive Plan notes that Office/Industry areas "display a more mixed land use character" and that

>   industrial uses should be encouraged because "[t]o restrict such areas to purely office use[s] would create a high number of unnecessary non-conforming uses and deny the existence and legitimacy of lighter industrial uses being abe to coexist with office uses." Ex. D, p. 107. The Village maintained a mix of hotel, industrial, office, and heavy retail (including automotive repair) in these areas. *Id.* The Comprehensive Plan also contemplated an Office/Industry zoning district that "would be a combination of provisions from the Office District and the Industrial District." *Id.* The Board considered that the Comprehensive Plan contemplated more intensive uses in the OI Zoning District. The Comprehensive Plan Update reiterated these principles, noting that the OI Zoning District, in addition to office uses, "permits manufacturing and warehousing uses . . . ." Ex. E, p. 15.

   b.   The Village's current zoning law and the zoning district that the Local Law sought to amend. Specifically, the Board noted that the Village's zoning law permitted much more intense uses than hotels and a gaming facility, including manufacturing uses and warehousing/distribution facilities. Section 177-71(B) of the Village's zoning law provides that "[t]he intent of the Office/Industry District is to continue the orderly mixed-use development consisting of high quality, nonintensive light industrial and warehouse uses along with office development in accordance with appropriate standards of design and site development." Relevant sections of the Village's zoning law are attached as **Exhibit F**.

   c.   The Board members' knowledge of the community and uses in and surrounding the OI Zoning District. Specifically, the Board took note of the Property and evaluated surrounding land uses, including a truck distribution facility, a park and ride, office uses, and a wholesale shopping facility. The Board also noted the proximity to major highways, including the Long Island Expressway and the Long Island Motor Parkway. The Board evaluated the residential uses in proximity to the Property.

   d.   The condition of the Property and the deteriorating condition of the existing hotel. The Board noted the opportunity for reuse and repurposing of an existing structure in the Village.

16.   In adopting the Local Law, the Board made its determination consistent with the Comprehensive Plan, the existing character of the community, and in the best interests of all Village residents.

**WHEREFORE,** your declarant respectfully requests that the Court grant Defendants' motion for summary judgment in its entirety.

Dated:	October 26, 2018

_____
MICHAEL ZALESKI