# EXHIBIT B

Case 1-18-01033-cec    Doc 62-23    Filed 10/29/18    Entered 10/29/18 14:19:01

6
**Decision and Order of the Honorable William G. Ford, dated September 8, 2017, Appealed From, with Notice of Entry [pages 6-12]**

SHORT FORM ORDER

INDEX NO.: 08907/2016

SUPREME COURT - STATE OF NEW YORK
I.A.S. PART 38 - SUFFOLK COUNTY

PRESENT:

HON. WILLIAM G. FORD
JUSTICE SUPREME COURT

Motion Submit Date: 10/21/16
Motion Seq #:  001    Mot D

---------------------------------------------------X

In the Matter of the Application of

JENNIFER TOMOSINO, NEIL MUNRO, APRIL MEYER, FRAN PEKHOR, THE CONCERNED CITIZENS OF SUFFOLK COUNTY, INC., THE HAMLET AT WINDWATCH GOLF & COUNTRY CLUB HOME OWNERS, INC. & THE RONKONKOMA CIVIC ASSOCIATION,

Petitioners,

For a Judgment Pursuant to CPLR Article 78 annulling and vacating certain resolutions adopted by the Board of Trustees of the Incorporated Village of Islandia on August 12, 2016 approving the application of Delaware North Islandia Properties, LLC., for a special permit regarding the permitted use of real property and for other relief

-against-

THE BOARD OF TRUSTEES OF THE INCOPORATED VILALGE OF ISLANDIA, THE INCORPORATED VILLAGE OF ISLANDIA, MICHAEL ZALESKI & DELAWARE NORTH ISLANDIA PROPERTIES, LLC.,

Respondents.

PETITIONERS' COUNSEL:
Anton J. Borovina, Esq.
425 Broad Hollow Road, Suite 203
Melville, NY  11747

Paul Sabatino, II., Esq.
1617 New York Avenue
Huntington Station, NY  11746

RESPONDENTS' COUNSEL:
Joseph W. Prokop, Esq.
267 Carleton Ave.
Central Islip, NY  11722

Farrell Fritz, PC
By: Anthony S. Guardino, Esq.
100 Motor Parkway, Suite 138
Hauppauge, NY  11788

---------------------------------------------------X

1

Upon the following papers read on the Verified Petition pursuant to CPLR Article 78; Notice of Petition dated September 14, 2016; Verified Petition dated September 13, 2016; Memorandum of Law in Support dated September 14, 2016 and supporting papers; Affirmation in Opposition dated October 17, 2016; Memorandum of Law in Opposition dated October 17, 2016 and supporting papers; Certified Administrative Return dated October 17, 2016; Reply Affirmation dated October 26, 2016 and supporting papers; Reply Memorandum of Law dated October 26, 2016; (and after hearing counsel in support and opposed to the motion) it is,

ORDERED that the this special proceeding commenced by petitioner's Verified Petition pursuant to CPLR Article 78 seeking a determination vacating, annulling or otherwise setting aside certain resolutions adopted by respondent Board of Trustees of the Incorporated Village of Islandia on August 12, 2016 approving the application of Delaware North Islandia Properties, LLC., for a special permit regarding the permitted use of real property and for other assorted relief is GRANTED in part as thoroughly discussed below.

## BACKGROUND

In this article 78 proceeding, the petitioners challenge the adoption of certain resolutions by the Board of Trustees of the Incorporated Village of Islandia ("Village Board") and its issuance of a special permit relating to the construction and use of a video lottery gaming facility and an off-track betting (OTB) simulcast facility as an accessory use within the Islandia Marriott Long Island Hotel located at 3635 Express Drive North, Islandia, New York. The property is in the Village's Office and Industrial (OI) district, in which a hotel is a specially permitted use.

The petitioners, whose standing to maintain this proceeding is not seriously disputed,[1] claim to be persons aggrieved by the Village Board's actions, and include residents and owners of property within the Village. Respondent Michael Zaleski is a member of the Village Board. Respondent Delaware North Islandia Properties, LLC is the successor in interest of Delaware North Companies Parks and Resorts, Inc., the special permit applicant (collectively, "Delaware North").

## PROCEDURAL HISTORY

On March 28, 2016, Delaware North submitted an application to the Village Board seeking a special permit for an indoor amusement establishment with video lottery terminals (VLTs),[2] an OTB simulcast, food and beverage locations, and back of house support areas as an accessory use to the existing hotel. Over the next several months, as part of the application process and in conjunction with the Village Board's SEQRA review (*see* ECL Art. 8), Delaware North submitted a full environmental assessment form, an expanded environmental assessment and traffic impact

---

[1] Although the respondents, in their respective answers, do assert objections in point of law challenging the petitioners' standing to maintain this proceeding, they offer no factual or legal argument in support of their objection, and their joint memorandum of law is silent on the issue except for a blanket statement that the petition is "entirely devoid of factual allegations that would support a finding of standing for any of the Petitioners here"–a statement with which the court cannot agree.

[2] According to Anthony S. Guardino, Esq. of Farrell Fritz, P.C., Delaware North's land use counsel, VLTs are gaming machines that allow players to "bet on the outcome of a video game." Although they resemble slot machines, the results of each play are "pre-determined by a central computer at a NYS Lottery facility to which all VLTs in New York are connected"; as such, they are "essentially computerized * * * scratch-off lottery tickets."

study, and a revised expanded environmental assessment and traffic impact study; additionally, the application was forwarded by the Village Clerk to the Village's engineering and traffic consultants. On July 5, 2016, a public hearing was held, following which the application was referred for review to the Suffolk County Planning Commission, culminating in a resolution that the application was a matter for local determination.

On August 12, 2016, the Village Board issued two resolutions relative to Delaware North's application: the first, adopting a negative declaration for purposes of SEQRA, determining that the application is an unlisted action and that its approval will not have a significant negative environmental impact, and the second, granting the application. Both resolutions are supported by numerous pages of findings. As to the decision to grant a special permit, the Village Board noted, for example, that the peak hours of activity for the proposed use were similar to the peak hours of use for the existing hotel; that the proposed modifications to the existing building would not increase the building footprint; that the provision of a combination of self-park and valet spaces would accommodate the anticipated parking demand; that the proposed use would be complementary to and harmonious with the existing hotel use; that because certain public gathering spaces in the hotel, such as banquet and conference rooms, were to be modified and converted to accommodate the proposed use, thereby reducing the number of events held, any increase in visitation resulting from the proposed use would be at least partially offset by the reduction in events and functions held in meeting and banquet spaces; that given the similarity in peak usage hours for the existing hotel and the proposed use, together with the loss of traffic due to the conversion of public gathering areas, no significant traffic impacts would be anticipated; that existing water and sewer connections as well as police, fire, and emergency services provided for the hotel would also be adequate for the proposed use; that the surrounding area is developed similarly with office, commercial, and industrial uses, all proximate, like the hotel, to major transportation corridors such as the Long Island Expressway and Motor Parkway; that the location of the hotel, on the north service road of the Long Island Expressway, provides convenient access to the property while minimizing potential impacts to the Village's roadways; and that the proposed use is consistent with the existing hotel use and will not be detrimental to any of the surrounding uses. This proceeding followed.[3]

## DISCUSSION

The petitioners allege four separate causes of action (denominated as "causes of proceeding") for article 78 relief in the petition, all of which are to vacate and set aside the adoption of the resolutions and the issuance of the special permit. As their first cause of action, the petitioners plead that the proposed use of the property is not a permitted accessory use. As their second cause of action, they claim that the Village Board failed to satisfy its obligation under SEQRA to take a "hard look" at the potential impacts on traffic and roadways in the area. The petitioners allege as their third cause of action that Michael Zaleski, by accepting various appointments as a Village officer after being elected a trustee, effectively vacated his position as

---

[3] The court rejects as unsupportable the claim that the petitioners were required to appeal the issuance of the special permit to the Village's Zoning Board of Appeals before commencing this proceeding and that they failed, therefore, to exhaust their available administrative remedies.

trustee pursuant to Village Law § 3-300 (3), so that the votes of the Village Board on the subject resolutions are void for want of a second to the motions to adopt them; the petitioners also seek the entry of judgment declaring that his position as trustee became vacant as of the earliest date he accepted an appointment as a Village officer and that all subsequent actions taken by him as a trustee were and are unlawful, null, and void. As their fourth cause of action, the petitioners claim that the resolutions were not duly enacted and are of no force and effect because they were not made available or disclosed to the public prior to their adoption, in violation of the Open Meetings Law (Public Officers Law Art. 7).

In opposition to the petition, the respondents submit, *inter alia*, various affidavits, an attorney's affirmation, and a joint memorandum of law.

## STANDARD OF REVIEW

In a proceeding pursuant to CPLR Article 78 to review a determination of a zoning board and its interpretation of its zoning ordinance, the Court is mindful that the board is entitled to great deference, and its review is generally limited to ascertaining whether the action was illegal, arbitrary and capricious, or an abuse of discretion (*Matter of Bray v Town of Yorktown Zoning Bd. of Appeals*, 151 AD3d 720, 56 NYS3d 246, 247 [2d Dept 2017]). When the question raised is one of purely legal interpretation of statutory terms, deference to the zoning board of appeals is not required (*Matter of Mecox Bay Civic Assn., Inc. v Town of Southampton Zoning Bd. of Appeals*, 145 AD3d 725, 725, 43 NYS3d 111, 112 [2d Dept 2016]).

On review of the grant of a special use permit, the reviewing court will not substitute its judgment for that of the board unless it appears to be arbitrary, capricious, or illegal, or was not rationally based (*Matter of 31 Commerce St., LLC v Darden*, 50 AD3d 910, 911, 855 NYS2d 673, 674 [2d Dept 2008]; *accord Matter of Pell v Board of Educ.*, 34 NY2d 222, 356 NYS2d 833 [1974] [a court will generally not interfere with the determination of an administrative board unless the board's action is illegal, arbitrary and capricious, or an abuse of discretion]). When applying the "arbitrary and capricious" standard, a court looks only to whether the determination lacks a rational basis, that is, whether it was without sound basis in reason and without regard to the facts (*Matter of Halperin v City of New Rochelle*, 24 AD3d 768, 809 NYS2d 98 [2005]). A determination will be deemed rational so long as it has some objective factual basis, and so long as such a basis exists to support the board's findings and conclusions, a court may not substitute its judgment for that of the board (*Matter of Pell v Board of Educ.*, *supra*; *Vergilis v Planning Bd. of Vil. of Fishkill*, 251 AD2d 506, 507, 674 NYS2d 717, 718 [2d Dept 1998] [the determination of the village planning officials in the affected community will be sustained if it has a rational basis and is supported by substantial evidence in the record]; *Cacsire v City of White Plains Zoning Bd. of Appeals*, 87 AD3d 1135, 1137, 930 NYS2d 54, 57 [2d Dept 2011][a determination will not be deemed rational if it rests entirely on subjective considerations, such as general community opposition, and lacks an objective factual basis]).

Even assuming, for purposes of this determination, that the Village Board's votes were valid irrespective of whether Michael Zaleski may be found to have vacated his position as trustee prior to August 12, 2016 and that the Village Board complied with all the requirements of the Open Meetings Law, this court is unable to conclude that a rational basis exists to support the granting of

a special permit, because there is no evidence in the record to support a finding that a VLT gaming and OTB simulcast facility is a permitted accessory use in the OI district.

"Whether a proposed accessory use is clearly incidental to and customarily found in connection with the principal use depends on an analysis of the nature and character of the principal use of the land in question in relation to the accessory use, taking into consideration the over-all character of the particular area in question" (*Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.*, 91 NY2d 413, 420, 671 NYS2d 423, 426 [1998]).

Therefore, given the Court of Appeals' instruction, this Court's analysis must begin with chapter 177 of the Village of Islandia Code, which codifies the Village's zoning laws, the Court keeping in mind that "zoning codes, being in derogation of the common law ... [accordingly are] strictly construed against the enacting municipality in favor of the property owner" (*Matter of Mamaroneck Beach & Yacht Club, Inc. v Zoning Bd. of Appeals of Vil. of Mamaroneck*, 53 AD3d 494, 498, 862 NYS2d 81, 85 [2d Dept 2008]).

Chapter 177 sets forth in a table (Attachment 5) a list of uses permitted in the OI district, and provides that any uses not listed are prohibited. Among the uses listed are "accessory uses." Section 177-76 specifies that "accessory service uses," that is, those "intended to complement any of the permitted uses and * * * designated to be for the primary use of employees, visitors and/or clients of the office occupants," are among the accessory uses authorized by special permit in the OI district. Pursuant to section 177-76, such uses include "barber shop, beauty salon, draft service, quick reproduction service, cafeteria and/or coffee shop or snack bar, apothecary, communications facilities, recreational facilities for use by employees only and other such uses as determined by the Village Board to be in keeping with the spirit and letter of this section." According to the respondents, Delaware North's application was approved as an "accessory service use" under section 177-76, and satisfies all the relevant criteria for the issuance of special permits generally (§§ 177-109, 177-110) and accessory service uses in particular (§ 177-76 [E]).

Section 177-3 (B), however, defines an "accessory use," in part, as one that is "customarily incidental" to the principal use. Apart, then, from the various criteria in sections 177-76, 177-109, 177-110 cited by the respondents, it must appear that the proposed accessory use is also customarily—that is, usually, habitually, regularly—incidental to the existing use (*see Matter of 7-11 Tours Inc. v Board of Zoning Bd. of Appeals of Town of Smithtown* 90 AD2d 486, 454 NYS2d 477 [2d Dept 1982]; *Matter of LaVecchia v Board of Stds. & Appeals of City of N.Y*, 26 Misc 2d 39, 204 NYS2d 429 [Sup Ct, Bronx County 1960]).

Notably, the Village Board made no finding in that regard, nor have the respondents pointed to any evidence in the record upon which the Village Board might have based such a finding.

Into that vacuum the petitioners introduce the affidavit of Eric B. Lewis, who describes himself as "the Executive Managing Director and Practice Lead of the Hospitality and Gaming group within Cushman and Wakefield's Valuation and Advisory division," and as having spent "more than thirty years in the profession of valuing real estate throughout the United States, including New York, with a focus on hotels and related property types." His opinion, based on

review of 185 establishments in New York featuring OTB services and on his overall experience and knowledge of the hotel industry, is that "other than in gaming destinations like Las Vegas, Atlantic City and on Indian Reservations and a few scattered, isolated hotels, gaming facilities, including the [proposed use], are not customary and incidental uses of a hotel." He also concludes that there are "no hotels located on Long Island having any gaming facilities." The respondents, for their part, do not seriously question Lewis's expert credentials but rather criticize his analysis of the applicable data, noting no fewer than five examples in upstate New York of gaming facilities located within a hotel. They also acknowledge, however, that there are no hotels with gaming facilities on Long Island.

It appears, therefore, not only that the administrative record is devoid of evidence on which the Village Board could properly base a finding that a VLT gaming and OTB simulcast facility is "customarily incidental" to a hotel use in the OI district, but also that no such finding is possible; in so concluding, the court notes that the Village Board's resolution adopting a negative declaration pursuant to SEQRA is essentially rendered academic. Whatever the reason for the absence of local hotels with gaming facilities–and the respondents observe "that gaming facilities were, until 2013, prohibited on Long Island"–they are, in fact, absent. It is the fact and not the cause of their absence that is crucial. And while Delaware North would have the court expand to upstate New York and beyond the geographic parameters for determining what is customary within the meaning of the Village's zoning laws, the court is unwilling to do so, zoning and land use regulations being chiefly a matter of local concern and interpretation. Local standards, of course, may change over time. Until then, Delaware North's attempt to shoehorn its application to fit the existing law regarding accessory uses is a bridge too far. It is thus for that very reason it cannot be said, as the respondents desire, that a gaming facility use within the preexisting structure and operation of a suburban Long Island hotel is so common, habitual, or well-established a practice as to be deemed "customary" or "incidental" to the ordinary operation of a hotel as to support granting of the permit (*Aim Rent A Car, Inc. v Zoning Bd. of Appeals of Vil. of Montebello*, 156 AD2d 323, 548 NYS2d 275 [2d Dept 1989]).

Accordingly, the petition is **GRANTED** to the extent it is for Article 78 relief. The petitioners' remaining claim for declaratory relief shall be converted into a plenary action for a declaratory judgment (*see* CPLR 103 [c]); it shall be severed and continued, with the notice of petition deemed the summons and the petition deemed the complaint, the parties designated as plaintiffs and defendants, and the caption amended accordingly.

Therefore, it is

**ORDERED** that the portion of this Order granting Article 78 relief is stayed on the Court's own motion pursuant to CPLR 2201 permitting any party to file and/or perfect an appeal of the same within 90 days, **no later than December 8, 2017**; and it is further

**ORDERED** that counsel for the petitioners is hereby directed to serve a copy of this decision and order with notice of entry upon counsel for the respondents forthwith; and it is further

ORDERED that counsel for the parties shall appear before this Court for a scheduling and status conference on October 5, 2017 at 10:00 AM to address that portion of this Order which severs and converts the declaratory judgement action.

The foregoing constitutes the decision and order of this Court.

Submit judgment on notice.

Dated: September 8, 2017
Riverhead, New York

_____
WILLIAM G. FORD, J.S.C.

____ FINAL DISPOSITION      X  NON-FINAL DISPOSITION