*Full Environmental Assessment Form*
*Part 2 - Identification of Potential Project Impacts*

Project: 
Date: 

Agency Use Only [If applicable]

Part 2 is to be completed by the lead agency. Part 2 is designed to help the lead agency inventory all potential resources that could be affected by a proposed project or action. We recognize that the lead agency's reviewer(s) will not necessarily be environmental professionals. So, the questions are designed to walk a reviewer through the assessment process by providing a series of questions that can be answered using the information found in Part 1. To further assist the lead agency in completing Part 2, the form identifies the most relevant questions in Part 1 that will provide the information needed to answer the Part 2 question. When Part 2 is completed, the lead agency will have identified the relevant environmental areas that may be impacted by the proposed activity.

If the lead agency is a state agency and the action is in any Coastal Area, complete the Coastal Assessment Form before proceeding with this assessment.

**Tips for completing Part 2:**
- Review all of the information provided in Part 1.
- Review any application, maps, supporting materials and the Full EAF Workbook.
- Answer each of the 18 questions in Part 2.
- If you answer "Yes" to a numbered question, please complete all the questions that follow in that section.
- If you answer "No" to a numbered question, move on to the next numbered question.
- Check appropriate column to indicate the anticipated size of the impact.
- Proposed projects that would exceed a numeric threshold contained in a question should result in the reviewing agency checking the box "Moderate to large impact may occur."
- The reviewer is not expected to be an expert in environmental analysis.
- If you are not sure or undecided about the size of an impact, it may help to review the sub-questions for the general question and consult the workbook.
- When answering a question consider all components of the proposed activity, that is, the "whole action".
- Consider the possibility for long-term and cumulative impacts as well as direct impacts.
- Answer the question in a reasonable manner considering the scale and context of the project.

| 1. Impact on Land<br>Proposed action may involve construction on, or physical alteration of, the land surface of the proposed site. (See Part 1. D.1)<br>*If "Yes", answer questions a - j. If "No", move on to Section 2.* | ☑ NO | ☐ YES | |
|---|---|---|---|
| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
| a. The proposed action may involve construction on land where depth to water table is less than 3 feet. | E2d | ☐ | ☐ |
| b. The proposed action may involve construction on slopes of 15% or greater. | E2f | ☐ | ☐ |
| c. The proposed action may involve construction on land where bedrock is exposed, or generally within 5 feet of existing ground surface. | E2a | ☐ | ☐ |
| d. The proposed action may involve the excavation and removal of more than 1,000 tons of natural material. | D2a | ☐ | ☐ |
| e. The proposed action may involve construction that continues for more than one year or in multiple phases. | D1e | ☐ | ☐ |
| f. The proposed action may result in increased erosion, whether from physical disturbance or vegetation removal (including from treatment by herbicides). | D2e, D2q | ☐ | ☐ |
| g. The proposed action is, or may be, located within a Coastal Erosion hazard area. | B1i | ☐ | ☐ |
| h. Other impacts: _____ | | ☐ | ☐ |

## 2. Impact on Geological Features

The proposed action may result in the modification or destruction of, or inhibit access to, any unique or unusual land forms on the site (e.g., cliffs, dunes, minerals, fossils, caves). (See Part 1. E.2.g)

☑ NO  ☐ YES

*If "Yes", answer questions a - c. If "No", move on to Section 3.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. Identify the specific land form(s) attached: _____ | E2g | ☐ | ☐ |
| b. The proposed action may affect or is adjacent to a geological feature listed as a registered National Natural Landmark. Specific feature: _____ | E3c | ☐ | ☐ |
| c. Other impacts: _____ | | ☐ | ☐ |

## 3. Impacts on Surface Water

The proposed action may affect one or more wetlands or other surface water bodies (e.g., streams, rivers, ponds or lakes). (See Part 1. D.2, E.2.h)

☑ NO  ☐ YES

*If "Yes", answer questions a - l. If "No", move on to Section 4.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may create a new water body. | D2b, D1h | ☐ | ☐ |
| b. The proposed action may result in an increase or decrease of over 10% or more than a 10 acre increase or decrease in the surface area of any body of water. | D2b | ☐ | ☐ |
| c. The proposed action may involve dredging more than 100 cubic yards of material from a wetland or water body. | D2a | ☐ | ☐ |
| d. The proposed action may involve construction within or adjoining a freshwater or tidal wetland, or in the bed or banks of any other water body. | E2h | ☐ | ☐ |
| e. The proposed action may create turbidity in a waterbody, either from upland erosion, runoff or by disturbing bottom sediments. | D2a, D2h | ☐ | ☐ |
| f. The proposed action may include construction of one or more intake(s) for withdrawal of water from surface water. | D2c | ☐ | ☐ |
| g. The proposed action may include construction of one or more outfall(s) for discharge of wastewater to surface water(s). | D2d | ☐ | ☐ |
| h. The proposed action may cause soil erosion, or otherwise create a source of stormwater discharge that may lead to siltation or other degradation of receiving water bodies. | D2e | ☐ | ☐ |
| i. The proposed action may affect the water quality of any water bodies within or downstream of the site of the proposed action. | E2h | ☐ | ☐ |
| j. The proposed action may involve the application of pesticides or herbicides in or around any water body. | D2q, E2h | ☐ | ☐ |
| k. The proposed action may require the construction of new, or expansion of existing, wastewater treatment facilities. | D1a, D2d | ☐ | ☐ |

| | | | |
|---|---|---|---|
| l. Other impacts: _____ | | ☐ | ☐ |

### 4. Impact on groundwater

The proposed action may result in new or additional use of ground water, or may have the potential to introduce contaminants to ground water or an aquifer. ☑ NO  ☐ YES
(See Part 1. D.2.a, D.2.c, D.2.d, D.2.p, D.2.q, D.2.t)
*If "Yes", answer questions a - h. If "No", move on to Section 5.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may require new water supply wells, or create additional demand on supplies from existing water supply wells. | D2c | ☐ | ☐ |
| b. Water supply demand from the proposed action may exceed safe and sustainable withdrawal capacity rate of the local supply or aquifer. Cite Source: _____ | D2c | ☐ | ☐ |
| c. The proposed action may allow or result in residential uses in areas without water and sewer services. | D1a, D2c | ☐ | ☐ |
| d. The proposed action may include or require wastewater discharged to groundwater. | D2d, E2l | ☐ | ☐ |
| e. The proposed action may result in the construction of water supply wells in locations where groundwater is, or is suspected to be, contaminated. | D2c, E1f, E1g, E1h | ☐ | ☐ |
| f. The proposed action may require the bulk storage of petroleum or chemical products over ground water or an aquifer. | D2p, E2l | ☐ | ☐ |
| g. The proposed action may involve the commercial application of pesticides within 100 feet of potable drinking water or irrigation sources. | E2h, D2q, E2l, D2c | ☐ | ☐ |
| h. Other impacts: _____ | | ☐ | ☐ |

### 5. Impact on Flooding

The proposed action may result in development on lands subject to flooding. ☑ NO  ☐ YES
(See Part 1. E.2)
*If "Yes", answer questions a - g. If "No", move on to Section 6.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may result in development in a designated floodway. | E2i | ☐ | ☐ |
| b. The proposed action may result in development within a 100 year floodplain. | E2j | ☐ | ☐ |
| c. The proposed action may result in development within a 500 year floodplain. | E2k | ☐ | ☐ |
| d. The proposed action may result in, or require, modification of existing drainage patterns. | D2b, D2e | ☐ | ☐ |
| e. The proposed action may change flood water flows that contribute to flooding. | D2b, E2i, E2j, E2k | ☐ | ☐ |
| f. If there is a dam located on the site of the proposed action, is the dam in need of repair, or upgrade? | E1e | ☐ | ☐ |

ISL003006

| | | | |
|---|---|---|---|
| g. Other impacts: _____ | | ☐ | ☐ |

### 6. Impacts on Air

The proposed action may include a state regulated air emission source.   ☑ NO   ☐ YES
(See Part 1. D.2.f., D,2,h, D.2.g)
*If "Yes", answer questions a - f. If "No", move on to Section 7.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. If the proposed action requires federal or state air emission permits, the action may also emit one or more greenhouse gases at or above the following levels:<br>  i. More than 1000 tons/year of carbon dioxide ($CO_2$)<br>  ii. More than 3.5 tons/year of nitrous oxide ($N_2O$)<br>  iii. More than 1000 tons/year of carbon equivalent of perfluorocarbons (PFCs)<br>  iv. More than .045 tons/year of sulfur hexafluoride ($SF_6$)<br>  v. More than 1000 tons/year of carbon dioxide equivalent of hydrochloroflourocarbons (HFCs) emissions<br>  vi. 43 tons/year or more of methane | D2g<br>D2g<br>D2g<br>D2g<br>D2g<br><br>D2h | ☐<br>☐<br>☐<br>☐<br>☐<br><br>☐ | ☐<br>☐<br>☐<br>☐<br>☐<br><br>☐ |
| b. The proposed action may generate 10 tons/year or more of any one designated hazardous air pollutant, or 25 tons/year or more of any combination of such hazardous air pollutants. | D2g | ☐ | ☐ |
| c. The proposed action may require a state air registration, or may produce an emissions rate of total contaminants that may exceed 5 lbs. per hour, or may include a heat source capable of producing more than 10 million BTU's per hour. | D2f, D2g | ☐ | ☐ |
| d. The proposed action may reach 50% of any of the thresholds in "a" through "c", above. | D2g | ☐ | ☐ |
| e. The proposed action may result in the combustion or thermal treatment of more than 1 ton of refuse per hour. | D2s | ☐ | ☐ |
| f. Other impacts: _____ | | ☐ | ☐ |

### 7. Impact on Plants and Animals

The proposed action may result in a loss of flora or fauna. (See Part 1. E.2. m.-q.)   ☑ NO   ☐ YES
*If "Yes", answer questions a - j. If "No", move on to Section 8.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may cause reduction in population or loss of individuals of any threatened or endangered species, as listed by New York State or the Federal government, that use the site, or are found on, over, or near the site. | E2o | ☐ | ☐ |
| b. The proposed action may result in a reduction or degradation of any habitat used by any rare, threatened or endangered species, as listed by New York State or the federal government. | E2o | ☐ | ☐ |
| c. The proposed action may cause reduction in population, or loss of individuals, of any species of special concern or conservation need, as listed by New York State or the Federal government, that use the site, or are found on, over, or near the site. | E2p | ☐ | ☐ |
| d. The proposed action may result in a reduction or degradation of any habitat used by any species of special concern and conservation need, as listed by New York State or the Federal government. | E2p | ☐ | ☐ |

| | | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| e. The proposed action may diminish the capacity of a registered National Natural Landmark to support the biological community it was established to protect. | E3c | ☐ | ☐ |
| f. The proposed action may result in the removal of, or ground disturbance in, any portion of a designated significant natural community.<br>Source: _____ | E2n | ☐ | ☐ |
| g. The proposed action may substantially interfere with nesting/breeding, foraging, or over-wintering habitat for the predominant species that occupy or use the project site. | E2m | ☐ | ☐ |
| h. The proposed action requires the conversion of more than 10 acres of forest, grassland or any other regionally or locally important habitat.<br>Habitat type & information source: _____ | E1b | ☐ | ☐ |
| i. Proposed action (commercial, industrial or recreational projects, only) involves use of herbicides or pesticides. | D2q | ☐ | ☐ |
| j. Other impacts: _____ | | ☐ | ☐ |

| 8. Impact on Agricultural Resources | | | |
|---|---|---|---|
| The proposed action may impact agricultural resources. (See Part 1. E.3.a. and b.)<br>*If "Yes", answer questions a - h. If "No", move on to Section 9.* | | ☑NO | ☐YES |
| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
| a. The proposed action may impact soil classified within soil group 1 through 4 of the NYS Land Classification System. | E2c, E3b | ☐ | ☐ |
| b. The proposed action may sever, cross or otherwise limit access to agricultural land (includes cropland, hayfields, pasture, vineyard, orchard, etc). | E1a, E1b | ☐ | ☐ |
| c. The proposed action may result in the excavation or compaction of the soil profile of active agricultural land. | E3b | ☐ | ☐ |
| d. The proposed action may irreversibly convert agricultural land to non-agricultural uses, either more than 2.5 acres if located in an Agricultural District, or more than 10 acres if not within an Agricultural District. | E1b, E3a | ☐ | ☐ |
| e. The proposed action may disrupt or prevent installation of an agricultural land management system. | E1a, E1b | ☐ | ☐ |
| f. The proposed action may result, directly or indirectly, in increased development potential or pressure on farmland. | C2c, C3, D2c, D2d | ☐ | ☐ |
| g. The proposed project is not consistent with the adopted municipal Farmland Protection Plan. | C2c | ☐ | ☐ |
| h. Other impacts: _____ | | ☐ | ☐ |

ISL003008

### 9. Impact on Aesthetic Resources

The land use of the proposed action are obviously different from, or are in sharp contrast to, current land use patterns between the proposed project and a scenic or aesthetic resource. (Part 1. E.1.a, E.1.b, E.3.h.)

*If "Yes", answer questions a - g. If "No", go to Section 10.*

☑ NO    ☐ YES

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. Proposed action may be visible from any officially designated federal, state, or local scenic or aesthetic resource. | E3h | ☐ | ☐ |
| b. The proposed action may result in the obstruction, elimination or significant screening of one or more officially designated scenic views. | E3h, C2b | ☐ | ☐ |
| c. The proposed action may be visible from publicly accessible vantage points:<br>i. Seasonally (e.g., screened by summer foliage, but visible during other seasons)<br>ii. Year round | E3h | ☐<br>☐ | ☐<br>☐ |
| d. The situation or activity in which viewers are engaged while viewing the proposed action is:<br>i. Routine travel by residents, including travel to and from work<br>ii. Recreational or tourism based activities | E3h<br>E2q,<br>E1c | ☐<br>☐ | ☐<br>☐ |
| e. The proposed action may cause a diminishment of the public enjoyment and appreciation of the designated aesthetic resource. | E3h | ☐ | ☐ |
| f. There are similar projects visible within the following distance of the proposed project:<br>0-1/2 mile<br>½ -3 mile<br>3-5 mile<br>5+ mile | D1a, E1a, D1f, D1g | ☐ | ☐ |
| g. Other impacts: _____ | | ☐ | ☐ |

### 10. Impact on Historic and Archeological Resources

The proposed action may occur in or adjacent to a historic or archaeological resource. (Part 1. E.3.e, f. and g.)

*If "Yes", answer questions a - e. If "No", go to Section 11.*

☑ NO    ☐ YES

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may occur wholly or partially within, or substantially contiguous to, any buildings, archaeological site or district which is listed on or has been nominated by the NYS Board of Historic Preservation for inclusion on the State or National Register of Historic Places. | E3e | ☐ | ☐ |
| b. The proposed action may occur wholly or partially within, or substantially contiguous to, an area designated as sensitive for archaeological sites on the NY State Historic Preservation Office (SHPO) archaeological site inventory. | E3f | ☐ | ☐ |
| c. The proposed action may occur wholly or partially within, or substantially contiguous to, an archaeological site not included on the NY SHPO inventory.<br>Source: _____ | E3g | ☐ | ☐ |

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| d. Other impacts: _____ | | ☐ | ☐ |
| e. If any of the above (a-d) are answered "Moderate to large impact may occur", continue with the following questions to help support conclusions in Part 3: | | | |
|    i. The proposed action may result in the destruction or alteration of all or part of the site or property. | E3e, E3g, E3f | ☐ | ☐ |
|    ii. The proposed action may result in the alteration of the property's setting or integrity. | E3e, E3f, E3g, E1a, E1b | ☐ | ☐ |
|    iii. The proposed action may result in the introduction of visual elements which are out of character with the site or property, or may alter its setting. | E3e, E3f, E3g, E3h, C2, C3 | ☐ | ☐ |

**11. Impact on Open Space and Recreation**
The proposed action may result in a loss of recreational opportunities or a reduction of an open space resource as designated in any adopted municipal open space plan.
(See Part 1. C.2.c, E.1.c., E.2.q.)
*If "Yes", answer questions a - e. If "No", go to Section 12.*

☑ NO   ☐ YES

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may result in an impairment of natural functions, or "ecosystem services", provided by an undeveloped area, including but not limited to stormwater storage, nutrient cycling, wildlife habitat. | D2e, E1b, E2h, E2m, E2o, E2n, E2p | ☐ | ☐ |
| b. The proposed action may result in the loss of a current or future recreational resource. | C2a, E1c, C2c, E2q | ☐ | ☐ |
| c. The proposed action may eliminate open space or recreational resource in an area with few such resources. | C2a, C2c, E1c, E2q | ☐ | ☐ |
| d. The proposed action may result in loss of an area now used informally by the community as an open space resource. | C2c, E1c | ☐ | ☐ |
| e. Other impacts: _____ | | ☐ | ☐ |

**12. Impact on Critical Environmental Areas**
The proposed action may be located within or adjacent to a critical environmental area (CEA). (See Part 1. E.3.d)
*If "Yes", answer questions a - c. If "No", go to Section 13.*

☑ NO   ☐ YES

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may result in a reduction in the quantity of the resource or characteristic which was the basis for designation of the CEA. | E3d | ☐ | ☐ |
| b. The proposed action may result in a reduction in the quality of the resource or characteristic which was the basis for designation of the CEA. | E3d | ☐ | ☐ |
| c. Other impacts: _____ | | ☐ | ☐ |

ISL003010

## 13. Impact on Transportation

The proposed action may result in a change to existing transportation systems. ☑ NO*  ☐ YES
(See Part 1. D.2.j)
*If "Yes", answer questions a - f. If "No", go to Section 14.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. Projected traffic increase may exceed capacity of existing road network. | D2j | ☐ | ☐ |
| b. The proposed action may result in the construction of paved parking area for 500 or more vehicles. | D2j | ☐ | ☐ |
| c. The proposed action will degrade existing transit access. | D2j | ☐ | ☐ |
| d. The proposed action will degrade existing pedestrian or bicycle accommodations. | D2j | ☐ | ☐ |
| e. The proposed action may alter the present pattern of movement of people or goods. | D2j | ☐ | ☐ |
| f. Other impacts: _____ | | ☐ | ☐ |

## 14. Impact on Energy

The proposed action may cause an increase in the use of any form of energy. ☑ NO  ☐ YES
(See Part 1. D.2.k)
*If "Yes", answer questions a - e. If "No", go to Section 15.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action will require a new, or an upgrade to an existing, substation. | D2k | ☐ | ☐ |
| b. The proposed action will require the creation or extension of an energy transmission or supply system to serve more than 50 single or two-family residences or to serve a commercial or industrial use. | D1f, D1q, D2k | ☐ | ☐ |
| c. The proposed action may utilize more than 2,500 MWhrs per year of electricity. | D2k | ☐ | ☐ |
| d. The proposed action may involve heating and/or cooling of more than 100,000 square feet of building area when completed. | D1g | ☐ | ☐ |
| e. Other Impacts: _____ | | | |

## 15. Impact on Noise, Odor, and Light

The proposed action may result in an increase in noise, odors, or outdoor lighting. ☑ NO*  ☐ YES
(See Part 1. D.2.m., n., and o.)
*If "Yes", answer questions a - f. If "No", go to Section 16.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may produce sound above noise levels established by local regulation. | D2m | ☐ | ☐ |
| b. The proposed action may result in blasting within 1,500 feet of any residence, hospital, school, licensed day care center, or nursing home. | D2m, E1d | ☐ | ☐ |
| c. The proposed action may result in routine odors for more than one hour per day. | D2o | ☐ | ☐ |

\* See EAF-Part 3 Attachment.

| | | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| d. The proposed action may result in light shining onto adjoining properties. | D2n | ☐ | ☐ |
| e. The proposed action may result in lighting creating sky-glow brighter than existing area conditions. | D2n, E1a | ☐ | ☐ |
| f. Other impacts: _____ | | ☐ | ☐ |

| 16. Impact on Human Health | | | |
|---|---|---|---|
| The proposed action may have an impact on human health from exposure to new or existing sources of contaminants. (See Part 1.D.2.q., E.1. d. f. g. and h.) ☑ NO  ☐ YES | | | |
| *If "Yes", answer questions a - m. If "No", go to Section 17.* | | | |
| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
| a. The proposed action is located within 1500 feet of a school, hospital, licensed day care center, group home, nursing home or retirement community. | E1d | ☐ | ☐ |
| b. The site of the proposed action is currently undergoing remediation. | E1g, E1h | ☐ | ☐ |
| c. There is a completed emergency spill remediation, or a completed environmental site remediation on, or adjacent to, the site of the proposed action. | E1g, E1h | ☐ | ☐ |
| d. The site of the action is subject to an institutional control limiting the use of the property (e.g., easement or deed restriction). | E1g, E1h | ☐ | ☐ |
| e. The proposed action may affect institutional control measures that were put in place to ensure that the site remains protective of the environment and human health. | E1g, E1h | ☐ | ☐ |
| f. The proposed action has adequate control measures in place to ensure that future generation, treatment and/or disposal of hazardous wastes will be protective of the environment and human health. | D2t | ☐ | ☐ |
| g. The proposed action involves construction or modification of a solid waste management facility. | D2q, E1f | ☐ | ☐ |
| h. The proposed action may result in the unearthing of solid or hazardous waste. | D2q, E1f | ☐ | ☐ |
| i. The proposed action may result in an increase in the rate of disposal, or processing, of solid waste. | D2r, D2s | ☐ | ☐ |
| j. The proposed action may result in excavation or other disturbance within 2000 feet of a site used for the disposal of solid or hazardous waste. | E1f, E1g E1h | ☐ | ☐ |
| k. The proposed action may result in the migration of explosive gases from a landfill site to adjacent off site structures. | E1f, E1g | ☐ | ☐ |
| l. The proposed action may result in the release of contaminated leachate from the project site. | D2s, E1f, D2r | ☐ | ☐ |
| m. Other impacts: _____ | | | |

### 17. Consistency with Community Plans

The proposed action is not consistent with adopted land use plans.
(See Part 1. C.1, C.2. and C.3.)

☑ NO*    ☐ YES

*If "Yes", answer questions a – h. If "No", go to Section 18.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action's land use components may be different from, or in sharp contrast to, current surrounding land use pattern(s). | C2, C3, D1a E1a, E1b | ☐ | ☐ |
| b. The proposed action will cause the permanent population of the city, town or village in which the project is located to grow by more than 5%. | C2 | ☐ | ☐ |
| c. The proposed action is inconsistent with local land use plans or zoning regulations. | C2, C2, C3 | ☐ | ☐ |
| d. The proposed action is inconsistent with any County plans, or other regional land use plans. | C2, C2 | ☐ | ☐ |
| e. The proposed action may cause a change in the density of development that is not supported by existing infrastructure or is distant from existing infrastructure. | C3, D1c, D1d, D1f, D1d, E1b | ☐ | ☐ |
| f. The proposed action is located in an area characterized by low density development that will require new or expanded public infrastructure. | C4, D2c, D2d D2j | ☐ | ☐ |
| g. The proposed action may induce secondary development impacts (e.g., residential or commercial development not included in the proposed action) | C2a | ☐ | ☐ |
| h. Other: | | ☐ | ☐ |

### 18. Consistency with Community Character

The proposed project is inconsistent with the existing community character.
(See Part 1. C.2, C.3, D.2, E.3)

☑ NO*    ☐ YES

*If "Yes", answer questions a – g. If "No", proceed to Part 3.*

| | Relevant Part I Question(s) | No, or small impact may occur | Moderate to large impact may occur |
|---|---|---|---|
| a. The proposed action may replace or eliminate existing facilities, structures, or areas of historic importance to the community. | E3e, E3f, E3g | ☐ | ☐ |
| b. The proposed action may create a demand for additional community services (e.g. schools, police and fire) | C4 | ☐ | ☐ |
| c. The proposed action may displace affordable or low-income housing in an area where there is a shortage of such housing. | C2, C3, D1f D1g, E1a | ☐ | ☐ |
| d. The proposed action may interfere with the use or enjoyment of officially recognized or designated public resources. | C2, E3 | ☐ | ☐ |
| e. The proposed action is inconsistent with the predominant architectural scale and character. | C2, C3 | ☐ | ☐ |
| f. Proposed action is inconsistent with the character of the existing natural landscape. | C2, C3 E1a, E1b E2g, E2h | ☐ | ☐ |
| g. Other impacts: | | ☐ | ☐ |

PRINT FULL FORM      Page 10 of 10      * See EAF-Part 3 Attachment.

ISL003013

Agency Use Only [If Applicable]

Project: 
Date: 

# Full Environmental Assessment Form
## Part 3 - Evaluation of the Magnitude and Importance of Project Impacts
### and
### Determination of Significance

Part 3 provides the reasons in support of the determination of significance. The lead agency must complete Part 3 for every question in Part 2 where the impact has been identified as potentially moderate to large or where there is a need to explain why a particular element of the proposed action will not, or may, result in a significant adverse environmental impact.

Based on the analysis in Part 3, the lead agency must decide whether to require an environmental impact statement to further assess the proposed action or whether available information is sufficient for the lead agency to conclude that the proposed action will not have a significant adverse environmental impact. By completing the certification on the next page, the lead agency can complete its determination of significance.

**Reasons Supporting This Determination:**
To complete this section:
- Identify the impact based on the Part 2 responses and describe its magnitude. Magnitude considers factors such as severity, size or extent of an impact.
- Assess the importance of the impact. Importance relates to the geographic scope, duration, probability of the impact occurring, number of people affected by the impact and any additional environmental consequences if the impact were to occur.
- The assessment should take into consideration any design element or project changes.
- Repeat this process for each Part 2 question where the impact has been identified as potentially moderate to large or where there is a need to explain why a particular element of the proposed action will not, or may, result in a significant adverse environmental impact.
- Provide the reason(s) why the impact may, or will not, result in a significant adverse environmental impact
- For Conditional Negative Declarations identify the specific condition(s) imposed that will modify the proposed action so that no significant adverse environmental impacts will result.
- Attach additional sheets, as needed.

See EAF-Part 3 Attachment.

## Determination of Significance - Type 1 and Unlisted Actions

SEQR Status:    ☑ Type 1      ☐ Unlisted

Identify portions of EAF completed for this Project:   ☑ Part 1      ☑ Part 2      ☑ Part 3


Upon review of the information recorded on this EAF, as noted, plus this additional support information

_The proposed legislation; the Full EAF, Expanded Environmental Assessment and Traffic Impact Study prepared for the Special Permit Application for Accessory Use to Marriott Hotel (2016), and the Negative Declaration adopted by the Board of Trustees of the Incorporated Village of Islandia for the aforesaid Special Permit Application in August, 2016._

and considering both the magnitude and importance of each identified potential impact, it is the conclusion of the Board of Trustees of the Incorporated Village of Islandia _____ as lead agency that:

[✓] **A.** This project will result in no significant adverse impacts on the environment, and, therefore, an environmental impact statement need not be prepared. Accordingly, this negative declaration is issued.

[ ] **B.** Although this project could have a significant adverse impact on the environment, that impact will be avoided or substantially mitigated because of the following conditions which will be required by the lead agency:

_____
_____
_____

There will, therefore, be no significant adverse impacts from the project as conditioned, and, therefore, this conditioned negative declaration is issued. A conditioned negative declaration may be used only for UNLISTED actions (see 6 NYCRR 617.d).

[ ] **C.** This Project may result in one or more significant adverse impacts on the environment, and an environmental impact statement must be prepared to further assess the impact(s) and possible mitigation and to explore alternatives to avoid or reduce those impacts. Accordingly, this positive declaration is issued.

Name of Action: A Local Law Amending Section 177-3 Definitions and Attachments 5 and 7 of the Village Code Chapter 177 to Provide for Hotel/Gaming Facility as a Permitted Use in the Village's Office and Industrial District and to Establish Associated Parking Requirements

Name of Lead Agency: Board of Trustees of the Incorporated Village of Islandia

Name of Responsible Officer in Lead Agency: Allan Dorman

Title of Responsible Officer: Mayor

Signature of Responsible Officer in Lead Agency: _[signed]_, Mayor     Date: 11/28/17

Signature of Preparer (if different from Responsible Officer):     Date:

**For Further Information:**

Contact Person: Mayor Allan Dorman

Address: 1100 Old Nicholas Road, Islandia, New York 11749

Telephone Number: 631-348-1133

E-mail: adorman@newvillageofislandia.com

**For Type 1 Actions and Conditioned Negative Declarations, a copy of this Notice is sent to:**

Chief Executive Officer of the political subdivision in which the action will be principally located (e.g., Town / City / Village of)
Other involved agencies (if any)
Applicant (if any)
Environmental Notice Bulletin: http://www.dec.ny.gov/enb/enb.html

PRINT FULL FORM          Page 2 of 2

# Environmental Assessment Form Part 3 Attachment

## Proposed Local Law Amending Section 177-3 B. Definitions and Attachments 5 and 7 of Chapter 177 the Islandia Village Code Chapter 177 to Provide for Hotel/Gaming Facility as a Permitted Use in the Village's Office/Industry District and to Establish Associated Parking Requirements

Introduction

The Environmental Assessment Form (EAF) Part 3 provides that *"[t]he lead agency must complete Part 3 for every question in Part 2...where there is a need to explain why a particular element of the proposed action will not...result in a significant adverse environmental impact."* This Attachment has been prepared accordingly, and provides additional information and explanation with respect to certain environmental aspects identified in Part 2 of the EAF.

The proposed action consists of the amendment of the Islandia Village Code as more particularly described in the legislation being considered by the Board of Trustees to, among other things, provide for *Hotel/Gaming Facility* as a permitted use in the Village's Office/Industry (OI) zoning district. The Village's OI district encompasses only a portion of the Village (approximately 70.5 acres, or five percent of the overall Village) and is generally established in active office and industrial development. A review of the proposed legislation and the existing conditions in the OI district indicate that a *Hotel/Gaming Facility* could only be established at the property known as 3635 Express Drive North (hereinafter, the "Hotel Property"). While there are currently 70.5 acres of OI-zoned properties, no other properties in the Village's OI district meet the specific use and dimensional criteria set forth in the proposed legislation as those properties are currently used and configured. Accordingly, while this EAF fully addresses the impacts associated with the overall proposed legislation, the analyses of potential environmental impacts of the proposed action emphasize the operation of a *Hotel/Gaming Facility* use at the Hotel Property situated at 3635 Express Drive North, as such impacts are uniquely reasonably foreseeable.

The existing use at the Hotel Property (i.e., a hotel with Video Lottery Terminals [VLTs], off-track simulcast facilities and a restaurant, etc.) was the result of the granting of a Special Permit by the Board of Trustees in August 2016. The Special Permit is currently being litigated, but the existing use continues to operate lawfully. At the time that the existing facility was proposed, whereby a VLT and off-track simulcast facility use was established within the Islandia Marriott Long Island Hotel, a comprehensive analysis was undertaken in accordance with the State Environmental Quality Review Act (SEQRA) and its implementing regulations at 6 NYCRR Part 617, with the Board of Trustees as the lead agency for the review. The review included, among other things, preparation of a Full Environmental Assessment Form (EAF), an Expanded Environmental Assessment (EA), a Traffic Impact and Parking Analysis Report (TIPA), and various other materials submitted by the applicant in that matter (i.e., Delaware North Islandia Properties, LLC) and its architect regarding the facility. The Expanded EA set forth a detailed description of the facility, and contained analyses of potential impacts to land use, zoning, community plans, traffic, vehicular site access, parking, and myriad other considerations associated with the Village's criteria for the granting of a Special Permit, including solid waste, sanitary waste, noise, lighting, and other potential impacts. The Expanded EA also set forth a summary of the various benefits of the Special Permit use, which remain applicable to the potential uses and development that could be permitted as a result of the current proposed action. These materials were reviewed as part of the evaluation of the proposed action.

Inasmuch as the proposed legislation can be reasonably expected to allow a *Hotel/Gaming Facility* at the Hotel Property and that no other properties within the Village currently could support such a use, the use allowed by the proposed legislation will be consistent with the use that is currently operating at the Hotel Property, and the conditions at the Hotel Property with the current use operating thereon are generally consistent with those anticipated and analyzed as part of the prior SEQRA review for the Special Permit application, it is expected that the potential adverse environmental impacts of the proposed legislation, which permits the *Hotel/Gaming Facility* use are similar to those analyzed in detail in the aforementioned Full EAF, Expanded EA, TIPA, etc., for the Special Permit application. The Board of Trustees ultimately adopted a Negative Declaration for the Special Permit application on August 12, 2016, upon its determination that the then-proposed use did not have the potential to result in a significant adverse environmental impact. A reasoned elaboration for its determination was set forth within the adopted Negative Declaration. The Board of Trustees acknowledges it has reviewed these materials and that the conclusions contained in the Negative Declaration and supporting analyses remain generally relevant to the current proposed action, i.e., enactment of the proposed Local Law, since the use permitted by the adoption of such Local Law could result in the continuation of such use.

Additional information regarding specific impact topics is provided below.

<u>Impact on Transportation</u>

A detailed assessment of traffic and parking conditions at the Hotel Property and throughout the surrounding neighborhood was undertaken at the time of the previous Special Permit application at the Hotel Property. The Board of Trustees understands the conditions at the now-operating facility at the Hotel Property to be similar to those anticipated during that prior review process, and as otherwise considered within the Negative Declaration adopted on August 12, 2016. The following findings of the TIPA that are expected to be relevant to the current proposed action include:

- The peak periods of traffic activity would occur on Friday and Saturday evenings, when the heaviest traffic on the roadway network has subsided.
- All study intersections would operate well with acceptable Levels of Service (LOS).
- Changes in the LOS at some intersections are reasonable and well within acceptable standards.
- Site access points are adequate for traffic levels into and out of the Hotel Property.

With respect to parking, the Negative Declaration adopted by the Board of Trustees anticipated that the demand for parking would be generally satisfied by the spaces on the Hotel Property, along with the use of valet parking. The Village has also made additional provisions for metered parking on public streets in commercial areas in the immediate vicinity of the Hotel Property.

Overall, no significant adverse traffic or parking conditions have been identified by the Board of Trustees at the existing operating facility at the Hotel Property, and none would be expected to result from enactment of the proposed Local Law.

<u>Impact on Noise, Odor and Light</u>

As indicated above, the reasonably foreseeable environmental impacts of the proposed action are expected to be similar to those evaluated as part of the review process for the previous Special Permit application at the Hotel Property. The analyses presented in the Expanded EA included an evaluation of the application's consistency with the Village's Special Permit criteria, including considerations of whether the facility "may

give off obnoxious gases, odors, smoke or soot" or "cause disturbing emissions of electrical discharges, dust, light, vibration or noise." As with that facility, the proposed action permitting such facility would provide for the establishment of a use that is harmonious with existing hotel uses, and would not involve manufacturing or industrial uses as may have the potential result in the aforementioned impacts. In the case of the Hotel Property, minimal exterior physical improvements were implemented, and none increased the potential for noise, odor or light impacts. Accordingly, no such impacts are expected to result from enactment of the proposed Local Law.

Consistency with Community Plans

The Lead Agency reviewed the aforementioned Expanded EA which included a consistency analysis of the (now operating) Special Permit use with the *Village of Islandia Comprehensive Plan Update* (August 2003). As with the existing facility at the Hotel Property, the proposed action does not contradict the recommendations of the Village's Comprehensive Plan. Moreover, the Board of Trustees anticipates that the adaptive reuse of developed parcels would be complimentary to and harmonious with existing uses, and would further the Village's overall goals of maintaining the vitality of the OI district.

Consistency with Community Character

The Lead Agency reviewed the Expanded EA evaluated the potential impacts of the facility at the Hotel Property upon community character, concluding that the existing facility is complimentary to and harmonious with the long-established hotel use, and that there would be no substantially noticeable differences in the building or property exterior upon the establishment of the facility at the Hotel Property. The peak hours of activity for the facility and the established hotel use are similar, and the net replacement of meeting and banquet spaces with gaming facilities partially accounted for potential overall changes in the level of activity at the Hotel Property. The same is expected to be true for the proposed Local Law. Moreover, the Board of Trustees anticipates that the adaptive reuse of developed parcels in the Village will encourage maintenance of the aesthetics and vitality of the Village and its economy, which are relevant Community Character considerations. Overall, the conversion of a hotel to a *Hotel/Gaming Facility* as provided for in the legislation would not necessarily result in changes in community character or any potential significant adverse environmental impacts associated therewith.