# CHAMBERS COPY

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Counsel for the Adjusted Debtor and Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 9 |
| SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION, | Case No. 12-43503-CEC |
| Adjusted Debtor. | |
| JENNIFER TOMASINO, KEVIN MONTANO, RICHARD MEYER, and APRYL L. MEYER, | |
| Plaintiffs, | |
| -against- | Adv. Proc. No. 18-1033-CEC |
| INCORPORATED VILLAGE OF ISLANDIA, BOARD OF TRUSTEES OF THE VILLAGE OF ISLANDIA, DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE NORTH, and SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION, | **ADJUSTED DEBTOR AND DEFENDANT SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| Defendants. | |

## INTRODUCTION

Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB") as and for its response to *Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law as Amplified by the Memorandum of Law in Support Thereof* ("Plaintiffs' Objections") [Dckt. No. 104] to the *Proposed Findings of Fact and Conclusions of Law* entered by the Bankruptcy Court on December 18, 2018 (the "Proposed Order") [Dckt. No. 100] hereby submits the following points of fact and law.

## PRELIMINARY STATEMENT

Rather than raising specific objections to the Proposed Order, Plaintiffs' Objections seek to re-create and embellish the record on summary judgment and reargue the summary judgment motions. Contrary to Federal Rule of Bankruptcy Procedure 9033, Plaintiffs' Objections fail to identify specific objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, and instead re-argue the points made during the summary judgment briefing and hearing arguments. Critically, Plaintiffs' Objections do not address the issues of alleged firearms, drug use, public intoxication, prostitution and other vices featured prominently in the Plaintiffs' Amended Complaint [Dckt. No. 43] and Declarations [Dckt. Nos. 69-72] cited as support for a permanent injunction. Chief Judge Carla E. Craig's concise and well-reasoned decision is supported by clear citations to the record and the law -- most of which are ignored by the Plaintiffs -- and none of which is rebutted.  Suffolk OTB respectfully requests that the District Court adopt the Bankruptcy Court's Proposed Order in its entirety and reject Plaintiffs' Objections.

## RESPONSES TO PLAINTIFFS' SPECIFIC OBJECTIONS

1.    **Objection No. 1.**
    Plaintiffs object to the Bankruptcy Court having made findings of fact in the Proposed Findings based upon judicial notice of facts. The Proposed Order does not specify any finding of fact upon which judicial notice was taken. Such finding

of fact were improperly made inasmuch as the role of the Bankruptcy Court in resolving Defendants' motions seeking summary dismissal of the first (zoning by contract) and second (spot zone) causes of action alleged in the Amended Complaint was to identify and not resolve issues of disputed material facts.

In the "Background" section of the Proposed Order, the Bankruptcy Court states undisputed facts *or* matters of which judicial notice may be taken. Every fact cited by the Bankruptcy Court is supported either directly with a citation to the record or is easily verified by the record, and as such, there were no "improperly made" findings of fact. As the Bankruptcy Court did not take judicial notice of any facts, and the Plaintiffs did not object to any of the stated facts in the Proposed Order, the statements are considered undisputed facts.

Under Rule 56, made applicable to this case by Federal Rules of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs cannot create a genuine issue of material fact simply by stating that one exists. Rather, Plaintiffs must support the assertion by citing to particular parts of materials in the record, or showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). Plaintiffs have done neither.

In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). As the nonmoving party, Plaintiffs must show "that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000). Having failed to point out any improper judicially noticed findings of fact as well as any genuine dispute of material facts, Plaintiffs have failed to support their objections and consequently, Objection No. 1 should be rejected.

2.    **Objection No. 2.**

Plaintiffs object to the Proposed Findings' recommendation that the contract zone claim be summarily dismissed because they failed to prove the existence of an agreement between the Village and Delaware North in advance of the Local Law No. 3-2017 ("Local Law")'s adoption which required the Village to adopt the Local Law. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the timing and circumstances upon which an agreement was made between the Village and Delaware North in conjunction with the Village's adoption of the Local Law pursuant to which the Village agreed to use its zoning powers to adopt the Local Law expressly designed to benefit only Delaware North with the formal execution of that agreement to be deferred until after the Local Law has been actually adopted. The Proposed Finding's factual and legal conclusion that no zoning by contract claim can succeed because Plaintiffs have not shown the existence of an agreement in advance of the Local Law being adopted is based upon the court having made improper and erroneous findings of fact that no such agreement existed despite evidence in the motion record showing otherwise.

As this Objection is directed towards Defendants Incorporated Village of Islandia (the "Village"), Board of Trustees of the Village of Islandia (the "Board"), and Delaware North Islandia, LLC ("Delaware North"), Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 2 as without merit.

3.    **Objection No. 3.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon the court's erroneous legal conclusion that no zoning by contact claim could be established in the absence of an express contract made in advance of the Local Law being adopted. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that an agreement had been made whereby the Village agreed in advance of the Local Law being adopted that it would adopt (not that it was required to adopt) the Local Law if Delaware North agreed that, upon the adoption of the Local Law in a form approved by Delaware North, Delaware North would formally enter into the Amended TRA after the Local Law was adopted whereby it would re-commit itself to abide by the Taxpayer Relief Agreement ("TRA"). The Village's subsequent ratification of that agreement by its formal execution of the Amended Taxpayer Relief Agreement ("Amended TRA") after the Local Law was adopted was also sufficient to establish the making of an agreement upon which a zoning by contract claim may be established.

As this Objection is directed towards the Village, the Board, and Delaware North, Suffolk

OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and

urges the District Court to reject Plaintiffs' Objections.

4.    **Objection No. 4.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicted because it was made in accordance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) ("Section 1316(6) agreement") or was otherwise an ordinary "mitigation agreement."  As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact which precluded summary determination that the Amended TRA qualified as a Section 1316(6) agreement or a mitigation agreement.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby

incorporates Delaware North's forthcoming responses and the Village's joinder and urges the

District Court to reject Plaintiffs' Objections.

Suffolk OTB states in further support of the Bankruptcy Court's Proposed Order that

Plaintiffs themselves admitted that "as part of the SUP Application, Delaware North included the

concept of impact mitigation as part of its proposal by way of an agreement to mitigate impacts

from the proposed VLT Facility." [Docket No. 76, ¶ 29].

As stated in Delaware North's Memorandum of Law in Support of Summary Judgment

[Dckt. No. 62-2], the TRA and Amended TRA are "host community agreements providing for the

mitigation of impacts under SEQRA…The TRA noted that the payments due from Delaware North

to the Village were to promote community development in the Village and to offset infrastructure,

public safety, and emergency services burdens on the Village as the result of the SUP Application."

Plaintiffs' own admissions at the November 28, 2018 Hearing on Defendants' Motions for

Summary Judgment further establish that Plaintiffs failed to establish contract zoning because

Plaintiffs acknowledged that host community agreements are permissible when there is no "tying of hands" of the legislative body, which is yet another issue on which Plaintiffs failed to establish a genuine issue of material fact (*See* November 28, 2018 Transcript Excerpts, 137:4-138:6, attached hereto as **Ex. A**):

> THE COURT: Okay. So you're saying that any time there's a host community agreement entered into in connection with a zoning amendment that that is illegal contract zoning. That's what you're saying.

> MR. BOROVINA: No, because -- and first of all let's talk about the facts of this case. The host community agreements in the context of a permit were that the permit is rescinded if the terms of the agreement are not honored. That is a host community agreement. In this particular case you cannot --

> THE COURT: Okay. But there are host community agreements that are entered into, not in connection with the giving of a permit, but rather in connection with a change in the zoning law.

> MR. BOROVINA: That's not -- if that is the case then that's not -- first of all that's not before the Court.

> THE COURT: Well this is.

> MR. BOROVINA: Well --

> THE COURT: There's a host community agreement entered into in connection with the change in the zoning law --

> MR. BOROVINA: And --

> THE COURT: -- and you're telling me that is always, always, always contract zoning.

> MR. BOROVINA: And what this case is, is whether or not under the standards applicable for a contract zone was this local law adopted in conjunction with the agreement that had the effect of tying of hands.

As set forth in greater detail in Delaware's North's forthcoming responses and the Village's forthcoming joinder to Delaware's North's responses to Plaintiffs' Objections, nowhere in either the TRA or the Amended TRA did the Village bind itself with respect to

the exercise of its legislative power, and Plaintiffs' Objections that there were disputed issues of fact regarding the TRA or the Amended TRA presented as Objection No. 4 should be rejected by this Court.

5.      **Objection No. 5.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicted because it represented an ordinary mitigation agreement, if not a Section 1316(6) agreement, whereby Delaware North agreed to provide the Village certain benefits or to satisfy conditions upon receipt of a favorable zoning determination. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that, no matter what euphemistic label is placed on the Amended TRA, the Village Board nevertheless adopted the Local Law in conjunction with an agreement whereby it agreed to bargain away its powers and tie its hands by agreeing to adopt the Local Law in the form approved in advance by Delaware North.

As this Objection is directed towards the Village, the Board, and Delaware North, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objections. Suffolk OTB further incorporates its response to Plaintiffs' Objection No. 4 by reference as if fully set forth herein. Consequently, Plaintiff's Objection No. 5 should be disregarded as without merit.

6.      **Objection No. 6.**

Plaintiffs Object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Plaintiffs have not and cannot establish a spot zone claim. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the sufficiency of the process the Village Board used to adopt the Local Law in accordance with State law prescribing the process by which zoning enactments may be considered and adopted.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 6 as without basis.

In further support of Suffolk OTB's request for the District Court to adopt the Proposed

Order in its entirety, Suffolk OTB notes that Plaintiffs, as they have attempted to do before,

purposefully confuse the record by deliberately misrepresenting and mischaracterizing Village

Mayor Dorman's testimony.  Plaintiffs state in their Memorandum of Law that "Mayor Dorman

also testified that he was not familiar with the 1995 Master Plan." [Dckt. No. 104-1 at 18] (citing

Dorman Dep. 134: 23–25).  Plaintiffs' Objections incorrectly refer to the "Comprehensive Plan"

as a "Master Plan," and when asked about the Comprehensive Plan during his deposition, Mayor

Dorman testified that he was familiar with the Comprehensive Plan, the 2003 Comprehensive Plan

Update, and that the Village's plan was considered during the process for adopting Local Law 3-

2017, along with the character of the community, surrounding land uses, and current zoning.

(Dorman Dep. 131:5-132:15; 166:22–167:3). *See also Asian Americans for Equal. v. Koch*, 72

N.Y.2d 121, 131 (1988) (A well-considered plan need not be contained in a single document;

indeed, it need not be written at all. The court may satisfy itself that the municipality has a well-

considered plan and that authorities are acting in the public interest to further it by examining all

available and relevant evidence of the municipality's land use policies.").

7.      **Objection No. 7.**

Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed because the process the Village Board used to adopt the Local Law was beyond judicial review on account of the withdrawal of a SEQRA challenge to the 2016 Negative Declaration that had been made in a prior State court Article 78 proceeding and the Amended Complaint's failure to allege a SEQRA claim. As discussed at length in the memorandum of Law accompanying this Objection, Plaintiffs were not required to state a SEQRA claim in the Amended Complaint and the sufficiency of the process of the Village Board used to adopt the Local Law was not beyond judicial review as to all matters relating to that process because the Amended Complaint did not allege a SEQRA-based claim.

The Plaintiffs' claim that the Bankruptcy Court erred in determining that Plaintiffs'

SEQRA claims were beyond judicial review at this time is ungrounded for several reasons.

First, SEQRA claims traditionally carry a four-month statute of limitations that begins to run from the time a local government completes its decision-making process. N.Y.C.P.L.R. § 217(1); *In re Town of Babylon v. N.Y.S. DOT*, 1997 NYLJ LEXIS 1472, at *6--7 (Sup. Ct. August 18, 1997); *Young v. Bd. of Tr. of the Vill. of Blasdell*, 89 NY2d 846 (1996). However, the statute of limitations for SEQRA violations allegedly committed by a village is limited to a mere thirty (30) days. N.Y. CLS §274-a(11).The Board passed Local Law 3-2017, signaling the end of its decision-making process on November 28, 2017. Plaintiffs challenged Local Law 3-2017 *on other grounds* in their Complaint dated February 12, 2018 and in their Amended Complaint on July 26, 2018. *Nowhere* in either pleading did Plaintiffs allege that the Board violated SEQRA or improperly performed an environmental assessment. Suffolk OTB disputes the existence of any SEQRA violation, but even if one existed, Plaintiffs were required to challenge Local Law 3-2017 within thirty (30) days of the Board's decision to pass Local Law 3-2017, which ran on December 28, 2017. Given that Plaintiffs failed to assert the SEQRA claim -- or even provide notice to the Defendants of their intent to argue a SEQRA claim -- within the statute of limitations, the Plaintiffs waived any claim regarding any possible SEQRA violations.

Second, Plaintiffs' allegations in the Complaint and Amended Complaint were insufficient to put Defendants on "fair notice of what the plaintiff's claim is and the grounds upon which it rests" as required by the Federal Rules of Bankruptcy and Civil Procedure. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Nowhere* in the Complaint or Amended Complaint did Plaintiffs mention, reference, or cite SEQRA. Defendants are not required to anticipate every possible cause of action that Plaintiffs might seek. For Plaintiffs to expect to recover under SEQRA when Plaintiffs failed to mention, reference, or even allude to SEQRA in any of their pleadings, deprives Defendants of their due process rights to an opportunity to defend themselves.

Moreover, Plaintiffs attempt to address SEQRA in the context of a spot zoning argument is a non-sequitur. The test for spot zoning is clear: a zoning change is not an illegal spot zone if it was passed pursuant to a well-considered comprehensive plan. *Collard v. Flower Hill*, 52 N.Y. 2d 594, 600 (N.Y. 1981). Plaintiffs fail to show how any alleged SEQRA violation is relevant to whether Local Law 3-2017 is an unlawful spot zone.  Plaintiffs' attempts to argue that the SEQRA violation bears on an unlawful spot argument is a feeble attempt to resurrect Plaintiffs' unasserted SEQRA claims in an impermissible way.

Third, even if Plaintiffs had not procedurally waived a SEQRA claim, they are not entitled to relief because Plaintiffs failed to provide any authority to support their assertion that the Board improperly relied on the 2016 Negative Declaration to guide its decision to pass Local Law 2-2017. To the contrary, SEQRA requires that any local government action requires an environmental assessment. However, several sufficiently similar government activities can constitute a singular governmental action for SEQRA purposes, necessitating only one SEQRA environmental assessment. *See Scott v. City of Buffalo*, 16 Misc. 3d 259, 267--68 (Sup. Ct. Erie Cnty. 2006). The Department of Environmental Conservation ("DEC") enumerated eight factors that a local government should consider in deciding whether two activities should be considered a single action and therefore only require one environmental analysis:

1. Purpose: Is there a common purpose or goal for each segment?;
2. Time: is there a common reason for each segment being completed at or about the same time?;
3. Location: Is there a common geographic location involved?;
4. Impacts: Do any of the activities being considered for segmentation, while not necessarily significant by themselves, contribute toward significant cumulative or synergistic impacts?;
5. Ownership: Are the different segments under the same ownership or control?;
6. Planning: Is a given segment a component of an identifiable overall plan?;
7. Utility: Can any of the interrelated phases of various projects be considered functionally dependent on each other?; and

8. Inducement: Does the approval of one phase or segment commit the agency to approval of other phases?

*Scott*, 16 Misc. 2d at 267--68 (citing SEQRA Handbook, Department of Environmental Conservation). Given that the VLT Facility has the same environmental impact whether it was converted to a VLT Facility pursuant to a special permit or Local Law 3-2017, the answers to all eight of the above-enumerated factors are identical with regard to the VLT Facility and its environmental impact. Furthermore, SEQRA itself mandates that "agencies must carry out the terms and requirements of this Part [requiring environmental assessments] with minimum procedural and administrative delay, must **avoid unnecessary duplication of reporting and review requirements by providing, where feasible, for combined or consolidated proceedings,** and must expedite all SEQRA proceedings in the interest of prompt review." 6 N.Y.C.R.R. §317.3(h) (emphasis added). Accordingly, the Board followed SEQRA's mandate to preserve resources and efficiently determine the environmental impacts of a single project, the VLT Facility, when they relied on the 2016 Negative Declaration in deciding to pass Local Law 3-2017.

Finally, even had Plaintiffs provided notice of a SEQRA claim in their Complaint or Amended Complaint, such a claim would have been procedurally defective because Plaintiffs should have brought such a claim through an Article 78 proceeding, not a Verified Complaint.

Given that Plaintiffs failed to plead a SEQRA claim in a timely manner, and likewise failed to provide Defendants with sufficient notice of such a claim, Defendants were deprived of the opportunity to defend themselves regarding SEQRA claims and; therefore, the Bankruptcy Court properly held that the SEQRA claims were beyond the scope of review. Thus, Plaintiffs' Objection No. 7 should be rejected.

**8.      Objection No. 8.**

Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board was not required to consider other locations and hotels, such as the Hampton Inn located within the Office/Industrial District. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that the Proposed Findings made improper and erroneous findings of fact and conclusions of law to excuse the Village Board from being required to consider other locations for a gaming facility or other use because no other hotel or other landowner was seeking to operate a Gaming Facility within the Village's borders.

As this Objection is directed towards the Village and Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 8.

9.    **Objection No. 9.**

Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed because their challenge to the Local Law for want of uniformity was not specifically pled as a separate cause of action. As discussed at length in the memorandum of law accompanying this Objection, the Amended Complaint satisfied Fed. R. Civ. Proc. Rule 8's requirement for notice-pleading sufficient to bring up for judicial review the Local Law's invalidity for want of uniformity.

Plaintiffs asserted that the Office/Industrial District's zoning regulations lack uniformity for the first time in response to the summary judgment motions. A party may not assert a new theory or cause of action for the first time in response to a motion for summary judgment. *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (citing *Greenridge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006)); *see also Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("As a threshold matter, courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment."); *Rochester v. Blue Cross & Blue Shield*, No. 98-CV-2436 (ILG), 2000 WL 1052064, at *6 (E.D.N.Y. June 27, 2000) ("[C]ourts in this District have consistently ruled that it is inappropriate to raise new claims

for the first time in submissions in opposition to summary judgment."); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542(GBD), 2004 WL 2914093, at *6--7 (S.D.N.Y. Dec. 15, 2004) (holding that "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered" (internal citations omitted)). The Bankruptcy Court correctly recommended that Plaintiffs' new claim predicated on a uniformity theory must be denied.

Plaintiffs attempt to "read-into" their Amended Complaint their uniformity theory by contending that paragraphs 58 and 59 of the Amended Complaint "allege[ ] that the use permitted by the Local Law is unique and extraordinary," and that the Local Law establishes an "unprecedented use" within the Village, and that "these allegations, taken separately or read in conjunction with the other allegations in the Amended Complaint, give fair notice" of Plaintiffs' challenge to the Local Law for want of uniformity. [Dckt. No. 104, pp. 54]. However, pursuant to Federal Rule of Civil Procedure 8, made applicable here by Federal Rule of Bankruptcy Procedure 7008, the conclusion that authorized use is unique and extraordinary is insufficient to put Suffolk OTB on notice that Plaintiffs intended to, predicated only on vague "revelations" in these two paragraphs, pursue a violation of N.Y. Village Law § 7-702 under a want of uniformity theory.

The pleading requirements of the Federal Rules of Bankruptcy and Civil Procedure are designed to provide Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Amended Complaint does not mention N.Y. Village Law § 7-702 in either

general or explicit terms, nor include the word "uniform" or any derivative thereof.[1] [*See generally* Dckt. No. 43]. The general allegation that the VLT Facility's use is "unique and extraordinary" does not impute the requirements of N.Y. Village Law § 7-702, nor does it state the elements of a claim thereunder.[2] Plaintiffs accordingly failed to place Defendants on notice that it would be defending against a uniformity claim and the Bankruptcy Court properly refused to consider it. *See Rochester*, 2000 WL 1052064, at *6; *Southwick Clothing LLC*, 2004 WL 2914093, at *6--7. Consequently, Plaintiffs' Objection No. 9 should be disregarded as without merit.

10. **Objection No. 10.**

Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board retained the option of amending the Village Code to prevent the proliferation of the unwanted gaming use in the event another hotel is granted a gaming license by New York State and in a manner that does not meet the requirements of the Local Law. As discussed at length in the memorandum of law accompanying the Objection, the Village Board's ability to prevent the expansion of gaming uses of lands located within its borders would have no effect on the right of Premises' owner to continue to use the Premises as a gaming facility despite the enactment of local laws intending to limit or disallow expansion of a future gaming use.

---

[1] Plaintiffs' contentions not only misunderstand the notice pleading requirements of Federal Rule of Civil Procedure 8, but misunderstand what is contemplated by achieving "uniformity" in a given district pursuant to N.Y. Village Law § 7-702. Even if Plaintiffs' uniformity claim were properly pled, the claim fails on its merits. Plaintiffs acknowledge that any prohibition on any other parcel's use as a VLT Facility (i.e., any lack of uniformity) comes not from any regulation of the Village Board, but instead is derived from application of New York state law. See Racing, Pari-Mutuel Wagering and Breeding Law § 1300 *et seq.*, as added by L. 2013, Ch. 174 (regulating regional zones for gaming use). Plaintiffs have acknowledged that these regulations are promulgated by the State of New York in prior briefings. [*See* Dckt. No. 78, pp. 24-25 (discussing supposed impact of New York regulations on gaming facilities in the Village)]. Accordingly, the Local Law does not fail uniformly to apply any regulation to the Premises -- any regulation which disparately impacts the Premises and/or the VLT Facility is promulgated by the State of New York.

[2] In fact, Plaintiffs' contentions regarding the "unique" and "extraordinary" nature of the use demonstrates further failures of this argument on the merits. Plaintiffs' reliance on *Augenblick v. Town of Cortlandt*, 104 A.D.2d 806 (3d Dept't 1984), *rev'd sub nom. Matter Augenblick*, 66 N.Y.2d 775 (1985) further undermines their spot zoning claim. The *Augenblick* dissent reiterates the exceptions to uniformity requirements which apply here, by specifying that an ordinance is "held to uniformity if the record does not disclose any reasonable basis for different treatment among similar parcels within a district," and that "[w]here specialized circumstances exist for certain property within a district the uniformity rule may be bent," citing *Church v. Town of Islip*, 8 N.Y.2d 254, 168 N.E.2d 680 (1960). Such specialized circumstances undeniably are present in this case, as only one VLT license -- to Suffolk OTB -- has been granted in the county by the State of New York.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 10.

## FURTHER STATEMENT OF SUFFOLK OTB

11.     **Plaintiffs' Failure to Prevail on their Substantive Claims Prevents the Issuance of a Permanent Injunction.**

Though ignored in Plaintiffs' Objections, Suffolk OTB reiterates that plaintiffs -- as here -- seeking a permanent injunction must **prove** that they will **actually succeed on the merits** of their underlying claim before a court may grant a permanent injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008); *Amoco Prod. Co. v. Vill. of Gambell*, 408 U.S. 531, 546 n. 12 (1987); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981); *State Troopers Fraternal Ass'n of N.J. v. New Jersey State Troopers Fraternal Ass'n of N.J. v. New Jersey*, 585 Fed. Appx. 828, 830 (3d Cir. 2014) (non-binding precedent); *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011); *Michigan v. United States Army Corps. of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011); *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1365 (Fed. Cir. 2008); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004); *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324--25 (Fed. Cir. 2004); *Bimbo Bakeries USA, Inc. v. Sycamore,* No. 2:13-cv-00749-DN-DBP, 2008 WL 1578115, at *3--4 (D. Utah March 29, 2018); *Skold v. Galderma Labs., L.P.*, No. 14-5280, 2017 U.S. Dist. LEXIS 139217, at *46 (August 29, 2017); *Doculynx, Inc. v. ICB Consulting,* N. 16-cv-00365-RM-STV, 2016 U.S. Dist. LEXIS 192501, at *9 (D. Colo. Dec. 6, 2016); *Tiramisu Int'l LLC v. Clever Imps. LLC*, 741 F. Supp. 2d 1279, 1287 n. 4 (S.D. Fla. 2010); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 96 Civ. 9721 (PKL) (THK), 2005 WL 147364, at *17--19 (S.D.N.Y. Jan. 24, 2005); *NRDC v. Evans*, 364 F. Supp. 2d 1083, 1139 (N.D. Cal. 2003); *N.Y. State Soc'y of CPAs v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 335 (S.D.N.Y. 1999); *Greenpeace Found. v.*

*Mineta*, 122 F.Supp. 2d 1123, 1136 (Dist. Haw. 2000); *Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008).

An injunction is an *extraordinary remedy* that must not be routinely granted: "It goes without saying that an injunction is an equitable remedy. It is 'not a remedy which issues as a matter of course.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311--312 (1982) (quoting *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337--38 (1933); *See also, Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 584 (2d Cir. 1989); *Congress Fin. Corp. v. A-Z Rx LLC*, No. 9-03-82321-ess, 2012 Bankr. LEXIS 5607, at *86--87 (E.D.N.Y. Bankr. Dec. 3, 2012); Ochs *v. Lipson*, 238 B.R. 9, 20--21 (E.D.N.Y. Bankr. 1999); *Jordan v. Metro Life Ins. Co.*, 280 F. Supp. 2d 104, 108 (S.D.N.Y. 2003); *Securities & Exchange Comm. v. Bausch & Lomb, Inc.*, 420 F. Supp. 1126, 1245 (S.D.N.Y. 1976).

As discussed in detail in the Affidavit of Celine M. Gazes in Support of Suffolk OTB's Motion for Summary Judgment (the "Gazes Affidavit") [Dckt. No. 64], if a permanent injunction is granted, Suffolk OTB will suffer extreme hardship. If a permanent injunction closes the Suffolk OTB video lottery terminals known as Jake's 58 (the "VLT Facility"), Suffolk OTB will be unable to pay its future obligations under the Confirmed Plan (totaling over twenty million dollars ($20,000,000), economic contributions to the Village will cease, and Suffolk OTB will be forced to lay off the approximately two hundred (200) local residents it employs in the VLT Facility. Furthermore, if Suffolk OTB is prohibited from continuing to operate the VLT Facility, the New York State Education Fund will be deprived of valuable future revenue.[3]  Suffolk County, New York is guaranteed approximately thirteen million dollars ($13,000,000) from Suffolk OTB during the first ten (10) years of Suffolk's operation in the Village, and Suffolk OTB remains on pace to

---

[3] As of September 2018, the VLT Facility operated by Suffolk OTB contributed $120,848,925 to the State Education Fund. *See* Gaming Commission, NEW YORK STATE (https://www.gaming.ny.gov/about/index.php?ID=3).

fulfill this obligation. Indeed, at the current level of operations, the payments to Suffolk County will be substantially in excess of that amount. However, if Suffolk OTB is forced to relocate the VLT Facility, Suffolk County will not receive future revenue from Suffolk OTB for many months, if not years.

Given the undisputed resultant harm to Suffolk OTB of a permanent injunction detailed in the Gazes Affidavit, and Plaintiffs' utter failure to address this issue, the record overwhelmingly supports Chief Judge Craig's decision that the claim for permanent injunction must be dismissed.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, and for those stated in the forthcoming responses from Delaware North, the Village, and the Board, Suffolk Regional Off-Track Betting Corporation respectfully requests that the District Court adopt the Bankruptcy Court's *Proposed Findings of Fact and Conclusions of Law* [Dckt. No. 100] in their entirety, reject Plaintiffs' Objections thereto, and enter the Proposed Order dismissing this case.

Dated: White Plains, New York
        January 18, 2019

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By:  _/s/ Christopher F. Graham_____
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.

10 Bank Street, Suite 700
White Plains, New York 10606
(914) 949-2909
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Attorneys for the Adjusted Debtor and
Defendant Suffolk Regional Off-Track Betting
Corporation*

**To: ALL COUNSEL OF RECORD (via ECF)**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 18, 2019, I caused true and correct copies of the *Adjusted Debtor and Defendant Suffolk Regional Off-Track Betting Corporation's Response to Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* be served via ECF upon all parties registered to receive service in this case.

*/s/ Christopher F. Graham*_____
Christopher F. Graham, Esq.

# EXHIBIT "A"

1   UNITED STATES BANKRUPTCY COURT

2   EASTERN DISTRICT OF NEW YORK

3   - - - - - - - - - - - - - - - - - x

4   In the Matter of:

5       SUFFOLK REGIONAL OFF-TRACK        CASE NO. 1-12-43503-ccc

6       BETTING CORPORATION,

7       Debtor.

8   - - - - - - - - - - - - - - - - - x

9   TOMASINO, ET AL

10  v.                                   CASE NO. 1-18-01033-ccc

11  INCORPORATED VILLAGE OF ISLANDIA, ET AL

12  - - - - - - - - - - - - - - - - - x

13                      United States Bankruptcy Court

14                      Brooklyn Federal Courthouse

15                      271-C Cadman Plaza East

16                      Brooklyn, New York  11201-1800

17

18                      NOVEMBER 28, 2018

19                      2:13 PM

20

21  B E F O R E:

22  HON. CARLA E. CRAIG

23  U.S. BANKRUPTCY JUDGE

24

25

1  HEARING Matter:  (759) Motion to Object/Reclassify/

2  Reduce/Expunge Claims - Claim No. 52, filed by Joan Bohn in the

3  amount of $20,000

4

5  HEARING Matter:  (114) Order Scheduling Status Conference for

6  the purpose of determining an appropriate schedule for the

7  proper administration of this case

8

9  HEARING Matter:  (1) Notice of Removal

10

11  HEARING Matter:  (64) Motion for Summary Judgment (related

12  document(s)(63), (62)

13

14  HEARING Matter:  (82) Motion to Strike/Preclude Joinder to

15  Delaware Norths Motion and Memorandum of Law in Support of

16  Motion to Strike/Preclude (related document(s) (80)

17

18  HEARING Matter:  (63) Motion for Summary Judgment filed by

19  Jarrett M. Behar on behalf of Board of Trustees of the

20  Incorporated Village of Islandia, Incorporated Village of

21  Islandia (related document(s)(62)

22

23  HEARING Matter:  (83) Motion to Strike Declarations of Stephen

24  M. Jones and Neil Munro Filed by Jarrett M. Behar on behalf of

25  Board of Trustees of the Incorporated Village of Islandia,

1    And I say with a straight face, I'm not going to give you a

2    dime and there's nothing you can do about it.  I have a

3    continued right to use it.

4              THE COURT:  Okay.  So you're saying that any time

5    there's a host community agreement entered into in connection

6    with a zoning amendment that that is illegal contract zoning.

7    That's what you're saying.

8              MR. BOROVINA:  No, because -- and first of all let's

9    talk about the facts of this case.

10             The host community agreements in the context of a

11   permit were that the permit is rescinded if the terms of the

12   agreement are not honored.  That is a host community agreement.

13             In this particular case you cannot --

14             THE COURT:  Okay.  But there are host community

15   agreements that are entered into, not in connection with the

16   giving of a permit, but rather in connection with a change in

17   the zoning law.

18             MR. BOROVINA:  That's not -- if that is the case then

19   that's not -- first of all that's not before the Court.

20             THE COURT:  Well this is.

21             MR. BOROVINA:  Well --

22             THE COURT:  There's a host community agreement

23   entered into in connection with the change in the zoning

24   law --

25             MR. BOROVINA:  And --

1          THE COURT:  -- and you're telling me that is always,

2    always, always contract zoning.

3          MR. BOROVINA:  And what this case is, is whether or

4    not under the standards applicable for a contract zone was this

5    local law adopted in conjunction with the agreement that had

6    the effect of tying of hands.

7          THE COURT:  Okay.

8          MR. BOROVINA:  If that standard is met I submit that

9    is a contract zone.

10          THE COURT:  So --

11          MR. BOROVINA:  The argument that's being raised now -

12    -

13          THE COURT:  Okay.

14          MR. BOROVINA:  -- is -- the point that's being raised

15    now -- maybe -- I understand what the point is -- gee, is it

16    possible -- let's assume it is -- that host community

17    agreements are done in connection with -- they may very well

18    have been done in connection with zoning laws because the owner

19    gratuitously decides to give the money, that's fine, that's not

20    what -- the Village did not adopt the local law thinking, you

21    know something, we're going to

22    -- and the agreement doesn't say that -- we are going to

23    continue the use in perpetuity and it's okay if the Village

24    decides -- if Delaware North decides to walk away and -- or

25    worse yet they sell the property or they go bankruptcy,