# U.S. Bankruptcy Court
## Eastern District of New York (Brooklyn)
## Adversary Proceeding #: 1–18–01033–cec

*Assigned to:* Carla E. Craig                                    *Date Filed:* 03/14/18
*Lead BK Case:* 12–43503
*Lead BK Title:* Suffolk Regional Off–Track Betting
Corporation
*Lead BK Chapter:* 9
*Demand:*
    *Nature[s] of Suit:*   72  Injunctive relief –
                                other
                            91  Declaratory judgment

### Plaintiff
—————————————————————

**Jennifer Tomasino**                    represented by  **Anton Borovina**
                                                        225 Broad Hollow Road
                                                        Suite 300
                                                        Melville, NY 11747
                                                        631–630–1101
                                                        Email: ajb@borovinalaw.com
                                                        *LEAD ATTORNEY*

                                                        **Anton J Borovina**
                                                        Law Office of Anton J. Borovina
                                                        225 Broadhollow Road
                                                        Ste. 303
                                                        Melville, NY 11747
                                                        631–630–1101
                                                        Fax : 631–465–8935
                                                        Email: ajb@borovinalaw.com

                                                        **Paul Sabatino II**
                                                        1617 New York Ave.
                                                        Huntington Station, NY 11746

### Plaintiff
—————————————————————

**Kevin Montano**                        represented by  **Anton Borovina**
                                                        225 Broad Hollow Road
                                                        Suite 300
                                                        Melville, NY 11747
                                                        631–630–1101
                                                        Email: ajb@borovinalaw.com
                                                        *LEAD ATTORNEY*

                                                        **Anton Borovina**
                                                        225 Broad Hollow Road
                                                        Suite 300
                                                        Melville, NY 11747
                                                        6316301101
                                                        Email: ajb@borovinalaw.com

                                                        **Anton J Borovina**
                                                        (See above for address)

                                                    **Paul Sabatino II**
                                                    (See above for address)

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−
**Richard Meyer**                    represented by **Anton Borovina**
                                                    225 Broad Hollow Road
                                                    Suite 300
                                                    Melville, NY 11747
                                                    631−630−1101
                                                    Email: ajb@borovinalaw.com
                                                    *LEAD ATTORNEY*

                                                    **Anton J Borovina**
                                                    (See above for address)

                                                    **Paul Sabatino II**
                                                    (See above for address)

*Plaintiff*
−−−−−−−−−−−−−−−−−−−−−−
**Apryl L. Meyer**                   represented by **Anton Borovina**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*

                                                    **Anton J Borovina**
                                                    (See above for address)

                                                    **Paul Sabatino II**
                                                    (See above for address)

V.

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−
**Incorporated Village of Islandia**  represented by **Jarrett M Behar**
Village Hall                                        Sinnreich Kosakoff & Messina, LLP
1100 Old Nichols Road                               267 Carleton Avenue, Ste. 301
Islandia, NY 11749                                  Central Islip, NY 11722
                                                    (631) 650−1200
                                                    Email: jbehar@skmlaw.net

                                                    **Joseph W. Prokop**
                                                    Village Hall
                                                    1100 Old Nichols Road
                                                    Islandia, NY 11749
                                                    *LEAD ATTORNEY*

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−
**Board of Trustees of the Incorporated**  represented by **Jarrett M Behar**
**Village of Islandia**                               (See above for address)
Village Hall
1100 Old Nichols Road                              **Joseph W. Prokop**
Islandia, NY 11749                                 (See above for address)
                                                   *LEAD ATTORNEY*

*Defendant*
––––––––––––––––––––––
**Delaware North Islandia Properties, LLC**                represented by  **Carmine J Castellano**
3635 Express Drive North                                                                  Hodgson Russ LLP
Islandia, NY 11749                                                                          1540 Broadway
*aka* **Delaware North**                                                                    24th Floor
                                                                                                          New York, NY 10036
                                                                                                          212–751–4300
                                                                                                          Fax : 212–751–0928
                                                                                                          Email: ccastell@hodgsonruss.com

                                                                                                          **Patrick T Collins**
                                                                                                          Farrell Fritz
                                                                                                          1320 RXR Plaza
                                                                                                          Uniondale, NY 11556
                                                                                                          (516) 227–0700
                                                                                                          Fax : (516) 227–0777
                                                                                                          Email: pcollins@farrellfritz.com

                                                                                                          **Charles W. Malcomb, II**
                                                                                                          Hodgson Russ LLP
                                                                                                          140 Pearl Street
                                                                                                          Buffalo, NY 14202
                                                                                                          716–848–1261
                                                                                                          Fax : 716–849–0349
                                                                                                          Email: cmalcomb@hodgsonruss.com

                                                                                                          **Joseph W. Prokop**
                                                                                                          (See above for address)
                                                                                                          *LEAD ATTORNEY*

                                                                                                          **Daniel A. Spitzer**
                                                                                                          Hodgson Russ LLP
                                                                                                          140 Pearl Street
                                                                                                          Buffalo, NY 14202
                                                                                                          716–848–1420
                                                                                                          Fax : 716–819–4650
                                                                                                          Email: dspitzer@hodgsonruss.com

                                                                                                          **John C. Stellakis**
                                                                                                          Farrell Fritz, P.C.
                                                                                                          100 Motor Parkway, Suite 138
                                                                                                          Suite 138
                                                                                                          Hauppauge, NY 11788
                                                                                                          631–367–0717
                                                                                                          Fax : 631–367–0787
                                                                                                          Email: jstellakis@farrellfritz.com

                                                                                                          **Richard L Weisz**
                                                                                                          Hodgson Russ LLP
                                                                                                          677 Broadway
                                                                                                          Suite 301
                                                                                                          Albany, NY 12207
                                                                                                          518–465–2333
                                                                                                          Fax : 518–465–1567
                                                                                                          Email: rweisz@hodgsonruss.com

*Defendant*
––––––––––––––––––––––––
**Suffolk Regional Off–Track Betting**                    represented by  **Christopher F Graham**

**Corporation**

Eckert Seamans Cherin & Mellott, LLC
10 Bank Street
Suite 700
White Plains, NY 10606
914–286–6443
Fax : 914–949–5424
Email: cgraham@eckertseamans.com

**Kelly Robreno Koster**
Eckert Seamans Cherin & Mellott LLC
10 Bank St
Suite 700
White Plains, NY 10606
914–286–6430
Fax : 914–949–5424
Email: kkoster@eckertseamans.com

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/14/2018 | | 1 | Adversary case 1–18–01033. Notice of Removal *by Adjusted Debtor Suffolk Regional Off–Track Betting Corporation of the Action filed* by Jennifer Tomasino, Kevin Montano, Richard Meyer, Apryl L. Meyer. Fee Amount $350. Nature(s) of Suit: (72 (Injunctive relief – other)), (91 (Declaratory judgment)). (Attachments: # 1 Exhibit A # 2 Exhibit B) (Graham, Christopher) (Entered: 03/14/2018) |
| 03/14/2018 | | 2 | Letter *Status Update* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corp. (Graham, Christopher) (Entered: 03/14/2018) |
| 03/15/2018 | | | Receipt of Notice of Removal(1–18–01033–cec) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt number 16443956. Fee amount 350.00. (re: Doc# 1) (U.S. Treasury) (Entered: 03/15/2018) |
| 04/11/2018 | | 3 | Notice of Pre–Trial Conference Pre–Trial Conference set for 5/2/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY.(RE: related document(s)1 Notice of Removal filed by Plaintiff Jennifer Tomasino, Plaintiff Kevin Montano, Plaintiff Richard Meyer, Plaintiff Apryl L. Meyer) (nds) (Entered: 04/11/2018) |
| 04/13/2018 | | 4 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 04/13/2018. (Admin.) (Entered: 04/14/2018) |
| 04/24/2018 | | 5 | Notice of Appearance and Request for Notice Filed by Kelly Robreno Koster on behalf of Suffolk Regional Off–Track Betting Corp. (Koster, Kelly) (Entered: 04/24/2018) |
| 04/30/2018 | | 6 | Letter *To Judge Craig* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corp. (Graham, Christopher) (Entered: 04/30/2018) |
| 05/01/2018 | | 7 | Letter Requesting An Adjournment Filed by Anton Borovina on behalf of Apryl L. Meyer , Richard Meyer , Jennifer Tomasino (RE: related document(s)3 Notice of Pre–Trial Conference Re: Notice of Removal) (cns) (Entered: 05/01/2018) |
| 05/01/2018 | | 8 | Letter of Adjournment: Hearing rescheduled from May 2, 2018 at 2:00 p.m. to May 30, 2018 at 2:00 p.m. Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corp. (RE: related |

4

| | | | |
|---|---|---|---|
| | | | document(s)1 Notice of Removal filed by Plaintiff Jennifer Tomasino, Plaintiff Kevin Montano, Plaintiff Richard Meyer, Plaintiff Apryl L. Meyer) (Graham, Christopher) (Entered: 05/01/2018) |
| 05/02/2018 | | | Adjourned Without Hearing (related document(s): 3 Notice of Pre–Trial Conference Re: Notice of Removal) Pre–Trial Conference set for 05/30/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 05/02/2018) |
| 05/18/2018 | | 9 | Notice of Entry *of Short Form Order issued in Case Index No. 602780/2018, Supreme Court of the State of New York, Suffolk County (the "Third State Court Action") by Justice William G. Ford on May 14, 2018 and filed on May 18, 2018 (the "Intervention Order"). The Intervention Order grants the Order to Show Cause Motion of Suffolk Regional Off Track Betting Corporation (the "Adjusted Debtor") under New York CPLR 1012 to intervene in the Third State Court Actkion as of right..(see furhter order attached)* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corp. (Graham, Christopher) (Entered: 05/18/2018) |
| 05/24/2018 | | 10 | Amended Complaint Post–Intervention Notice of Removal by Kelly Robreno Koster on behalf of Suffolk Regional Off–Track Betting Corp. against all plaintiffs.(RE: related document(s)9 Notice of Entry filed by Defendant Suffolk Regional Off–Track Betting Corp.) (Attachments: # 1 Exhibit A – State Court Complaint # 2 Exhibit B– Restated State Court Notice of Removal) (Koster, Kelly) (Entered: 05/24/2018) |
| 05/29/2018 | | 11 | Notice of Appearance and Request for Notice Filed by Carmine J Castellano on behalf of Delaware North Islandia Properties, LLC (Castellano, Carmine) (Entered: 05/29/2018) |
| 05/29/2018 | | 12 | Notice of Appearance and Request for Notice Filed by Richard L Weisz on behalf of Delaware North Islandia Properties, LLC (Weisz, Richard) (Entered: 05/29/2018) |
| 05/30/2018 | | | Hearing Held and Adjourned; (related document(s): 3 Notice of Removal) – Appearances: Christopher F Graham Representing Debtor, Daniel Spitzer of Counsel, Kelly Koster and Sarah Morrissey Representing Debtor, Mark Bradley, Anthony Guardino Representing Creditor, Andrew Eckstein Representing Post–Effective – Pre–Trial Conference set for 07/11/2018 at 01:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY – Court to issue scheduling order (tleonard) (Entered: 06/05/2018) |
| 06/08/2018 | | 13 | Answer to Complaint Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corp. (Graham, Christopher) (Entered: 06/08/2018) |
| 06/08/2018 | | 14 | Statement */ Rule 7007.1 Disclosure Statement of Delaware North Islandia Properties, LLC* Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (Collins, Patrick) (Entered: 06/08/2018) |
| 06/08/2018 | | 15 | Answer to Complaint Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (Collins, Patrick) (Entered: 06/08/2018) |
| 06/08/2018 | | 16 | Answer to Complaint Filed by Jarrett M Behar on behalf of Board of Trustees of the Village of Islandia, Incorporated Village of Islandia, Gerald Peters (Behar, Jarrett) (Entered: 06/08/2018) |

| | | | |
|---|---|---|---|
| 06/08/2018 | | 17 | Motion to Dismiss Third, Fourth and Fifth Causes of Action Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (related document(s)10). Hearing scheduled for 7/11/2018 at 04:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Attachments: # 1 Notice of Motion) (Collins, Patrick) – Incorrect time at top of Notice – Modified on 6/11/2018 (ads). (Entered: 06/08/2018) |
| 06/08/2018 | | 18 | Motion to Dismiss Adversary Proceeding *Motion to Dismiss Third, Fourth, and Fifth Causes of Action* Filed by Jarrett M Behar on behalf of Board of Trustees of the Village of Islandia, Incorporated Village of Islandia, Gerald Peters (related document(s)10). Hearing scheduled for 7/11/2018 at 04:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Behar, Jarrett) (Entered: 06/08/2018) |
| 06/08/2018 | | 19 | Motion to Dismiss Adversary Proceeding *Joinder in Delaware North Motion to Dismiss [ECF No. 17]*. Objections to be filed on June 22, 2018. Filed by Kelly Robreno Koster on behalf of Suffolk Regional Off–Track Betting Corp.. Hearing scheduled for 7/11/2018 at 01:00 PM (check with court for location). (Koster, Kelly) (Entered: 06/08/2018) |
| 06/11/2018 | | 20 | Order Amending Caption. Signed on 6/11/2018 (ads) (Entered: 06/12/2018) |
| 06/11/2018 | | 21 | Scheduling Order Extending Time for Defendants to File Answer on or before June 8, 2018; on or before June 22, 2018, the above captioned plaintiffs shall file any opposition to any motion filed by the Defendants; on or before July 3, 2018, the Defendants shall file and serve any reply; initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure, made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure, shall be made by July 6, 2018; the parties shall appear for a pre–trial conference and a hearing on any motion filed by the Defendants on July 11, 2018 at 4:00 p.m. Signed on 6/11/2018 (ads) (Entered: 06/12/2018) |
| 06/12/2018 | | 22 | Affidavit of Service Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher). Related document(s) 16 Answer to Complaint. Modified on 6/14/2018 (ads). (Entered: 06/12/2018) |
| 06/12/2018 | | 23 | Amended Notice of Motion/Presentment *Motion to Dismiss Third, Fourth, and Fifth Causes of Action*. Objections to be filed on 7/6/18. Hearing on Objections, if any, will be held on: 7/11/18. Filed by Board of Trustees of the Village of Islandia, Incorporated Village of Islandia, Gerald Peters. (Related doc 17,18,19) Hearing scheduled for 7/11/2018 at 04:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Behar, Jarrett) Modified on 6/14/2018 (ads). (Entered: 06/12/2018) |
| 06/12/2018 | | 24 | Amended Notice of Motion/Presentment *for Defendant's Motion to Dismiss*. Objections to be filed on June 22, 2018. Filed by Delaware North Islandia Properties, LLC. (Related doc 17) Hearing scheduled for 7/11/2018 at 04:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Collins, Patrick) Modified on 6/14/2018 (ads). (Entered: 06/12/2018) |
| 06/13/2018 | | 25 | Supplemental Affidavit/Certificate of Service *for Documents Filed on June 8, 2018* Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC) (Collins, Patrick) (Entered: 06/13/2018) |

| | | | |
|---|---|---|---|
| 06/13/2018 | | 26 | Affidavit/Certificate of Service *of Amended Notice of Motion* Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC) (Collins, Patrick) (Entered: 06/13/2018) |
| 06/13/2018 | | 27 | Supplemental Affidavit/Certificate of Service Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC) (Collins, Patrick) (Entered: 06/13/2018) |
| 06/14/2018 | | 28 | BNC Certificate of Mailing with Notice of Amended Caption Notice Date 06/14/2018. (Admin.) (Entered: 06/15/2018) |
| 06/22/2018 | | 29 | Memorandum of Law in Opposition Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC, 18 Motion to Dismiss Adversary Proceeding filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Village of Islandia, Defendant Gerald Peters, 19 Motion to Dismiss Adversary Proceeding filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Attachments: # 1 Appendix Order of N.Y.S. Supreme Court (Ford, J.)) (Borovina, Anton) (Entered: 06/22/2018) |
| 06/30/2018 | | 30 | NOTICE GENERATED ON MAIN CASE #12–43503 – Transcript & Notice regarding the hearing held on 05/30/2018. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency].. Notice of Intent to Request Redaction Due By 07/9/2018. Redaction Request Due By 07/23/2018. Redacted Transcript Submission Due By 07/31/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 09/28/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (AAA Write It Right Transcription) Modified on 7/2/2018 (ads). (Entered: 06/30/2018) |
| 07/03/2018 | | 31 | Notice of Appearance and Request for Notice Filed by John C. Stellakis on behalf of Delaware North Islandia Properties, LLC (Stellakis, John) (Entered: 07/03/2018) |
| 07/03/2018 | | 32 | Reply *Memorandum of Law in Further Support of Motion to Dismiss Third, Fourth and Fifth Causes of Action* Filed by Carmine J Castellano, Richard L Weisz, John C. Stellakis on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC) (Stellakis, John) (Entered: 07/03/2018) |
| 07/03/2018 | | 33 | Motion to Dismiss Adversary Proceeding *Joinder to Delaware North's Reply and Statement in Further Support* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation. Hearing scheduled for 7/11/2018 at 04:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Graham, Christopher) (Entered: 07/03/2018) |
| 07/05/2018 | | 34 | Motion for Charles W. Malcomb, II to Appear Pro Hac Vice for Delaware North Islandia Properties, LLC a/k/a Delaware North. Fee Amount $150. Filed by Charles W. Malcomb II on behalf of Delaware North Islandia |

| | | | |
|---|---|---|---|
| | | | Properties, LLC. (Attachments: # 1 Affidavit of Charles W. Malcolm, II in Support of Motion for Admission pro hac vice # 2 Certificates of Good Standing # 3 Proposed Order Proposed Order for Admission pro hac vice) (Malcomb, Charles) (Entered: 07/05/2018) |
| 07/05/2018 | | | Receipt of Motion to Appear Pro Hac Vice(1–18–01033–cec) [motion,mprohac] ( 150.00) Filing Fee. Receipt amount 16851233. Fee amount 150.00. (re: Doc# 34) (U.S. Treasury) (Entered: 07/05/2018) |
| 07/06/2018 | | 35 | Defendant Suffolk Regional Off–Track Betting Corporation's Rule 7026(A) Initial Disclosures Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation. (Graham, Christopher) Modified on 7/9/2018 (ads). (Entered: 07/06/2018) |
| 07/09/2018 | | 36 | Affidavit Re: *Plaintiffs' Rule 26 Initial Disclosures* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (Borovina, Anton) (Entered: 07/09/2018) |
| 07/10/2018 | | 37 | Motion for Daniel A. Spitzer to Appear Pro Hac Vice for Defendant Delaware North Islandia Properties, LLC. Fee Amount $150. Filed by Daniel A. Spitzer on behalf of Delaware North Islandia Properties, LLC. (Attachments: # 1 Affidavit Affidavit in Support of Motion to Admit Counsel pro hac vice # 2 Proposed Order Proposed Order for Admission to Practice pro hac vice # 3 Exhibit Spitzer Certificates of Good Standing) (Spitzer, Daniel) (Entered: 07/10/2018) |
| 07/10/2018 | | | Receipt of Motion to Appear Pro Hac Vice(1–18–01033–cec) [motion,mprohac] ( 150.00) Filing Fee. Receipt number 16865226. Fee amount 150.00. (re: Doc# 37) (U.S. Treasury) (Entered: 07/10/2018) |
| 07/11/2018 | | | Hearing Held and Adjourned; (related document(s): 1 Notice of Removal) – Appearances: Andrew B. Eckstein Representing Creditors' Committee, Christopher F Graham Representing Debtor, Charles Malcomb Representing Delaware North Islandia Properties, Carmine Castellano Representing Delawae North Islandia Properties, Jarrett Behar Representing Incorporated Village of Islandia, John C. Stellakis Representing Delaware North Islandia Properties, LLC – Pre–Trial Conference set for 10/17/2018 at 03:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) Modified on 7/13/2018 (ads). (Entered: 07/12/2018) |
| 07/11/2018 | | | Hearing Held; (related document(s): 17 Motion to Dismiss Third, Fourth and Fifth Causes of Action Filed by Patrick T Collins on behalf of Delaware North Islandia Properties, LLC (related document(s) 10). – Appearances: Andrew B. Eckstein Representing Creditors' Committee, Christopher F Graham Representing Debtor, Charles Malcomb Representing Delaware North Islandia Properties, Carmine Castellano Representing Delaware North Islandia Properties, Jarrett Behar Representing Incorporated Village of Islandia, John C. Stellakis Representing Delaware North Islandia Properties, LLC – Granted in Part; Decision Reserved with respect to the Third Cause of Action (tleonard) (Entered: 07/12/2018) |
| 07/11/2018 | | | Hearing Held; (related document(s): 33 Motion to Dismiss Adversary Proceeding Joinder to Delaware Norths Reply and Statement in Further Support Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation.) – Appearances: Andrew B. Eckstein Representing Creditors' Committee, Christopher F Graham Representing Debtor, Charles Malcomb Representing Delaware North Islandia |

| | | | |
|---|---|---|---|
| | | | Properties, Carmine Castellano Representing Delawae North Islandia Properties, Jarrett Behar Representing Incorporated Village of Islandia, John C. Stellakis Representing Delaware North Islandia Properties, LLC – Granted in Part; Decision Reserved with respect to the Third Cause of Action (tleonard) (Entered: 07/12/2018) |
| 07/11/2018 | | | Hearing Held; (related document(s): 18 Motion to Dismiss Adversary Proceeding Motion to Dismiss Third, Fourth, and Fifth Causes of Action Filed by Jarrett M Behar on behalf of Board of Trustees of the Village of Islandia, Incorporated Village of Islandia, Gerald Peters (related document(s) 10) – Appearances: Andrew B. Eckstein Representing Creditors' Committee, Christopher F Graham Representing Debtor, Charles Malcomb Representing Delaware North Islandia Properties, Carmine Castellano Representing Delawae North Islandia Properties, Jarrett Behar Representing Incorporated Village of Islandia, John C. Stellakis Representing Delaware North Islandia Properties, LLC – Granted in Part; Decision Reserved with respect to the Third Cause of Action (tleonard) (Entered: 07/12/2018) |
| 07/11/2018 | | | Hearing Held; (related document(s): 19 MMotion to Dismiss Adversary Proceeding Joinder in Delaware North Motion to Dismiss [ECF No. 17]) – Appearances: Andrew B. Eckstein Representing Creditors' Committee, Christopher F Graham Representing Debtor, Charles Malcomb Representing Delaware North Islandia Properties, Carmine Castellano Representing Delawae North Islandia Properties, Jarrett Behar Representing Incorporated Village of Islandia, John C. Stellakis Representing Delaware North Islandia Properties, LLC – Granted in Part; Decision Reserved with respect to the Third Cause of Action (tleonard) (Entered: 07/12/2018) |
| 07/16/2018 | | 38 | Scheduling Order. The plaintiffs shall file and serve an amended complaint by July 25, 2018; by August 1, 2018, the defendants shall file and serve motions or answers to the amended complaint; the parties shall serve all written document requests by August 15, 2018; all written responses to discovery requests and production of documents shall be provided by September 8, 2018; the parties shall appear for a pre–trial conference on October 17, 2018 at 4:00PM; all dispositive motions shall be filed and served by October 27, 2018, and scheduled for a hearing on November 22, 2018 at 4:00PM; opposition to dispositive motions shall be filed and served by November 10, 2018; any reply shall be filed and served by November 17, 2018; a trial, if any, shall be held on December 19, 2018 at 10:00AM; the parties shall file a statement by August 1, 2018 stating whether the parties consent to entry of judgment by this Court. Signed on 7/16/2018. Discovery due by 10/17/2018. (aac) (Entered: 07/17/2018) |
| 07/18/2018 | | 39 | Notice of Settlement of Proposed Order; Order to be settled for Filed by Delaware North Islandia Properties, LLC. (Malcomb, Charles) (Entered: 07/18/2018) |
| 07/19/2018 | | 40 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 07/19/2018. (Admin.) (Entered: 07/20/2018) |
| 07/25/2018 | | 41 | [NOTICE GENERATED ON MAIN CASE 12–43503–cec] – Transcript & Notice regarding the hearing held on 07/11/18. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 1 Notice of Removal, 17 Motion to Dismiss Adversary Proceeding, 18 Motion to |

| | | | |
|---|---|---|---|
| | | | Dismiss Adversary Proceeding, 19 Motion to Dismiss Adversary Proceeding, 33 Motion to Dismiss Adversary Proceeding). Notice of Intent to Request Redaction Due By 08/1/2018. Redaction Request Due By 08/15/2018. Redacted Transcript Submission Due By 08/27/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 10/23/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (Compuscribe, Inc) Modified on 7/26/2018 (ads). (Entered: 07/25/2018) |
| 07/25/2018 | | 42 | [NOTICE GENERATED ON MAIN CASE 12–43503–cec] – Transcript & Notice regarding the hearing held on 07/11/18. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 17 Motion to Dismiss Adversary Proceeding, 18 Motion to Dismiss Adversary Proceeding, 19 Motion to Dismiss Adversary Proceeding, 33 Motion to Dismiss Adversary Proceeding). Notice of Intent to Request Redaction Due By 08/1/2018. Redaction Request Due By 08/15/2018. Redacted Transcript Submission Due By 08/27/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 10/23/2018 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (Veritext) Modified on 7/26/2018 (ads). (Entered: 07/25/2018) |
| 07/26/2018 | | 43 | Amended Complaint regarding allegations relating to balancing of equities and hardship by Anton Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino against Board of Trustees of the Village of Islandia, Delaware North Islandia Properties, LLC, Incorporated Village of Islandia, Gerald Peters, Suffolk Regional Off–Track Betting Corporation.(RE: related document(s)1 Notice of Removal filed by Plaintiff Jennifer Tomasino, Plaintiff Kevin Montano, Plaintiff Richard Meyer, Plaintiff Apryl L. Meyer) (mna) (Entered: 07/26/2018) |
| 07/31/2018 | | 44 | Statement *Of Consent to Entry of Judgment By This Court of Suffolk Regional Off–Track Betting Corporation* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) (Entered: 07/31/2018) |
| 08/01/2018 | | 45 | Statement *of Non–Consent to Entry of Judgement* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (Borovina, Anton) (Entered: 08/01/2018) |
| 08/01/2018 | | 46 | Response To Amended Complaint Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher). Related document(s) 43 Amended Complaintiff Richard Meyer, Plaintiff Apryl L. Meyer. Modified on 8/1/2018 (tml). (Entered: 08/01/2018) |
| 08/01/2018 | | 47 | Answer to Amended Complaint *with Affirmative Defenses* Filed by Jarrett M Behar on behalf of Board of Trustees of the Village of Islandia, Incorporated Village of Islandia (Behar, Jarrett) (Entered: 08/01/2018) |
| 08/01/2018 | | 48 | Answer to Amended Complaint Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC (Malcomb, Charles) (Entered: 08/01/2018) |
| 08/01/2018 | | 49 | Statement *of Consent to Entry of Judgment by this Court* Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC |

| | | | |
|---|---|---|---|
| | | | (Malcomb, Charles) (Entered: 08/01/2018) |
| 08/02/2018 | | 50 | Order Dismissing Plaintiff's Fourth and Fifth Causes of Action, Reserving Decision on Defendants' Motion to Dismiss Plaintiffs' Third Cause of Action, Dismissing Gerald Peters as a Defendant, and Amending the Caption; Plaintiffs have until July 26, 2018 to replead their Fifth Cause of Action; if Plaintiffs serve an Amended Complaint, Defendants will have until August 6, 2018 to answer or move to dismiss said Amended Complaint. (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC). Signed on 8/2/2018 (ads) (Entered: 08/03/2018) |
| 08/03/2018 | | 51 | Answer to Amended Complaint *Amended Answer to Amended Complaint* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) (Entered: 08/03/2018) |
| 08/05/2018 | | 52 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 08/05/2018. (Admin.) (Entered: 08/06/2018) |
| 08/27/2018 | | 53 | Notice of Appearance and Request for Notice Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) (Entered: 08/27/2018) |
| 09/07/2018 | | 54 | Stipulation and Order Regarding the production and exchange of confidential information (RE: related document(s)38 Scheduling Order). Signed on 9/7/2018 (ads) (Entered: 09/07/2018) |
| 09/27/2018 | | 55 | Order Dismissing the Third Cause of Action for the reasons stated in this Courts decision dated September 27, 2018 (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC). Signed on 9/27/2018 (ads) (Entered: 09/28/2018) |
| 09/27/2018 | | 56 | Decision Dismissing Third Cause of Action. A separate order will issue. (RE: related document(s)17 Motion to Dismiss Adversary Proceeding filed by Defendant Delaware North Islandia Properties, LLC). Signed on 9/27/2018 (ads) (Entered: 09/28/2018) |
| 09/28/2018 | | 57 | Affirmation of Service (RE: related document(s)56 Decision Dismissing Third Cause of Action) (nds) (Entered: 09/28/2018) |
| 09/30/2018 | | 58 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 09/30/2018. (Admin.) (Entered: 10/01/2018) |
| 10/15/2018 | | | Hearing Scheduled; Re: Issue arising at deposition – Hearing scheduled for 10/15/2018 at 11:00 AM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tml) (Entered: 10/15/2018) |
| 10/15/2018 | | | Hearing Held; (related document(s): Re: Issue arising at deposition) – Anton Borovina Representing Plaintiff, Christopher Graham and Michael Stanton Representing Debtors, Charles Walcomb Represeting Delaware North Islandia Properties (tleonard) (Entered: 10/19/2018) |
| 10/16/2018 | | 59 | Letter Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) (Entered: 10/16/2018) |
| 10/17/2018 | | | |

| | | | |
|---|---|---|---|
| | | | Hearing Held and Adjourned; (related document(s): 3 Notice of Pre–Trial Conference Re: Notice of Removal) Pre–Trial Conference set for 11/28/2018 at 01:30 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (tleonard) (Entered: 10/21/2018) |
| 10/24/2018 | | 60 | Amended Scheduling Order; all discovery shall be completed by October 24, 2018; all dispositive motions shall be filed and served by October 29, 2018, and scheduled for a hearing on November 28, 2018 at 2:00 p.m.; opposition to dispositive motions shall be filed and served by November 12, 2018; any reply shall be filed and served by November 19, 2018; a trial, if any, shall be held on December 19, 2018 at 10:00 a.m. (RE: related document(s)38 Scheduling Order). Signed on 10/24/2018. Discovery due by 10/24/2018. (ads) (Entered: 10/25/2018) |
| 10/27/2018 | | 61 | BNC Certificate of Mailing with Application/Notice/Order Notice Date 10/27/2018. (Admin.) (Entered: 10/28/2018) |
| 10/29/2018 | | 62 | Motion For Summary Judgment Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC. Hearing scheduled for 11/28/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY.). (Attachments: # 1 Defendant Delaware North's Statement of Material Facts # 2 Delaware North's Memorandum of Law in Support of Motion for Summary Judgment # 3 Declaration of Daniel A. Spitzer # 4 Spitzer Decl., Ex. A # 5 Spitzer Decl., Ex. B # 6 Spitzer Decl., Ex. C # 7 Spitzer Decl., Ex. D # 8 Spitzer Decl., Ex. E # 9 Spitzer Decl., Ex. F # 10 Spitzer Decl., Ex. G # 11 Declaration of Mayor Allan M. Dorman # 12 Dorman Decl., Ex. A # 13 Dorman Decl., Ex. B (Part 1) # 14 Dorman Decl., Ex. B (Part 2) # 15 Dorman Decl., Ex. B (Part 3) # 16 Dorman Decl., Ex. C # 17 Dorman Decl., Ex. D # 18 Dorman Decl., Ex. E # 19 Dorman Decl., Ex. F # 20 Dorman Decl., Ex. G # 21 Declaration of Michael Zaleski # 22 Zaleski Decl., Ex. A # 23 Zaleski Decl., Ex. B # 24 Zaleski Decl., Ex. C (Part 1) # 25 Zaleski Decl., Ex. C (Part 2) # 26 Zaleski Decl., Ex. D # 27 Zaleski Decl., Ex. E # 28 Zaleski Decl., Ex. F # 29 Certificate of Service) (Malcomb, Charles) (Entered: 10/29/2018) |
| 10/29/2018 | | 63 | Motion For Summary Judgment Filed by Jarrett M Behar on behalf of Board of Trustees of the Incorporated Village of Islandia, Incorporated Village of Islandia (related document(s)62). Hearing scheduled for 11/28/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Attachments: # 1 Declaration of Jarrett M. Behar, Esq. in Support of Motion for Summary Judgment on Behalf of Defendants Incorporated Village of Islandia and Board of Trustees of the Incorporated Village of Islandia) (Behar, Jarrett) (Entered: 10/29/2018) |
| 10/29/2018 | | 64 | Motion For Summary Judgment Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (related document(s)63, 62). Hearing scheduled for 11/28/2018 at 02:00 PM at 271–C Cadman Plaza East, Room 4529, Brooklyn, NY. (Graham, Christopher) (Entered: 10/29/2018) |
| 10/29/2018 | | 65 | BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT. (related document(s)63, 64, 62). (Graham, Christopher) (Entered: 10/29/2018) |
| 10/29/2018 | | 66 | STATEMENT OF MATERIAL FACTS REQUIRED PURSUANT TO LOCAL RULE 7056–1 Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (related document(s)63, 64, 65, 62). (Graham, Christopher) (Entered: 10/29/2018) |

| | | | |
|---|---|---|---|
| 10/29/2018 | | <u>67</u> | DECLARATION OF CHRISTOPHER F. GRAHAM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF SUFFOLK REGIONAL OFF–TRACK BETTING CORPORATION Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (related document(s)<u>63</u>, <u>64</u>, <u>65</u>, <u>62</u>, <u>66</u>). (Attachments: # <u>1</u> DECLARATION) (Graham, Christopher) (Entered: 10/29/2018) |
| 10/29/2018 | | <u>68</u> | AMENDED STATEMENT OF MATERIAL FACTS REQUIRED PURSUANT TO LOCAL RULE 7056–1. (Graham, Christopher) (Entered: 10/29/2018) |
| 11/12/2018 | | <u>69</u> | Opposition Affidavit in Opposition Jennifer Tomasino Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)<u>62</u> Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, <u>63</u> Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, <u>64</u> Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | <u>70</u> | Opposition Affidavit in Opposition Kevin Montano Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)<u>62</u> Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, <u>63</u> Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, <u>64</u> Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | <u>71</u> | Opposition Affidavit in Opposition Richard Meyer Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)<u>62</u> Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, <u>63</u> Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, <u>64</u> Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton). (Entered: 11/12/2018) |
| 11/12/2018 | | <u>72</u> | Opposition Affidavit in Opposition Apryl Meyers Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)<u>62</u> Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, <u>63</u> Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, <u>64</u> Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Attachments: # <u>1</u> Affidavit Crime Media Reports # <u>2</u> Exhibit Newsday.1.31.15 # <u>3</u> Exhibit Newsday.1.27.18 # <u>4</u> Exhibit SCPD I of III # <u>5</u> Exhibit SCPD II of III # <u>6</u> Exhibit SCPD III of III) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | <u>73</u> | Opposition Affidavit in Opposition *Stephen M. Jones* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)<u>62</u> Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, <u>63</u> Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, <u>64</u> Motion for Summary Judgment filed by Defendant Suffolk |

| | | | |
|---|---|---|---|
| | | | Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | 74 | Opposition Affidavit in Opposition *Neil Munro* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | 75 | Opposition Affidavit in Opposition *Anton J. Borovina* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Attachments: # 1 Exhibit Vill. Code References # 2 Exhibit DN_VLT Application # 3 Exhibit Emails # 4 Exhibit Emails # 5 Exhibit Email # 6 Exhibit Email # 7 Exhibit Letter # 8 Exhibit Vill Bd. Res.12.5.17 # 9 Exhibit LL 4–2008 # 10 Exhibit Wortman Dep. Excerpts # 11 Exhibit Iannucci Dep. Excerpts # 12 Exhibit Dorman Dep. Excerpts) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | 76 | Opposition Response Rule 56.1 Counter–Statement_DN Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | 77 | Opposition Response Rule 56.1 Counter–Statement_SOTB Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/12/2018 | | 78 | Opposition Memorandum of Law in Opposition to Defendants Rule 56 Motion Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Borovina, Anton) (Entered: 11/12/2018) |
| 11/14/2018 | | 79 | Amended Affidavit in Opposition Jones Decl. inclusive of Exhs. A and B Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)62 Motion |

| | | | |
|---|---|---|---|
| | | | for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Attachments: # 1 Exhibit Jones. Exh. A_ CV # 2 Exhibit Jnes Exh. B_Retainer) (Borovina, Anton) (Entered: 11/14/2018) |
| 11/14/2018 | | 80 | Motion to Strike */Preclude* Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC. Hearing scheduled for 11/28/2018 at 02:00 PM at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Attachments: # 1 Memorandum of Law in Support of Motion to Strike/Preclude # 2 Declaration of Daniel A. Spitzer # 3 Spitzer Decl., Ex. A # 4 Spitzer Decl., Ex. B # 5 Certificate of Service) (Malcomb, Charles) (Entered: 11/14/2018) |
| 11/15/2018 | | 81 | Exhibit (E–Mail Exchanges) Filed by Anton Borovina on behalf of Apryl L. Meyer , Richard Meyer , Kevin Montano , Jennifer Tomasino (RE: related document(s)75 Opposition ) (nds) (Entered: 11/15/2018) |
| 11/15/2018 | | 82 | Motion to Strike/Preclude Joinder to Delaware North's Motion and Memorandum of Law in Support of Motion to Strike/ Preclude Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (related document(s)80). (Graham, Christopher) (Entered: 11/15/2018) |
| 11/15/2018 | | 83 | Motion to Strike *Declarations of Stephen M, Jones and Neil Munro*. Objections to be filed on 11/21/18. Filed by Jarrett M Behar on behalf of Board of Trustees of the Incorporated Village of Islandia, Incorporated Village of Islandia (related document(s)80, 82). Hearing scheduled for 11/28/2018 at 02:00 PM at Courtroom 3529 (Judge Craig), Brooklyn, NY. (Behar, Jarrett) (Entered: 11/15/2018) |
| 11/19/2018 | | 84 | Reply *Memorandum of Law in Further Support of Delaware North's Motion for Summary Judgment* Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC) (Attachments: # 1 Declaration of Charles W. Malcomb # 2 Malcomb Decl., Ex. A # 3 Certificate of Service) (Malcomb, Charles) (Entered: 11/19/2018) |
| 11/19/2018 | | 85 | Opposition Memorandum of Law in Opposition *Defs. Motion to Strike/Preclude* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)80 Motion to Strike filed by Defendant Delaware North Islandia Properties, LLC, 82 Motion to Strike filed by Defendant Suffolk Regional Off–Track Betting Corporation, 83 Motion to Strike filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia) (Borovina, Anton) (Entered: 11/19/2018) |
| 11/19/2018 | | 86 | Opposition Affidavit in Opposition *Borovina Declaration* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)80 Motion to Strike filed by Defendant Delaware North Islandia Properties, LLC, 82 Motion to Strike filed by Defendant Suffolk Regional Off–Track Betting Corporation, 83 Motion to Strike filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia) (Attachments: # 1 Exhibit Pls. Initial Disclosures # 2 Exhibit Pls. DN Doc. Resp. # 3 Exhibit Emails # 4 Exhibit Emails # 5 Exhibit emails # 6 Exhibit |

| | | | |
|---|---|---|---|
| | | | emails # 7 Exhibit emails) (Borovina, Anton) (Entered: 11/19/2018) |
| 11/19/2018 | | 87 | Reply *Memorandum of Law in Further Support of Suffolk Regional Off–Track Betting Corporation's Motion for Summary Judgment* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (RE: related document(s)65 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Attachments: # 1 Exhibit Jones' Curriculum Vitae) (Graham, Christopher) (Entered: 11/19/2018) |
| 11/19/2018 | | 88 | Reply to Plaintiffs' Counter–statement of Material Facts Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (RE: related document(s)66 STATEMENT OF MATERIAL FACTS REQUIRED PURSUANT TO LOCAL RULE 7056–1, 68 AMENDED STATEMENT OF MATERIAL FACTS REQUIRED PURSUANT TO LOCAL RULE 7056–1) (Graham, Christopher) (Entered: 11/19/2018) |
| 11/19/2018 | | 89 | Amended Response *Memo. of Law in Opposition to Motion to Strike/Preclude* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)80 Motion to Strike filed by Defendant Delaware North Islandia Properties, LLC, 82 Motion to Strike filed by Defendant Suffolk Regional Off–Track Betting Corporation, 83 Motion to Strike filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia) (Borovina, Anton) (Entered: 11/19/2018) |
| 11/19/2018 | | 90 | Amended Affirmation in Opposition *Declaration of Anton J. Borovina* Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (RE: related document(s)80 Motion to Strike filed by Defendant Delaware North Islandia Properties, LLC, 82 Motion to Strike filed by Defendant Suffolk Regional Off–Track Betting Corporation, 83 Motion to Strike filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia) (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit) (Borovina, Anton) (Entered: 11/19/2018) |
| 11/23/2018 | | 91 | (NOTICE GENERATED ON LEAD CASE # 12–43503) Transcript & Notice regarding the hearing held on 10/17/18. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 1 Notice of Removal). Notice of Intent to Request Redaction Due By 11/30/2018. Redaction Request Due By 12/14/2018. Redacted Transcript Submission Due By 12/24/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 02/21/2019 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (Writers Cramp, Inc) Modified on 11/26/2018 (mem). (Entered: 11/23/2018) |
| 11/26/2018 | | 92 | (Duplicate of #66) – Statement of Undisputed Facts *LOCAL RULE 7056–1 STATEMENT* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) Modified on 11/28/2018 (tml). (Entered: 11/26/2018) |
| 11/26/2018 | | 93 | Reply *Declaration* Filed by Jarrett M Behar on behalf of Board of Trustees of the Incorporated Village of Islandia, Incorporated Village of Islandia (RE: related document(s)83 Motion to Strike filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the |

| | | | |
|---|---|---|---|
| | | | Incorporated Village of Islandia) (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit) (Behar, Jarrett) (Entered: 11/26/2018) |
| 11/26/2018 | | 94 | Reply *Declaration of Charles W. Malcomb* Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)80 Motion to Strike filed by Defendant Delaware North Islandia Properties, LLC) (Attachments: # 1 Reply Memorandum of Law in Further Support of Motion to Strike/Preclude) (Malcomb, Charles) (Entered: 11/26/2018) |
| 11/27/2018 | | 95 | Affidavit/Certificate of Service Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (RE: related document(s)64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation) (Graham, Christopher) (Entered: 11/27/2018) |
| 11/30/2018 | | 96 | Transcript & Notice regarding the hearing held on 11/28/18. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 1 Notice of Removal, 62 Motion for Summary Judgment, 63 Motion for Summary Judgment, 64 Motion for Summary Judgment, 80 Motion to Strike, 82 Motion to Strike, 83 Motion to Strike). Notice of Intent to Request Redaction Due By 12/7/2018. Redaction Request Due By 12/21/2018. Redacted Transcript Submission Due By 12/31/2018. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 02/28/2019 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (eScribers LLC) (Entered: 11/30/2018) |
| 12/05/2018 | | 97 | Transcript & Notice regarding the hearing held on 11/28/18. Pursuant to the new policy adopted by the Judicial Conference, transcripts are available for inspection only at the Office of the Clerk or may be purchased from the court transcriber. [Please see the court's website for contact information for the Transcription Service Agency]. (RE: related document(s) 1 Notice of Removal, 62 Motion for Summary Judgment, 63 Motion for Summary Judgment, 64 Motion for Summary Judgment, 80 Motion to Strike, 82 Motion to Strike, 83 Motion to Strike). Notice of Intent to Request Redaction Due By 12/12/2018. Redaction Request Due By 12/26/2018. Redacted Transcript Submission Due By 01/7/2019. TRANSCRIPT ACCESS WILL BE ELECTRONICALLY RESTRICTED THROUGH 03/5/2019 AND MAY BE VIEWED AT THE OFFICE OF THE CLERK. (Veritext) (Entered: 12/05/2018) |
| 12/05/2018 | | 98 | BNC Certificate of Mailing with Notice of Filing of Official Transcript (AP) Notice Date 12/05/2018. (Admin.) (Entered: 12/06/2018) |
| 12/09/2018 | | 99 | BNC Certificate of Mailing with Notice of Filing of Official Transcript (AP) Notice Date 12/09/2018. (Admin.) (Entered: 12/10/2018) |
| 12/17/2018 | | 100 | Proposed Findings of Fact and Conclusions of Law; For the foregoing reasons, it is recommended that the Defendants' summary judgment motions be granted. (RE: related document(s)62 Motion for Summary Judgment filed by Defendant Delaware North Islandia Properties, LLC, 63 Motion for Summary Judgment filed by Defendant Incorporated Village of Islandia, Defendant Board of Trustees of the Incorporated Village of Islandia, 64 Motion for Summary Judgment filed by Defendant Suffolk Regional Off–Track Betting Corporation). Signed on 12/17/2018 (ads) (Entered: 12/18/2018) |

| | | | |
|---|---|---|---|
| 12/19/2018 | | [101] | Affirmation of Service (RE: related document(s)100 Proposed Findings of Fact and Conclusions of Law) (nds) (Entered: 12/19/2018) |
| 12/21/2018 | | [102] | First Motion to Extend Time to file Objections to the Proposed Findings of Fact and Conclusions of Law Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino. (Borovina, Anton). (Related document(s) 100 Proposed Findings of Fact and Conclusions of Law). Modified on 12/27/2018 (ads). (Entered: 12/21/2018) |
| 01/03/2019 | | [103] | Order Granting the application to extend the time to file objections to the Proposed Finding of Fact and Conclusions of Law until 1/7/2019 (Related Doc # 102). Signed on 1/3/2019. (mna) (Entered: 01/03/2019) |
| 01/07/2019 | | [104] | First Objection to Proposed Findings of Fact and Conclusions of Law Filed by Anton J Borovina on behalf of Apryl L. Meyer, Richard Meyer, Kevin Montano, Jennifer Tomasino (Attachments: # 1 Memorandum of Law in Support of Objections) (Borovina, Anton). (Related document(s) 100 Proposed Findings of Fact and Conclusions of Law). Modified on 1/8/2019 (ads). (Entered: 01/07/2019) |
| 01/18/2019 | | [105] | Response *Response Adjusted Debtor and Defendant Suffolk Regional Off–Track Betting Corporation's Response To Plaintiff's Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) (Entered: 01/18/2019) |
| 01/18/2019 | | [106] | Response *Corrected filing of Doc #105 Response Adjusted Debtor and Defendant Suffolk Regional Off–Track Betting Corporation's Response To Plaintiff's Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* Filed by Christopher F Graham on behalf of Suffolk Regional Off–Track Betting Corporation (Graham, Christopher) (Entered: 01/18/2019) |
| 01/21/2019 | | [107] | Response *by Defendant Delaware North Islandia Properties LLC to Plaintiffs' Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* Filed by Charles W. Malcomb II on behalf of Delaware North Islandia Properties, LLC (RE: related document(s)104 Objection filed by Plaintiff Jennifer Tomasino, Plaintiff Kevin Montano, Plaintiff Richard Meyer, Plaintiff Apryl L. Meyer) (Attachments: # 1 Certificate of Service) (Malcomb, Charles) (Entered: 01/21/2019) |
| 01/21/2019 | | [108] | Response *of Incorporated Village of Islandia and Board of Trustees of the Incorporated Village of Islandia to Plaintiffs' Objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* Filed by Jarrett M Behar on behalf of Board of Trustees of the Incorporated Village of Islandia, Incorporated Village of Islandia (RE: related document(s)104 Objection filed by Plaintiff Jennifer Tomasino, Plaintiff Kevin Montano, Plaintiff Richard Meyer, Plaintiff Apryl L. Meyer) (Behar, Jarrett) (Entered: 01/21/2019) |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
In re

                                       Case No. 12-43503-CEC

Suffolk Regional Off-Track Betting Corporation,

                                       Chapter 9

                             Debtor.
-----------------------------------------------------------------------X
Jennifer Tomasino, Kevin Montano, Richard Meyer,
and Apryl L. Meyer,

                             Plaintiffs,

-against-                                  Adv. Pro. No. 18-1033-CEC

Incorporated Village of Islandia, Board of Trustees
of the Incorporated Village of Islandia, Delaware
North Islandia Properties, LLC aka Delaware North,
and Suffolk Regional Off-Track Betting Corporation,

                             Defendants.
-----------------------------------------------------------------------X

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

19

APPEARANCES:

Anton J. Borovina, Esq.
Law Office of Anton J. Borovina
225 Broadhollow Road, Ste. 303
Melville, NY 11747
Attorney for Plaintiffs

Paul Sabatino II, Esq.
1617 New York Avenue
Huntington Station, NY 11746
Attorney for Plaintiffs

Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 700
White Plains, NY 10606
Attorneys for Suffolk Regional Off-Track
Betting Corporation

Jarrett M. Behar, Esq.
Michael Stanton, Esq.
Sinnreich Kosakoff & Messina LLP
267 Carleton Avenue, Ste. 301
Central Islip, NY 11722
Attorneys for Incorporated Village of
Islandia and Board of Trustees of the
Incorporated Village of Islandia

Charles W. Malcomb, Esq.
Daniel A. Spitzer, Esq.
Richard L. Weisz, Esq.
Carmine J. Castellano, Esq.
Hodgson Russ LLP
140 Pearl Street
Buffalo, NY 14202
Attorneys for Delaware North Islandia
Properties, LLC

Anthony S. Guardino, Esq.
Patrick T. Collins, Esq.
John C. Stellakis, Esq.
Farrell Fritz, P.C.
100 Motor Parkway, Suite 138
Hauppauge, New York 11788
Attorneys for Delaware North Islandia
Properties, LLC

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motions of Delaware North Islandia Properties, LLC aka Delaware North ("Delaware North"), the Incorporated Village of Islandia (the "Village"), the Board of Trustees of the Incorporated Village of Islandia (the "Board"), and Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB"), seeking summary judgment in an action filed by Jennifer Tomasino, Kevin Montano, Richard Meyer, and Apryl L. Meyer (collectively, the "Plaintiffs") challenging a zoning law, Local Law No. 3-2017.  In this action, the Plaintiffs allege that the enactment of the law constituted improper contract zoning and spot zoning, and seek a permanent injunction.  Because the Defendants have shown that the Board did not bind itself in advance to enact Local Law No. 3-2017, and that the law is consistent with the Village's comprehensive plan and serves the general welfare of the community, and because the Plaintiffs did not raise a genuine issue of material fact with respect to these claims, the Defendants' motions should be granted.

## JURISDICTION

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  A bankruptcy judge may hear a non-core proceeding that is related to a bankruptcy case.  28 U.S.C. § 157(c)(1).  This non-core proceeding is related to this bankruptcy case because it challenges the law authorizing the operation of a video lottery terminal, which is the source of funding for Suffolk OTB's confirmed plan of reorganization. See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate.").  However, absent consent of the parties to entry of a final order, the

1

bankruptcy judge is directed to submit proposed findings of fact and conclusions of law to the

district court, and any final order or judgment shall be entered by the district judge after

considering the bankruptcy judge's proposed findings of fact and conclusions and after

reviewing de novo those matters to which any party has timely and specifically objected. Id.  As

the Plaintiffs have not consented to the entry of a final order by the bankruptcy court, see

Plaintiff's Statement of Non-Consent to Entry of Judgment (ECF. No. 45), this motion is

addressed by these proposed findings and conclusions.[1]

### BACKGROUND

Unless otherwise noted, the following facts are undisputed, or are matters of which

judicial notice may be taken.

I.      Suffolk OTB's Bankruptcy Case

On May 11, 2012, Suffolk OTB filed a petition for relief under Chapter 9 of the

Bankruptcy Code. Suffolk OTB is a public benefit corporation organized under Articles V and

VI of the New York Racing, Pari-Mutuel Wagering and Breeding Law. (Disclosure Statement at

13, Case No. 12-43503-CEC, ECF No. 298.)

On September 11, 2014, Suffolk OTB filed a second amended plan and second amended

disclosure statement (the "Disclosure Statement"). (Case No. 12-43503-CEC, ECF Nos. 297,

298.)  On that same date, the Disclosure Statement was approved.  (Case No. 12-43503-CEC,

ECF No. 300). Following a hearing on October 22, 2014, the Second Amended Plan for the

Adjustment of Debts of Suffolk Regional Off-Track Betting Corporation (the "Plan") (Case No.

12-43503-CEC, ECF No. 318) was confirmed (Case No. 12-43503-CEC, ECF No. 326).

---

[1] Citations to "ECF No. []" are to documents filed in Adv. Pro. No. 18-01033-CEC, identified by docket entry number.  Citations to "Case No. 12-43503-CEC, ECF No. []" are to documents filed in the main bankruptcy case, In re Suffolk Regional Off-Track Betting Corporation, identified by docket entry number.

The Plan provides for construction of a video lottery terminal facility (the "VLT Facility"), and the funding and feasibility of the Plan depends on its revenues. (Plan at 1-2, Case No. 12-43503-CEC, ECF No. 318.) The Plan contemplated that the VLT Facility would be constructed in Medford, New York. (Plan at 1-2, Case No. 12-43503-CEC, ECF No. 318.) However, Suffolk OTB subsequently decided to locate the VLT Facility in Islandia, New York at the site of the former Marriott Hotel at 3635 Express Drive North, Islandia, New York 11749 (the "Location"). (Status Ltr., Case No. 12-43503-CEC, ECF No. 496.)

II.      The Plaintiffs' Challenges to the VLT Facility

In 1995, the Board approved and adopted a zoning master plan entitled the "Comprehensive Plan for the Village of Islandia, Suffolk County, New York" (the "Master Plan"), which was applicable to the territorial jurisdiction of the Village, "to serve as a policy-oriented, long range guide to future physical development" of the Village. (Am. Compl. ¶13, ECF No. 43; Master Plan at 1, Zaleski Decl. Ex. D, ECF No. 62-26.) The Master Plan recommended modifying the existing zoning code to create new designations and districts, and to eliminate certain zones.[2] (Am. Compl. ¶ 15, ECF No. 43; Master Plan at 98, 120-122, Zaleski Decl. Ex. D, ECF No. 62-26.) One new district recommended by the Master Plan was the office/industrial district (the "District") to "[p]romote high quality industrial and office development in those areas which have been established for such uses." (Am. Compl. ¶ 16, ECF No. 43; Master Plan at 95, Zaleski Decl. Ex. D, ECF No. 62-26.)

To implement the recommendations of the Master Plan, the Board adopted Article X of Chapter 177 of the Village of Islandia Code (the "Village Code"), which established permitted

---

[2] In August 2003, the Board approved the Comprehensive Plan Update to recommend land use policies for remaining undeveloped parcels of land in the Village. (Comprehensive Plan Update at 1, Zaleski Decl. Ex. E, ECF No. 62-27.)

3

and non-permitted office and industrial uses of land within the District. (Am. Compl. ¶ 18, ECF No. 43; Village Code § 177-72; Use Classification Table, 177 Attachment 5, Zaleski Decl. Ex. F, ECF No. 62-28.) Chapter 177 of the Village Code provided that land in the District may be used as a hotel if the Board issued a special permit, which was subject to a public hearing. (Am. Compl. ¶ 19, ECF No. 43; Use Classification Table, 177 Attachment 5, Zaleski Decl. Ex. F, ECF No. 62-28.)

Prior to the adoption of the Master Plan, a hotel (the "Hotel") was constructed and operating at the Location. (Am. Compl. ¶ 21, ECF No. 43; Village Ans. ¶ 6, ECF No. 47; Delaware North Ans. ¶ 21, ECF No. 48.) Delaware North (Suffolk OTB's operating partner) is the current owner of the Hotel and the Location. (Am. Compl. ¶ 22, ECF No. 43; Suffolk OTB Ans. ¶5, ECF No. 46; Village Ans. ¶ 7, ECF No. 47; Delaware North Ans. ¶ 22, ECF No. 48.)

On March 28, 2016, Delaware North applied for a special permit authorizing the construction and use of the VLT Facility, including an off-track betting simulcast facility, as an accessory use of the Hotel (the "Special Permit Application"). (Delaware North Rule 7056-1 Stmt. ¶ 19, ECF No. 62-1; Pls. Counter-Stmt. ¶ 19, ECF No. 76.) The Board approved the Special Permit Application and issued the special permit (the "Special Permit") to Delaware North on August 12, 2016. (Delaware North Rule 7056-1 Stmt. ¶ 37, ECF No. 62-1; Pls. Counter-Stmt. ¶ 37, ECF No. 76; Resolution Granting Special Permit, Zaleski Decl. Ex. A, ECF No. 62-22.)

Four days later, on August 16, 2016, Delaware North and the Village executed an agreement entitled The Taxpayer Relief Agreement Between the Village of Islandia and Delaware North Islandia Properties, LLC (the "TRA"), whereby Delaware North agreed to pay the Village $1,532,400 "to be used by the Village to pay for the construction and development by

4

the Village of the ballfields and associated improvements at First Responders Park" (the "Initial Capital Improvement Payment"), followed by three annual payments of $2,000,000, and thereafter followed by annual payments of $2,250,000 through 2037 (the "Taxpayer Relief Payments"). (Delaware North Rule 7056-1 Stmt. ¶ 40, ECF No. 62-1; Pls. Counter-Stmt. ¶ 40, ECF No. 76; TRA ¶¶ 1,4, 5, Dorman Decl. Ex. C, ECF No. 62-16.)

On September 13, 2016, two of the plaintiffs in this action, Jennifer Tomasino and Apryl Meyer, together with other residents and interested parties, commenced an Article 78 proceeding in Supreme Court, Suffolk County ("State Court"), Index. No. 2016-8907, against the Board, the Village, Delaware North, and Michael Zaleski (a member of the Board), challenging the Special Permit granted by the Board to Delaware North. (Delaware North Rule 7056-1 Stmt. ¶ 41, ECF No. 62-1; Pls. Counter-Stmt. ¶ 41, ECF No. 76; Dorman Decl. Ex. D, ECF No. 62-17.) The complaint alleged, among other things, that the VLT Facility is not a permitted accessory use of a hotel, and that the Board failed to comply with the requirements of the State Environmental Quality Review Act ("SEQRA"). (Dorman Decl. Ex. D, ECF No. 62-17.)

On September 7, 2017, the State Court issued a decision and order which, among other things, found that the VLT Facility, including the off-track betting simulcast facility, is not a permitted accessory use of a hotel in the District under Chapter 177 of the Village Code, and vacated the Special Permit. (Delaware North Rule 7056-1 Stmt. ¶ 44, ECF No. 62-1; Pls. Counter-Stmt. ¶ 44, ECF No. 76; State Court Decision at 4-5, Zaleski Decl. Ex. B, ECF No. 62-23.) The remaining claims, including the challenge under SEQRA, were voluntarily discontinued by stipulation dated December 11, 2017. (Delaware North Rule 7056-1 Stmt. ¶ 43, ECF No. 62-1; Pls. Counter-Stmt. ¶ 43, ECF No. 76; Stip. of Discontinuance, Dorman Decl. Ex. E, ECF No. 62-18.)

On November 28, 2017, after the State Court's ruling vacating the Special Permit on the grounds that gaming was not a permitted accessory use to a hotel under existing law, the Board adopted Local Law No. 3-2017, amending Article X of Chapter 177 of the Village Code, to provide for a Hotel/Gaming Facility as a permitted use in the District, thereby permitting the Hotel to be used as a VLT Facility with an off-track betting simulcast facility. (Delaware North Rule 7056-1 Stmt. ¶¶ 48, 49, 63, ECF No. 62-1; Pls. Counter-Stmt. ¶¶ 48, 49, ECF No. 76; Local Law No. 3-2017 §§ 1.4, 2.2, Dorman Decl. Ex. F, ECF No. 62-19.)

Local Law No. 3-2017 defines a "Hotel/Gaming Facility as:

> A Hotel with more than 150 rooms with an indoor facility containing video lottery terminals (VLTs) authorized by Section 1617-a of the New York State Tax Law and licensed by the New York State Gaming Commission and/or simulcast off-track betting simulcast facilities authorized pursuant to the New York State Racing, Pari-Mutuel Wagering and Breeding Law, located on a site having a minimum lot area of seven (7) acres and at least 600 feet of frontage on the Long Island Expressway (Interstate 495) and/or a Long Island Expressway Service Road. A restaurant and/or other such uses which are primarily intended for use by visitors, guests or customers of the Hotel/Gaming Facility may be provided and/or operated.

(Local Law No. 3-2017 § 2.1.2, Dorman Decl. Ex. F, ECF No. 62-19.)

Local Law No. 3-2017 became effective on November 29, 2018, upon filing with the New York Secretary of State. (Delaware North Rule 7056-1 Stmt. ¶ 64, ECF No. 62-1; Pls. Counter-Stmt. ¶ 64, ECF No. 76.)

On January 12, 2018, pursuant to Local Law No. 3-2017, Delaware North was granted a certificate of occupancy authorizing the use and occupancy of the Hotel as a VLT Facility with an off-track betting simulcast facility. (Am. Compl. ¶ 43, ECF No. 43; Suffolk OTB Ans. ¶ 16, ECF No. 46; Village Ans. ¶ 23, ECF No. 47.) Thereafter, the Board and Delaware North executed the Amended and Restated Taxpayer Relief Agreement Between the Incorporated

Village of Islandia and Delaware North Islandia Properties, LLC (the "Amended TRA").[3]
(Delaware North Rule 7056-1 Stmt. ¶ 65, ECF No. 62-1; Pls. Counter-Stmt. ¶ 65, ECF No. 76;
Am. TRA ¶¶ 12, 13, Dorman Decl. Ex. G, ECF No. 62-20.) The Amended TRA acknowledges
that Delaware North already made the Initial Capital Improvement Payment of $1,532,400 in
February 2017 pursuant to the TRA. (Am. TRA at 1, Dorman Decl. Ex. G, ECF No. 62-20.)

On February 12, 2018, the Plaintiffs commenced this action challenging Local Law No.
3-2017 on the grounds that the Board (1) engaged in unlawful zoning by contract, (2) engaged in
spot zoning, and (3) violated the requirement of Municipal Home Rule Law ("MHRL") §
23(2)(f) for a mandatory referendum. The Plaintiffs also sought to vacate the certificate of
occupancy and sought a permanent injunction. Suffolk OTB moved to intervene in the action,
and upon the State Court's decision and order authorizing Suffolk OTB to intervene as a
defendant, Suffolk OTB removed the action to this Court.

Delaware North, the Village, the Board, and Suffolk OTB (as intervening defendant)
moved to dismiss the claim under MHRL § 23(2)(f), the claim to vacate the certificate of
occupancy, and the claim for a permanent injunction. (Mots. to Dismiss, ECF Nos. 17, 18, 19.)
A hearing was held on July 11, 2018, and for the reasons stated on the record at that hearing, the
Court issued an order on August 2, 2018, dismissing the claim to vacate the certificate of
occupancy and the claim for a permanent injunction, and reserving decision on the claim under
MHRL § 23(2)(f). Prior to the issuance of the August 2, 2018 order, and based upon the rulings
made at the July 11, 2018 hearing, the Plaintiffs filed an amended complaint on July 26, 2018,
omitting the claim to vacate the certificate of occupancy. On September 27, 2018, the Court
issued a decision and order dismissing the claim under MHRL § 23(2)(f).

---

[3] Delaware North executed the Amended TRA on January 31, 2018, and the Board executed it on February 1, 2018.
(Am. TRA, Dorman Decl. Ex. G, ECF No. 62-20.)

On October 29, 2018, the Defendants filed these motions seeking summary judgment on the claims of contract zoning and spot zoning, and on the claim for a permanent injunction. The Plaintiffs oppose the motions. Oral argument was heard on November 28, 2018.[4]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)), cert. denied, 540 U.S. 811 (2003). "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (citations omitted).

## DISCUSSION

I. Zoning by Contract

The Plaintiffs allege that the Board engaged in zoning by contract because it agreed to enact Local Law No. 3-2017 in exchange for Delaware North's payments under the Amended TRA.  The Defendants argue that the Amended TRA is a typical host community agreement, often entered into in connection with development projects, and that nothing in the Amended

---

[4] The transcript of the hearing will be cited to herein as "Tr. at [page], ECF No. 96."

TRA obligated the Board to enact Local Law No. 3-2017, or otherwise controlled or limited the exercise of its legislative powers.

"A legislature cannot bargain away or sell its powers," Church v. Town of Islip, 8 N.Y.2d 254, 259 (N.Y. 1960), nor can it "make contracts that control or limit it in the exercise of its legislative powers and duties," Collard v. Inc. Vill. of Flower Hill, 52 N.Y.2d 594, 601 (N.Y. 1981).  "[R]estrictive agreements made by a municipality in conjunction with a rezoning are sometimes said to violate public policy." Collard, 52 N.Y.2d at 601. "Thus, an agreement whereby a legislature binds itself in advance to exercise its zoning authority in the future for the benefit of a landowner upon the landowner's provision of a consideration would be unlawful, and an ordinance enacted pursuant to such an agreement may be subject to attack on the ground that the enactment constitutes zoning by contract." Tuxedo Land Tr., Inc. v. Town of Tuxedo, 950 N.Y.S.2d 611, 2012 WL 716626, at *13 (N.Y. Sup. Ct. 2012), aff'd sub nom. Tuxedo Land Tr., Inc. v. Town Bd. of Tuxedo, 977 N.Y.S.2d 272 (N.Y. App. Div. 2013).  However, the existence of an agreement by the landowner to provide certain benefits or to satisfy conditions upon a zoning determination does not automatically result in illegal contract zoning. See Id. ("[I]t is not unlawful for a municipality to require that an applicant donate land or property rights or record a restrictive covenant—even if the applicant's obligation to do so is conditioned upon its receipt of necessary approvals—so long as the municipality had not committed itself to a specific course of action with respect to the zoning amendment as consideration therefor."); see also Cram v. Town of Geneva, 190 A.D.2d 1028, 1028-29 (N.Y. App. Div. 1993).

As explained by the New York Court of Appeals:

> While permitting citizens to be governed by the best bargain they can strike with a local legislature would not be consonant with notions of good government, absent proof of a contract purporting to bind the local legislature in advance to exercise its zoning

9

> authority in a bargained-for manner, a rule which would have the effect of forbidding a municipality from trying to protect landowners in the vicinity of a zoning change by imposing protective conditions based on the assertion that that body is bargaining away its discretion, would not be in the best interests of the public.

Collard, 52 N.Y.2d at 601.

The Plaintiffs argue that the Board sold its zoning powers by agreeing to adopt Local Law No. 3-2017 in exchange for Delaware North's payments under the Amended TRA.  In support, the Plaintiffs rely on Citizens to Save Minnewaska v. New Paltz Central School District, 468 N.Y.S.2d 920 (N.Y. App Div. 1983), and Levine v. Town of Oyster Bay, 259 N.Y.S.2d 247 (N.Y. Sup. Ct. 1964).  The Defendants, on the other hand, rely on De Paolo v. Town of Ithaca, 694 N.Y.S.2d 235 (N.Y. App. Div. 1999), arguing that the Board did not engage in zoning by contract because no contract bound the Board in advance to adopt Local Law No. 3-2017.  For the following reasons, the Plaintiffs' argument should be rejected.

Nothing in the TRA or the Amended TRA (which was executed after the adoption of Local Law No. 3-2017) bound the Board in advance to amend the zoning law to authorize gaming as a permitted use in the District, or otherwise to approve a permit for the VLT Facility.  Rather, the TRA and Amended TRA were negotiated, and the payments thereunder were designated, to make capital improvements to a ballfield and park, to address and mitigate any increased cost in infrastructure and services that would be required in the event the VLT Facility was authorized to operate, and to provide tax relief to the taxpayers of the Village.  As the TRA states:

> WHEREAS, the Village Board deems it advisable and in the best interest of the Village and its residents for the Village and [Delaware North] to enter into a Taxpayer Relief Agreement which provides for a one-time payment to the Village for capital improvements and subsequent annual payments to the Village . . . to (i) promote

10

> community development in the Village, (ii) to offset the increase in
> the infrastructure, public safety and emergency services cost of the
> Village incurred as a result of approving the Application and (iii) to
> reduce real property taxes of Village residents . . . .

(TRA at 2-3, Dorman Decl. Ex. C, ECF No. 62-16.)

The Amended TRA acknowledged Delaware North's prior payment of the Initial Capital
Improvement Payment, and Delaware North reaffirmed the commitment to make the annual Tax
Relief Payments in the amount of $2,000,000 for 2018, 2019, and 2020, and in the amount of
$2,250,000 for 2021 through 2037. (Am. TRA at 2 and ¶¶ 12, 13, Dorman Dec. Ex. G, ECF No.
62-20.)  The Amended TRA also imposed certain conditions and restrictions on Delaware North,
such as prohibiting the use of the word "casino" on any signage, prohibiting Delaware North
from challenging the tax assessments by the Village, and specifically requiring any sale of the
Hotel to include an assumption by the purchaser of the obligations under the Amended TRA
(Am. TRA ¶¶ 9, 10, 18, Dorman Decl. Ex. G, ECF No. 62-20.)

The existence of the TRA and the Amended TRA does not result in the conclusion that
Local Law No. 3-2017 constituted contract zoning.  See Tuxedo, 2012 WL 716626 at *13.
Indeed, an agreement to mitigate increased costs to the community is required by New York
Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6), which provides that applicants for a
gaming license must "identify the infrastructure costs of the host municipality incurred in direct
relation to the construction and operation of a gaming facility and commit to a community
mitigation plan for the host municipality."  N.Y. Pari-Mut. & Breed. L. § 1316(6).  See Tyre ex
rel. Dawley v. Town Board of Tyre, 27 N.Y.S.3d 350, 357 (N.Y. Sup. Ct. 2016) (explaining that
the community mitigation plan at issue "includes mitigation measures . . . such as payments to
the Fire Department for Fire Protection benefits and community issues that are . . . required to be
addressed under the Gaming Act" (citations omitted)).  If the existence of such an agreement

constitutes contract zoning, then compliance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) would automatically result in a voidable zoning determination. The absurdity of that result is evident.

The Plaintiffs contend that the Amended TRA is being couched as an impact mitigation agreement, but in reality, is an impermissible contract providing consideration in exchange for a favorable zoning determination because the Village is not responsible for the cost of public safety and emergency services for the Village. In support of that argument, the Plaintiffs rely on an affidavit of Neil Munro (the "Munro Affidavit"), the former Deputy Mayor of the Village and a former trustee on the Board, and a plaintiff in the prior state court actions challenging the VLT Facility.[5] The Plaintiffs further argue that Board's SEQRA evaluation resulted in a determination that the VLT Facility would have no negative impact, and therefore there is no reason for impact mitigation, and point out that the Initial Capital Improvement Payment is entirely unrelated to the operation of the VLT Facility.[6]

These arguments should be rejected. As will be discussed below, the TRA and Amended TRA did not bind the Board in advance to authorize the VLT Facility. And, if (as the Plaintiffs contend) the Village does not bear the burden of substantially increased costs for public safety and emergency services from the operation of the VLT Facility, the result of the TRA and the Amended TRA is that the Village will have more funds available to put to other local uses, including community development in the Village and reducing the tax burden of Village

---

[5] The Defendants sought to strike the Munro Affidavit on the grounds that the Plaintiffs failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7026 of the Federal Rules of Bankruptcy Procedure, because Mr. Munro was not disclosed as an expert and no expert report was provided. (ECF Nos. 81, 8, 82.) The Plaintiffs contend that Mr. Munro is a fact witness, and not an expert witness. Even if the Munro Affidavit was considered, it does not raise a genuine issue of material fact, and therefore, it is unnecessary to rule on the motions to strike it.

[6] This argument is actually asserted in connection with Plaintiffs' spot zoning claim, but it seems appropriate to address it in connection with the contract zoning claim.

residents.   It is not impermissible for a board to issue a zoning determination if unrelated local benefits are provided, see Residents for Reasonable Dev. v. City of New York, 11 N.Y.S.3d 116 (N.Y. App. Div. 2015) (payment to improve parkland in connection with approval of a project was permissible incentive zoning), and there is no allegation that the funds will be used for non-local purposes.   Cf. Mun. Art Soc'y of N.Y. v. City of New York, 522 N.Y.S.2d 800, 803, 804 (N.Y. Sup. Ct. 1987) (the monetary benefit to the city was "not earmarked for the improvement of any local facility," and would be paid "into the City's coffers for citywide use").

The timing of the contracts reflect that the Board did not "bind[] itself in advance to exercise its zoning authority in the future for the benefit of a landowner upon the landowner's provision of a consideration." Tuxedo, 2012 WL 716626, at *13 (emphasis added).  The terms of the TRA were agreed to in connection with the Special Permit Application, and the adoption of Local Law No. 3-2017 was not contemplated at that time.  Though the terms of the Amended TRA were negotiated prior to the enactment of Local Law No. 3-2017, it was not executed until after the law was passed, and, in any event, no provision of the Amended TRA obligated the Board to authorize the VLT Facility or adopt Local Law No. 3-2017.  To the contrary, Paragraph 9 of the Amended TRA, in which Delaware North agrees not to use the word "casino" on any signage on the premises, provides: "there shall be no application or granting of a variance of the signage regulations of the Village to allow for the use of the word 'casino' on any signage on the [p]remises."  (Am. TRA ¶ 9, Dorman Decl. Ex. G, ECF No. 62-20.)  Although Paragraphs 19 and 20 recite that Delaware North "agrees that the Hotel/Gaming Permit is conditioned on the compliance" with the Amended TRA, and provides for the revocation of the Hotel/Gaming Permit in the event Delaware North fails to make any of the Taxpayer Relief Payments or otherwise breaches its obligations under the Amended TRA, (TRA ¶¶ 19, 20, Dorman Decl. Ex.

13

G, ECF No. 62-20), nothing in the Amended TRA bound the Board to approve the VLT Facility or prevents the Board from amending or revoking Local Law No. 3-2017 and terminating the Amended TRA.

The circumstances presented here are distinguishable from Levine, 259 N.Y.S.2d 247, and Citizens to Save Minnewaska, 468 N.Y.S.2d 920, relied upon by the Plaintiffs.  In Levine, homeowners challenged an ordinance adopted by the Town of Oyster Bay reclassifying the zoning of a parcel of real property from residential to industrial, on the condition that certain terms were satisfied, including "that the grade of the entire parcel be bought down to the grade of Brush Hollow Road in accordance with the Town Engineer's approval of grades and specifications." Levine, 259 N.Y.S.2d at 249. The homeowners asserted that the board (1) did not comply with process outlined in the applicable town law regarding notices of hearing; (2) engaged in spot zoning; and (3) improperly reclassified the zoning contingent upon conditions being satisfied, among other claims.  Id.  The state court, noting that that the landowner requested the regrading condition from the board (which must also approve a permit for such regrading after public notice and a public hearing), held that the board impermissibly engaged in zoning by contract.  Id. at 251-52.  The court, citing Church v. Town of Islip, 8 N.Y.2d 254, explained that, although imposition of conditions in connection with zoning decisions is permissible, the resolution in Levine could not be upheld because it "purport[ed] to change the zoning 'in future'," and did not "grant the change of zoning from residential to industrial until certain conditions are performed."  Id. at 251.  The court noted that the facts before it were different from permissible conditional zoning where the zoning determination or modification is effective immediately, with the conditions to be satisfied afterward.  Id. at 251-52.

14

Unlike the resolution in <u>Levine</u>, Local Law No. 3-2017 became effective immediately upon filing it with the New York Secretary of State on November 28, 2017, and the certificate of occupancy was conditioned on the continued performance of Delaware North under the Amended TRA.

In <u>Citizens to Save Minnewaska</u>, 468 N.Y.S.2d 920, the New York Appellate Division voided a resolution recommending an applicant for a tax exemption based upon the applicant's offer to "pay 100% of the assessed taxes but such payment would be in lieu of taxes," which "offer was in the form of a written contract which recited, *inter alia*, that it would be binding upon [the applicant] if defendant adopted as its consideration the required resolution." <u>Citizens to Save Minnewaska</u>, 468 N.Y.S.2d at 921. The state court concluded that the "defendant legislated pursuant to the terms of a contract." <u>Id.</u> at 922.

In this case, however, there was no prior agreement in exchange for the approval of the permit or the adoption of Local Law No. 3-2017. The circumstances here are similar to those in <u>De Paolo</u>, 694 N.Y.S.2d 235, cited by the Defendants. In that case, the town board amended its zoning ordinance to accommodate Cornell University's plan for a new cooling system. <u>De Paolo</u>, 694 N.Y.S.2d at 237-38. The zoning amendment was enacted "in exchange for Cornell's granting the [t]own a 99-year license to use certain property as public park, thereby allowing continued public access to Cayuga Lake." <u>Id.</u> at 238. The court rejected a contract zoning claim against the zoning ordinance, explaining:

> Nothing in its agreement with Cornell committed the Town to a specific course of action with respect to the zoning amendment . . . . While Cornell's grant of the license to the Town was conditioned upon its receipt of all approvals required for the project, including rezoning, no provision in the agreement obligated the Town to issue such approvals or approve Cornell's rezoning application. Consequently, we see no parallel between these circumstances and the situations presented in either <u>Citizens to Save Minnewaska v.</u>

> New Paltz Cent. School Dist., 95 A.D.2d 532, 468 N.Y.S.2d 920, lvs. dismissed 61 N.Y.2d 605, 473 N.Y.S.2d 1026, 462 N.E.2d 156, 61 N.Y.2d 853, 473 N.Y.S.2d 975, 462 N.E.2d 152 or City of New York v. 17 Vista Assocs., 84 N.Y.2d 299, 618 N.Y.S.2d 249, 642 N.E.2d 606 as the Town neither "legislated pursuant to the terms of a contract" (Citizens to Save Minnewaska v. New Paltz Cent. School Dist., supra, at 534, 468 N.Y.S.2d 920) nor agreed "in exchange for a predetermined [consideration] * * * [to provide] an expedited and favorable determination" (City of New York v. 17 Vista Assocs., supra, at 306, 618 N.Y.S.2d 249, 642 N.E.2d 606).

Id. at 238–39 (alterations in the original).

The Plaintiffs further argue that the Board's decision to enact Local Law No. 3-2017 to authorizing gaming as a permitted use "forfeited [its legislative] power with respect to subsequent owners" of the Location. (Pls. Mem. Of Law in Opp'n at 24, ECF No. 78.) This argument should be rejected. Nothing in the TRA or the Amended TRA obligates the Board to continue the Hotel/Gaming Facility as a permitted use in the District. Additionally, the Amended TRA specifically requires Delaware North to assign the TRA to a new owner in connection with any sale of the Location, and obligates the subsequent owner to make the annual Tax Relief Payments. (Am. TRA ¶¶ 16, 18, Dorman Decl. Ex. G, ECF No. 62-20.) In the event Delaware North or a subsequent owner defaults under the Amended TRA, the certificate of occupancy may be terminated. (Am. TRA ¶ 20, Dorman Decl. Ex. G, ECF No. 62-20.) The adoption of Local Law No. 3-2017 is no different than the adoption of any other zoning ordinance which may be vacated, modified, or amended in the future pursuant to applicable statutes, rules, and law.

The Plaintiffs argue that, because Local Law No. 3-2017 created an as of right use for a Hotel/Gaming Facility, the law cannot be vacated or repealed, because such action would constitute a taking in violation of the Fifth Amendment to the United States Constitution. (Tr. at 131.) This argument should also be rejected. The Fifth Amendment "requires the payment of

16

compensation whenever the government acquires private property for a public purpose." <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 535 U.S. 302, 321 (2002). "Land-use regulations are ubiquitous and most of them impact property values in some tangential way—often in completely unanticipated ways. Treating them all as *per se* takings would transform government regulation into a luxury few governments could afford." <u>Id.</u> at 324. Unless a regulation "deprives a landowner of '*all* economically beneficial uses' of his land," it must be evaluated under an ad hoc, fact specific inquiry to determine whether it constitutes a taking requiring compensation. <u>Id.</u> at 326, 330 (quoting and citing <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003, 1015, 1019 (1992)). The same analysis is applied by New York State courts. <u>See</u> <u>Friedenburg v. New York State Dep't of Envtl. Conservation</u>, 767 N.Y.S.2d 451, 456-58 (N.Y. App. Div. 2003). In the event the Board modified or repealed Local Law No. 3-2017, and if such action were determined to constitute a regulatory taking, the Village could be required compensate the owner accordingly. The possibility that the Village, at some point in the future, could become obligated to provide compensation for a regulatory taking in the event that the Board exercises its legislative authority in the future to modify or repeal Local Law No. 3-2017 does not result in the conclusion that the Board has bargained away or sold its legislative powers, or raise a genuine issue of material fact that the Board engaged in contract zoning.

The Plaintiffs next argue that, in the event New York State law is expanded to permit more gaming licenses, another property owner in the District would have the right to obtain a permit for a Hotel/Gaming Facility. (Pls.' Mem. of Law in Opp'n at 25, ECF No. 78.) This argument is entirely irrelevant to whether the Board engaged in contract zoning. Additionally, speculation is insufficient to raise a genuine issue of material fact to defeat a motion for

summary judgment.  <u>Major League Baseball Props., Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 306 (2d Cir. 2008).

For these reasons, the Plaintiffs have not raised a genuine issue of material fact with respect to its claim of contract zoning, and it is recommended that the Defendants' motions for summary judgment be granted on that claim.[7]

## II.    Spot Zoning

The Plaintiffs next argue that the Board engaged in illegal spot zoning when it enacted Local Law No. 3-2017, because the law affects only a single parcel of land, <u>i.e.</u> the Location. The Defendants argue that the spot zoning claim must fail because the Board reasonably determined that a hotel and gaming facility is consistent with the current uses of the District, the physical location, and the Master Plan, and benefits the community as a whole.

"The power to zone is derived from the Legislature and must be exercised in the case of towns and villages in accord with a 'comprehensive plan' or in the case of cities in accord with a 'well considered plan.'" <u>Asian Ams. for Equal. v. Koch</u>, 72 N.Y.2d 121, 131 (N.Y. 1988) (citations omitted).  "The requirement of a comprehensive or well-considered plan not only insures that local authorities act for the benefit of the community as a whole but protects individuals from arbitrary restrictions on the use of their land." <u>Id.</u> "When a zoning ordinance is amended, the court decides whether it accords with a well-considered plan in much the same way, by determining whether the original plan required amendment because of the community's change and growth and whether the amendment is calculated to benefit the community as a whole as opposed to benefiting individuals or a group of individuals." <u>Id.</u> (citations omitted).

---

[7] Given this recommendation, there is no need to address the Defendants' argument that the Plaintiffs lack standing to challenge the conditions Delaware North agreed to satisfy.

It is well established that the determination of a zoning board "is entitled to great deference, and must be sustained where . . . it has a rational basis and is supported by substantial evidence." <u>Farrell v. Johnson</u>, 697 N.Y.S.2d 900, 901 (N.Y. App. Div. 1999). "[T]he analysis follows traditional due process rules: if the zoning ordinance is adopted for a legitimate governmental purpose and there is a 'reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end,' it will be upheld." <u>Asian Ams. for Equal.</u>, 72 N.Y.2d at 131-132. "An amendment which has been carefully studied, prepared and considered meets the general requirement for a well-considered plan and satisfies the statutory requirement.  The court will not pass on its wisdom." <u>Id.</u> at 132 (citations omitted).

Spot zoning, "the very antithesis of planned zoning," is "[d]efined as the process of singling out a small parcel of land for a use classification totally different from that of the surrounding area, for the benefit of the owner of such property and to the detriment of other owners." <u>Rodgers v. Vill. of Tarrytown</u>, 302 N.Y. 115, 123, 124 (N.Y. 1951) "Zoning is not invalid per se merely because only a single parcel is involved or benefited." <u>Collard</u>, 52 N.Y.2d at 600 (citation omitted).  Factors to consider are "whether the rezoning is consistent with a comprehensive land use plan, whether it is compatible with surrounding uses, the likelihood of harm to surrounding properties, the availability and suitability of other parcels, and the recommendations of professional planning staff." <u>Citizens for Responsible Zoning v. Common Council of Albany</u>, 56 A.D.3d 1060, 1062 (N.Y. App. Div. 2008).  Notwithstanding these factors, "the real test for spot zoning is whether the change is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community." <u>Collard</u>, 52 N.Y.2d at 600. "To prevail on their allegation of illegal spot zoning, petitioners [bear] the burden

of overcoming, beyond a reasonable doubt, the strong presumption of validity attached to the . . . zoning determination." Citizens for Responsible Zoning, 56 A.D.3d at 1062.

The Plaintiffs argue that the adoption of Local Law No. 3-2017 was illegal spot zoning because (1) it was not adopted in accordance with the Master Plan; (2) the Board's evaluation of the environmental impact of the VLT Facility was deficient; (3) the Board failed to consider alternative locations; and (4) the VLT Facility will have a harmful impact on the Plaintiffs' safety and use and enjoyment of their properties.[8]

The Defendants argue that the record upon which the Board relied when enacting Local Law No. 3-2017 amply supports the Board's conclusion that the law is consistent with the Master Plan and is calculated to serve the general welfare of the community. The Defendants rely on the affidavits of Allan M. Dorman, the Mayor of the Village and a member of the Board and Michael Zaleski, the Deputy Mayor of the Village and a member of the Board. (Dorman Aff., ECF No. 62-11; Zaleski Aff., ECF No. 62-21.)

In his affidavit, Deputy Mayor Zaleski explains that the Board, in considering the Special Permit Application, conducted an extensive review of a full environmental assessment form (the "2016 EAF") under SEQRA, "which was supplemented by an expanded environmental assessment and traffic study." (Zaleski Decl. ¶3, ECF No. 62-21.) Thereafter, the Special Permit Application was referred to the Suffolk County Planning Commission, which issued a report finding that "[i]n terms of the compatibility of land uses, the principal use (hotel) has not changed and the physical properties of the site remain constant, the physical character of the

---

[8] In support of the argument that Local Law No. 3-2017 is inconsistent with the Master Plan, the Plaintiffs rely on an affidavit of Stephen M. Jones (the "Jones Affidavit"), a land use and zoning expert. The Defendants filed motions to strike the Jones Affidavit on the grounds that the Plaintiffs failed to comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7026 of the Federal Rules of Bankruptcy Procedure, because Mr. Jones was not disclosed as an expert and no expert report was provided. (ECF Nos. 81, 8, 82.) At the hearing on the motions, the Plaintiffs agreed to withdraw the Jones Affidavit for purposes of the summary judgment motions, but reserved the right to introduce the expert opinion at trial. Tr. at 38 (ECF No. 96).

20

community remains unchanged by the proposal as there are no major modifications to the exterior of the principal building." (Zaleski Decl. ¶ 3, ECF No. 62-21; Staff Report at 3, Spitzer Decl. Ex. B, ECF No. 62-5.) Deputy Mayor Zaleski further stated that the Board "conducted public meetings and public hearings, evaluated the Village's zoning code, and utilized its own engineers and consultants to review the material submitted by Delaware North." (Zaleski Decl. ¶ 3, ECF No. 62-21.) At the conclusion of that process, the Board issued a negative declaration under SEQRA (the "2016 Negative Declaration"). (Zaleski Decl. ¶ 3, ECF No. 62-21; 2016 Negative Decl. and 2016 EAF, Dorman Decl. Ex. B, ECF Nos. 62-13, 62-14, 62-15.)

Deputy Mayor Zaleski stated that, after the Special Permit was vacated by the Supreme Court, the Board, in considering the adoption of Local Law No. 3-2017, rereviewed the record from the Special Permit Application and a new EAF (the "2017 EAF"), and again issued a negative declaration under SEQRA (the "2017 Negative Declaration"). (Zaleski Aff. ¶¶ 10, 12, ECF No. 62-21; 2017 EAF, Zaleski Decl. Ex. C, ECF No. 62-24.) Deputy Mayor Zaleski points out that the 2017 EAF inquires whether "[t]he proposed action is not consistent with the adopted land use plans," to which the Board answered "no," together with a full analysis annexed thereto. (Zaleski Decl. ¶ 13, ECF No. 62-21; 2017 EAF at Question 17 (page ISL003013), Zaleski Decl. Ex. C, ECF No. 62-15.)

Deputy Mayor Zaleski further stated that the Board also considered the Master Plan, including its provisions that areas in the District "'display a more mixed land use character' and that industrial uses should be encouraged because 'to restrict such areas to purely office use[s] would create a high number of unnecessary nonconforming uses and deny the existence and legitimacy of lighter industrial uses being able to coexist with office uses.'" (Zaleski Decl.

¶ 15(a), ECF No. 62-21.)  The Board noted that the Master Plan contemplated that the District would include "more intensive uses," including manufacturing and warehousing uses.  (Zaleski Decl. ¶ 15(a), ECF No. 62-21.)  The Board also relied on its knowledge of the community and other uses near the Location, "including a truck distribution facility, a park and ride, office uses, and a wholesale shopping facility."  (Zaleski Decl. ¶ 15(c), ECF No. 62-21.)

In evaluating whether Local Law No. 3-2017 was in the best interests of the community, Deputy Mayor Zaleski stated that the Board noted the Location's "deteriorating condition," and considered the "opportunity for reuse and repurposing of an existing structure in the Village." (Zaleski Decl. ¶ 15(d), ECF No. 62-21.) Similarly, Mayor Dorman stated that the Board considered the law a benefit to the community by "preventing the hotel site from becoming a large unoccupied and blighted property that would create a drag on Village property values as a whole, especially considering a significant decline of employees located at the former Computer Associates building located less than one mile away, and the creation of approximately 300 jobs."  (Dorman Decl. ¶ 20, ECF No. 62-11.)

The Plaintiffs assert that the Board's review was tainted because David Wortman (retained by Delaware North) and Joseph Iannucci (retained by the Village), the consultants retained to review and analyze the zoning, traffic, and environmental impacts, limited their analysis to the findings contained in the 2016 EAF and operated based upon certain incorrect assumptions.  (Pls. Mem of Law in Opp'n at 5, 11-115).  In other words, the Plaintiffs appear to argue that no new analysis on the impact of authorizing the VLT Facility was undertaken, and that the existing evaluations were deficient, and therefore, the Board did not rely on a proper record when considering Local Law No. 3-2017.

The Plaintiffs' argument should fail. No reasonable explanation was given why the zoning, traffic, and environmental impact analysis completed in connection with the Special Permit Application in 2016 would not be applicable to determining the impact of the adoption of Local Law No. 3-2017, which was adopted shortly after the Special Permit was vacated by the State Court.  The Plaintiffs have not articulated a reason why the Board would have been required to reinvent the wheel. The analysis in both situations is the same: the impact of the VLT Facility at the Location.  The means of implementation, whether by special permit or by a local law creating an as of right use, is irrelevant.  See Boyles v. Town Bd. of Bethlehem, 278 A.D.2d 688, 691(N.Y. App. Div. 2000) (finding that, in deciding on a building project approval, the board did not err by relying on a prior SEQRA review in connection with a rezoning determination). Moreover, as the Defendants have established, a new EAF was completed in 2017 and reviewed prior to the adoption of Local Law No. 3-2017.  (2017 EAF, Zaleski Decl. Ex. C, ECF No. 62-15.)

Notably, the challenge to the 2016 Negative Declaration was withdrawn, and the Plaintiffs have not challenged the 2017 Negative Declaration.   Though the Plaintiffs argue there is no need to separately challenge the 2017 Negative Declaration because the complaint challenges the whole process (Tr. at 175-176, ECF No. 96), this argument should be rejected. Nothing in the complaint challenges the 2017 Negative Declaration, and the challenge to the 2016 Negative Declaration was withdrawn.  The only claims at issue in this case are contract zoning and spot zoning, and therefore, the determination whether the Board complied with SEQRA is beyond the scope of review.  See Farrell, 697 N.Y.S.2d at 901 ("The petition does not challenge the sufficiency of the ZBA's environmental review pursuant to SEQRA or the ZBA's

action in issuing a negative declaration. The court erred, therefore, in addressing the issue of the ZBA's compliance with SEQRA." (citation omitted).)

Plaintiffs Tomasino, Montano, Richard Meyer, and Apryl Meyer filed affidavits asserting that the VLT Facility has negatively impacted their quality of their life, expressing safety concerns based upon two criminal incidents that occurred at the VLT Facility and increasing crime statistics, and contending that the value of their properties across from the Hotel have declined. (ECF Nos. 69-72.) While these affidavits may establish standing to challenge the enactment of Local Law No. 3-2017, and appear to relate solely to their claim for a permanent injunction, it is important to note that the Plaintiffs' affidavits do not raise a genuine issue of fact with respect to whether Local Law No. 3-2017 was calculated to serve the community as a whole.

As explained by the New York Court of Appeals:

> While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned. Just as clearly, decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive, beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it.

Rodgers, 302 N.Y. at 121.

The Plaintiffs also argue that the Board's process was flawed because it failed to consider other locations, such as the Hampton Inn, which has fewer than 150 rooms that is required by Local Law No. 3-2107.  This is irrelevant because no other hotel was seeking to operate a VLT

24

Facility. In the event another hotel is granted a gaming license by New York State and does not meet the requirements of Local Law No. 3-2017, the Board has the option of amending the Village Code accordingly after complying with applicable law. Moreover, the availability of alternative sites is just one factor in the spot zoning analysis, and the failure to consider it should not be fatal because the record amply establishes that the Board considered the other, more important, factors.

The Defendants have established that the Board did not engage in spot zoning in adopting Local Law No. 3-2017. Mayor Dorman and Deputy Mayor Zaleski detailed the evaluation completed and procedural process followed in connection with the Special Permit Application and the adoption of Local Law No. 3-2017. The Board considered the impact the law would have by reviewing the SEQRA analysis, the consistency with the Master Plan, and the benefit to the Village by rejuvenating the Hotel and increasing jobs. The Location remains in the District and was not rezoned to another designation, its appearance was not significantly changed, and it is in an area with other industrial uses. (Delaware North Rule 7056-1 Stmt. ¶¶ 14, 20, ECF No. 62-1; Pls. Counter-Stmt. ¶ 21, ECF No. 76; Pls. Mem. of Law in Opp'n at 29, ECF No. 78.)

Though the Plaintiffs are correct that economic benefit may not be the sole basis for a zoning determination, Yellow Lantern Kampground v. Town of Cortlandville, 279 A.D.2d 6, 10 (N.Y. App. Div. 2000), the record reflects that, in this case, the Board sufficiently evaluated the applicable factors. Contrary to the Plaintiffs' assertion, the Defendants have not created "post-enactment rationalizations," for the adoption of Local Law No. 3-2017. (Pls. Mem. Of Law in Opp'n at 32, ECF No. 78.) For these reasons, the Plaintiffs have not raised a genuine issue of material fact to defeat the Defendants' motion for summary judgment on the spot zoning claim.

III. <u>Uniformity</u>

The Plaintiffs argue that Local Law No. 3-2017 violates N.Y. Village Law § 7-702, which provides that all "[district] regulations shall be uniform for each class or kind of buildings throughout each district." N.Y. Village Law § 7-702. This claim cannot be raised for the first time in the Plaintiffs' opposition to the motions for summary judgment. <u>Lyman v. CSX Transp., Inc.</u>, 364 F. App'x 699, 701 (2d Cir. 2010) (stating that claims raised for the first time in opposition to summary judgment "need not be considered").

IV. <u>Permanent Injunction</u>

The Plaintiffs concede that their claim for permanent injunction is dependent on the success of their contract zoning and spot zoning claims. (Pls. Mem of Law in Opp'n at 38, ECF No. 78). "An injunction is a remedy, a form of relief that may be granted against a defendant when its proponent establishes the merits of its substantive cause of action against that defendant." <u>Weinreb v. 37 Apartments Corp.</u>, 943 N.Y.S.2d 519, 523 (N.Y. App. Div. 2012). Because the Defendants should be granted summary judgment on Plaintiffs' contract zoning and spot zoning claims, the Plaintiffs' claim for a permanent injunction should fail as well.

CONCLUSION

For the foregoing reasons, it is recommended that the Defendants' summary judgment motions be granted.



**Dated: Brooklyn, New York**
      **December 17, 2018**

_____
      **Carla E. Craig**
  **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
In re

                                                              Case No. 12-43503-CEC

Suffolk Regional Off-Track Betting Corporation,

                                                              Chapter 9

                              Debtor.
--------------------------------------------------------------------X
Jennifer Tomasino, Kevin Montano, Richard Meyer,
and Apryl L. Meyer,

                              Plaintiffs,

-against-                                     Adv. Pro. No. 18-1033-CEC

Incorporated Village of Islandia, Board of Trustees
of the Incorporated Village of Islandia, Delaware
North Islandia Properties, LLC aka Delaware North,
and Suffolk Regional Off-Track Betting Corporation,

                              Defendants.
--------------------------------------------------------------------X

### AFFIRMATION OF SERVICE

       I, Sharon L. Weiss, hereby affirm that on December 19, 2018, a copy of the Proposed Findings of Fact and Conclusions of Law was served on the parties named below by first class mail and email:

Anton J. Borovina, Esq.
Law Office of Anton J. Borovina
225 Broadhollow Road, Ste. 303
Melville, NY 11747
ajb@borovinalaw.com

Paul Sabatino II, Esq.
1617 New York Avenue
Huntington Station, NY 11746
paulpsII@aol.com

Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 700
White Plains, NY 10606
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

Jarrett M. Behar, Esq.
Michael Stanton, Esq.
Sinnreich Kosakoff & Messina LLP
267 Carleton Avenue, Ste. 301
Central Islip, NY 11722
jbehar@skmlaw.net
mstanton@skmlaw.net

Charles W. Malcomb, Esq.
Daniel A. Spitzer, Esq.
Richard L. Weisz, Esq.
Carmine J. Castellano, Esq.
Hodgson Russ LLP
140 Pearl Street
Buffalo, NY 14202
cmalcomb@hodgsonruss.com
dspitzer@hodgsonruss.com
rweisz@hodgsonruss.com
ccastell@hodgsonruss.com

1

47

Anthony S. Guardino, Esq.
Patrick T. Collins, Esq.
John C. Stellakis, Esq.
Farrell Fritz, P.C.
100 Motor Parkway, Suite 138
Hauppauge, New York 11788
aguardino@farrellfritz.com
pcollins@farrellfritz.com
jstellakis@farrellfritz.com

Dated:  Brooklyn, New York
        December 19, 2018                    *s/Sharon L. Weiss*
                                             Sharon L. Weiss

*Law Office of Anton J. Borovina*
*225 Broadhollow Road, Ste. 303*
*Melville, NY 11747*
*(631) 630-1101*
*Ajb@borovinalaw.com*

December 21, 2018

Chief Judge Carla E. Craig
United States Bankruptcy Court
Conrad B. Duberstein Courthouse
271 Cadman Plaza, Rm. 1595
Brooklyn, NY 11201

Re:    In Re: Suffolk Regional Off-Track Betting Corp. ("Debtor")
       Case No.: 12-43503-CEC
       Tomasino et al. v. Inc. Village of Islandia et al.
       Adv. Proc. 18-1033-CEC

Dear Chief Judge Craig:

Pursuant to Rule 9033(c), Plaintiffs request a three-day extension of time to file objections to the Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") until Monday, January 7, 2019.

Under Fed. R. Civ. Proc. Rule 6(a), the 14-day time prescribed for filing objections falls on January 2, 2019. The Clerk's mailing of the Proposed Findings on December 19, 2018 gave three additional days to file objections pursuant to Fed. R. Civ. Proc. Rule 6(d). Plaintiffs request an additional three days to file objections because of the disruptions associated with the intervening holiday season and the start of the New Year, i.e., until January 7, 2019.

SOTB's counsel has consented to the extension of time. The undersigned has not received any response from Delaware North or the Village Defendants' counsels requesting their consent to this application.

Plaintiffs therefore request that the extension of time to file objections until January 7, 2019 be granted.

Very truly yours,

Anton J. Borovina

*Law Office of Anton J. Borovina*
*225 Broadhollow Road, Ste. 303*
*Melville, NY 11747*
*(631) 630-1101*
*Ajb@borovinalaw.com*

December 21, 2018

Chief Judge Carla E. Craig
United States Bankruptcy Court
Conrad B. Duberstein Courthouse
271 Cadman Plaza, Rm. 1595
Brooklyn, NY 11201

Re:   In Re: Suffolk Regional Off-Track Betting Corp. ("Debtor")
      Case No.: 12-43503-CEC
      Tomasino et al. v. Inc. Village of Islandia et al.
      Adv. Proc. 18-1033-CEC

Dear Chief Judge Craig:

Pursuant to Rule 9033(c), Plaintiffs request a three-day extension of time to file objections to the Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") until Monday, January 7, 2019.

Under Fed. R. Civ. Proc. Rule 6(a), the 14-day time prescribed for filing objections falls on January 2, 2019. The Clerk's mailing of the Proposed Findings on December 19, 2018 gave three additional days to file objections pursuant to Fed. R. Civ. Proc. Rule 6(d). Plaintiffs request an additional three days to file objections because of the disruptions associated with the intervening holiday season and the start of the New Year, i.e., until January 7, 2019.

SOTB's counsel has consented to the extension of time. The undersigned has not received any response from Delaware North or the Village Defendants' counsels requesting their consent to this application.

Plaintiffs therefore request that the extension of time to file objections until January 7, 2019 be granted.

Very truly yours,

Anton J. Borovina

*Application Granted*

*Carla E. Craig, USBJ*

*1/3/19*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------)
In re:

SUFFOLK REGIONAL OFF-TRACK BETTING
CORPORATION,

               Adjusted Debtor.

Chapter 9 Case No. 12-43503-CEC

-------------------------------------------------------------------)
JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER and APRYL L. MEYER,

               Plaintiffs,

      -against-

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE VILLAGE OF
ISLANDIA, DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, aka, DELAWARE NORTH,
and SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

Adv. Proc. No. 18-1033-CEC

               Defendants.
-------------------------------------------------------------------)

          **TO THE CLERK OF THE COURT: In accordance
with the Guidelines for the Division of Business Among
District Judges Eastern District § 50.1 (d)(2)(a)(b) and
(3), Plaintiffs request that the case be designated a Long
Island case because it is a civil proceeding that was
removed to the Eastern District Bankruptcy Court as
an adversarial proceeding from the New York State
Supreme Court located in Suffolk County, all of the
parties reside in Suffolk County, all of the events or
omissions giving rise to the claim occurred in Suffolk
County and such a designation of the action will serve
the convenience of the parties and witnesses or is
otherwise in the interests of justice.**

          **PLAINTIFFS' OBJECTIONS TO BANKRUPTCY COURT'S**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**AS AMPLIIFIED BY THE MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiffs, Jennifer Tomasino, Kevin Montano, Richard Meyer and Apryl L. Meyer (collectively, "Plaintiffs"), by their attorneys, Anton J. Borovina and Paul Sabatino II, respectfully submit the following objections to the Proposed Findings of Fact and Conclusions of Law recommending dismissal of the complaint ("Proposed Findings") made by the Honorable Carla E. Craig of the United States Bankruptcy Court for the Eastern District of New York in the above adversary proceeding on December 17, 2018 (Doc. No. 100) as further stated and amplified by the accompanying memorandum of law which is incorporated by reference as if more fully set forth herein pursuant to 28 U.S.C. §157(c) and Bankruptcy Rule 9033.

## OBJECTIONS

**Objection No. 1**       Plaintiffs object to the Bankruptcy Court having made findings of fact in the Proposed Findings based upon judicial notice of facts. The Proposed Order does not specify any finding of fact upon which judicial notice was taken. Such finding of fact were improperly made inasmuch as the role of the Bankruptcy Court in resolving Defendants' motions seeking summary dismissal of the first (zoning by contract) and second (spot zone) causes of action alleged in the Amended Complaint was to identify and not resolve issues of disputed material facts.

**Objection No. 2**       Plaintiffs object to the Proposed Findings' recommendation that the contract zone claim be summarily dismissed because they failed to prove the existence of an agreement between the Village and Delaware North in advance of the Local Law No. 3-2017 ("Local Law")'s adoption which required the Village to adopt the Local Law. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the timing and circumstances upon which an agreement was made between the Village and Delaware North in conjunction with the Village's

1

adoption of the Local Law pursuant to which the Village agreed to use its zoning powers to

adopt the Local Law expressly designed to benefit only Delaware North with the formal

execution of that agreement to be deferred until after the Local Law has been actually adopted.

The Proposed Finding's factual and legal conclusion that no zoning by contract claim can

succeed because Plaintiffs have not shown the existence of an agreement in advance of the Local

Law being adopted is based upon the court having made improper and erroneous findings of fact

that no such agreement existed despite evidence in the motion record showing otherwise.

**Objection No. 3**        Plaintiffs object to the Proposed Findings' recommendation that the

zoning by contract claim be summarily dismissed based upon the court's erroneous legal

conclusion that no zoning by contract claim could be established in the absence of an express

contract made in advance of the Local Law being adopted. As discussed at length in the

memorandum of law accompanying this Objection, the motion record evidenced the existence of

disputed issues of fact establishing that an agreement had been made whereby the Village agreed

in advance of the Local Law being adopted that it would adopt (not that it was required to adopt)

the Local Law if Delaware North agreed that, upon the adoption of the Local Law in a form

approved by Delaware North, Delaware North would formally enter into the Amended TRA after

the Local Law was adopted whereby it would re-commit itself to abide by the Taxpayer Relief

Agreement ("TRA"). The Village's subsequent ratification of that agreement by its formal

execution of the Amended Taxpayer Relief Agreement ("Amended TRA") after the Local Law

was adopted was also sufficient to establish the making of an agreement upon which a zoning by

contract claim may be established.

**Objection No. 4**        Plaintiffs object to the Proposed Findings' recommendation that the zoning

by contract claim be summarily dismissed based upon improper and erroneous findings of fact

2

and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicated because it was made in accordance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) ("Section 1316(6) agreement") or was otherwise an ordinary "mitigation agreement." As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact which precluded summary determination that the Amended TRA qualified as a Section 1316(6) agreement or a mitigation agreement.

**Objection No. 5**    Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicated because it represented an ordinary mitigation agreement, if not a Section 1316(6) agreement, whereby Delaware North agreed to provide the Village certain benefits or to satisfy conditions upon receipt of a favorable zoning determination. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that, no matter what euphemistic label is placed on the Amended TRA, the Village Board nevertheless adopted the Local Law in conjunction with an agreement whereby it agreed to bargain away its powers and tie its hands by agreeing to adopt the Local Law in the form approved in advance by Delaware North.

**Objection No. 6**    Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Plaintiffs have not and cannot establish a spot zone claim.  As discussed at length in the memorandum of law accompanying this Objection, the motion record

3

evidenced the existence of disputed issues of fact regarding the sufficiency of the process the

Village Board used to adopt the Local Law in accordance with State law prescribing the process

by which zoning enactments may be considered and adopted.

**Objection No. 7**     Plaintiffs object to the Proposed Findings' recommendation that the spot

zone claim be summarily dismissed because the process the Village Board used to adopt the Local

Law was beyond judicial review on account of the withdrawal of a SEQRA challenge to the 2016

Negative Declaration that had been made in a prior State court Article 78 proceeding and the

Amended Complaint's failure to allege a SEQRQ claim. As discussed at length in the

memorandum of law accompanying this Objection, Plaintiffs were not required to state a

SEQRA claim in the Amended Complaint and the sufficiency of the process the Village Board

used to adopt the Local Law was not beyond judicial review as to all matters relating to that

process because the Amended Complaint did not allege a SEQRA-based claim.

**Objection No. 8**     Plaintiffs object to the Proposed Findings relating to the Bankruptcy

Court's conclusion of fact and law that the Village Board was not required to consider other

locations and hotels, such as the Hampton Inn located within the Office/Industrial District. As

discussed at length in the memorandum of law accompanying this Objection, the motion record

evidenced the existence of disputed issues of fact establishing that the Proposed Findings made

improper and erroneous findings of fact and conclusions of law to excuse the Village Board from

being required to consider other locations for a gaming facility or other use because no other

hotel or other landowner was seeking to operate a Gaming Facility within the Village's borders.

**Objection No. 9**     Plaintiffs object to the Proposed Findings' recommendation that the spot

zone claim be summarily dismissed because their challenge to the Local Law for want of

uniformity was not specifically pled as a separate cause of action. As discussed at length in the

4

memorandum of law accompanying this Objection, the Amended Complaint satisfied Fed. R. Civ. Proc. Rule 8's requirement for notice-pleading sufficient to bring up for judicial review the Local Law's invalidity for want of uniformity.

**Objection No. 10**     Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board retained the option of amending the Village Code to prevent the proliferation of the unwanted gaming use in the event another hotel is granted a gaming license by New York State and in a manner that does not meet the requirements of the Local Law. As discussed at length in the memorandum of law accompanying this Objection, the Village Board's ability to prevent the expansion of gaming uses of lands located within its borders would have no effect on the right of the Premises' owner to continue to use the Premises as a gaming facility despite the enactment of local laws intending to limit or disallow expansion of a future gaming use.

## CONCLUSION

Based upon the foregoing objections and memorandum of law submitted in support of those objections, Plaintiffs request an order pursuant to Fed. R. Bankruptcy Proc. Rule 9033(d) rejecting the Proposed Findings and recommitting the matter to the Bankruptcy Court with instructions that it proceed to trial with further appropriate instructions regarding the application of the State's law prescribing the lawful enactment of local zoning laws.

Dated: January 7, 2019
      Melville, New York

                                    Law Office of Anton J. Borovina

                                    By: _____
                                        Anton J. Borovina

                                    225 Broad Hollow Road, Ste. 303
                                    Melville, New York 11747
                                    (631) 630-1101

                                          -and-

                                    Paul Sabatino II
                                    1617 New York Ave.
                                    Huntington Station, New York 11746

                                    Attorneys for Plaintiffs

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------)
In re:
SUFFOLK REGIONAL OFF-TRACK BETTING
CORPORATION,

                                 Chapter 9 Case No. 12-43503-CEC

                    Adjusted Debtor.

-------------------------------------------------------------------)
JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER, and APRYL L. MEYER

                    Plaintiffs,

           -against-

INCORPORATED VILLAGE OF ISLANDIA,           Adv. Proc. No. 18-1033-CEC
BOARD OF TRUSTEES OF THE VILLAGE OF
ISLANDIA, DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, aka, DELAWARE NORTH,
and SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

                    Defendants.
-------------------------------------------------------------------)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF OBJECTIONS TO PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Anton J. Borovina, Esq.
225 Broadhollow Road, Ste. 303
Melville, New York 11747
(631) 630-1101

-and-

Paul Sabatino II, Esq.
1617 New York Ave.
Huntington Station, New York 11746

*Attorneys for Plaintiffs*

PRELIMINARY STATEMENT... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS ADDUCED BY THE MOTION RECORD ... . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    The Master Plan ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    The Village's Historical Implementation of the Master Plan ... . . . . . . . . 3

    C.    The Village Board's Issuance of the Permit ... . . . . . . . . . . . . . . . . . . . . 4

    D.    The TRA ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.    The Vacatur of the Permit ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    F..    The Village's Actions Taken in Response to the
            Order Vacating the Permit ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          i.    David Wortman ... . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          ii.    Joseph Iannucci... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          iii.    Mayor Dorman ... . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    G.    The Adoption of the Local Law
            and its "Local Law Conditions"... . . . . . . . . . . . . . . . . . . . . . . . . . 19

    H.    The Amended TRA ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

POINT I:    THE BANKRUPTCY COURT ERRED IN RECOMMENDING
              SUMMARY DISMISSAL OF THE ZONING BY CONTRACT CLAIM.. . . . 21

POINT II:    THE BANKRUPTCY COURT ERRED IN RECOMMENDING
              SUMMARY DISMISSAL OF THE SPOT ZONE CLAIM ... . . . . . . . . . . . . . 38

POINT III:    THE LOCAL LAW IS NULL AND VOID
              FOR WANT OF UNIFORMITY... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

CONCLUSION... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*CASES*:

*Asian Americans for Equality v Koch, 72 NY2d 121 (1988)* .. . . . . . . . . . . . . . . . . . . 39, 43, 48

*Augenblick v. Town of Cortland,* 104 A.D.2d 806 (2d Dept.),
    *rev'd on dissenting opinion below*, 66 N.Y.2d 775 (1985) .. . . . . . . . . . . . . . . . . . . . 45, 54

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .. . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Boyles v Town Bd. of Town of Bethlehem*, 278 A.D.2d 688 (3d. Dept. 2000) .. . . . . . . . 23, 49, 50

*Cannon v. Murphy*, 196 A.D.2d 498 (2d. Dept. 1993). .. . . . . . . . . . . . . . . . . . . . . . . . . 39

*Church v. Town of Islip*, 8 N.Y.2d 254 (1960). .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

*Citizens to Save Minnewaska v. New Paltz Central School Dist.,*
    95 A.D.2d 532 (3d Dept. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*City of New York v. 17 Vista Associates, 84 N.Y.2d 299 (1994)* .. . . . . . . . . . . . . . . . . . . 22

*Collard v. Incorporated Village of Flower Hill*, 52 N.Y.2d 594 (1981) .. . . . . . . . . . . . . . . 23

*Crawford v Kelly, 124 A.D.2d 1018 (4th Dept. 1986))* . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Daniels v. Van Voris*, 241 A.D.2d 796 (3d Dept. 1997) .. . . . . . . . . . . . . . . . . . . . . . . . . 42

*De Paolo v. Town of Ithaca*, 258 A.D.2d 68 (3d Dept. 1999)... . . . . . . . . . . . . . . . . . . . 22, 32

*Dexter v. Town Bd. of Town of Gates, 36 N.Y.2d 102 (1975)* .. . . . . . . . . . . . . . . . . . . . 36

*Farrell v Johnson*, 266 A.D.2d 873 (4th Dept. 1999) .. . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Golden v. Planning Board of the Ramapo*, 30 N.Y.2d 359 (1972) .. . . . . . . . . . . . . . . . . 23, 38

*Kennedy Park Homes Ass'n v. City of Lackawanna*, 436 F.2d 108 (2d Cir. 1970) .. . . . . . . . . . 39

*Levine v Town of Oyster Bay*, 259 N.Y.S.2d 247 (Nass. Co. Sup. Ct), *aff'd,*
    26 A.D.2d. 583 (2d Dept.1966) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24, 26, 43, 46

i

*Los-Green, Inc. v. Weber*, 156 A.D.2d 994 (4th Dept. 1989) .. . . . . . . . . . . . . . . . . . . . . . . 43

*Louhal Properties v Strada*, 191 Misc.2d 746 (Nass. Co. Sup. Ct. 2002),
   *aff'd.* 307 A.D.2d 1029 (2d. Dept. 2003) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Municipal Art Soc. of New York v City of New York*, 137 Misc.2d 832
   (NY Co. Sup. Ct. 2014) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Residents for Reasonable Development v City of New York*, 128 A.D.3d 609
   (1st Dept. 2015) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Rodgers v. Vill. of Tarrytown*, 302 N.Y. 115 (1951) .. . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Save Our Forest Action Coalition v City of Kingston*, 246 A.D.2d 217 (3d. Dept. 1998) .. . . . . 39

*St. Onge v Donovan*, 71 N.Y.2d 507 (1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Tuxedo Land Trust, Inc. v. Town of Tuxedo*, 34 Misc.3d 1235
   (Orange Co. Sup. Ct. 2012), *aff'd*, 112 A.D.3d 726 (2d Dept. 2013)1968).. . . . . . . . 22, 31

*Tyre ex rel. Dawley v Town Bd. of Town of Tyre*, 51 Misc. 3d 665
   (Seneca Co. Sup. Ct.), *aff'd.*, 140 A.D.3d 1711 (4th Dept. 2016)1968).. . . . . . . . . . . . . 37

*Udell v Haas*, 21 N.Y.2d 463 (1968).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 53

*Yellow Lantern Kampground v. Cortlandville*, 279 A.D.2d 6 (3d. Dept. 2000)  ..25, 44, 47-49, 53

**_STATUTES and LOCAL LAWS_:**

Fed. R. Bankruptcy Proc. Rule 9033(d)  .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Fed. R. Civ. Proc. Rule 8 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 54

Islandia Village Code §177-71(B)  .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 41

Islandia Village Code §177-76(A) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 41, 47

Islandia Village Local Law No. 1-2008 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Islandia Village Local Law No. 4-2008 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ii

Islandia Village Local Law No. 3-2017 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

NY CPLR § 7804(e)8-0109 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

NY Envir Conser § 8-0109 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

N Y Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6)262 .. . . . . . . . . . . . . . . . . . . 36

N.Y. Town Law § 262 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

N.Y. Village Law § 7-700 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

N.Y. Village Law § 7-702 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

N.Y. Village Law § 7-703 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

N.Y. Village Law § 7-722 .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

Village Law § 7-725-a(4) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

iii

## PRELIMINARY STATEMENT

Plaintiffs submit this memorandum of law to amplify their Objections to Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"[1]) made by Chief United States Bankruptcy Judge Carla E. Craig dated December 17, 2017 and entered on December 18, 2018 (Doc. No. 100[2]) and to provide the District Court a cohesive narrative upon which the merits of the Objections may be assessed.

## FACTS ADDUCED BY THE MOTION RECORD

The Proposed Findings include a Background (PoF at 2-8) wherein the Bankruptcy Court refers to facts evidenced in the motion record. What follows are references to other facts evidenced in the motion record which Plaintiffs contends is a principal reason why their Objections to the Proposed Findings should be sustained: the Bankruptcy Court improperly and erroneously resolved disputed facts rather than find issues of fact in recommending that the zoning by contract and spot zone claims be summarily dismissed. Plaintiffs will avoid referring to the facts discussed in the Background as much as possible while referring to these other facts.

**A.    The Master Plan.**

In 1995, the Village Board of Trustees ("Village Board") prepared and adopted the Comprehensive Plan for the Village of Islandia ("Master Plan").[3] The purpose of the Master Plan was "to serve as a policy-oriented, long-range guide to the future physical development of the Village of Islandia.  The plan examines present conditions, analyzes opportunities and constraints

---

[1]        References to its pages will be cited as "PoF at__"

[2]        References to Docket Numbers are to those appearing in the Docket Report filed with the Clerk of the United States Bankruptcy Court, Eastern District and will be cited as "Doc. No.".

[3]        Doc. No. 62-26.

for development, sets goals and policies for future decision-making, and formulates a comprehensive plan to control and guide growth in the Village for the next ten to twenty years."[4]

The Master Plan recognized constraints and opportunities allowing for the non-residential uses of land within the Village's borders in a manner that preserves the Village's essentially residential character and its values while allowing for economic growth. Thus, the Master Plan refers to having "[s]table, desirable, well-maintained single-family residential neighborhoods buffered from commercial developments and busy roads, and conducive to a good quality of life"[5] while noting the "continuing pressure for large single user retail facilities at unsuitable locations and with the potential for diminishing the quality of life for residents of the Village."[6] The Master Plan also noted "[t]he presence of two well-run hotels servicing visitors and business-related travelers who visit the area"[7] and "[t]he presence of a number of prestigious corporate and speculative office developments which has enhanced Islandia's image as a major commercial center on Long Island"[8] and "[t]he presence of a large number of smaller wholesale, manufacturing, business and professional tenants in Islandia's large industrial/office areas."

To assure that the presence of mixed non-residential uses of land takes place in the manner that is consistent with and preserves the Village's residential character and values, the Master Plan set forth goals of land-use development designed to "[a]void juxtaposing high intensity uses whose hours of operation are outside of the normal working week, and which generate substantial levels of traffic, with existing residential areas of the Village, or locating such uses on already congested secondary or local roads used by Village residents."[9] The Master

---

[4]  Id. at 1.
[5]  Id. at 90.
[6]  Id. at 88.
[7]  Id. at 90.
[8]  Id.
[9]  Doc. No. 62-22 at 95.

Plan envisioned the removal of hotels from retail zoning because they "are more directly tied to the corporate and speculative developments"[10] The Master Plan further stated that "[m]ultiple use centers, hotels, and motels, residential uses, retail uses, and single use wholesale/retail membership establishments would not be permitted." (Emphasis added)[11]

**B.    The Village's Historical Implementation of the Master Plan**

The history relating to the Village's implementation of the Master Plan's Goals and Policies shows that the Village Board adopted Article X of the Code prescribing the uses of land permitted in the OI District. Code § 177-71(B) states that "[t]he intent of the Office/Industry District is to continue the orderly mixed-use development consisting of high quality, nonintensive light industrial and warehouse uses along with office development in accordance with appropriate standards of design and site development." Emphasis added.

To further assure that the intent for low intensity, high quality uses of land within the OI District as contemplated by Code § 177-71(B) would be achieved and safeguarded, the Village Board adopted 177-76(A) to permit "accessory uses" of land within the OI District *provided* "that such uses are clearly incidental to the principal use and do not include any activity commonly conducted as a business."[12]

The Village Board also adopted Local Law No. 1 and 4 of 2008 prohibiting gaming and adult entertainment uses of land within the OI District.

---

[10]     Doc. No. 62-22 at 105.

[11]     Doc. No. 62-26 at 121.

[12]     Id. ¶ 25. Justice Ford applied this historically used criteria for an accessory use prescribed by § 177-76(A) in determining to vacate the Permit. Doc. No. 62-23.

### C.    The Village Board's Issuance of the Permit.

On March 28, 2016, Delaware North applied to the Village Board for a special permit pursuant to the Village's Zoning Code ("Code") §177-76(A)[13] authorizing the construction and use of a video lottery gaming facility ("Gaming Facility"), including, among other things, a video lottery terminal and an off-track-betting simulcast facility ("VLT Application"), as an accessory use of the hotel ("Hotel") located at 3635 Express Drive North, Islandia, NY ("Premises").[14]

It is critical to note at this juncture that Delaware North made its Application seeking a permit allowing an accessory use of the Hotel as a Gaming Facility in order to meet the two narrow criteria prescribed by the Code §177-76(A) which stated that a special use permit may be approved allowing an accessory use of a principal use of property within the Office/Industrial District ("OI District") "provided that such uses are clearly incidental to the principal use and do not include any activity commonly conducted as a business."[15]

It is undisputed that Delaware North made the VLT Application in order to meet the criteria for an accessory use prescribed by the Code §177-76(A) and for the *sole purpose* of obtaining a special use permit from the Village allowing it to have a gaming use as an accessory use of the Hotel located on the Premises. Its application was therefore for a *specific* use, i.e., a gaming use, and for a specific parcel of land owned by the applicant, i.e., the Premises. In accordance with the criteria for an accessory use prescribed by the Code §177-76(A), Delaware North was not required to show and the Village Board was not required to consider if the gaming use being proposed by Delaware North should be allowed on all lands located within the OI District. Thus, in furtherance of the limited nature of the application and relief being requested, Delaware North included studies, compilation of data and analysis that focused *exclusively* on

---

[13]    Doc. No. 75, Exh. A.
[14]    Doc. No. 75, Exh. B.
[15]    Doc. No. 75, Exh. A

the use and site-specific relief sought is that application. Delaware North did not submit, nor was it required to submit studies, data or analysis for a gaming use to be located anyplace else within the Village other than at the Premises.

In furtherance of the relief sought in the VLT Application, Delaware North included a report that was prepared by VHB Engineering Surveying Landscape Architecture & Geology, PC ("VHB") located in Hauppauge, NY entitled "Expanded Environmental Assessment Proposed Modification to an Existing Special Permit Islandia Marriott Island Hotel" dated June 2016 ("2016 EAF").[16]

Based upon the use and site-specific focus of the studies, compilation of data and analysis commissioned by Delaware North and included as part of the 2016 EAF, the 2016 EAF concluded that the proposed Gaming Facility as an accessory use of the Hotel would not have significant impact on the Premises or the surrounding neighborhood given the already existing principal use of the Premises. The 2016 EAF based this conclusion on its forecast that the removal of the existing meeting and banquet spaces within the Marriott Hotel and readopting those rooms to accommodate the proposed indoor Gaming Facility would have a "net-zero" impact on density of the Hotel's use, the need for additional parking space, traffic congestion, and impact on the surrounding residential neighborhood and quality of life (the "2016 EAF Forecast"). The 2016 Forecast is best summarized by referring to the 2016 EAF which states in pertinent part:

> Based on information provided by the applicant [i.e., Delaware North], it is anticipated that peak hours of activity associated with the indoor amusement area would be evenings and weekends, which is similar to the peak hours of use for the existing hotel. Meeting and banquet spaces would be replaced by the proposed indoor amusement area; thereby, reducing the number of events the hotel could

---

[16]    Doc. No. 62-14.

accommodate. The increase in visitation that would result from the proposed accessory indoor amusement use would be partially accounted for by the reduction in events and/or functions held in the meeting and banquet spaces. Also, as previously discussed, the surrounding area is developed primarily with office/commercial and industrial uses, proximate to major transportation corridors (i.e., the Long Island Expressway and Motor Parkway). Thus, the proposed accessory use would not prevent the orderly and reasonable use of permitted or legally established uses in the district.[17]

On August 12, 2016, the Village Board adopted a resolution granting the VLT Application "in toto" by issuing a special use permit ("Permit") authorizing a gaming use of the kind it sought in the Application as an accessory use of the Hotel located on the Premises ("Permit Resolution").[18] The Village Board issued the Permit on condition and subject to Delaware North's compliance with certain conditions set forth in the Permit Resolution, in particular, Delaware North entering into an agreement, known today as the Taxpayer Relief Agreement ("TRA"), for the ostensible purpose of mitigating the adverse impacts associated with Delaware North's gaming use of the Hotel ("Permit Conditions"). The Permit Resolution stated that:

> The Applicant and the Village of Islandia shall enter a Taxpayer Relief Agreement within five days of the granting of the Special Permit whereby the Applicant shall have financial obligations to the Village in order to relieve the Village and its taxpayers from any unanticipated burden or expenses on Village services and facilities resulting from the proposed VLT gaming facility and OTB simulcast facility, administration and management, and the Village infrastructure. The Special Permit shall be conditioned on the entry and compliance of the Applicant with the terms of the Taxpayer Relief Agreement. In the event that there is a default on the Taxpayer Relief Agreement by the Applicant, or termination of that Agreement, the Village shall have the

---

[17]    Doc. No. 62-15 at DN000228.

[18]    Doc. No. 62-12

right on thirty (30) days written notice to the Applicant <u>to terminate</u> the Special Permit following a public hearing.[19]

Emphasis added.

### D.    The TRA

On August 16, 2016 and as required by the Permit Conditions, the Village and Delaware North entered into the TRA.[20] As a condition for Delaware North to keep using the Premises as a Gaming Facility, the TRA required it to make certain up-front and annual payments to the Village over the next twenty years totaling in excess of forty-six million dollars as a condition for the Permit remaining in full force and effect ("TRA Payments").[21] According to the Permit Resolution and the TRA, the TRA Payments were put in place to "(i) promote community development in the Village, (ii) to offset the increase in the infrastructure, public safety and emergency services cost of the Village incurred as a result of approving the Application and (iii) to reduce real property taxes of Village residents is in the best interests of the Village and its residents."[22]

As a safeguard against Delaware North or its successor's failure or refusal to make the required TRA Payments, the Village Board reserved the right under the TRA to rescind the Permit at any time if the TRA Payments were not made."[23]

### E.    The Vacatur of the Permit.

On September 13, 2016, Jennifer Tomasino, Apryl Meyer and other interested parties commenced an Article 78 proceeding in the New York State Supreme Court, Suffolk County against the Village, Delaware North and others to set aside and vacate the Village

---

[19]    Id. at 19.
[20]    Doc. No. 62-16.
[21]    Doc. No. 62-16 at 3-6.
[22]    Doc. No. 62-16 at 2, 3.
[23]    Doc. No. 62-16 at 6.

Board's issuance of the Permit, Hon. William G. Ford, J.S.C., presiding ("Article 78

Proceeding"). As required by NY CPLR § 7804(e), the Village responded to the Article 78

Proceeding by submitting the Certified Administrative Return ("Certified Return") to Justice

Ford. The Certified Return included the entire administrative record that was before the Village

Board when it adopted the Permit Resolution and issued the Permit, including the 2016 EAF. As

noted earlier, all land use and traffic studies and other data and information that were included in

the Certified Return *related solely* to Delaware North's use and site-specific Application

allowing a gaming use as an accessory use of the Hotel and for no other use or location. The

Certified Return also included the 2016 EAF and the Village Board's "21-page decision" setting

forth the Board's findings and determination, in which the Board determined that a VLT Facility

was an accessory use allowed by special use permit in the OI Zoning District."[24]

On September 7, 2017 and upon review of the papers included in the Certified Return,

Justice Ford issued an order which, among other things, vacated, set aside and annulled the

Village's approval of the VLT Application and its issuance of the Permit ("Order").[25] Justice

Ford based the Order vacating the Permit on two findings that are important to the issues now

before this Court concerning the recommendation made by the Bankruptcy Court that the first

and second causes of action alleged in the Amended Complaint be summarily dismissed:

> It appears, therefore, not only that the administrative record
> is devoid of evidence on which the Village Board could
> properly base a finding that a VLT gaming and OTB
> simulcast facility is "customarily incidental" to a hotel in
> the OI District, but also that no such finding is possible; in
> so concluding, the court notes that the Village Board's
> resolution adopting a negative declaration pursuant to
> SEQRA is essentially rendered academic. Whatever the
> reason for the absence of local hotels with gaming
> facilities-and the respondents' observation "that gaming

---

[24]    Doc. No. 62, Exh. 2 at 28, 29.

[25]    Doc. No. 62-23.

8

facilities were, until 2013, prohibited on Long Island" --
they are, in fact, absent.[26]

Emphasis added.

### F.    The Village's Actions Taken in Response to the Order Vacating the Permit.

Eighty-one (81) days elapsed from the date of the Order, September 7, 2017, to the date

the Local Law was adopted, November 28, 2017.[27]  Plaintiffs will now discuss the process that

the Village used during those 81 days as corroborated by the legislative record preceding the

adoption of the Local Law.

Examination of the documents produced by the Village Defendants in response to

plaintiffs discovery demands shows that the form of the Local Law as it reads today was drafted

and supervised under the watchful eyes of Delaware North's counsel and based *exclusively* upon

whatever information and analysis that was included in the Certified Return and upon which

Justice Ford decided to vacate the Permit upon a finding that the Certified Return was "devoid of

evidence on which the Village Board could properly base a finding that a VLT gaming and OTB

simulcast facility is "customarily incidental" to a hotel in the OI District and that no such finding

is possible."[28]

Delaware North's drafting and supervision regarding the content of the Local Law is

evidenced by the exchange of numerous e-mails between Village Counsel and Delaware North's

counsel.[29]  Those e-mails show that, throughout the entire process, Delaware North's counsel

gave and approved draft versions of the proposed local law and the SEQRA Environmental

Assessment Form ("2017 EAF") which the Village Board was to use and approve in connection

---

[26]      Id. at 6.

[27]      Plaintiffs rely on the Village Defendants' representation by its counsel that they produced all documents in
their possession relating to the adoption of the Local Law. Dorman EBT 94: 20-23.

[28]      Doc. No. 62-23 at 6.

[29]      Doc. No. 75, Exh. D.

with its adoption of the proposed local law. Those emails show Delaware North providing a major talking points memo Mayor Dorman was expected to use in presenting the proposed local law during the Village Board's meetings and public hearings. The e-mail exchange also shows Delaware North's counsel sending draft versions of the proposed resolution to be adopted by the Village Board approving the issuance of a Notice of Determination of Non-Significance ("2017 Negative Declaration") pursuant to SEQRA.[30] This e-mail exchange even shows Delaware North providing specific step-by-step time lines and milestones for the Mayor and members of the Village Board to follow in adopting the local law based upon the form Delaware North has approved.[31]

Nowhere in this exchange of e-mails and documents is there a hint that any new assessment was being or had been made regarding the zoning, traffic or environmental conditions and impacts resulting from the enactment of the proposed local law *other than* whatever assessment Delaware North had already made and submitted to the Village Board at the time it made the VLT Application in August 2016 and included as part of the Certified Return that was before Justice Ford.

The motion record includes no e-mail exchange or any other document produced by the Village Defendants during its document production discussing on what basis the Village Board determined that a gaming use of land within the Village had to be located only on land with a

---

[30]    Doc. No. 75, Exh. E.

[31]    Doc. No. 75, Exh. F. This exchange of e-mails even shows the Village Attorney correcting local law language drafted by Delaware North's counsel which would have allowed an as of right gaming use only to those hotels within the Village having *more than* ten stories, which, if uncorrected would have excluded Delaware North. To correct Delaware North's error, the Village Attorney advised Delaware North's counsel to re-write the proposed local law by reducing the threshold number of stories a hotel must have from ten to seven so that Delaware North's Hotel located at the Premises could thus qualify for the as of right gaming use.  In another e-mail exchange, the Village Attorney noted that Delaware North's draft environmental assessment forms were "a little light" for SEQRA purposes and requested that it be re-drafted. Doc. No. 75, Exhs. G and H.

hotel having at least seven stories with at least 150 rooms and abutting the north side of the North Service road of the Long Island Expressway and why the 120-room Hampton Inn also located within the OI District was excluded from consideration as a hotel suitable to have a gaming use on an as of right basis like the one granted to Delaware North -- notwithstanding the Hampton Inn's proximity to Veterans Memorial Highway, another major highway.

The e-mail exchange also reveals that two "consultants" were involved in reviewing and analyzing the zoning, traffic and environmental impacts associated with the adoption of the proposed local law: David Wortman of VHB and Joseph Iannucci, a licensed architect, of Cashin Associates P.C., an engineering firm also located in Hauppauge, NY. Other than architect Iannucci, the Village did not retain or rely upon any other consultant throughout the time it was entertaining the adoption of the Local Law process.[32]

Given the important role these consultants played during the Village Board's process culminating in the adoption of the Local Law, Plaintiffs will now highlight portions of their deposition testimonies describing what they did and did not do during the 81-day process the Village Board used to adopt a local law with the intent to undo the effects of Justice Ford's Order. Plaintiffs will then briefly summarize the salient testimony taken during Mayor Dorman's deposition.

### i.    *David Wortman.*

Wortman testified that he and his assistant Kimberly Trelfall on behalf of VHB prepared the draft 2017 EAF pursuant to the retainer agreement between Delaware North and VHB ("VHB Retainer Agreement").[33] The Scope of Services within that agreement stated as follows:

---

[32]      Doc. No. 75. Exh. 12 at 91:22-25, 92:1-11.

[33]      Doc. No. 75, Exh. 12. The VHB Retainer Agreement is dated November 22, 2017. In an email by Wortman he states that he was assigned by VHB to work on the preparation of the 2017 EAF and other related documents in or about November 6, 2017. Id.

It is our understanding that the Board of Trustees of the [Village] and its counsel, Joseph Prokop, Esq., are considering an amendment to the Village Code to allow, among other things. a Hotel/Gaming Facility as a permitted principal use in the Office/Industry (O/I) zoning district. It is assumed that the proposed amendment would be applicable to your property in the Village at 3635 Express Drive North (the "subject property"), <u>and to no other property as the legislation is currently drafted and as properties in the Village are currently configured</u>. VHB has been asked to provide environmental planning services in preparing relevant New York State Environmental Quality Review Act (SEQRA) documentation for the proposed zoning action, for ultimate consideration by the Board of Trustees, which board is the sponsor of the proposed legislation as well as the only potential involved agency in the proposed action for the purposes of SEQRA.[34]

The VHB Retainer Agreement further delineated the Scope of Services Wortman was expected to provide by reference to an "*assumption*" he and his assistant were to rely upon while performing services contemplated by that agreement. Under that "assumption" Wortman was required to assume without any further inquiry or second-guessing that the conditions existing on the Premises as of November 2017 were those that were predicted by the 2016 EAF Forecast discussed earlier in this memorandum. Thus, the VHB Retainer Agreement stated in pertinent part:

VHB will prepare Parts 2 and 3 of a Full EAF as a draft for consideration and use by the Board of Trustees. As with Part 1 of the EAF, the content and adequacy of these documents will remain with the Board of Trustees, as these are ultimately the responsibility of that agency as the SEQRA Lead Agency. The approach to be taken by VHB in drafting these sections of the EAF will <u>not include</u> any new quantitative analyses of potential environmental impacts. Instead, the draft will refer to and rely upon the results of the relevant analysis presented in the EAF and the Expanded Environmental Assessment (EA) dated June 2016, revised July 2016, prepared by VHB as part of the prior Special Permit application for an accessory Indoor

---

[34]     Id.

Amusement Establishment at the Islandia Marriott Long Island Hotel, for which the Board of Trustees previously adopted a SEQRA Negative Determination.

For the purposes of the draft EAF (Parts 2 and 3), and based on information provided by Mr. Guardino, it will be assumed that the environmental impact conditions (e.g., traffic, parking, land use and zoning impacts, etc.) of the Hotel/Gaming Facility at the former Islandia Marriott Long Island Hotel (which is currently operating) are substantially equivalent to those anticipated within the aforementioned SEQRA documentation for the Special Permit, which was annulled after the Hotel/Gaming Facility began operation. Confirmation of this assumption will be the responsibility of the Board of Trustees, and not VHB. Furthermore, the draft EAF Parts 2 and 3 will assume that that the proposed ordinance would permit a Hotel/Gaming Facility at your property, and no other property in the Village as currently configured, such that the impacts of the proposed legislation are limited to those of the operating facility and that any potential cumulative impacts would be speculative and not addressed in the analysis.

VHB will also prepare a draft SEQRA Determination of Significance for the proposed action, for consideration by the Board of Trustees. For the purposes of this proposal, it is assumed that a Negative Declaration will be prepared indicating that the proposed action does not have the potential to result in a significant adverse environmental impact and that the preparation of an Environmental Impact Statement will not be required. This proposal does not contemplate the preparation of a Positive Declaration.[35]

Emphasis added.

Throughout his deposition, Wortman confirmed again and again that, in accordance with the limitations placed upon him by the VHV Retainer Agreement's Scope of Services, he proceeded with his assignment based upon the "assumption" that all of the 2016 EAF Forecasts made in the 2016 EAF accurately described the existing "environmental impact conditions (e.g., traffic, parking, land use and zoning impacts, etc.) of the Hotel/Gaming Facility at the former

---

[35]    Id.

Islandia Marriott Long Island Hotel…are substantially equivalent to those anticipated within the aforementioned SEQRA documentation for the Special Permit…". Thus, he testified that he and his assistant did nothing else above and beyond acquainting himself with July 2016 Environmental Assessment Form ("2016 EAF") VHB had prepared at the time Delaware North submitted the VLT Application Delaware North to the Village Board in 2016 and notwithstanding that the 2016 EAF as well as other documents included as part of the Certified Return had already been found by Justice Ford to be "devoid of evidence" to justify a gaming facility as an accessory use of the Hotel.[36] He acknowledged that his reliance upon this "assumption" essentially *limited* the scope of his services in the days leading up to the Village Board's adoption of the Local Law.[37] Thus, he did nothing to acquaint himself with the Village's Master Plan.[38] Whatever knowledge he had about the Village having any comprehensive land use plan at all was limited to whatever was presented in the 2016 EAF.[39] He reiterated that the only resources available to him while undertaking the drafting of the 2017 EAF was the proposed Local Law itself, the 2016 EAF and nothing else.[40] He did not bother to look at or to assess any other lands located within the Village to ascertain if those lands might also be equally, if not more, suitable for the gaming use as contemplated by the proposed local law.[41] Nor did he bother to evaluate the potential or cumulative impacts of the proposed local law either at the Premises or elsewhere in the Village.[42] He conducted no evaluation of existing land use, traffic and parking conditions currently taking place on the Premises as compared to the 2016 EAF Forecasts. Instead, he assumed that whatever was predicted in the 2016 EAF with respect to the 2016 EAF

---

[36]    Doc. No. 75, Exh. 11 at 90:14-24, 90: 4-15, 94: 24-25, 95: 1-20.
[37]    Id. at 105: 16-20, 106: 16-20, 106:21-25, 107: 1-25, 108: 1
[38]    Id. at 117: 22-25.
[39]    Id. at 118:14-18.
[40]    Id. at 125: 7-14, 126: 5-19.
[41]    Id. at 138: 14-20. 139: 21-25, 140: 1-10.
[42]    Id. at 142:21-24, 144: 17-25, 145: 9-14.

Forecasts described current conditions at and within the vicinity of the premises.[43] Nor did he even bother to visit the Premises at the time he was undertaking his services.[44]

As hard as it is to imagine, it turns out that the architect, Joseph Iannucci, did even less than Wortman during the time the brief time the Village Board was contemplating its adoption of the proposed local law.

### ii.    *Joseph Iannucci.*

Joseph Iannucci, a licensed architect, is vice-president of Cashin Associates an engineering firm that provides civil, mechanical, electrical and environmental engineering to its clients.[45] Prior to commencing services relating to the Village's adoption of the Local law and before Jake's 58 took over the Hotel, he knew the Premises' "principal use" to be a "typical hotel" run by Marriott with the usual rooms, a restaurant and a banquet hall.[46] The Hotel during the time it was being operated by the Marriott had no accessory use, i.e., no minor use attendant to the Premises' primary use as a hotel.[47]

Iannucci testified that although he was aware of the existence of the Village's Master Plan, he was not familiar with its contents and made no effort to make himself familiar with that document during the entire time the Village Board was considering the adoption of the proposed Local Law.[48] Nor was he familiar with the Plan Update that was adopted in 2003.[49]

Iannucci testified that his sole involvement regarding the Village Board's consideration of the Proposed Local Law was merely to review the 2016 EAF that Delaware North utilized for its

---

[43]    Id. at 156: 12-18.
[44]    Id. at 157: 7-10.
[45]    Doc. No. 75, Exh. 11 at 14: 3-4, 13-15.
[46]    Id. at 23: 23-24, 24:6-7, 8-17.
[47]    Id. at 25: 16-17.
[48]    Id. at 25: 18-25, 26: 1-4, 86: 23-25, 87: 1.
[49]    Id. at 26:5-7.

VLT Application and to perform a "parking analysis" and correct a few grammar errors.[50] His comments to the Village Board were confined to the existing and anticipated "parking space" requirements associated with the gaming use at the Premises.[51] He provided no other study or comments to the Village Board with respect to the proposed Local Law.[52] He did not perform any evaluation to determine potential or cumulative impacts that would result if the proposed Local Law was actually adopted or the suitability of alternative locations for the proposed gaming facility.[53]

Any doubt about the Village Board's complete charade and contempt for the "deliberative" process it used to evaluate the proposed Local Law is resolved by referring to Iannucci's testimony regarding the representations the Village Board made in the 2017 Negative Declaration that it adopted in conjunction with the Local Law.[54]

In the 2017 Negative Declaration, the Village Board made the following:

> WHEREAS, the Village Engineering Consultant, Cashin Associates, P.C. reviewed the FEAF Part 1 and provided comments that in their expert opinion, there were no potential significant adverse impacts that would result from the proposed action…"[55]

When Iannucci was asked to state the "comments" he made to support this representations made in the Negative Declaration, he testified that the only comments he made concerned a "parking analysis" and to make grammar corrections.[56]

---

[50]    Id. 46: 1-25, 47: 1-25, 48: 1-4, 64: 24-25, 65: 1-7, 83: 12-16, 108:18-25, 109: 1-25.
[51]    Id. 48: 5-14, 49: 5-6, 52: 12-16.
[52]    Id. 50: 11-17.
[53]    Id. 57:25, 58: 1-25.
[54]    Doc. No. 62-19 at 437-438.
[55]    Id. at 437.
[56]    Doc. No. 75, Exh. 11 at 87: 15-19, 88: 7-8, 19-24.

### iii.    *Mayor Dorman.*

Mayor Dorman testified that, until Justice Ford issued the Order, the Village had never thought to amend the Code to allow a gaming use as of right with respect to any land located within the Village's limits. Only after the Order was issued did the Village Board start considering to do that and with the express purpose of nullifying the effects of the Order. Thus, he testified that, shortly after learning about the Order, he and the members of the Village Board determined to take whatever action necessary for sole purpose of nullifying the Order's effects by amending the Code to allow Delaware North to continue its gaming use at the Property without the need for having a special permit in hand to legalize that use. He started the process rolling by referring the matter to Village Counsel.[57] He stated that the Village Board did not retain a land use consultant throughout the entire time it was contemplating the adoption of the zoning amendment other than rely upon lawyers.[58]

Mayor Dorman testified that the Village did not consider any other land within the Village's limits as being suitable for a gaming use other than the Premises.[59] Nor did the Village consider the proximity of other lands to other major highways as it was assessing the Premises' proximity to the Long Island Expressway.[60] He testified that the *only* traffic study the Village Board considered was the one Delaware North used in connection with the VLT Application.[61] The Village did not conduct any analysis or study to determine on what basis the proposed gaming use must be located only in a hotel having more than 150 rooms or that it had to be sited

---

[57]    Doc. No. 75, Exh. 12 at 91: 15-21.

[58]    Id. 91: at 22-25, 92: 1-25.

[59]    Doc. No. 75, Exh. 12 at 147: 24-25, 148: 1-13, 149: 8-17.

[60]    Id. at 150: 5-22.

[61]    Id. at150: 3-25, 151: 1-10.

on land greater that seven acres or that it had to be located next to the Long Island Expressway and no other major highway like Veterans Memorial Highway.[62]

Mayor Dorman also testified that he was not familiar with the 1995 Master Plan. [63] He had no recollection of the Village Board receiving any report, memorandum or analysis comparing the proposed local law to the Master Plan.[64] Nor could Plaintiffs find any such report, memorandum or analysis in the Village Defendants' document production.

Mayor Dorman also testified that he had no knowledge of the media covering the community's opposition which led the Town of Brookhaven to reject Delaware North's plans to cite a gaming facility in Medford, a small hamlet located with that town.[65]

He testified that the sole basis for the Village's determination to adopt the Local Law that exclusively benefited Delaware North's use of the Hotel as a Gaming Facility was because "[i]t was already built."[66] He reiterated that the Village did not consider any other lands as eligible for a gaming use other than for Delaware North's gaming facility at the Hotel:

> We didn't look at other properties for gaming facility. This
> was the applicant's address. This is where they requested to
> have it. No need to look at anything else.[67]

Emphasis added.

He testified that "[w]e had to enact the Local Law...because the Judge denied the special permit."[68] The sole purpose for the Village adopting the Local

---

[62]   Id. at 152: 9-25, 153: 1-9.
[63]   Id. at 134: 23-25.
[64]   Id. at 135: 1-14.
[65]   Id. at 135: 17-21, 136: 1-9; Doc. No. 69 at ¶¶ 15-18; Doc. No. 72, Exhs. 2 and 3.
[66]   Id. 148: 18-25, 149: 1-9.
[67]   Id. 157: 9-12.
[68]   Id. 159: 5-16, 17-25.

Law was in response to Justice Ford's decision vacating the Permit the Village

Board issued to Delaware North.[69]

Mayor Dorman also testified that Jake's 58 has become the "recreation

center for Suffolk County," and "the highlight of Suffolk County and "a lot of

people go there…."[70]

Plaintiffs note at this juncture that Dorman's description of Delaware

North's use of the Hotel as a Gaming Facility as the "recreation center" and

"highlight" of Suffolk County and a place where "a lot of people go" <u>contradicts</u>

predictions that were made in the 2016 EAF Forecast discussed earlier.

### G.    The Adoption of the Local Law and its "Local Law Conditions."

On November 28, 2017, the Village adopted the Local Law[71] in response to State

Supreme Court Justice William Ford's Order[72] vacating the Permit.

The Local Law created a new Use Classification within the OI District known as the

"Hotel/Gaming Facility."[73] According to Local Law § 2.1.2, a "Hotel/Gaming Facility" use of

land within the Village would be allowed "as of right" only on those lands within the OI District

that met certain conditions specified in that local law ("Local Law Conditions").

The Local Law Conditions included seven conditions (Hereinafter referred to as the

"Local Law Conditions") which had to be satisfied in order for land within the Village's limits to

have a Hotel/Gaming Facility use as of right and without the necessity of obtaining a special use

permit as was the case before the Local Law was adopted. The Local Law Conditions consisted

---

[69]     Id. 162: 25, 163: 1-9.

[70]     Id. 130:1-12.

[71]     Doc. No. 62-19.

[72]     Doc. No. 62-23.

[73]     Doc. No. 62-19 at 4.

of the following: 1.) The land must have a hotel with more than 150 rooms, 2.) The hotel must

have an indoor facility capable of accommodating VLTs, 3.) The hotel must be located on land

within the OI District having greater than seven acres, 4.) The hotel must have at least 600 feet of

frontage on the L.I.E and the L.I.E. Service road, 5.) The gaming use must be authorized by the

New York State Tax Law § 1617-a as a VLT gaming facility, 6.) the gaming use must be

authorized by the New York State Gaming Commission to have simulcast off-track betting

simulcast facilities and 7.) the gaming use must be authorized by the New York State Racing,

Pari-Mutuel Wagering and Breeding Law to have simulcast off-track betting simulcast

facilities.[74]

Not surprisingly, the Local Law Conditions precisely mirrored the conditions upon which

the Village Board issued the Permit to Delaware North in 2016. Only one parcel of land within

the Village's territorial jurisdiction could meet those conditions: the Premises.

### H.    The Amended TRA.

On December 5, 2017, the Village Board adopted a resolution authorizing Mayor Dorman

to sign an agreement amending the TRA to take into account the Local Law that it had adopted

several days earlier.[75]

On February 1, 2018, the Village and Delaware North entered into the Amended and

Restated Taxpayer Relief Agreement ("Amended TRA") pursuant to which the parties expressed

their intention *to amend* the TRA and to continue in full force and effect the covenants and

obligations that were made in the TRA.[76] The Amended TRA stated:

> WHEREAS, in connection with the issuance of the
> Hotel/Gaming Permit, the Village and the Owner desire to
> maintain the covenants and obligations made to each other

---

[74]    Id.

[75]    Doc. No. 75, Exh. J.

[76]    Doc. No. 62-20.

> in the in connection with the prior zoning approval and,
> therefore, desire to amend and restate the Original
> Agreement in its entirety in the manner set forth herein...
>
>             \*\*\*
>
> NOW, THEREFORE, the Parties, for and in consideration
> of the mutual promises and agreements of the other party
> hereto and other good and valuable consideration, the
> receipt and sufficiency of which are hereby acknowledged
> by the parties, and intending to be legally bound, do hereby
> amend and restate the Original Agreement in its entirety
> and their mutual obligations thereunder and hereby further
> agree as follows..."[77]

Consistent with the Village Board's determination made in 2016 to issue the Permit

subject to the Permit Conditions discussed above regarding the Village Board's right to rescind

the Permit, the Amended TRA included a provision stating that "[i]n the event that the Owner (a)

fails to pay the required Taxpayer Relief Payment in accordance with the terms and conditions of

this Agreement...the Village Board may elect to terminate this Agreement and revoke the

Hotel/Gaming Permit...".[78]

## POINT I

### THE BANKRUPTCY COURT ERRED IN RECOMMENDING SUMMARY DISMISSAL OF THE ZONING BY CONTRACT CLAIM.

Plaintiffs object to the recommendation in the Proposed Findings that the first cause of

action (zoning by contract claim) be summarily dismissed because Defendants have shown that

the Village Board "did not bind itself in advance to enact Local Law No. 3-2017" and thus

Plaintiffs cannot establish the Local Law as an unlawful zoning by contract. PoF at 1, 10. The

Bankruptcy Court used Defendants' motions as a vehicle to make improper and erroneous

findings of fact and conclusions of law. Instead, it should have recommended the motions be

---

[77]   Id.

[78]   Id. at 9.

denied based upon the State's law applicable to the review of local zoning enactments challenged as unlawful zonings by contract with the issues of fact to be resolved by trial.

Courts will declare a zoning enactment void as against public policy and unlawful if the facts show it was adopted by bargaining away or selling the zoning authority's legislative powers in conjunction with an agreement to provide a favorable determination. *City of New York v. 17 Vista Associates,* 84 N.Y.2d 299, 306 (1994); *Church v. Town of Islip,* 8 N.Y.2d 254, 259 (1960); *De Paolo v. Town of Ithaca,* 258 A.D.2d 68, 71 (3d Dept. 1999); *Collard v. Incorporated Village of Flower Hill,* 52 N.Y.2d 594, 601–02 (1981) (stating that "[b]ecause no municipal government has the power to make contracts that control or limit it in the exercise of its legislative powers and duties, restrictive agreements made by a municipality in conjunction with a rezoning are sometimes said to violate public policy."); *Tuxedo Land Trust, Inc. v. Town of Tuxedo,* 34 Misc.3d 1235 (Orange Co. Sup. Ct. 2012), *aff'd,* 112 A.D.3d 726 (2d Dept. 2013).[79]

In *Levine v. Town of Oyster Bay,* 26 A.D.2d. 583 (2d Dept.1966), the Court voided the Town's adoption of a zoning amendment upon facts showing that it was adopted in conjunction with an agreement between a private land developer and a private third party. The agreement upon which the zoning by contract was predicated concerned a contract of sale by private landowners, the Shodnecks, to sell their 14 acre residential parcel of land to a private third-party, Silicon Transistor Corp. on condition that the property is rezoned for industrial use. The Town Board thereafter adopted in toto Shodnecks' application seeking a change of zone to an industrial use. The dispositive factor that caused the *Levine* court to strike the zoning amendment was not that the

---

[79]     Courts also disfavor local legislative action after a law suit is filed that "is designed to stymie litigation, particularly where the public interest is so deeply involved and is of the highest priority" *Kennedy Park Homes Ass'n v. City of Lackawanna,* 436 F.2d 108, 112 (2d Cir. 1970). That is what the Village Board did here by adopting the Local Law while Plaintiffs' lawsuit was proceeding to set aside and enjoin Delaware North's continued gaming use of the Hotel.

zoning amendment was an unlawful "future zone" but because it was "proposed by the applicants for the downzoning and was adopted in toto by the Town Board" the Court stating that:

> However, in this case the condition was proposed by the applicants for the downzoning and was adopted in toto by the Town Board. There was no such circumstance in Church and, unlike Church, there is nothing to show an inexorable march of industry into the properties west of Brush Hollow Road; such an eventuality is impossible due to the maximum utilization of that area for residence purposes. This rezoned parcel is the first industrial intrusion in the area and it seriously upsets the use balance that had been advised and maintained with respect to the zoning on each side of the Brush Hollow Road buffer. Another important consideration indicating the Town Board's over-all plan is the fact that the nonconforming gas station use was not rezoned and was left in the residential district. Thus, the evidence supports the conclusion that this zoning amendment was not made for the general welfare of the town but for the personal benefit of appellants, who petitioned for precisely the change and conditions that were adopted. This constitutes spot or contract zoning."

A.D.2d at 583–84. Emphasis added.

The Bankruptcy Court misread the basis upon which the Appellate Division struck the zoning amendment for being "in futuro" when it stated that "[u]nlike the resolution in *Levine*, Local Law No. 3-2017 became effective immediately upon filing it with the New York Secretary of State on November 28, 2017, and the certificate of occupancy was conditioned on the continued performance of Delaware North under the Amended TRA." PoF at 15. Zoning amendments that become effective only after future conditions have been satisfied are not unlawful, per se. See: *Golden v Planning Bd. of Town of Ramapo*, 334 N.Y.S.2d 138, 156 (1972). In *Boyles v Town Bd. of Town of Bethlehem*, 278 A.D.2d 688, 690 (3d. Dept. 2000), a case cited by the Bankruptcy Court in the Proposed Findings, the Court had before it a rezoning change that was conditioned upon a restriction as to the future use of the site. Instead, the *Levine* Court held that the zoning amendment was unlawfully adopted because all of the conditions included in the

amendment had been proposed by the landowner and then adopted in toto by the Town Board in furtherance of the private agreement that had been made between the landowner and a third-party. The amendment therefore was infirm for being an unlawful zoning by contract.

The facts before the *Levine* Court parallel those evidenced in the motion record before this Court. Here, the Village agreed in advance to codify *in toto* the VLT Application Delaware North sought and then obtained when it issued the Special use Permit in 2016. At that time, the Village Board issued the Permit based exclusively upon the two criteria for an accessory use within the OI District, discussed above, i.e., that Delaware North's proposed accessory use was incidental to the principal use of the Premises as a Hotel and did not include any activity commonly conducted as a business.[80] Those facts show that Delaware North thereafter entered into the TRA to satisfy the condition for the Permit being granted. In executing the TRA, Delaware North acknowledged the Village Board's right to terminate the Gaming Use of the Premises forthwith if Delaware North breached the TRA. After Justice Ford vacated the Permit and before the Local Law was adopted, the Village and Delaware North agreed to modify the TRA whereby the Village Board agreed to bargain away the absolute right it then had to terminate the Gaming Use of the Premises by adopting a local law containing conditions drafted and approved *in advance* by Delaware North. The Village agreed to enact the Local Law in order to induce Delaware North to agree to formally execute the Amended TRA after the Local Law was adopted. Plaintiffs contend that, in order to establish a zoning by contract claim, it was not necessary for the Village to have explicitly agreed in writing to adopt the Local Law prior to enactment in order to extract a promise from Delaware North that it would formally execute the Amended TRA after the Local Law was adopted.

---

[80]    Doc. No. 75, Exh. A

The Village Board and Delaware North then proceeded to consummate their agreement by the Village Board adopting the Local Law inclusive of conditions drafted and approved by Delaware North. In drafting those conditions, which the Village Board ultimately adopted in toto, Delaware North made absolutely certain that no other owner of land located within the Village's borders could have a competitive gaming use of land. In exchange for the Village Board's giving Delaware North this monopolistic hold, Delaware North recommitted itself to the TRA by formally executing the Amended TRA pursuant to which it agreed to deposit over forth-six (46) million dollars into the Village's coffers so that it can use a few of those dollars to make sure its two Village-roads located within the vicinity of the Premises are kept looking nice and spiffy with any leftover funds applied to reduce the Village's residents' tax burden. But see: *Yellow Lantern Kampground v. Cortlandville*, 279 A.D.2d 6 (3d Dept. 2000) (where the Court rejected the notion that the promotion of economic development is sufficient to relieve a local government's responsibility to adopt zoning laws that are consistent with its comprehensive land use plan.).

Mindful that the Village's receipt of over forty-six (46) million dollars under the Amended TRA might appear to be more than what could conceivably be needed to mitigate the Village's purported infrastructure costs and thus qualify as a garden-variety "mitigation agreement," the Bankruptcy Court erred in its assessment that the excess funds could then be used to "reduce[] the tax burden of Village residents." PoF at 12, 13. Such contracts between a local government and a developer whereby the developer agrees to give cash to fill the government's coffers are illegal. *Municipal Art Soc. of New York v City of New York*, 137 Misc.2d 832 (NY Co. Sup. Ct. 2014). See also: Village Law § 7-703 (which prohibited the Village from entering into these kinds of "tax-reducing" arrangements unless authorized pursuant to a zoning incentive ordinance specifically adopted for such a purpose in the manner prescribed

by § 7-703.) The Local Law, however, was not adopted in accordance with Village Law § 7-703 and did not otherwise condition the as of right gaming use upon the landowner making cash payments to the Village's treasury  in order to mitigate the Village residents' tax burden.

The Bankruptcy Court's reliance upon *Residents for Reasonable Development v City of New York*, 128 A.D.3d 609 (1st Dept. 2015) for the proposition that "[i]t is not impermissible for a board to issue a zoning determination if unrelated local benefits are provided" is distinguishable on the law. PoF at 13. The payments that made by the developer in that case were made pursuant to the City's adoption of an incentive zoning ordinance.

The facts evidenced in the motion record present an even more compelling basis to declare the Local Law a null and void zoning by contract as compared to what was before the Court in *Levine*. Unlike in *Levine,*  where the zoning amendment was adopted in conjunction with an agreement that was executed between the developer and a private third-party, the Local Law was adopted in conjunction with an agreement between the Village and Delaware North whereby Delaware North agreed to give over forty-six million dollars in TRA Payments if the Village Board exercised its legislative powers in anyway necessary to legalize the use of the Hotel as a Gaming Facility notwithstanding Justice Ford's Order. That is a far cry from the arrangement between two private parties in *Levine.*

Moreover and even more significantly, at least in *Levine,* the zoning amendment was to take effect only at such future time when the developer has regraded certain land in a manner that is satisfactory to the Town's engineer. Otherwise, the zoning amendment was not effective and the landowner could derive no benefit from that amendment unless and until the regrading condition specified in the amendment has been satisfied. Unlike in *Levine*, the Local Law was intended to apply *immediately* and had the *immediate* (and continuing) effect of allowing Delaware North to sell the Premises to a new owner who would continue to have the right to use

the Premises as a Gaming Facility while at the same time thumbing its nose at the Amended

TRA. The Village Board's hands would be tied in terming the use under those circumstances

because it previously had bargained away the right it once had to terminate that gaming usin

exchange for inducing Delaware North to execute the Amended TRA. Not only would the

Village be unable to exercise the right it once had to terminate the Gaming Use by that successor

owner, the Village would not be able to enforce Amended TRA by requiring the successor owner

to honor Delaware North's original promise to give millions of dollars to the Village so that it

can offset its purported infrastructure costs. Accordingly and contrary to the conclusion in the

Proposed Finds stating otherwise, the Village Board did "bargain away or sell its powers" in

contravention of the Court's holding in *Church v. Town of Islip*, 8 N.Y.2d 254, 259 (1960) and in

furtherance of an agreement that had the effect of controlling or limiting the exercise of its

legislative powers and duties in contravention of *Collard v. Inc. Vill. of Flower Hill*, 52 N.Y.2d

594, 601 (1981).

The Bankruptcy Court's error is further demonstrated when it stated that the Village

Board still had the right to revoke the certificate of occupancy initially given to Delaware North

pursuant to the Local Law inasmuch as the continuation of the Gaming Use "was conditioned on

the continued performance of Delaware North under the Amended TRA." PoF at 15. But the

Village Board would not have the right to revoke the certificate under those circumstances. The

Local Law allowed Delaware North and successor owners to use the Hotel as a Gaming Facility

by meeting the enumerated conditions prescribed by the Law. Once those conditions have been

met (as was expected to be the case inasmuch as Delaware North wrote the Local Law!!), the

Village's Building Department had the non-discretionary obligation to issue (and did issue) the

certificate of occupancy authorizing the use of the Premises as a Gaming Facility. The right that

the Village Board once had under the TRA to rescind the certificate was effectively bargained

away where Delaware North or continues to use the Premises for such purposes but fails or refuses to abide by the terms of the Amended TRA.

Ironically, the very circumstance upon which the Bankruptcy Court relied upon in recommending that the Local Law not be deemed an unlawful zoning by contract is instead further evidence that the Village Board effectively tied its own hands, viz-a-viz, by its adoption of the Local Law in furtherance of an agreement it had with Delaware North that effectively took away the Village Board's right to revoke the certificate of occupancy. Unlike the prerogatives the Village Board had when the TRA was in place to terminate the Gaming Use if the terms of the TRA were breached by Delaware North or a successor owner of the Premises, the Village Board forfeited that right by adopting the Local Law allowing a Gaming use as of right if the conditions enumerated in that Local law are met. Continued compliance the Amended TRA was not one of those conditions.

The Bankruptcy Court also erred by not applying the Court's holding in *Citizens to Save Minnewaska v. New Paltz Central School Dist.,* 95 A.D.2d 532, 534 (3d. Dept. 1983) to strike the Local Law. In *Citizens to Save Minnewaska,* the Court declared a resolution granting tax exemptions for eligible business facilities within a school district null and void where a corporation considering construction of a hotel applied for an exemption from taxation and submitted an offer to pay 100% of what its taxes would have been without the exemption should casino gambling be legalized in New York. The written contract recited that it would be binding if the school district adopted the required resolution. Even though the contract did not actually require the school district to adopt the resolution, exactly like the TRA and the Amended TRA did not expressly require the Village Board to adopt the Local Law, the *Citizens to Save Minnewaska* Court nevertheless declared the resolution null and void after finding that the school

district had adopted it in conjunction with the terms of a contract and in exchange for a predetermined consideration to provide an expedited and favorable determination.

The Bankruptcy Court erred in refusing to apply *Citizens to Save Minnewaska* to the facts in this case when it said that "[i]n this case, however, there was no prior agreement in exchange for the approval of the permit or the adoption of Local Law No. 3-2017." PoF at 15. Such a conclusion is a finding of fact that ought not to have been summarily decided in Defendants' favor, especially after the Bankruptcy Court's finding that "...the terms of the Amended TRA were negotiated prior to the enactment of Local Law No. 3-2017..." PoF at 13. The parties' agreement to formally execute the Amended TRA after the Local Law is adopted provided it includes land-use conditions written by and for Delaware North's exclusive benefit should be regarded as a sufficient predicate upon which the Local Law is to be held an unlawful zoning by contract.

Thus, the Bankruptcy Court improperly and erroneously made findings of fact when it said that "[t]he timing of the contracts reflect that the Board did not "bind[] itself in advance to exercise its zoning authority in the future for the benefit of a landowner upon the landowner's provision of a consideration. (Citation of case omitted)" PoF at 13. The motion record provided sufficient evidence to establish that the Village Board had agreed in advance of the Local Law's adoption that it would adopt (not that it was required to adopt) the Local Law to be written in a manner so as to benefit Delaware North exclusively.  In the Amended TRA's "WHEREFORE" clause, quoted above, the parties expressly acknowledged their mutual intent to amend the TRA. Mayor Dorman made the same acknowledgment when he said that he signed the Amended TRA in order to be assured about Delaware North's continued commitment to be bound by the TRA after the Local Law was adopted and in exchange for the Village Board agreeing to amend the

Code in a manner favorable to Delaware North's continued operation of the Gaming Facility notwithstanding anything to the contrary in Justice Ford's Order.[81]

Indeed, during the oral arguments that were held before the Bankruptcy Court in connection with Defendants' motions. Counsel for Delaware North admitted to the existence of an agreement between it and the Village that had been made in advance of the Local Law's adoption. In response to a question posed by the Court Delaware North's counsel stated that "I'm not sure honestly why the Village felt it needed to have a second agreement months afterwards. Delaware North was from my position we had an agreement in place, the agreement stayed in place, and the agreement applied."[82]

Delaware North's counsel even admitted to being in agreement with Plaintiffs' counsel's argument that a formal written agreement did not have to be in place before a challenged zoning amendment may be declared an unlawful zoning by contract when he stated that:

> Because I agree with my colleague to the extent he says, wait a minute, if you did something a week before or afterwards you're not fooling anyone. The question is, what does the agreement require you to do. What does the agreement say, and the agreement has not a single word in it as they've admitted in terms of the TRA that obligates the Village Board to take an action, that's why it fails right there, contract zoning is out the window, because they've admitted it doesn't have any obligation to the Village to do this. If the Village basically was in a situation where they had as in the *Save the Citizens* case to adopt a resolution, in other words, they accept the consideration in return they're going at a later date adopt this resolution. That's clearly bargaining away your legislative power. But the Village retained every right to say, you know what, we've had this case where it's been set aside, and we now have a situation where we're voting, and you know what, we've changed our

---

[81]    Doc. No. 75, Exh. 12 at 70:3-10; 72:5-6.

[82]    Transcript of Oral Argument held on November 28, 2018 at pages 49-50. References to the Transcript will hereinafter be cited as "Trans."

mind, no thank you. There's no obligation under the TRA or the amended TRA to do anything different.[83]

While it is true, as Delaware North counsel states in the transcript just quoted, that "the agreement has not a single word in it as they've admitted in terms of the TRA that obligates the Village Board to take an action," nevertheless the omission of such express language in the Amended TRA or the want of a formal written agreement to that effect existed before the Local Law was adopted does vitiate the facts evidenced in the motion record that the Village Board had agreed in advance to adopt (not that it was required to adopt) the Local Law inclusive of conditions written and approved by Delaware North and designed to benefit only Delaware North and no other owner of land within the OI District based upon Delaware North's promise that it would formally recommit itself to honor the payments it had agreed to make under the TRA by its formal execution of the Amended TRA.

Accordingly, even though there is no written agreement that was made in advance of the Local Law obligating the Village Board to adopt the Local Law, unlike in *Citizens to Save Minnewaska,* nevertheless, it should be regarded as sufficient for purposes of establishing the zoning by contract claim that the Village agreed to adopt (not that it was contractually required to adopt) a Local Law whose conditions were drafted, reviewed and approved by Delaware North. Contrary to the conclusion in the Proposed Findings stating otherwise, the Village Board did commit itself, in advance, to a specific course of action with respect to the zoning amendment in order to induce Delaware North to execute the Amended TRA upon the Village Board's adoption of the Local Law in the form written and approved by Delaware North. The Court in *Tuxedo Land Trust v. Town of Tuxedo,* 34 Misc. 3d 1235 (Orange Co. Sup. Ct. 2012), *aff'd.,* 112 A.D.3d

---

[83]        Trans. at 50-51.

726 (2d Dept. 2013) recognized such a circumstance as a sufficient basis upon which a zoning by contract claim may be sustained.

The Bankruptcy Court's reliance upon *De Paolo v Town of Ithaca*, 258 A.D.2d 68 (3d Dept. 1999) as being similar to the facts at bar is distinguishable. *In De Paolo,* the Town did not commit itself to a specific course of action in exchange for Cornell's granting the Town a 99–year license to use certain property as a public park, thereby allowing continued public access to Cayuga Lake. Here, the motion record evidences facts establishing that the Village agreed (without being required to agree) to adopt the Local Law to include condition drafted and approved by Delaware North in advance of the Local law being adopted in order to induce Delaware North to sign the Amended TRA after the Local law as so approved was adopted.

Critically, this Court's acceptance of the rationale employed by the Bankruptcy Court that there must be an express written agreement existing "in advance" obligating the Village Board to adopt the Local Law would mean that no actionable zoning by contract claim could ever be established in New York. It does not take any imagination for a young local government attorney to figure out that a successful challenge to the enactment of a zoning amendment on the ground that it is an unlawful zoning by contract may easily avoided by making sure there is nothing in writing in advance of the zoning enactment which contractually obligates the local government to adopt the zoning enactment. All that has to be done is for the local government, via a wink and a nod. to informally agree to adopt a zoning enactment if the landowner agrees to execute a formal agreement after the zoning enactment is adopted.

The Bankruptcy Court also erred when it state that no tying of the Village Board's hands can be established because "nothing in the Amended TRA...prevents the Board from amending

or revoking Local Law No. 3-2017 and terminating the Amended TRA,"[84] and "[n]othing in the TRA or the Amended TRA obligates the Board to continue the Hotel/Gaming Facility as a permitted use in the District."[85]

Of course, the Village Board can amend or revoke the Local Law. As discussed above, however, doing that would not divest the owner of the Premises, including its present owner, Delaware North, to continue to use the Premises as a Gaming Facility with a certificate of occupancy in hand.

The Bankruptcy Court also erred when it stated that language in the Amended TRA adequately protects the Village because "the Amended TRA specifically requires Delaware North to assign the TRA to a new owner in connection with any sale of the Location, and obligates the subsequent owner to make the annual Tax Relief Payments…In the event Delaware North or a subsequent owner defaults under the Amended TRA, the certificate of occupancy may be terminated."[86] To the contrary, the Amended TRA excuses Delaware North from being obligated to comply its terms, stating that Delaware North "shall only be required to make the Taxpayer Relief Payments…only if Owner (or an Affiliate of the Owner) is the Owner of the Premises."[87]

The Bankruptcy Court also mischaracterized Plaintiffs' zoning by contract claim when it said that "[t]he Plaintiffs argue that, because Local Law No. 3-2017 created an as of right use for a Hotel/Gaming Facility, the law cannot be vacated or repealed, because such action would constitute a taking in violation of the Fifth Amendment to the United States Constitution."[88]

---

[84]    PoF at 14.
[85]    PoF at 16.
[86]    Id.
[87]    Doc. No. 62-20 ¶15.
[88]    PoF at 16.

Plaintiffs do not make this argument, nor were they required to do so in order for them to establish their zoning by contract claim. As discussed earlier, Plaintiffs' zoning by contract claim is established by evidencing facts establishing that the Village Board adopted the Local Law in furtherance of the agreement it had with Delaware North that if the Village Board adopted the Local law with conditions approved in advance by Delaware North, Delaware North would recommit itself to the terms of the TRA by its execution of the Amended TRA. For reasons discussed above, the Village Board tied its own hands by proceeding to adopt the Local Law on the basis of such an agreement.

The Bankruptcy Court also erred when it dismissed as irrelevant to the zoning by contract claim Plaintiffs' argument that, in the event New York State law is expanded to permit more gaming licenses, another property owner in the District would have the right to obtain a permit for a Hotel/Gaming Facility. PoF at 17. In the event the State Legislature allowed additional licensees to operate a Gaming Facility, every owner of land which meets the other conditions prescribed in the Local Law would be able to use their land on an as of right basis without being required to pay the millions of dollars Delaware North agreed to pay pursuant to the TRA. Indeed, Delaware North and its successors in interest would have the right to a certificate of occupancy with respect to its acquisition of other lands located within the OI District – without having to honor the TRA.

In that regard, Iannucci testified that there was a direct correlation between the number of parking spaces needed at the Premises and the number of VLTs being used within the Hotel. The more VLTs, the more parking spaces required.[89] Under that scenario and in the event the State Legislature authorized more VLTs as contemplated by the Amended TRA,[90] the Village Board

---

[89]    Doc. No. 75, Exh. 11 at 112: 2-25, 113: 1-25, 114: 1-25, 115: 1-8.
[90]    Doc. No. 62-20 at 5.

could do nothing to prevent the subsequent owner from increasing the parking spaces by reconfiguring the Premises is such a way so as to accommodate more parking spaces. The intensity of the gaming use would theoretically sky-rocket and there would be little if anything the Village could do to prevent that from happening.[91]

Unlike the Permit Resolution and the Permit Conditions which established a viable exit strategy enabling the Village to terminate the gaming use on the Premises in the event Delaware North failed or refused to make the required TRA Payments, no such exit strategy was put in place by the adoption of the Local Law. In that regard, Mayor Dorman testified to the importance of the Village Board's right to terminate the gaming use of the Hotel if the TRA Payments were not made as prescribed by the Amended TRA.[92] He testified that the very same "public interest" considerations which induced the Village to issue the Permit in the first place and on condition that Delaware North enters into the TRA were instrumental in causing the Village Board to adopt the Local law based upon its expectation that those payments would continue via the parties' execution of the Amended TRA.[93] Yet, in its haste to get around Justice Ford's Order in order to assure the uninterrupted flow of the TRA Payments into the Village's coffers, Mayor Dorman and the Village Board forfeited all expectation and right they once had to enforce the continued making of those payments thereby preventing it from the realizing whatever purported "impact mitigation" benefits it had in mind when it adopted the Permit Resolution and the Local Law.

---

[91]    Mindful of Iannucci's testimony describing the correlation between the number of parking spaces needed at the Premises and the number of VLTs being used within the Hotel, it is misleading for Defendants to say in their memorandum that "[t]here was no additional parking spaces...added...", Doc. No. 62, Exh. 2 at 3, fn. 1. The number of parking spaces would increase if the State approved the installation of additional VLT and other gaming devices within the Hotel. Delaware North and subsequent owners would be able to install the additional parking spaces on the Premises thereby resulting in even greater intensity of the gaming use at the Premises and greater adverse impacts upon the residential homes located within the vicinity of the Premises and of the kinds alleged in the Amended complaint.

[92]    Doc. No. 75, Exh. 12 at 87:3:11.

[93]    Id. at 61:14-25, 62:1:25; 63: 1-19.

The Bankruptcy Court also erred by stating that the Amended TRA was not and could not be the basis upon which a zoning by contract claim may be predicted because "[i]f the existence of such an agreement constitutes contract zoning, then compliance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) would automatically result in a voidable zoning determination. The absurdity of that result is evident."

Triable issues of fact evidenced in the motion record precluded summary determination that the Amended TRA qualified as a Section 1316(6) agreement. Neil Munro, the Village's former deputy mayor, stated in his affidavit that, putting aside its maintenance of a few Village-owned roads within the immediate vicinity of the Premises, the Village does not incur "infrastructure" costs associated with the use of the Premises as a gaming facility.[94] He states that the entire costs for such things as non-Village owned road maintenance and repair, sanitation, sewage-treatment, public safety and emergency services are borne by other levels of government or by private parties and not the Village.[95] Mayor Dorman admitted such to be the case during his deposition when he stated that sanitation, for example, is not a cost incurred by the Village.[96] Thus, Defendants telling us today that the TRA Payments were intended as a means to mitigate the "impacts" of Delaware North's gaming use at the Premises should be regarded as a public-relations ruse to justify the Village's receipt of tens of millions of dollars in hard cash in exchange for its willingness to use its zoning powers to assure Delaware North a safe-harbor with respect to its gaming enterprise at the Premises. But see: *St. Onge v Donovan*, 71 N.Y.2d 507 (1988); *Dexter v. Town Bd. of Town of Gates*, 36 N.Y.2d 102 (1975) (recognizing that there must be a relationship between a condition imposed by the issuance of a special use permit and the impacts associated with the use of the land granted by that permit.)

---

[94]    Doc. No. 74.

[95]    Id. ¶¶ 7-9.

[96]    Doc. No. 75, Exh. 12 at 56:15-16.

The Bankruptcy Court's reliance upon *Tyre ex rel. Dawley v Town Bd. of Town of Tyre*, 51 Misc. 3d 665 (Seneca Co. Sup. Ct.), *aff'd.*, 140 A.D.3d 1711 (4th Dept. 2016) for the proposition that the Local Law is immune from the application of the State's rule against zoning by contract enactments is distinguishable on the law and the facts. No claim was made or facts presented in *Tyre* that the town board had bargained away any prerogative it had by adopting the zoning resolution in conjunction the Community Mitigation Plan which land developer agreed to implement in accordance with Section 1316(6).

Plaintiffs submit the Defendants' effort to label the Amended TRA as an ordinary mitigation plan adopted in accordance with Section 1316(6) or as conditions the Village is authorized to impose in accordance with Village Law § 7-725-a(4) (authorizing villages to impose conditions on the approval of site plans) is a disingenuous effort on their part to hide or obscure the fact that the Village and Delaware North agreed after the Permit was vacated and before the Local law was adopted, that the Village would agree to adopt (not that it committed itself to adopt) the Local Law in the form to be approved by Delaware North, otherwise Delaware North would not execute the Amended TRA after the Local law was adopted. In so doing and as discussed above, the Village Board bargained away its right and tied its hand regarding its ability to terminate the Gaming Use like it once had before the Local law was adopted.

Unlike the entering into "host community agreements" pursuant to which local governments retain their right to terminate the land use referenced in those agreements if the conditions stated therein were not satisfied, the Village's right to terminate the gaming use of the Premises as contemplated by the Permit Resolution, the TRA and the Amended TRA became illusory and ineffectual by virtue of the adoption of the Local Law. Whatever "promises" Delaware North made to the Village in exchange for the issuance of the Permit or the adoption of

the Local Law became unenforceable at least with respect to all other subsequent owners of the Premises and the owners/developers of other vacant and developed lands within the OI District.

For the above reasons, Plaintiffs request the Court reject the Proposed Findings recommendation that the zoning by contract claim alleged in the Amended Complaint be summarily dismissed.

**POINT II**

**THE BANKRUPTCY COURT ERRED IN RECOMMENDING SUMMARY DISMISSAL OF THE SPOT ZONE CLAIM**

Plaintiffs object to the Proposed Findings' recommendation that the second cause of action (spot zone claim) should be summarily dismissed because Defendants have shown that the Local Law was not adopted as an unlawful spot zone.

Unlike ordinary local legislative enactments based upon the local governments possessing a wide range of local police powers, zoning authorities, such as the Village, enjoy no inherent right to zone property and must exercise such powers within the bounds specifically or impliedly set by state law, including N.Y. Village Law § 7-722 which requires villages to adopt land use regulations "in accordance with a comprehensive plan adopted pursuant to this section." *Golden v. Planning Board of the Ramapo*, 30 N.Y.2d 359, 370 (1972); *Louhal Properties v Strada,* 191 Misc.2d 746 (Nass. Co. Sup. Ct. 2002), *aff'd.* 307 A.D.2d 1029 (2d. Dept. 2003) (holding that a village's zoning power is delegated pursuant to N.Y. Village Law § 7-700 and is subject to the same constraint.).

Accordingly, notwithstanding the deference courts are ordinarily inclined to give when reviewing local legislative enactments, courts will scrutinize zoning enactments that are challenged as unlawful spot zones. To do that, courts examine the "process" the zoning authority used to determine whether the challenged zoning enactment was adopted as an unlawful spot

zone. *Cannon v. Murphy*, 196 A.D.2d 498 (2d. Dept. 1993). The criteria used to examine that

process was summarized by the Court in *Save Our Forest Action Coalition v City of Kingston*,

246 A.D.2d 217 (3d. Dept. 1998):

> Although no single factor is dispositive, in evaluating a
> claim of spot zoning a court may consider several factors,
> including whether the rezoning is consistent with a
> comprehensive land use plan, whether it is compatible with
> surrounding uses, the likelihood of harm to surrounding
> properties, the availability and suitability of other parcels,
> and the recommendations of professional planning staff
> (citation to legal authority omitted). However, the ultimate
> test is "whether the change is other than part of a well-
> considered and comprehensive plan calculated to serve the
> general welfare of the community" (citation to cases
> omitted).

A. D.2d at 221.

An important consideration courts use in deciding if a zoning enactment is an unlawful

spot zone was stated in *Asian Americans for Equality v Koch*, 72 NY2d 121 (1988), cited by the

Bankruptcy Court in the Proposed Findings,[97] that "[a]n amendment which has been carefully

studied, prepared and considered meets the general requirement for a well-considered plan and

satisfies the statutory requirement" and will not be set aside as an unlawful spot zone. Id. at 123.

In recommending summary dismissal of the spot zone claim, the Bankruptcy Court

improperly and erroneously made findings of fact by concluding that the Local Law was not a

spot zone because it was adopted only after it had been "carefully studied, prepared and

considered" as required by *Asian Americans for Equality* , *supra.* To the contrary, an

examination of the history of the proceedings leading up to the Village Board's adoption of the

Local Law, as discussed earlier in the Statement of Facts, reveals that it undertook no study, let

alone a careful study, in determining whether the adoption of the Local Law would be in

---

[97]      PoF at 19.

accordance and consistent with the Master Plan as prescribed by N.Y. Village Law § 7-722. The evidence derived from the record of proceedings leading up to the Village's Board's adoption of the Local Law established that, in lieu of conducting any study evidenced in that record, the Village and Delaware North employed land use consultants whose missions were deliberately constrained by their respective retainer agreements *not* to conduct any proper study in evaluating the proposed local law being considered, including consideration of alternative uses and whether its adoption would be in accordance with the Village's Master Plan. Nor did they evaluate the availability and/or suitability of other lands within the Village's borders for the kind of use being envisioned by the proposed local law.

Rather than perform such an evaluation, Wortman and Iannucci testified that they were instructed to assume (and they did assume) that no further study of the proposed use of the Premises and its existing conditions were required to be performed. Instead, the Village and Delaware North placed horse-blinders on these consultants by instructing them to accept as true and reliable the findings, impacts and forecasts Delaware North had originally made when it prepared the 2016 EAF in connection with its submission of the VLT Application to the Village Board. To that end, they each testified they performed no additional study other than Iannucci doing a "parking analysis" and considered no set of facts, impacts or alternatives of any kind. Instead, they each regarded the 2016 EAF to be their bible. They were neither allowed to evaluate, nor did they evaluate, any other alternative uses other than the specific use that was granted by the vacated Permit or the availability or suitability of other lands for the use being proposed other than at the Premises.

The Village did indeed adopt a well-considered Master Plan in 1995 but Mayor Dorman and the land use consultants each testified that they did not review it prior to the Local Law being adopted. Had they bothered to review the Master Plan, they would have noted its constraints and

opportunities and its goals and policies applicable to the non-residential use of land to be located within the OI District as discussed earlier in the Statement of Facts. They also would have given respect to the historical implementation of the Master Plan's Goals and Policies through the Village Board's adoption of Article X of the Code prescribing the uses of land permitted in the OI District, also discussed above. Thus, contrary to the Bankruptcy Court adopting Zaleski's self-serving representation that ""more intensive uses," including manufacturing and warehouse uses"[98] were allowed in the OI District, Code § 177-71(B) states that "[t]he intent of the Office/Industry District is to continue the orderly mixed-use development consisting of high quality, nonintensive light industrial and warehouse uses along with office development in accordance with appropriate standards of design and site development." Emphasis added. Such non-residential uses of land within the OI District was further constrained by the Village Board's adoption of 177-76(A) permitting "accessory uses" of land within the OI District *provided* "that such uses are clearly incidental to the principal use and do not include any activity commonly conducted as a business."[99]

The aforesaid Master Plan's Goals and Polices, when read with the Master Plan in its entirety, show that the Plan was written, adopted and thereafter implemented so as to preserve the values and character of the Village as a residential community with restraints placed on the non-residential uses of land. The Bankruptcy Court therefore erred in its finding at PoF 22 that high-intensity, mixed uses of land within the OI District suggested by Zaleski in his affidavit may be regarded as an appropriate use of such land in accordance with the Master Plan and how that Plan was historically implemented over the years since it was adopted.

---

[98]   PoF at 22.
[99]   Id. ¶ 25. Justice Ford applied this historically used criteria for an accessory use prescribed by § 177-76(A) in determining to vacate the Permit. Doc. No. 62-23.

Moreover, while it is true, as the Defendants argued before the Bankruptcy Court, that a gaming use of land was not legal in 1995 and therefore could not have been considered as a potential use of land when the Master Plan was adopted, it does not follow that the omission of such a consideration in that Plan suddenly gave the Village Board the license to allow high-intensity uses of land as contemplated by its adoption of the Local Law as being consistent with that Plan.  Yet, as set forth in the Plaintiffs' respective declarations based upon their personal knowledge, the Premises does have a high-intensity use that was sanctioned as a result of the Local Law's adoption.[100]

Accordingly, even though a gaming use may not have been a legal use at the time the Master Plan was adopted in 1995, what is manifestly evident by the reading of that Plan is that any intense recreational use of land, not merely a gaming use of land within the Village's borders was contemplated to enable the use to become the "recreation center for Suffolk County," and "the highlight of Suffolk County and that "a lot of people go there…."[101] Such a change of use allowed by the Local Law is a change that "is other than part of a well-considered and comprehensive plan calculated to serve the general welfare of the community" and thus an unlawful spot zone. *Daniels v. Van Voris*, 241 A.D.2d 796, 799 (3d Dept. 1997).

In light of what the Master Plan says, how it was historically implemented, the pre-ordained pro-Delaware North process the Village used and the lack of any corroborating evidence in the legislative history preceding the adoption of the Local Law, the Bankruptcy Court erred in finding that the Local Law was not an unlawful spot zone by relying upon the self-serving affidavits of Dorman and Zaleski.  Their telling us today through affidavits prepared in litigation that they decided to adopt the Local Law based upon their being generally familiar with

---

[100]    Doc. Nos. 69-72.
[101]    Doc. No. 75, Exh. 12 at 130:1-12.at

the use, availability and suitability of the lands located within the Village's borders is an

insufficient basis for the Bankruptcy Court to conclude the Local Law "has been carefully

studied, prepared and considered meets the general requirement for a well-considered plan and

satisfies the statutory requirement" as required by *Asian Americans for Equality v Koch*, 72

NY2d 121 (1988) in order to avoid the Local Law being declared an unlawful spot zone.

In *Los-Green, Inc. v. Weber*, 156 A.D.2d 994, 994–95 (4th Dept. 1989), the Court rejected the

Town Board of the Town of Cheektowaga's defense to a spot zone challenge by submitting affidavits that

they had inspected the various sites relevant to the subject matter of the challenged zoning amendment

where the legislative record failed to corroborate that any such action had taken place, let alone been

studied. In *Levine v Town of Oyster Bay*, 259 N.Y.S.2d 247 (Nass. Co. Sup. Ct), aff'd., 26 A.D.2d. 583

(2d Dept.1966), Justice Suozzi opined that such subjective, uncorroborated thoughts of individual

members of local legislative body were, at best, "elusive" and therefore an insufficient basis upon which a

zoning law may survive a challenge on spot zone grounds.

Accordingly, Deputy Mayor Michael Zaleski telling the Bankruptcy Court that the Village

Board's determination to adopt the "site-specific" Local Law was justified based upon the

Village Board members' "knowledge of the community and uses in and surrounding the OI

District" and "evaluat[ing] surrounding land uses, including a truck distribution facility, a park

and ride, office uses, and a wholesale shopping facility", including the Long Island Expressway

and the Long Island Motor Parkway, should have been regarded as an insufficient basis to defeat

Plaintiffs' spot zone claim.[102] Other than Zaleski's self-serving declaration in support of

Defendants' motions, there is nothing in the record that was before the Village Board discussing

what Zaleski says. To the contrary, Mayor Dorman testified that the Village Board did not

---

[102]    Id.

consider any other land within the Village's limits as potentially being suitable for a gaming use other than the Premises.[103]

Nor should the Local Law survive the spot zone challenge given Mayor Dorman testimony that the Village Board adopted the Local Law to benefit Delaware North's Gaming use of the Premises because "[i]t was already built"[104] and that "[w]e didn't look at other properties for gaming facility. This was the applicant's address. This is where they requested to have it. No need to look at anything else"[105] Such a justification made to avoid the finding of a spot zone enactment was rejected in *Yellow Lantern Kampground v. Cortlandville*, 279 A.D.2d 6 (3d Dept. 2000), where the Court stated that "[w]e are not persuaded that, because respondent "has become an integral part of the community", its use is necessarily consistent with the comprehensive plan as developed through actual experience." Id. at 11.

The Bankruptcy Court also erred in making findings of fact based upon Mayor Dorman averring in his affidavit that the Village "utilized its own engineers and consultants to review the material submitted by Delaware North." PoF at 22. The only consultant the Village used was Iannucci who testified that he performed no study or evaluation to confirm the 2016 EAF as accurately describing conditions actually existing at the Premises, other than to conduct a "parking analysis" and to correct a few grammar errors. He provided no other study or comments to the Village Board with respect to the proposed Local Law and did not make an evaluation to determine potential or cumulative impacts that would result if the proposed Local Law was actually adopted or the suitability of alternative locations for the proposed gaming facility.[106]

In *Udell v Haas*, 21 N.Y.2d 463 (1968), the Court rejected as an insufficient basis to sustain a zoning enactment challenged on spot zoning the after-the-fact rationalizations of the

---

[103]   Doc. No. 75, Exh. 12 at 147: 24-25, 148: 1-13, 149: 8-17.
[104]   Id. at 148: 18-25, 149: 1-9.
[105]   Id. at 157: 9-12.
[106]   Id. 50: 11-17, 57:25, 58: 1-25.

kind being made by Iannucci to sustain a zoning amendment challenged as an unlawful spot

zone, stating that:

> Where a community, after a careful and deliberate review
> of "the present and reasonably foreseeable needs of the
> community", adopts a general developmental policy for the
> community as a whole and amends its zoning law in
> accordance with that plan, courts can have some confidence
> that the public interest is being served (citation of cases
> omitted). Where, however, local officials adopt a zoning
> amendment to deal with various problems that have arisen,
> but give no consideration to alternatives which might, and
> then call in the experts to justify the steps already taken in
> contemplation of anticipated litigation, closer judicial
> scrutiny is required to determine whether the amendment
> conforms to the comprehensive plan.
>
> The role of these experts must be more than that of giving
> rationalizations for actions previously decided upon or
> already carried out. In recent years, many experts on land
> use problems have expressed the pessimistic view that the
> task of bringing about a rational allocation of land use in an
> ever more urbanized America will prove impossible. But of
> one thing, we may all be certain. The difficulties involved
> in developing rational schemes of land use controls become
> insuperable when zoning or changes in zoning are followed
> rather than preceded by study and consideration.

N.Y.2d at 470-471.

In *Augenblick v. Town of Cortland,* 104 A.D.2d 806 (2d Dept.) (Lazer, J. dissenting),

*rev'd on dissenting opinion below*, 66 N.Y.2d 775 (1985), the Court upheld a challenge to a

zoning amendment as being an unlawful spot zone where the Court could not ascertain from the

record that the zoning amendment was anything other than the product of "special interest,

irrational ad hocery."

Not only was the Local Law adopted as a "special interest, irrational ad hocery" by

utilizing a process that relied upon after-the-fact rationalizations of the kind the *Udell* Court

condemned, Plaintiffs underscore and Defendants do not dispute, that the Local Law was

intentionally adopted <u>in toto</u> based upon conditions written and approved by Delaware North in advance of the Local Law being adopted in order to induce Delaware North to execute the Amended TRA after the Local Law was adopted. In *Levine, supra,* the Court affirmed the lower court's post-trial order that the challenged zoning amendment was based on the condition that "…was proposed by the applicants for the downzoning and was adopted in toto by the Town Board." A.D.2d at 583–84.

The Bankruptcy Court also erred in finding that the Local Law could not be an unlawful spot zone because the VLT Application was referred to the Suffolk County Planning Commission which issued a report[107] in 2016. That report only concerned the limited nature of the relief that was being sought in the VLT Application. That report which concerns a permit application made in 2016 has no bearing upon the merits of the proposed Local Law that was adopted in 2017.

The Bankruptcy Court also erred in regarding as a sufficient basis to validate the Local Law Deputy Mayor Zaleski telling us that the Village Board noted "the Location's deteriorating condition," and considered the "opportunity for reuse and repurposing of an existing structure in the Village." PoF at 22. Nowhere in the verifiable written record is there any record that the Village Board had considered the Premises deteriorated condition. Even if we are to accept as true the Premises being in a deteriorated condition before Delaware North became its owner, nowhere in the legislative record is there any indication that a unique, high-intensity use of the Premises as a Gaming Facility can or should be allowed as a substitute for what was then existing. Moreover, the mere fact that the Premises might have been in a deteriorated condition before Delaware North arrived at the scene did no relieve the Village's responsibility to adopt the

---

[107]    Doc. No. 62-5.

Local Law consistent with its Master Plan. *Yellow Lantern Kampground v. Cortlandville*, 279 A.D.2d 6

(3d Dept. 2000).

For the reasons discussed above, the Bankruptcy Court also erred in recommending

summary dismissal of the spot zone claim because Plaintiffs failed to explain

> why the zoning, traffic, and environmental impact analysis
> completed in connection with the Special Permit
> Application in 2016 would not be applicable to determining
> the impact of the adoption of Local Law No. 3-2017, which
> was adopted shortly after the Special Permit was vacated by
> the State Court. The Plaintiffs have not articulated a reason
> why the Board would have been required to reinvent the
> wheel. The analysis in both situations is the same: the
> impact of the VLT Facility at the Location. The means of
> implementation, whether by special permit or by a local law
> creating an as of right use, is irrelevant.[108]

Plaintiffs not only gave such an explanation but what they did say was also evidenced in

the motion record. As Plaintiffs' explained and evidenced, the Village Board did not consider,

nor was it required to consider any Village-wide impacts associated with its issuance of a Permit

granted in 2016 authorizing a gaming use as an accessory use of the Hotel in accordance with the

"accessory use" criteria prescribed by Code §177-76(A). The nature and scope of the Village

Board's inquiry in issuing the Permit and the process I had to use dramatically changed,

however, when it decided to write a Village-wide local law with the specific intent of nullifying

the effect of the State court's order vacating the Permit. The "process" the Village Board

undertook in deciding to issue the Permit, later vacated by the State court, is not the same

"process" the Village Board was required to undertake in order to defeat a spot zone challenge

like what is now before this Court.

Unlike the narrowly focused inquiry and fact-finding process the Village Board used in

connection with its issuance of gaming use permit in 2016, its consideration of a new local law

---

[108]    PoF at 23.

amending the zoning code to permit a gaming use of land on a District-wide as of right basis

required that it undertake an evaluation of alternative uses and impacts and not to ignore or

exclude the availability and suitability of other lands within the Village's borders as being

eligible for such a use. Undertaking such a process is not consistent with the requirement

imposed by the Court in *Asian Americans for Equality v Koch,* supra, that the zoning

amendment be "carefully studied, prepared and considered" in order for it to be said that it has

met the general requirement for a well-considered plan and satisfies the statutory requirement. Id.

at 121. In *Yellow Lantern Kampground, supra,* the Court held the zoning enactment to be

unlawfully adopted rejected the argument that the promotion of economic development relieves a

local government from its responsibility to adopt zoning laws that are consistent with its

comprehensive land use plan, stating that:

> Admittedly, a decision to rezone can be motivated by a
> desire to promote economic development (citation of case
> omitted), but such motivation does not relieve the
> legislative body of its obligation to consider the proposed
> use's compatibility with and impact upon surrounding
> properties and its consistency with the municipality's
> comprehensive zoning plan. Here, the record fails to set
> forth the total area of the subject business district or
> identify the other properties situated in it, the properties
> surrounding respondent's parcels, the size or location of
> those properties, the uses to which they have been devoted
> or the likely affect that the rezoning would have upon them.
> The record establishes, however, that all other properties in
> the district consist of residential and light commercial uses
> and that there are no other industrial users.
>
> Further, the Town Board gave no consideration to
> alternative sites for respondent's operation within the
> industrial district (citation of case omitted) or the extent to
> which respondent's use is consistent with the Town's
> comprehensive plan. We are not persuaded that, because
> respondent "has become an integral part of the
> community", its use is necessarily consistent with the
> comprehensive plan as developed through actual
> experience. As earlier noted, the fact that the proposed use

48

> following rezoning is no different than respondent's current nonconforming use of the property is not a permissible consideration. Although the size of the area to be classified is a valid consideration (citation of legal authority omitted), we are unimpressed by respondent's transparent effort to deflect the claim of spot zoning by purposely and artificially inflating the size of land to be reclassified with the inclusion of two additional parcels of its property, and approximately 25 acres of forest land, upon which no industrial use had ever taken place. In any event, the Town Board did not cite to the size of the parcel as a factor supporting its grant of the rezoning request.

A.D.2d at 10–11.

The facts before the Court in *Yellow Lantern Kampground* are also similar to those before this Court and which compelled that Court to declare the zoning amendment an unlawful spot zone. Here, the motion record evidences the Village Board's failure to consider the proposed "Hotel/Gaming Facility" use's compatibility with and impact upon surrounding properties and its consistency with the Master Plan or to consider alternative locations. Instead, the Village Board deliberately utilized a process that was designed *at its inception* to favor Delaware North by ruling out the consideration of any other possible alternative gaming use of lands other than the use-specific and the site-specific use that Delaware North sought in the VLT Application. The Village Board did nothing else in furtherance of that process except to utilize "experts" to engage in pre-ordained, after-the-fact rationalizations to support a determination the Village Board had already made within two-seconds after the Order was issued, i.e., enable Delaware North to use the Premises as a Gaming Facility.

The Bankruptcy Court's reliance upon *Boyles v Town Board of Town of Bethlehem*, 718 N.Y.S.2d 430 (3d. Dept. 2000) for the proposition that it was sufficient for the Village Board to rely upon the SEQRA analysis and determinations it had made at the time it issued the Gaming Use permit to Delaware North in 2016 such that it was not required to perform yet another

SEQRA analysis and instead was permitted to rely upon what was done in connection with its issuance of the Permit, is distinguishable on the law and facts. Plainitffs' spot zone challenge brought up for review the entire process the Village Board used to adopt the Local Law. Under the notice-pleading requirements prescribed by Fed. R. Civ. Proc. Rule 8, Plaintiffs were not required to separately allege a SEQRA violation in order to establish their spot zone claim through the process that was used.

This case in not like the one that was before the Court in *Boyles.* There, the Town Board had previously approved a site plan application after it had conducted a SEQRA analysis determining. The Town Board thereafter agreed to modify the site plan at the request of the applicant. After the Court sustained the Town Board's approval of the modification based upon substantial evidence in the administrative record supporting the modification, it held that it was not necessary for the Town Board to re-open its earlier SEQRA determination. In this case, the Village Board's issuance of the Gaming Use Permit was vacated and annulled by Order of the State Court. Obviously, its SEQRA-related determination made in connection with its issuance of the Permit became moot and no longer justiciable by virtue of the vacatur. Thereafter and in stark contrast to the facts in *Boyles*, the Village Board adopted the Local Law based upon criteria having nothing to do with the "accessory use" criteria it considered at the time it issued the Permit in 2016. What was before the Village Board in 2017 was entirely different in nature and scope of proceedings than what was before the Village Board at the time it was entertaining the VLT Application. What the Village Board did in 2017 in adopting the Local Law is not comparable to what it did in 2016 to approve the VLT Application.

In the Proposed Findings, the Bankruptcy Court refers to Deputy Mayor Zaleski affidavit where he points out that the 2017 EAF inquires whether "[t]he proposed action is not consistent with the adopted land use plans," to which the Board answered "no," together with a full analysis

annexed thereto. PoF at 21. Later on, the Bankruptcy Court concluded that "[t]he only claims at issue in this case are contract zoning and spot zoning, and therefore, the determination whether the Board complied with SEQRA is beyond the scope of review." PoF at 23. The Bankruptcy Court erred in making these determinations in recommending the summary dismissal of Plaintiffs' spot zone claim. The SEQRA challenge to the 2016 Negative Declaration that was made in the Article 78 proceeding seeking to set aside the Special Use Permit Delaware North received in 2016, became moot when the State court in that proceeding vacated the gaming use permit. This lawsuit, on the other hand, seeks a declaration the Local Law is an unlawful spot zone. The amended complaint challenges the findings the Village Board purportedly made in connection with its adoption of the Local Law. Plaintiffs were not required to allege a separate and distinct SEQRA cause of action in order to obtain judicial review of the findings the Village Board purportedly made in deciding to adopt the Local Law.

Nothing in *Farrell v Johnson*, 266 A.D.2d 873 (4th Dept. 1999), cited in the Proposed Findings at 23, supports the proposition that Plaintiffs' failure to allege a SEQRA violation in the Amended Complaint somehow placed their challenges to the process used and the findings made by the Village Board in adopting the Local Law "beyond judicial review" for purposes of determining their spot zone claim. In *Farrell*, petitioners commenced an Article 78 proceeding challenging determination by town zoning board of appeals which granted the application for use and area variances to permit construction of a cellular telephone site. The Court reversed the lower court's order directing that the ZBA make a new determination of significance pursuant to State Environmental Quality Review Act (SEQRA), N.Y. Env. Cons. Law Art. 8. because the Article 78 petition did not specifically allege a SEQRA claim. In reversing the lower court's order directing the ZBA to undertake a new determination of significance, the Appellate Division invoked the fundamental rule applicable to all Article 78 proceedings that courts may not

consider allegations not raised in the petition, citing *Crawford v Kelly*, 124 A.D.2d 1018 (4th Dept. 1986). This case is an action based upon the Amended Complaint and is not an Article 78 proceeding. Its allegations satisfy the pleading requirements prescribed by Fed. R. Civ. Proc. Rule 8 which only require that the allegations in the complaint gives fair notice of what the plaintiffs' claims are and the grounds upon which they rest. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560–61 (2007). Those liberal pleading requirements, unlike the pleading requirements applicable to Article 78 proceedings, did not require Plaintiffs to allege a SEQRA claim in the spot zone claim which contains more than sufficient allegations regarding the unlawful process used and the findings made by the Village Board in adopting the Local Law.

The Bankruptcy Court also erred by making improper findings of fact "that the Plaintiffs' affidavits do not raise a genuine issue of fact with respect to whether Local Law No. 3-2017 was calculated to serve the community as a whole." PoF at 24. Plaintiff's affidavits, based upon their personal knowledge, attests to the noise, traffic impacts, congestion, presence of crime and the degradation of their community as a result of Delaware North's use of the Premises as a Gaming Facility. Their affidavits evidence the impacts associated with the Gaming Use which the Village Board was required to assess at the time it was considering the adoption of the Local Law in 2017 as well as the deficiencies in the pro-Delaware North process that the Village used. The Bankruptcy Court erred by utilizing Defendants' summary judgment motions as the vehicle to resolve these disputed issues of fact rather than to find issues of fact warranting a trial for their resolution.

The Bankruptcy Court also erred in its conclusion that Plaintiffs could not raise triable issues of fact regarding the impacts associated with the Village Board's adoption of the Local law because they had no vested right to the Village's zoning laws remaining static, citing *Rodgers v. Vill. of Tarrytown*, 302 N.Y. 115 (1951) PoF at 24. *Rodgers* merely stands for the

proposition that local governments have the right and power to amend their zoning laws to account for changed conditions. Plaintiffs know full well that they as land owners and the Village's citizenry in general do not have vested rights in a particular zoning scheme that would prevent the Village from adopting and amending zoning laws and regulations based on changed conditions. Nevertheless, as discussed above, local governments do not have the right or power to adopt zoning enactments except pursuant to what has been delegated to them by the State Legislature. No local government has the right to adopt local laws that are spot zones. *Rodgers* has nothing to do with a citizen's right to challenge and set aside a local law challenged as such.

The Bankruptcy Court also erred in regarding Plaintiffs' argument "that the Board's process was flawed because it failed to consider other locations, such as the Hampton Inn, which has fewer than 150 rooms that is required by Local Law No. 3-2107. This is irrelevant because no other hotel was seeking to operate a VLT Facility." PoF at 24, 25. The fact that no hotel was seeking a VLT Facility at the time the Village Board was considering the adoption of the Local Law did not relieve the Village Board from its obligation to use a process that required it to consider the availability and suitability of alternative sites and uses in addition to or in lieu of the one being proposed by the Local Law. Zoning laws will be set aside where the process used to consider and adopt the zoning law excludes consideration of alternative uses and sites. *Udell v Haas*, 21 N.Y.2d 463 (1968); *Yellow Lantern Kampground v. Cortlandville*, 279 A.D.2d 6 (3d Dept. 2000).

## POINT III

### THE LOCAL LAW IS NULL AND VOID FOR WANT OF UNIFORMITY.

The Bankruptcy Court erred by refusing to entertain Plaintiffs' challenge to the Local Law as being unlawfully adopted for want of uniformity on the ground that "[t]his claim cannot

be raised for the first time in the Plaintiffs' opposition to the motions for summary judgment." PoF at 26.

Plaintiffs submit that the Amended Complaint gave sufficient fair notice that they were challenging the Local Law for want of uniformity. The Amended Complaint alleges that the use permitted by the Local Law is unique and extraordinary in that nowhere else within the Village's borders, let alone within the OI District, does there exist the kind of use that was approved by the Village Board when it adopted the Local Law and is an unprecedented use of any land located within the territorial jurisdiction of the Village. The amended Complaint also alleges that nowhere else within the Village's borders, let alone within the OI District, may any land be used of the kind that was approved by the Village Board when it adopted the Local Law.[109] These allegations, taken separately or read in conjunction with the other allegations in the Amended Complaint, gave fair notice that Plaintiffs challenge to the Local Law is also predicated on the Village Board's failure to consider other uses of land for purposes of making the use contemplated by the Local Law uniform throughout the OI district. Fed. R. Civ, Proc. Rule 8.

NY Village Law § 7-702 states that:

> For any or all of said purposes the board of trustees may divide the village into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this article; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district but the regulations in one district may differ from those in other districts.

Emphasis added.

In *Augenblick, supra,* the Court declared a zoning amendment null and void for failing to satisfy the district-uniformity in NY Town Law § 262, which like NY Village Law § 7-702,

---

[109] Doc. No. 43 ¶¶ 58 and 59

requires zoning regulations to be uniformly applicable with respect to each class or kinds of buildings throughout the district. The Court stated:

> The uniformity requirement is intended to assure property holders that all owners in the same district will be treated alike and that there will be no improper discrimination (citation to legal authorities omitted). The likelihood of overreaching is thus reduced because the legislative body preapproves the uses permitted in a district without reference to particular owners (citation to legal authorities omitted). Uniformity requirements may transcend mere statute, however, for it has been held that the Constitution requires that all land in similar circumstances be treated alike (citation to legal authorities omitted).

A hotel does exist within the OI District, the Hampton Inn Hotel, which has 120 rooms (as compared to the Local Law's requirement that a hotel must have more than 150 rooms in order to qualify for a "Hotel/Gaming Facility" use). That hotel is located on Veterans Memorial Highway, which like the Long Island Expressway, is regarded as a major highway. Nevertheless, as discussed above, the Village Board did not consider that hotel when it adopted the Local Law even though it was of the same "class or kind of buildings" as was the Hotel located on the Premises

Moreover, there are numerous other vacant lands and commercially developed lands within the OI District capable of being developed or renovated as a hotel. Those lands once so developed would also be entitled to the "uniformity" benefits contemplated by NY Village Law § 7-702.

The Local Law is therefore invalid, null and void because it was not adopted in accordance with the uniformity standard prescribed by NY Village Law § 7-702.

Plaintiffs did interpose a claim of want of uniformity. It was not raised for the first time in opposing the motions.

## CONCLUSION

Wherefore, Plaintiffs request an order pursuant to Fed. R. Bankruptcy Proc. Rule 9033(d) rejecting the Proposed Findings and recommitting the matter to the Bankruptcy Court with instructions that it proceed to trial with further appropriate instructions regarding the application of the State's law prescribing the lawful enactment of local zoning laws.

Dated: January 7, 2019
      Melville, New York

Law Office of Anton J. Borovina

By: _____
     Anton J. Borovina

225 Broad Hollow Road, Ste. 303
Melville, New York 11747
(631) 630-1101

       -and-

Paul Sabatino II
1617 New York Ave.
Huntington Station, New York 11746

Attorneys for Plaintiffs

# CHAMBERS COPY

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Counsel for the Adjusted Debtor and Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>SUFFOLK REGIONAL OFF-TRACK<br>BETTING CORPORATION,<br><br>        Adjusted Debtor. | Chapter 9<br><br>Case No. 12-43503-CEC |
| JENNIFER TOMASINO, KEVIN MONTANO,<br>RICHARD MEYER, and APRYL L. MEYER,<br><br>        Plaintiffs,<br><br>  -against-<br><br>INCORPORATED VILLAGE OF ISLANDIA,<br>BOARD OF TRUSTEES OF THE VILLAGE<br>OF ISLANDIA, DELAWARE NORTH<br>ISLANDIA PROPERTIES, LLC, a/k/a<br>DELAWARE NORTH, and SUFFOLK<br>REGIONAL OFF-TRACK BETTING<br>CORPORATION,<br><br>        Defendants. | Adv. Proc. No. 18-1033-CEC<br><br><br>**ADJUSTED DEBTOR AND DEFENDANT<br>SUFFOLK REGIONAL OFF-TRACK<br>BETTING CORPORATION'S RESPONSE<br>TO PLAINTIFFS' OBJECTIONS TO<br>BANKRUPTCY COURT'S PROPOSED<br>FINDINGS OF FACT AND CONCLUSIONS<br>OF LAW</u>** |

- 1 -

119

## INTRODUCTION

Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB") as and for its response to *Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law as Amplified by the Memorandum of Law in Support Thereof* ("Plaintiffs' Objections") [Dckt. No. 104] to the *Proposed Findings of Fact and Conclusions of Law* entered by the Bankruptcy Court on December 18, 2018 (the "Proposed Order") [Dckt. No. 100] hereby submits the following points of fact and law.

## PRELIMINARY STATEMENT

Rather than raising specific objections to the Proposed Order, Plaintiffs' Objections seek to re-create and embellish the record on summary judgment and reargue the summary judgment motions. Contrary to Federal Rule of Bankruptcy Procedure 9033, Plaintiffs' Objections fail to identify specific objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, and instead re-argue the points made during the summary judgment briefing and hearing arguments. Critically, Plaintiffs' Objections do not address the issues of alleged firearms, drug use, public intoxication, prostitution and other vices featured prominently in the Plaintiffs' Amended Complaint [Dckt. No. 43] and Declarations [Dckt. Nos. 69-72] cited as support for a permanent injunction. Chief Judge Carla E. Craig's concise and well-reasoned decision is supported by clear citations to the record and the law -- most of which are ignored by the Plaintiffs -- and none of which is rebutted.  Suffolk OTB respectfully requests that the District Court adopt the Bankruptcy Court's Proposed Order in its entirety and reject Plaintiffs' Objections.

## RESPONSES TO PLAINTIFFS' SPECIFIC OBJECTIONS

1. **Objection No. 1.**
   Plaintiffs object to the Bankruptcy Court having made findings of fact in the Proposed Findings based upon judicial notice of facts. The Proposed Order does not specify any finding of fact upon which judicial notice was taken. Such finding

of fact were improperly made inasmuch as the role of the Bankruptcy Court in resolving Defendants' motions seeking summary dismissal of the first (zoning by contract) and second (spot zone) causes of action alleged in the Amended Complaint was to identify and not resolve issues of disputed material facts.

In the "Background" section of the Proposed Order, the Bankruptcy Court states undisputed facts *or* matters of which judicial notice may be taken. Every fact cited by the Bankruptcy Court is supported either directly with a citation to the record or is easily verified by the record, and as such, there were no "improperly made" findings of fact. As the Bankruptcy Court did not take judicial notice of any facts, and the Plaintiffs did not object to any of the stated facts in the Proposed Order, the statements are considered undisputed facts.

Under Rule 56, made applicable to this case by Federal Rules of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs cannot create a genuine issue of material fact simply by stating that one exists. Rather, Plaintiffs must support the assertion by citing to particular parts of materials in the record, or showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). Plaintiffs have done neither.

In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). As the nonmoving party, Plaintiffs must show "that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000). Having failed to point out any improper judicially noticed findings of fact as well as any genuine dispute of material facts, Plaintiffs have failed to support their objections and consequently, Objection No. 1 should be rejected.

2. **Objection No. 2.**

Plaintiffs object to the Proposed Findings' recommendation that the contract zone claim be summarily dismissed because they failed to prove the existence of an agreement between the Village and Delaware North in advance of the Local Law No. 3-2017 ("Local Law")'s adoption which required the Village to adopt the Local Law. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the timing and circumstances upon which an agreement was made between the Village and Delaware North in conjunction with the Village's adoption of the Local Law pursuant to which the Village agreed to use its zoning powers to adopt the Local Law expressly designed to benefit only Delaware North with the formal execution of that agreement to be deferred until after the Local Law has been actually adopted. The Proposed Finding's factual and legal conclusion that no zoning by contract claim can succeed because Plaintiffs have not shown the existence of an agreement in advance of the Local Law being adopted is based upon the court having made improper and erroneous findings of fact that no such agreement existed despite evidence in the motion record showing otherwise.

As this Objection is directed towards Defendants Incorporated Village of Islandia (the "Village"), Board of Trustees of the Village of Islandia (the "Board"), and Delaware North Islandia, LLC ("Delaware North"), Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 2 as without merit.

3. **Objection No. 3.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon the court's erroneous legal conclusion that no zoning by contact claim could be established in the absence of an express contract made in advance of the Local Law being adopted. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that an agreement had been made whereby the Village agreed in advance of the Local Law being adopted that it would adopt (not that it was required to adopt) the Local Law if Delaware North agreed that, upon the adoption of the Local Law in a form approved by Delaware North, Delaware North would formally enter into the Amended TRA after the Local Law was adopted whereby it would re-commit itself to abide by the Taxpayer Relief Agreement ("TRA"). The Village's subsequent ratification of that agreement by its formal execution of the Amended Taxpayer Relief Agreement ("Amended TRA") after the Local Law was adopted was also sufficient to establish the making of an agreement upon which a zoning by contract claim may be established.

- 4 -

As this Objection is directed towards the Village, the Board, and Delaware North, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objections.

4.   **Objection No. 4.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicted because it was made in accordance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) ("Section 1316(6) agreement") or was otherwise an ordinary "mitigation agreement."   As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact which precluded summary determination that the Amended TRA qualified as a Section 1316(6) agreement or a mitigation agreement.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objections.

Suffolk OTB states in further support of the Bankruptcy Court's Proposed Order that Plaintiffs themselves admitted that "as part of the SUP Application, Delaware North included the concept of impact mitigation as part of its proposal by way of an agreement to mitigate impacts from the proposed VLT Facility." [Docket No. 76, ¶ 29].

As stated in Delaware North's Memorandum of Law in Support of Summary Judgment [Dckt. No. 62-2], the TRA and Amended TRA are "host community agreements providing for the mitigation of impacts under SEQRA…The TRA noted that the payments due from Delaware North to the Village were to promote community development in the Village and to offset infrastructure, public safety, and emergency services burdens on the Village as the result of the SUP Application."

Plaintiffs' own admissions at the November 28, 2018 Hearing on Defendants' Motions for Summary Judgment further establish that Plaintiffs failed to establish contract zoning because

Plaintiffs acknowledged that host community agreements are permissible when there is no "tying of hands" of the legislative body, which is yet another issue on which Plaintiffs failed to establish a genuine issue of material fact (*See* November 28, 2018 Transcript Excerpts, 137:4-138:6, attached hereto as **Ex. A**):

> THE COURT: Okay. So you're saying that any time there's a host community agreement entered into in connection with a zoning amendment that that is illegal contract zoning. That's what you're saying.
>
> MR. BOROVINA: No, because -- and first of all let's talk about the facts of this case. The host community agreements in the context of a permit were that the permit is rescinded if the terms of the agreement are not honored. That is a host community agreement. In this particular case you cannot --
>
> THE COURT: Okay. But there are host community agreements that are entered into, not in connection with the giving of a permit, but rather in connection with a change in the zoning law.
>
> MR. BOROVINA: That's not -- if that is the case then that's not -- first of all that's not before the Court.
>
> THE COURT: Well this is.
>
> MR. BOROVINA: Well --
>
> THE COURT: There's a host community agreement entered into in connection with the change in the zoning law --
>
> MR. BOROVINA: And --
>
> THE COURT: -- and you're telling me that is always, always, always contract zoning.
>
> MR. BOROVINA: And what this case is, is whether or not under the standards applicable for a contract zone was this local law adopted in conjunction with the agreement that had the effect of tying of hands.

As set forth in greater detail in Delaware's North's forthcoming responses and the Village's forthcoming joinder to Delaware's North's responses to Plaintiffs' Objections, nowhere in either the TRA or the Amended TRA did the Village bind itself with respect to

the exercise of its legislative power, and Plaintiffs' Objections that there were disputed issues of fact regarding the TRA or the Amended TRA presented as Objection No. 4 should be rejected by this Court.

5.      **Objection No. 5.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicted because it represented an ordinary mitigation agreement, if not a Section 1316(6) agreement, whereby Delaware North agreed to provide the Village certain benefits or to satisfy conditions upon receipt of a favorable zoning determination.  As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that, no matter what euphemistic label is placed on the Amended TRA, the Village Board nevertheless adopted the Local Law in conjunction with an agreement whereby it agreed to bargain away its powers and tie its hands by agreeing to adopt the Local Law in the form approved in advance by Delaware North.

As this Objection is directed towards the Village, the Board, and Delaware North, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objections.  Suffolk OTB further incorporates its response to Plaintiffs' Objection No. 4 by reference as if fully set forth herein. Consequently, Plaintiff's Objection No. 5 should be disregarded as without merit.

6.      **Objection No. 6.**

Plaintiffs Object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Plaintiffs have not and cannot establish a spot zone claim.  As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the sufficiency of the process the Village Board used to adopt the Local Law in accordance with State law prescribing the process by which zoning enactments may be considered and adopted.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 6 as without basis.

In further support of Suffolk OTB's request for the District Court to adopt the Proposed Order in its entirety, Suffolk OTB notes that Plaintiffs, as they have attempted to do before, purposefully confuse the record by deliberately misrepresenting and mischaracterizing Village Mayor Dorman's testimony. Plaintiffs state in their Memorandum of Law that "Mayor Dorman also testified that he was not familiar with the 1995 Master Plan." [Dckt. No. 104-1 at 18] (citing Dorman Dep. 134: 23–25). Plaintiffs' Objections incorrectly refer to the "Comprehensive Plan" as a "Master Plan," and when asked about the Comprehensive Plan during his deposition, Mayor Dorman testified that he was familiar with the Comprehensive Plan, the 2003 Comprehensive Plan Update, and that the Village's plan was considered during the process for adopting Local Law 3-2017, along with the character of the community, surrounding land uses, and current zoning. (Dorman Dep. 131:5-132:15; 166:22–167:3). *See also Asian Americans for Equal. v. Koch*, 72 N.Y.2d 121, 131 (1988) (A well-considered plan need not be contained in a single document; indeed, it need not be written at all. The court may satisfy itself that the municipality has a well-considered plan and that authorities are acting in the public interest to further it by examining all available and relevant evidence of the municipality's land use policies.").

**7.** <u>**Objection No. 7.**</u>

Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed because the process the Village Board used to adopt the Local Law was beyond judicial review on account of the withdrawal of a SEQRA challenge to the 2016 Negative Declaration that had been made in a prior State court Article 78 proceeding and the Amended Complaint's failure to allege a SEQRA claim. As discussed at length in the memorandum of Law accompanying this Objection, Plaintiffs were not required to state a SEQRA claim in the Amended Complaint and the sufficiency of the process of the Village Board used to adopt the Local Law was not beyond judicial review as to all matters relating to that process because the Amended Complaint did not allege a SEQRA-based claim.

The Plaintiffs' claim that the Bankruptcy Court erred in determining that Plaintiffs' SEQRA claims were beyond judicial review at this time is ungrounded for several reasons.

First, SEQRA claims traditionally carry a four-month statute of limitations that begins to run from the time a local government completes its decision-making process. N.Y.C.P.L.R. § 217(1); *In re Town of Babylon v. N.Y.S. DOT*, 1997 NYLJ LEXIS 1472, at *6--7 (Sup. Ct. August 18, 1997); *Young v. Bd. of Tr. of the Vill. of Blasdell*, 89 NY2d 846 (1996). However, the statute of limitations for SEQRA violations allegedly committed by a village is limited to a mere thirty (30) days. N.Y. CLS §274-a(11).The Board passed Local Law 3-2017, signaling the end of its decision-making process on November 28, 2017. Plaintiffs challenged Local Law 3-2017 *on other grounds* in their Complaint dated February 12, 2018 and in their Amended Complaint on July 26, 2018. *Nowhere* in either pleading did Plaintiffs allege that the Board violated SEQRA or improperly performed an environmental assessment. Suffolk OTB disputes the existence of any SEQRA violation, but even if one existed, Plaintiffs were required to challenge Local Law 3-2017 within thirty (30) days of the Board's decision to pass Local Law 3-2017, which ran on December 28, 2017. Given that Plaintiffs failed to assert the SEQRA claim -- or even provide notice to the Defendants of their intent to argue a SEQRA claim -- within the statute of limitations, the Plaintiffs waived any claim regarding any possible SEQRA violations.

Second, Plaintiffs' allegations in the Complaint and Amended Complaint were insufficient to put Defendants on "fair notice of what the plaintiff's claim is and the grounds upon which it rests" as required by the Federal Rules of Bankruptcy and Civil Procedure. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Nowhere* in the Complaint or Amended Complaint did Plaintiffs mention, reference, or cite SEQRA. Defendants are not required to anticipate every possible cause of action that Plaintiffs might seek. For Plaintiffs to expect to recover under SEQRA when Plaintiffs failed to mention, reference, or even allude to SEQRA in any of their pleadings, deprives Defendants of their due process rights to an opportunity to defend themselves.

Moreover, Plaintiffs attempt to address SEQRA in the context of a spot zoning argument is a non-sequitur. The test for spot zoning is clear: a zoning change is not an illegal spot zone if it was passed pursuant to a well-considered comprehensive plan. *Collard v. Flower Hill*, 52 N.Y. 2d 594, 600 (N.Y. 1981). Plaintiffs fail to show how any alleged SEQRA violation is relevant to whether Local Law 3-2017 is an unlawful spot zone. Plaintiffs' attempts to argue that the SEQRA violation bears on an unlawful spot argument is a feeble attempt to resurrect Plaintiffs' unasserted SEQRA claims in an impermissible way.

Third, even if Plaintiffs had not procedurally waived a SEQRA claim, they are not entitled to relief because Plaintiffs failed to provide any authority to support their assertion that the Board improperly relied on the 2016 Negative Declaration to guide its decision to pass Local Law 2-2017. To the contrary, SEQRA requires that any local government action requires an environmental assessment. However, several sufficiently similar government activities can constitute a singular governmental action for SEQRA purposes, necessitating only one SEQRA environmental assessment. *See Scott v. City of Buffalo*, 16 Misc. 3d 259, 267--68 (Sup. Ct. Erie Cnty. 2006). The Department of Environmental Conservation ("DEC") enumerated eight factors that a local government should consider in deciding whether two activities should be considered a single action and therefore only require one environmental analysis:

1. Purpose: Is there a common purpose or goal for each segment?;
2. Time: is there a common reason for each segment being completed at or about the same time?;
3. Location: Is there a common geographic location involved?;
4. Impacts: Do any of the activities being considered for segmentation, while not necessarily significant by themselves, contribute toward significant cumulative or synergistic impacts?;
5. Ownership: Are the different segments under the same ownership or control?;
6. Planning: Is a given segment a component of an identifiable overall plan?;
7. Utility: Can any of the interrelated phases of various projects be considered functionally dependent on each other?; and

8. Inducement: Does the approval of one phase or segment commit the agency to approval of other phases?

*Scott*, 16 Misc. 2d at 267--68 (citing SEQRA Handbook, Department of Environmental Conservation). Given that the VLT Facility has the same environmental impact whether it was converted to a VLT Facility pursuant to a special permit or Local Law 3-2017, the answers to all eight of the above-enumerated factors are identical with regard to the VLT Facility and its environmental impact. Furthermore, SEQRA itself mandates that "agencies must carry out the terms and requirements of this Part [requiring environmental assessments] with minimum procedural and administrative delay, must **avoid unnecessary duplication of reporting and review requirements by providing, where feasible, for combined or consolidated proceedings,** and must expedite all SEQRA proceedings in the interest of prompt review." 6 N.Y.C.R.R. §317.3(h) (emphasis added). Accordingly, the Board followed SEQRA's mandate to preserve resources and efficiently determine the environmental impacts of a single project, the VLT Facility, when they relied on the 2016 Negative Declaration in deciding to pass Local Law 3-2017.

Finally, even had Plaintiffs provided notice of a SEQRA claim in their Complaint or Amended Complaint, such a claim would have been procedurally defective because Plaintiffs should have brought such a claim through an Article 78 proceeding, not a Verified Complaint.

Given that Plaintiffs failed to plead a SEQRA claim in a timely manner, and likewise failed to provide Defendants with sufficient notice of such a claim, Defendants were deprived of the opportunity to defend themselves regarding SEQRA claims and; therefore, the Bankruptcy Court properly held that the SEQRA claims were beyond the scope of review. Thus, Plaintiffs' Objection No. 7 should be rejected.

**8.** __Objection No. 8.__

Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board was not required to consider other locations and hotels, such as the Hampton Inn located within the Office/Industrial District. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that the Proposed Findings made improper and erroneous findings of fact and conclusions of law to excuse the Village Board from being required to consider other locations for a gaming facility or other use because no other hotel or other landowner was seeking to operate a Gaming Facility within the Village's borders.

As this Objection is directed towards the Village and Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 8.

9. **Objection No. 9.**

Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed because their challenge to the Local Law for want of uniformity was not specifically pled as a separate cause of action. As discussed at length in the memorandum of law accompanying this Objection, the Amended Complaint satisfied Fed. R. Civ. Proc. Rule 8's requirement for notice-pleading sufficient to bring up for judicial review the Local Law's invalidity for want of uniformity.

Plaintiffs asserted that the Office/Industrial District's zoning regulations lack uniformity for the first time in response to the summary judgment motions. A party may not assert a new theory or cause of action for the first time in response to a motion for summary judgment. *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (citing *Greenridge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006)); *see also Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("As a threshold matter, courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment."); *Rochester v. Blue Cross & Blue Shield*, No. 98-CV-2436 (ILG), 2000 WL 1052064, at *6 (E.D.N.Y. June 27, 2000) ("[C]ourts in this District have consistently ruled that it is inappropriate to raise new claims

for the first time in submissions in opposition to summary judgment."); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542(GBD), 2004 WL 2914093, at *6--7 (S.D.N.Y. Dec. 15, 2004) (holding that "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered" (internal citations omitted)). The Bankruptcy Court correctly recommended that Plaintiffs' new claim predicated on a uniformity theory must be denied.

Plaintiffs attempt to "read-into" their Amended Complaint their uniformity theory by contending that paragraphs 58 and 59 of the Amended Complaint "allege[ ] that the use permitted by the Local Law is unique and extraordinary," and that the Local Law establishes an "unprecedented use" within the Village, and that "these allegations, taken separately or read in conjunction with the other allegations in the Amended Complaint, give fair notice" of Plaintiffs' challenge to the Local Law for want of uniformity. [Dckt. No. 104, pp. 54]. However, pursuant to Federal Rule of Civil Procedure 8, made applicable here by Federal Rule of Bankruptcy Procedure 7008, the conclusion that authorized use is unique and extraordinary is insufficient to put Suffolk OTB on notice that Plaintiffs intended to, predicated only on vague "revelations" in these two paragraphs, pursue a violation of N.Y. Village Law § 7-702 under a want of uniformity theory.

The pleading requirements of the Federal Rules of Bankruptcy and Civil Procedure are designed to provide Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Amended Complaint does not mention N.Y. Village Law § 7-702 in either

general or explicit terms, nor include the word "uniform" or any derivative thereof.[1] [*See generally* Dckt. No. 43]. The general allegation that the VLT Facility's use is "unique and extraordinary" does not impute the requirements of N.Y. Village Law § 7-702, nor does it state the elements of a claim thereunder.[2] Plaintiffs accordingly failed to place Defendants on notice that it would be defending against a uniformity claim and the Bankruptcy Court properly refused to consider it. *See Rochester*, 2000 WL 1052064, at *6; *Southwick Clothing LLC*, 2004 WL 2914093, at *6--7. Consequently, Plaintiffs' Objection No. 9 should be disregarded as without merit.

10.    **Objection No. 10.**

Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board retained the option of amending the Village Code to prevent the proliferation of the unwanted gaming use in the event another hotel is granted a gaming license by New York State and in a manner that does not meet the requirements of the Local Law.  As discussed at length in the memorandum of law accompanying the Objection, the Village Board's ability to prevent the expansion of gaming uses of lands located within its borders would have no effect on the right of Premises' owner to continue to use the Premises as a gaming facility despite the enactment of local laws intending to limit or disallow expansion of a future gaming use.

---

[1] Plaintiffs' contentions not only misunderstand the notice pleading requirements of Federal Rule of Civil Procedure 8, but misunderstand what is contemplated by achieving "uniformity" in a given district pursuant to N.Y. Village Law § 7-702. Even if Plaintiffs' uniformity claim were properly pled, the claim fails on its merits. Plaintiffs acknowledge that any prohibition on any other parcel's use as a VLT Facility (i.e., any lack of uniformity) comes not from any regulation of the Village Board, but instead is derived from application of New York state law. See Racing, Pari-Mutuel Wagering and Breeding Law § 1300 *et seq.*, as added by L. 2013, Ch. 174 (regulating regional zones for gaming use). Plaintiffs have acknowledged that these regulations are promulgated by the State of New York in prior briefings. [*See* Dckt. No. 78, pp. 24-25 (discussing supposed impact of New York regulations on gaming facilities in the Village)].  Accordingly, the Local Law does not fail uniformly to apply any regulation to the Premises -- any regulation which disparately impacts the Premises and/or the VLT Facility is promulgated by the State of New York.

[2] In fact, Plaintiffs' contentions regarding the "unique" and "extraordinary" nature of the use demonstrates further failures of this argument on the merits. Plaintiffs' reliance on *Augenblick v. Town of Cortlandt*, 104 A.D.2d 806 (3d Dept't 1984), *rev'd sub nom. Matter Augenblick*, 66 N.Y.2d 775 (1985) further undermines their spot zoning claim. The *Augenblick* dissent reiterates the exceptions to uniformity requirements which apply here, by specifying that an ordinance is "held to uniformity if the record does not disclose any reasonable basis for different treatment among similar parcels within a district," and that "[w]here specialized circumstances exist for certain property within a district the uniformity rule may be bent," citing *Church v. Town of Islip*, 8 N.Y.2d 254, 168 N.E.2d 680 (1960). Such specialized circumstances undeniably are present in this case, as only one VLT license -- to Suffolk OTB -- has been granted in the county by the State of New York.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 10.

## FURTHER STATEMENT OF SUFFOLK OTB

**11.      Plaintiffs' Failure to Prevail on their Substantive Claims Prevents the Issuance of a Permanent Injunction.**

Though ignored in Plaintiffs' Objections, Suffolk OTB reiterates that plaintiffs -- as here -- seeking a permanent injunction must **prove** that they will **actually succeed on the merits** of their underlying claim before a court may grant a permanent injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008); *Amoco Prod. Co. v. Vill. of Gambell*, 408 U.S. 531, 546 n. 12 (1987); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981); *State Troopers Fraternal Ass'n of N.J. v. New Jersey State Troopers Fraternal Ass'n of N.J. v. New Jersey*, 585 Fed. Appx. 828, 830 (3d Cir. 2014) (non-binding precedent); *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011); *Michigan v. United States Army Corps. of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011); *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1365 (Fed. Cir. 2008); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004); *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324--25 (Fed. Cir. 2004); *Bimbo Bakeries USA, Inc. v. Sycamore,* No. 2:13-cv-00749-DN-DBP, 2008 WL 1578115, at *3--4 (D. Utah March 29, 2018); *Skold v. Galderma Labs., L.P.*, No. 14-5280, 2017 U.S. Dist. LEXIS 139217, at *46 (August 29, 2017); *Doculynx, Inc. v. ICB Consulting,* N. 16-cv-00365-RM-STV, 2016 U.S. Dist. LEXIS 192501, at *9 (D. Colo. Dec. 6, 2016); *Tiramisu Int'l LLC v. Clever Imps. LLC*, 741 F. Supp. 2d 1279, 1287 n. 4 (S.D. Fla. 2010); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 96 Civ. 9721 (PKL) (THK), 2005 WL 147364, at *17--19 (S.D.N.Y. Jan. 24, 2005); *NRDC v. Evans*, 364 F. Supp. 2d 1083, 1139 (N.D. Cal. 2003); *N.Y. State Soc'y of CPAs v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 335 (S.D.N.Y. 1999); *Greenpeace Found. v.*

*Mineta*, 122 F.Supp. 2d 1123, 1136 (Dist. Haw. 2000); *Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008).

An injunction is an *extraordinary remedy* that must not be routinely granted: "It goes without saying that an injunction is an equitable remedy. It is 'not a remedy which issues as a matter of course.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311--312 (1982) (quoting *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337--38 (1933); *See also, Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 584 (2d Cir. 1989); *Congress Fin. Corp. v. A-Z Rx LLC*, No. 9-03-82321-ess, 2012 Bankr. LEXIS 5607, at *86--87 (E.D.N.Y. Bankr. Dec. 3, 2012); *Ochs v. Lipson*, 238 B.R. 9, 20--21 (E.D.N.Y. Bankr. 1999); *Jordan v. Metro Life Ins. Co.*, 280 F. Supp. 2d 104, 108 (S.D.N.Y. 2003); *Securities & Exchange Comm. v. Bausch & Lomb, Inc.*, 420 F. Supp. 1126, 1245 (S.D.N.Y. 1976).

As discussed in detail in the Affidavit of Celine M. Gazes in Support of Suffolk OTB's Motion for Summary Judgment (the "Gazes Affidavit") [Dckt. No. 64], if a permanent injunction is granted, Suffolk OTB will suffer extreme hardship. If a permanent injunction closes the Suffolk OTB video lottery terminals known as Jake's 58 (the "VLT Facility"), Suffolk OTB will be unable to pay its future obligations under the Confirmed Plan (totaling over twenty million dollars ($20,000,000), economic contributions to the Village will cease, and Suffolk OTB will be forced to lay off the approximately two hundred (200) local residents it employs in the VLT Facility. Furthermore, if Suffolk OTB is prohibited from continuing to operate the VLT Facility, the New York State Education Fund will be deprived of valuable future revenue.[3] Suffolk County, New York is guaranteed approximately thirteen million dollars ($13,000,000) from Suffolk OTB during the first ten (10) years of Suffolk's operation in the Village, and Suffolk OTB remains on pace to

---

[3] As of September 2018, the VLT Facility operated by Suffolk OTB contributed $120,848,925 to the State Education Fund. *See* Gaming Commission, NEW YORK STATE (https://www.gaming.ny.gov/about/index.php?ID=3).

fulfill this obligation. Indeed, at the current level of operations, the payments to Suffolk County will be substantially in excess of that amount. However, if Suffolk OTB is forced to relocate the VLT Facility, Suffolk County will not receive future revenue from Suffolk OTB for many months, if not years.

Given the undisputed resultant harm to Suffolk OTB of a permanent injunction detailed in the Gazes Affidavit, and Plaintiffs' utter failure to address this issue, the record overwhelmingly supports Chief Judge Craig's decision that the claim for permanent injunction must be dismissed.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, and for those stated in the forthcoming responses from Delaware North, the Village, and the Board, Suffolk Regional Off-Track Betting Corporation respectfully requests that the District Court adopt the Bankruptcy Court's *Proposed Findings of Fact and Conclusions of Law* [Dckt. No. 100] in their entirety, reject Plaintiffs' Objections thereto, and enter the Proposed Order dismissing this case.

Dated: White Plains, New York
      January 18, 2019

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: _/s/ Christopher F. Graham_____
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.

10 Bank Street, Suite 700
White Plains, New York 10606
(914) 949-2909
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Attorneys for the Adjusted Debtor and Defendant Suffolk Regional Off-Track Betting Corporation*

**To: ALL COUNSEL OF RECORD (via ECF)**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 18, 2019, I caused true and correct copies of the *Adjusted Debtor and Defendant Suffolk Regional Off-Track Betting Corporation's Response to Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* be served via ECF upon all parties registered to receive service in this case.

*/s/ Christopher F. Graham*_____

Christopher F. Graham, Esq.

# EXHIBIT "A"

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5        SUFFOLK REGIONAL OFF-TRACK           CASE NO. 1-12-43503-ccc

6        BETTING CORPORATION,

7        Debtor.

8    - - - - - - - - - - - - - - - - - - x

9    TOMASINO, ET AL

10   v.                                     CASE NO. 1-18-01033-ccc

11   INCORPORATED VILLAGE OF ISLANDIA, ET AL

12   - - - - - - - - - - - - - - - - - - x

13                        United States Bankruptcy Court

14                        Brooklyn Federal Courthouse

15                        271-C Cadman Plaza East

16                        Brooklyn, New York  11201-1800

17

18                        NOVEMBER 28, 2018

19                        2:13 PM

20

21   B E F O R E :

22   HON. CARLA E. CRAIG

23   U.S. BANKRUPTCY JUDGE

24

25

```
 1    HEARING Matter:  (759) Motion to Object/Reclassify/

 2    Reduce/Expunge Claims - Claim No. 52, filed by Joan Bohn in the

 3    amount of $20,000

 4

 5    HEARING Matter:  (114) Order Scheduling Status Conference for

 6    the purpose of determining an appropriate schedule for the

 7    proper administration of this case

 8

 9    HEARING Matter:  (1) Notice of Removal

10

11    HEARING Matter:  (64) Motion for Summary Judgment (related

12    document(s)(63), (62)

13

14    HEARING Matter:  (82) Motion to Strike/Preclude Joinder to

15    Delaware Norths Motion and Memorandum of Law in Support of

16    Motion to Strike/Preclude (related document(s) (80)

17

18    HEARING Matter:  (63) Motion for Summary Judgment filed by

19    Jarrett M. Behar on behalf of Board of Trustees of the

20    Incorporated Village of Islandia, Incorporated Village of

21    Islandia (related document(s)(62)

22

23    HEARING Matter:  (83) Motion to Strike Declarations of Stephen

24    M. Jones and Neil Munro Filed by Jarrett M. Behar on behalf of

25    Board of Trustees of the Incorporated Village of Islandia,
```

1    And I say with a straight face, I'm not going to give you a

2    dime and there's nothing you can do about it.  I have a

3    continued right to use it.

4           THE COURT:  Okay.  So you're saying that any time

5    there's a host community agreement entered into in connection

6    with a zoning amendment that that is illegal contract zoning.

7    That's what you're saying.

8           MR. BOROVINA:  No, because -- and first of all let's

9    talk about the facts of this case.

10          The host community agreements in the context of a

11   permit were that the permit is rescinded if the terms of the

12   agreement are not honored.  That is a host community agreement.

13          In this particular case you cannot --

14          THE COURT:  Okay.  But there are host community

15   agreements that are entered into, not in connection with the

16   giving of a permit, but rather in connection with a change in

17   the zoning law.

18          MR. BOROVINA:  That's not -- if that is the case then

19   that's not -- first of all that's not before the Court.

20          THE COURT:  Well this is.

21          MR. BOROVINA:  Well --

22          THE COURT:  There's a host community agreement

23   entered into in connection with the change in the zoning

24   law --

25          MR. BOROVINA:  And --

1          THE COURT:  -- and you're telling me that is always,

2     always, always contract zoning.

3          MR. BOROVINA:  And what this case is, is whether or

4     not under the standards applicable for a contract zone was this

5     local law adopted in conjunction with the agreement that had

6     the effect of tying of hands.

7          THE COURT:  Okay.

8          MR. BOROVINA:  If that standard is met I submit that

9     is a contract zone.

10          THE COURT:  So --

11          MR. BOROVINA:  The argument that's being raised now -

12     -

13          THE COURT:  Okay.

14          MR. BOROVINA:  -- is -- the point that's being raised

15     now -- maybe -- I understand what the point is -- gee, is it

16     possible -- let's assume it is -- that host community

17     agreements are done in connection with -- they may very well

18     have been done in connection with zoning laws because the owner

19     gratuitously decides to give the money, that's fine, that's not

20     what -- the Village did not adopt the local law thinking, you

21     know something, we're going to

22     -- and the agreement doesn't say that -- we are going to

23     continue the use in perpetuity and it's okay if the Village

24     decides -- if Delaware North decides to walk away and -- or

25     worse yet they sell the property or they go bankruptcy,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
10 Bank Street, Suite 700
White Plains, NY 10606
Telephone: (914) 949-2909
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Counsel for the Adjusted Debtor and Defendant*
*Suffolk Regional Off-Track Betting Corporation*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 9 |
| SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION, | Case No. 12-43503-CEC |
|        Adjusted Debtor. | |
| JENNIFER TOMASINO, KEVIN MONTANO, RICHARD MEYER, and APRYL L. MEYER, | |
|        Plaintiffs, | |
|    -against- | Adv. Proc. No. 18-1033-CEC |
| INCORPORATED VILLAGE OF ISLANDIA, BOARD OF TRUSTEES OF THE VILLAGE OF ISLANDIA, DELAWARE NORTH ISLANDIA PROPERTIES, LLC, a/k/a DELAWARE NORTH, and SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION, | **ADJUSTED DEBTOR AND DEFENDANT SUFFOLK REGIONAL OFF-TRACK BETTING CORPORATION'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
|        Defendants. | |

# INTRODUCTION

Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB") as and for its response to *Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law as Amplified by the Memorandum of Law in Support Thereof* ("Plaintiffs' Objections") [Dckt. No. 104] to the *Proposed Findings of Fact and Conclusions of Law* entered by the Bankruptcy Court on December 18, 2018 (the "Proposed Order") [Dckt. No. 100] hereby submits the following points of fact and law.

# PRELIMINARY STATEMENT

Rather than raising specific objections to the Proposed Order, Plaintiffs' Objections seek to re-create and embellish the record on summary judgment and reargue the summary judgment motions. Contrary to Federal Rule of Bankruptcy Procedure 9033, Plaintiffs' Objections fail to identify specific objections to the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law, and instead re-argue the points made during the summary judgment briefing and hearing arguments. Critically, Plaintiffs' Objections do not address the issues of alleged firearms, drug use, public intoxication, prostitution and other vices featured prominently in the Plaintiffs' Amended Complaint [Dckt. No. 43] and Declarations [Dckt. Nos. 69-72] cited as support for a permanent injunction. Chief Judge Carla E. Craig's concise and well-reasoned decision is supported by clear citations to the record and the law -- most of which are ignored by the Plaintiffs -- and none of which is rebutted.  Suffolk OTB respectfully requests that the District Court adopt the Bankruptcy Court's Proposed Order in its entirety and reject Plaintiffs' Objections.

# RESPONSES TO PLAINTIFFS' SPECIFIC OBJECTIONS

1.  **Objection No. 1.**
    Plaintiffs object to the Bankruptcy Court having made findings of fact in the Proposed Findings based upon judicial notice of facts. The Proposed Order does not specify any finding of fact upon which judicial notice was taken. Such finding

of fact were improperly made inasmuch as the role of the Bankruptcy Court in resolving Defendants' motions seeking summary dismissal of the first (zoning by contract) and second (spot zone) causes of action alleged in the Amended Complaint was to identify and not resolve issues of disputed material facts.

In the "Background" section of the Proposed Order, the Bankruptcy Court states undisputed facts *or* matters of which judicial notice may be taken. Every fact cited by the Bankruptcy Court is supported either directly with a citation to the record or is easily verified by the record, and as such, there were no "improperly made" findings of fact. As the Bankruptcy Court did not take judicial notice of any facts, and the Plaintiffs did not object to any of the stated facts in the Proposed Order, the statements are considered undisputed facts.

Under Rule 56, made applicable to this case by Federal Rules of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiffs cannot create a genuine issue of material fact simply by stating that one exists. Rather, Plaintiffs must support the assertion by citing to particular parts of materials in the record, or showing that the materials cited do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)-(B). Plaintiffs have done neither.

In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). As the nonmoving party, Plaintiffs must show "that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000). Having failed to point out any improper judicially noticed findings of fact as well as any genuine dispute of material facts, Plaintiffs have failed to support their objections and consequently, Objection No. 1 should be rejected.

**2.** **Objection No. 2.**

Plaintiffs object to the Proposed Findings' recommendation that the contract zone claim be summarily dismissed because they failed to prove the existence of an agreement between the Village and Delaware North in advance of the Local Law No. 3-2017 ("Local Law")'s adoption which required the Village to adopt the Local Law. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the timing and circumstances upon which an agreement was made between the Village and Delaware North in conjunction with the Village's adoption of the Local Law pursuant to which the Village agreed to use its zoning powers to adopt the Local Law expressly designed to benefit only Delaware North with the formal execution of that agreement to be deferred until after the Local Law has been actually adopted. The Proposed Finding's factual and legal conclusion that no zoning by contract claim can succeed because Plaintiffs have not shown the existence of an agreement in advance of the Local Law being adopted is based upon the court having made improper and erroneous findings of fact that no such agreement existed despite evidence in the motion record showing otherwise.

As this Objection is directed towards Defendants Incorporated Village of Islandia (the "Village"), Board of Trustees of the Village of Islandia (the "Board"), and Delaware North Islandia, LLC ("Delaware North"), Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 2 as without merit.

**3.** **Objection No. 3.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon the court's erroneous legal conclusion that no zoning by contact claim could be established in the absence of an express contract made in advance of the Local Law being adopted. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that an agreement had been made whereby the Village agreed in advance of the Local Law being adopted that it would adopt (not that it was required to adopt) the Local Law if Delaware North agreed that, upon the adoption of the Local Law in a form approved by Delaware North, Delaware North would formally enter into the Amended TRA after the Local Law was adopted whereby it would re-commit itself to abide by the Taxpayer Relief Agreement ("TRA"). The Village's subsequent ratification of that agreement by its formal execution of the Amended Taxpayer Relief Agreement ("Amended TRA") after the Local Law was adopted was also sufficient to establish the making of an agreement upon which a zoning by contract claim may be established.

- 4 -

As this Objection is directed towards the Village, the Board, and Delaware North, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objections.

4. **Objection No. 4.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicted because it was made in accordance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) ("Section 1316(6) agreement") or was otherwise an ordinary "mitigation agreement." As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact which precluded summary determination that the Amended TRA qualified as a Section 1316(6) agreement or a mitigation agreement.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objections.

Suffolk OTB states in further support of the Bankruptcy Court's Proposed Order that Plaintiffs themselves admitted that "as part of the SUP Application, Delaware North included the concept of impact mitigation as part of its proposal by way of an agreement to mitigate impacts from the proposed VLT Facility." [Docket No. 76, ¶ 29].

As stated in Delaware North's Memorandum of Law in Support of Summary Judgment [Dckt. No. 62-2], the TRA and Amended TRA are "host community agreements providing for the mitigation of impacts under SEQRA…The TRA noted that the payments due from Delaware North to the Village were to promote community development in the Village and to offset infrastructure, public safety, and emergency services burdens on the Village as the result of the SUP Application."

Plaintiffs' own admissions at the November 28, 2018 Hearing on Defendants' Motions for Summary Judgment further establish that Plaintiffs failed to establish contract zoning because

Plaintiffs acknowledged that host community agreements are permissible when there is no "tying of hands" of the legislative body, which is yet another issue on which Plaintiffs failed to establish a genuine issue of material fact (*See* November 28, 2018 Transcript Excerpts, 137:4-138:6, attached hereto as **Ex. A**):

> THE COURT: Okay. So you're saying that any time there's a host community agreement entered into in connection with a zoning amendment that that is illegal contract zoning. That's what you're saying.

> MR. BOROVINA: No, because -- and first of all let's talk about the facts of this case. The host community agreements in the context of a permit were that the permit is rescinded if the terms of the agreement are not honored. That is a host community agreement. In this particular case you cannot --

> THE COURT: Okay. But there are host community agreements that are entered into, not in connection with the giving of a permit, but rather in connection with a change in the zoning law.

> MR. BOROVINA: That's not -- if that is the case then that's not -- first of all that's not before the Court.

> THE COURT: Well this is.

> MR. BOROVINA: Well --

> THE COURT: There's a host community agreement entered into in connection with the change in the zoning law --

> MR. BOROVINA: And --

> THE COURT: -- and you're telling me that is always, always, always contract zoning.

> MR. BOROVINA: And what this case is, is whether or not under the standards applicable for a contract zone was this local law adopted in conjunction with the agreement that had the effect of tying of hands.

As set forth in greater detail in Delaware's North's forthcoming responses and the Village's forthcoming joinder to Delaware's North's responses to Plaintiffs' Objections, nowhere in either the TRA or the Amended TRA did the Village bind itself with respect to

the exercise of its legislative power, and Plaintiffs' Objections that there were disputed

issues of fact regarding the TRA or the Amended TRA presented as Objection No. 4 should

be rejected by this Court.

**5.** **Objection No. 5.**

Plaintiffs object to the Proposed Findings' recommendation that the zoning by contract claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Amended TRA was not and could not have been the basis upon which a zoning by contract claim may be predicted because it represented an ordinary mitigation agreement, if not a Section 1316(6) agreement, whereby Delaware North agreed to provide the Village certain benefits or to satisfy conditions upon receipt of a favorable zoning determination. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that, no matter what euphemistic label is placed on the Amended TRA, the Village Board nevertheless adopted the Local Law in conjunction with an agreement whereby it agreed to bargain away its powers and tie its hands by agreeing to adopt the Local Law in the form approved in advance by Delaware North.

As this Objection is directed towards the Village, the Board, and Delaware North, Suffolk

OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and

urges the District Court to reject Plaintiffs' Objections. Suffolk OTB further incorporates its

response to Plaintiffs' Objection No. 4 by reference as if fully set forth herein. Consequently,

Plaintiff's Objection No. 5 should be disregarded as without merit.

**6.** **Objection No. 6.**

Plaintiffs Object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed based upon improper and erroneous findings of fact and conclusions of law that the Plaintiffs have not and cannot establish a spot zone claim. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact regarding the sufficiency of the process the Village Board used to adopt the Local Law in accordance with State law prescribing the process by which zoning enactments may be considered and adopted.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby

incorporates Delaware North's forthcoming responses and the Village's joinder and urges the

District Court to reject Plaintiffs' Objection No. 6 as without basis.

{V0564653.1}                                      - 7 -

In further support of Suffolk OTB's request for the District Court to adopt the Proposed Order in its entirety, Suffolk OTB notes that Plaintiffs, as they have attempted to do before, purposefully confuse the record by deliberately misrepresenting and mischaracterizing Village Mayor Dorman's testimony.  Plaintiffs state in their Memorandum of Law that "Mayor Dorman also testified that he was not familiar with the 1995 Master Plan."  [Dckt. No. 104-1 at 18] (citing Dorman Dep. 134: 23–25).  Plaintiffs' Objections incorrectly refer to the "Comprehensive Plan" as a "Master Plan," and when asked about the Comprehensive Plan during his deposition, Mayor Dorman testified that he was familiar with the Comprehensive Plan, the 2003 Comprehensive Plan Update, and that the Village's plan was considered during the process for adopting Local Law 3-2017, along with the character of the community, surrounding land uses, and current zoning. (Dorman Dep. 131:5-132:15; 166:22–167:3). *See also Asian Americans for Equal. v. Koch*, 72 N.Y.2d 121, 131 (1988) (A well-considered plan need not be contained in a single document; indeed, it need not be written at all. The court may satisfy itself that the municipality has a well-considered plan and that authorities are acting in the public interest to further it by examining all available and relevant evidence of the municipality's land use policies.").

**7.**     <u>**Objection No. 7.**</u>
Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed because the process the Village Board used to adopt the Local Law was beyond judicial review on account of the withdrawal of a SEQRA challenge to the 2016 Negative Declaration that had been made in a prior State court Article 78 proceeding and the Amended Complaint's failure to allege a SEQRA claim. As discussed at length in the memorandum of Law accompanying this Objection, Plaintiffs were not required to state a SEQRA claim in the Amended Complaint and the sufficiency of the process of the Village Board used to adopt the Local Law was not beyond judicial review as to all matters relating to that process because the Amended Complaint did not allege a SEQRA-based claim.

The Plaintiffs' claim that the Bankruptcy Court erred in determining that Plaintiffs' SEQRA claims were beyond judicial review at this time is ungrounded for several reasons.

First, SEQRA claims traditionally carry a four-month statute of limitations that begins to run from the time a local government completes its decision-making process. N.Y.C.P.L.R. § 217(1); *In re Town of Babylon v. N.Y.S. DOT*, 1997 NYLJ LEXIS 1472, at *6--7 (Sup. Ct. August 18, 1997); *Young v. Bd. of Tr. of the Vill. of Blasdell*, 89 NY2d 846 (1996). However, the statute of limitations for SEQRA violations allegedly committed by a village is limited to a mere thirty (30) days. N.Y. CLS §274-a(11).The Board passed Local Law 3-2017, signaling the end of its decision-making process on November 28, 2017. Plaintiffs challenged Local Law 3-2017 *on other grounds* in their Complaint dated February 12, 2018 and in their Amended Complaint on July 26, 2018. *Nowhere* in either pleading did Plaintiffs allege that the Board violated SEQRA or improperly performed an environmental assessment. Suffolk OTB disputes the existence of any SEQRA violation, but even if one existed, Plaintiffs were required to challenge Local Law 3-2017 within thirty (30) days of the Board's decision to pass Local Law 3-2017, which ran on December 28, 2017. Given that Plaintiffs failed to assert the SEQRA claim -- or even provide notice to the Defendants of their intent to argue a SEQRA claim -- within the statute of limitations, the Plaintiffs waived any claim regarding any possible SEQRA violations.

Second, Plaintiffs' allegations in the Complaint and Amended Complaint were insufficient to put Defendants on "fair notice of what the plaintiff's claim is and the grounds upon which it rests" as required by the Federal Rules of Bankruptcy and Civil Procedure. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Nowhere* in the Complaint or Amended Complaint did Plaintiffs mention, reference, or cite SEQRA. Defendants are not required to anticipate every possible cause of action that Plaintiffs might seek. For Plaintiffs to expect to recover under SEQRA when Plaintiffs failed to mention, reference, or even allude to SEQRA in any of their pleadings, deprives Defendants of their due process rights to an opportunity to defend themselves.

Moreover, Plaintiffs attempt to address SEQRA in the context of a spot zoning argument is a non-sequitur. The test for spot zoning is clear: a zoning change is not an illegal spot zone if it was passed pursuant to a well-considered comprehensive plan. *Collard v. Flower Hill*, 52 N.Y. 2d 594, 600 (N.Y. 1981). Plaintiffs fail to show how any alleged SEQRA violation is relevant to whether Local Law 3-2017 is an unlawful spot zone. Plaintiffs' attempts to argue that the SEQRA violation bears on an unlawful spot argument is a feeble attempt to resurrect Plaintiffs' unasserted SEQRA claims in an impermissible way.

Third, even if Plaintiffs had not procedurally waived a SEQRA claim, they are not entitled to relief because Plaintiffs failed to provide any authority to support their assertion that the Board improperly relied on the 2016 Negative Declaration to guide its decision to pass Local Law 2-2017. To the contrary, SEQRA requires that any local government action requires an environmental assessment. However, several sufficiently similar government activities can constitute a singular governmental action for SEQRA purposes, necessitating only one SEQRA environmental assessment. *See Scott v. City of Buffalo*, 16 Misc. 3d 259, 267--68 (Sup. Ct. Erie Cnty. 2006). The Department of Environmental Conservation ("DEC") enumerated eight factors that a local government should consider in deciding whether two activities should be considered a single action and therefore only require one environmental analysis:

1. Purpose: Is there a common purpose or goal for each segment?;
2. Time: is there a common reason for each segment being completed at or about the same time?;
3. Location: Is there a common geographic location involved?;
4. Impacts: Do any of the activities being considered for segmentation, while not necessarily significant by themselves, contribute toward significant cumulative or synergistic impacts?;
5. Ownership: Are the different segments under the same ownership or control?;
6. Planning: Is a given segment a component of an identifiable overall plan?;
7. Utility: Can any of the interrelated phases of various projects be considered functionally dependent on each other?; and

8. Inducement: Does the approval of one phase or segment commit the agency to approval of other phases?

*Scott*, 16 Misc. 2d at 267--68 (citing SEQRA Handbook, Department of Environmental Conservation). Given that the VLT Facility has the same environmental impact whether it was converted to a VLT Facility pursuant to a special permit or Local Law 3-2017, the answers to all eight of the above-enumerated factors are identical with regard to the VLT Facility and its environmental impact. Furthermore, SEQRA itself mandates that "agencies must carry out the terms and requirements of this Part [requiring environmental assessments] with minimum procedural and administrative delay, must **avoid unnecessary duplication of reporting and review requirements by providing, where feasible, for combined or consolidated proceedings,** and must expedite all SEQRA proceedings in the interest of prompt review." 6 N.Y.C.R.R. §317.3(h) (emphasis added). Accordingly, the Board followed SEQRA's mandate to preserve resources and efficiently determine the environmental impacts of a single project, the VLT Facility, when they relied on the 2016 Negative Declaration in deciding to pass Local Law 3-2017.

Finally, even had Plaintiffs provided notice of a SEQRA claim in their Complaint or Amended Complaint, such a claim would have been procedurally defective because Plaintiffs should have brought such a claim through an Article 78 proceeding, not a Verified Complaint.

Given that Plaintiffs failed to plead a SEQRA claim in a timely manner, and likewise failed to provide Defendants with sufficient notice of such a claim, Defendants were deprived of the opportunity to defend themselves regarding SEQRA claims and; therefore, the Bankruptcy Court properly held that the SEQRA claims were beyond the scope of review. Thus, Plaintiffs' Objection No. 7 should be rejected.

## 8. __Objection No. 8.__

Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board was not required to consider other locations and hotels, such as the Hampton Inn located within the Office/Industrial District. As discussed at length in the memorandum of law accompanying this Objection, the motion record evidenced the existence of disputed issues of fact establishing that the Proposed Findings made improper and erroneous findings of fact and conclusions of law to excuse the Village Board from being required to consider other locations for a gaming facility or other use because no other hotel or other landowner was seeking to operate a Gaming Facility within the Village's borders.

As this Objection is directed towards the Village and Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 8.

**9.    <u>Objection No. 9.</u>**

Plaintiffs object to the Proposed Findings' recommendation that the spot zone claim be summarily dismissed because their challenge to the Local Law for want of uniformity was not specifically pled as a separate cause of action. As discussed at length in the memorandum of law accompanying this Objection, the Amended Complaint satisfied Fed. R. Civ. Proc. Rule 8's requirement for notice-pleading sufficient to bring up for judicial review the Local Law's invalidity for want of uniformity.

Plaintiffs asserted that the Office/Industrial District's zoning regulations lack uniformity for the first time in response to the summary judgment motions. A party may not assert a new theory or cause of action for the first time in response to a motion for summary judgment. *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (citing *Greenridge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir.2006)); *see also Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("As a threshold matter, courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment."); *Rochester v. Blue Cross & Blue Shield*, No. 98-CV-2436 (ILG), 2000 WL 1052064, at *6 (E.D.N.Y. June 27, 2000) ("[C]ourts in this District have consistently ruled that it is inappropriate to raise new claims

for the first time in submissions in opposition to summary judgment."); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 Civ. 10542(GBD), 2004 WL 2914093, at *6--7 (S.D.N.Y. Dec. 15, 2004) (holding that "[a] complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered" (internal citations omitted)). The Bankruptcy Court correctly recommended that Plaintiffs' new claim predicated on a uniformity theory must be denied.

Plaintiffs attempt to "read-into" their Amended Complaint their uniformity theory by contending that paragraphs 58 and 59 of the Amended Complaint "allege[ ] that the use permitted by the Local Law is unique and extraordinary," and that the Local Law establishes an "unprecedented use" within the Village, and that "these allegations, taken separately or read in conjunction with the other allegations in the Amended Complaint, give fair notice" of Plaintiffs' challenge to the Local Law for want of uniformity. [Dckt. No. 104, pp. 54]. However, pursuant to Federal Rule of Civil Procedure 8, made applicable here by Federal Rule of Bankruptcy Procedure 7008, the conclusion that authorized use is unique and extraordinary is insufficient to put Suffolk OTB on notice that Plaintiffs intended to, predicated only on vague "revelations" in these two paragraphs, pursue a violation of N.Y. Village Law § 7-702 under a want of uniformity theory.

The pleading requirements of the Federal Rules of Bankruptcy and Civil Procedure are designed to provide Defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Amended Complaint does not mention N.Y. Village Law § 7-702 in either

general or explicit terms, nor include the word "uniform" or any derivative thereof.[1] [*See generally* Dckt. No. 43]. The general allegation that the VLT Facility's use is "unique and extraordinary" does not impute the requirements of N.Y. Village Law § 7-702, nor does it state the elements of a claim thereunder.[2] Plaintiffs accordingly failed to place Defendants on notice that it would be defending against a uniformity claim and the Bankruptcy Court properly refused to consider it. *See Rochester*, 2000 WL 1052064, at *6; *Southwick Clothing LLC*, 2004 WL 2914093, at *6--7. Consequently, Plaintiffs' Objection No. 9 should be disregarded as without merit.

**10.    Objection No. 10.**

Plaintiffs object to the Proposed Findings relating to the Bankruptcy Court's conclusion of fact and law that the Village Board retained the option of amending the Village Code to prevent the proliferation of the unwanted gaming use in the event another hotel is granted a gaming license by New York State and in a manner that does not meet the requirements of the Local Law.  As discussed at length in the memorandum of law accompanying the Objection, the Village Board's ability to prevent the expansion of gaming uses of lands located within its borders would have no effect on the right of Premises' owner to continue to use the Premises as a gaming facility despite the enactment of local laws intending to limit or disallow expansion of a future gaming use.

---

[1] Plaintiffs' contentions not only misunderstand the notice pleading requirements of Federal Rule of Civil Procedure 8, but misunderstand what is contemplated by achieving "uniformity" in a given district pursuant to N.Y. Village Law § 7-702. Even if Plaintiffs' uniformity claim were properly pled, the claim fails on its merits. Plaintiffs acknowledge that any prohibition on any other parcel's use as a VLT Facility (i.e., any lack of uniformity) comes not from any regulation of the Village Board, but instead is derived from application of New York state law. See Racing, Pari-Mutuel Wagering and Breeding Law § 1300 *et seq.*, as added by L. 2013, Ch. 174 (regulating regional zones for gaming use). Plaintiffs have acknowledged that these regulations are promulgated by the State of New York in prior briefings. [*See* Dckt. No. 78, pp. 24-25 (discussing supposed impact of New York regulations on gaming facilities in the Village)].  Accordingly, the Local Law does not fail uniformly to apply any regulation to the Premises -- any regulation which disparately impacts the Premises and/or the VLT Facility is promulgated by the State of New York.

[2] In fact, Plaintiffs' contentions regarding the "unique" and "extraordinary" nature of the use demonstrates further failures of this argument on the merits. Plaintiffs' reliance on *Augenblick v. Town of Cortlandt*, 104 A.D.2d 806 (3d Dept't 1984), *rev'd sub nom. Matter Augenblick*, 66 N.Y.2d 775 (1985) further undermines their spot zoning claim. The *Augenblick* dissent reiterates the exceptions to uniformity requirements which apply here, by specifying that an ordinance is "held to uniformity if the record does not disclose any reasonable basis for different treatment among similar parcels within a district," and that "[w]here specialized circumstances exist for certain property within a district the uniformity rule may be bent," citing *Church v. Town of Islip*, 8 N.Y.2d 254, 168 N.E.2d 680 (1960). Such specialized circumstances undeniably are present in this case, as only one VLT license -- to Suffolk OTB -- has been granted in the county by the State of New York.

As this Objection is directed towards the Village and the Board, Suffolk OTB hereby incorporates Delaware North's forthcoming responses and the Village's joinder and urges the District Court to reject Plaintiffs' Objection No. 10.

## FURTHER STATEMENT OF SUFFOLK OTB

**11.** **Plaintiffs' Failure to Prevail on their Substantive Claims Prevents the Issuance of a Permanent Injunction.**

Though ignored in Plaintiffs' Objections, Suffolk OTB reiterates that plaintiffs -- as here -- seeking a permanent injunction must **prove** that they will **actually succeed on the merits** of their underlying claim before a court may grant a permanent injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008); *Amoco Prod. Co. v. Vill. of Gambell*, 408 U.S. 531, 546 n. 12 (1987); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981); *State Troopers Fraternal Ass'n of N.J. v. New Jersey State Troopers Fraternal Ass'n of N.J. v. New Jersey*, 585 Fed. Appx. 828, 830 (3d Cir. 2014) (non-binding precedent); *Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011); *Michigan v. United States Army Corps. of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011); *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1365 (Fed. Cir. 2008); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004); *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324--25 (Fed. Cir. 2004); *Bimbo Bakeries USA, Inc. v. Sycamore,* No. 2:13-cv-00749-DN-DBP, 2008 WL 1578115, at *3--4 (D. Utah March 29, 2018); *Skold v. Galderma Labs., L.P.*, No. 14-5280, 2017 U.S. Dist. LEXIS 139217, at *46 (August 29, 2017); *Doculynx, Inc. v. ICB Consulting,* N. 16-cv-00365-RM-STV, 2016 U.S. Dist. LEXIS 192501, at *9 (D. Colo. Dec. 6, 2016); *Tiramisu Int'l LLC v. Clever Imps. LLC*, 741 F. Supp. 2d 1279, 1287 n. 4 (S.D. Fla. 2010); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 96 Civ. 9721 (PKL) (THK), 2005 WL 147364, at *17--19 (S.D.N.Y. Jan. 24, 2005); *NRDC v. Evans*, 364 F. Supp. 2d 1083, 1139 (N.D. Cal. 2003); *N.Y. State Soc'y of CPAs v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 335 (S.D.N.Y. 1999); *Greenpeace Found. v.*

*Mineta*, 122 F.Supp. 2d 1123, 1136 (Dist. Haw. 2000); *Career Training Concepts, Inc. v. United States*, 83 Fed. Cl. 215, 219 (2008).

An injunction is an *extraordinary remedy* that must not be routinely granted: "It goes without saying that an injunction is an equitable remedy. It is 'not a remedy which issues as a matter of course.'" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311--312 (1982) (quoting *Harrisonville v. W.S. Dickey Clay Mfg. Co.*, 289 U.S. 334, 337--38 (1933); *See also, Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 584 (2d Cir. 1989); *Congress Fin. Corp. v. A-Z Rx LLC*, No. 9-03-82321-ess, 2012 Bankr. LEXIS 5607, at *86--87 (E.D.N.Y. Bankr. Dec. 3, 2012); Ochs *v. Lipson*, 238 B.R. 9, 20--21 (E.D.N.Y. Bankr. 1999); *Jordan v. Metro Life Ins. Co.*, 280 F. Supp. 2d 104, 108 (S.D.N.Y. 2003); *Securities & Exchange Comm. v. Bausch & Lomb, Inc.*, 420 F. Supp. 1126, 1245 (S.D.N.Y. 1976).

As discussed in detail in the Affidavit of Celine M. Gazes in Support of Suffolk OTB's Motion for Summary Judgment (the "Gazes Affidavit") [Dckt. No. 64], if a permanent injunction is granted, Suffolk OTB will suffer extreme hardship. If a permanent injunction closes the Suffolk OTB video lottery terminals known as Jake's 58 (the "VLT Facility"), Suffolk OTB will be unable to pay its future obligations under the Confirmed Plan (totaling over twenty million dollars ($20,000,000), economic contributions to the Village will cease, and Suffolk OTB will be forced to lay off the approximately two hundred (200) local residents it employs in the VLT Facility. Furthermore, if Suffolk OTB is prohibited from continuing to operate the VLT Facility, the New York State Education Fund will be deprived of valuable future revenue.[3]  Suffolk County, New York is guaranteed approximately thirteen million dollars ($13,000,000) from Suffolk OTB during the first ten (10) years of Suffolk's operation in the Village, and Suffolk OTB remains on pace to

---

[3] As of September 2018, the VLT Facility operated by Suffolk OTB contributed $120,848,925 to the State Education Fund. *See* Gaming Commission, NEW YORK STATE (https://www.gaming.ny.gov/about/index.php?ID=3).

fulfill this obligation. Indeed, at the current level of operations, the payments to Suffolk County will be substantially in excess of that amount. However, if Suffolk OTB is forced to relocate the VLT Facility, Suffolk County will not receive future revenue from Suffolk OTB for many months, if not years.

Given the undisputed resultant harm to Suffolk OTB of a permanent injunction detailed in the Gazes Affidavit, and Plaintiffs' utter failure to address this issue, the record overwhelmingly supports Chief Judge Craig's decision that the claim for permanent injunction must be dismissed.

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, and for those stated in the forthcoming responses from Delaware North, the Village, and the Board, Suffolk Regional Off-Track Betting Corporation respectfully requests that the District Court adopt the Bankruptcy Court's *Proposed Findings of Fact and Conclusions of Law* [Dckt. No. 100] in their entirety, reject Plaintiffs' Objections thereto, and enter the Proposed Order dismissing this case.


Dated: White Plains, New York
　　　　January 18, 2019


Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

By: _/s/ Christopher F. Graham_____
Christopher F. Graham, Esq.
Sarah H. Morrissey, Esq.

10 Bank Street, Suite 700
White Plains, New York 10606
(914) 949-2909
cgraham@eckertseamans.com
smorrissey@eckertseamans.com

*Attorneys for the Adjusted Debtor and
Defendant Suffolk Regional Off-Track Betting
Corporation*

**To: ALL COUNSEL OF RECORD (via ECF)**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 18, 2019, I caused true and correct copies of the *Adjusted Debtor and Defendant Suffolk Regional Off-Track Betting Corporation's Response to Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law* be served via ECF upon all parties registered to receive service in this case.

/s/ Christopher F. Graham
Christopher F. Graham, Esq.

# EXHIBIT "A"

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - - - - - x

4    In the Matter of:

5        SUFFOLK REGIONAL OFF-TRACK          CASE NO. 1-12-43503-ccc

6        BETTING CORPORATION,

7        Debtor.

8    - - - - - - - - - - - - - - - - - x

9    TOMASINO, ET AL

10   v.                                    CASE NO. 1-18-01033-ccc

11   INCORPORATED VILLAGE OF ISLANDIA, ET AL

12   - - - - - - - - - - - - - - - - - x

13                        United States Bankruptcy Court

14                        Brooklyn Federal Courthouse

15                        271-C Cadman Plaza East

16                        Brooklyn, New York  11201-1800

17

18                        NOVEMBER 28, 2018

19                        2:13 PM

20

21   B E F O R E:

22   HON. CARLA E. CRAIG

23   U.S. BANKRUPTCY JUDGE

24

25

1   HEARING Matter:  (759) Motion to Object/Reclassify/

2   Reduce/Expunge Claims - Claim No. 52, filed by Joan Bohn in the

3   amount of $20,000

4

5   HEARING Matter:  (114) Order Scheduling Status Conference for

6   the purpose of determining an appropriate schedule for the

7   proper administration of this case

8

9   HEARING Matter:  (1) Notice of Removal

10

11   HEARING Matter:  (64) Motion for Summary Judgment (related

12   document(s)(63), (62)

13

14   HEARING Matter:  (82) Motion to Strike/Preclude Joinder to

15   Delaware Norths Motion and Memorandum of Law in Support of

16   Motion to Strike/Preclude (related document(s) (80)

17

18   HEARING Matter:  (63) Motion for Summary Judgment filed by

19   Jarrett M. Behar on behalf of Board of Trustees of the

20   Incorporated Village of Islandia, Incorporated Village of

21   Islandia (related document(s)(62)

22

23   HEARING Matter:  (83) Motion to Strike Declarations of Stephen

24   M. Jones and Neil Munro Filed by Jarrett M. Behar on behalf of

25   Board of Trustees of the Incorporated Village of Islandia,

1   And I say with a straight face, I'm not going to give you a

2   dime and there's nothing you can do about it.  I have a

3   continued right to use it.

4           THE COURT:  Okay.  So you're saying that any time

5   there's a host community agreement entered into in connection

6   with a zoning amendment that that is illegal contract zoning.

7   That's what you're saying.

8           MR. BOROVINA:  No, because -- and first of all let's

9   talk about the facts of this case.

10          The host community agreements in the context of a

11  permit were that the permit is rescinded if the terms of the

12  agreement are not honored.  That is a host community agreement.

13          In this particular case you cannot --

14          THE COURT:  Okay.  But there are host community

15  agreements that are entered into, not in connection with the

16  giving of a permit, but rather in connection with a change in

17  the zoning law.

18          MR. BOROVINA:  That's not -- if that is the case then

19  that's not -- first of all that's not before the Court.

20          THE COURT:  Well this is.

21          MR. BOROVINA:  Well --

22          THE COURT:  There's a host community agreement

23  entered into in connection with the change in the zoning

24  law --

25          MR. BOROVINA:  And --

1          THE COURT:  -- and you're telling me that is always,

2    always, always contract zoning.

3          MR. BOROVINA:  And what this case is, is whether or

4    not under the standards applicable for a contract zone was this

5    local law adopted in conjunction with the agreement that had

6    the effect of tying of hands.

7          THE COURT:  Okay.

8          MR. BOROVINA:  If that standard is met I submit that

9    is a contract zone.

10          THE COURT:  So --

11          MR. BOROVINA:  The argument that's being raised now -

12    -

13          THE COURT:  Okay.

14          MR. BOROVINA:  -- is -- the point that's being raised

15    now -- maybe -- I understand what the point is -- gee, is it

16    possible -- let's assume it is -- that host community

17    agreements are done in connection with -- they may very well

18    have been done in connection with zoning laws because the owner

19    gratuitously decides to give the money, that's fine, that's not

20    what -- the Village did not adopt the local law thinking, you

21    know something, we're going to

22    -- and the agreement doesn't say that -- we are going to

23    continue the use in perpetuity and it's okay if the Village

24    decides -- if Delaware North decides to walk away and -- or

25    worse yet they sell the property or they go bankruptcy,

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:

SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

CHAPTER 9
CASE NO. 12-43503-CEC

Adjusted Debtor.

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER, APRYL MEYER,

Plaintiffs,

- against -

Adv. Proc. No. 1-18-01033-CEC

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE INCORPORATED
VILLAGE OF ISLANDIA, GERALD PETERS, in his
capacity as Incorporated Village of Islandia Building
Inspector and DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, a/k/a DELAWARE NORTH,
NORTH and SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

Defendants.

### DEFENDANT DELAWARE NORTH ISLANDIA PROPERTIES LLC'S RESPONSES TO PLAINTIFFS' OBJECTIONS TO THE BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**HODGSON RUSS LLP**
*Attorneys for Defendant Delaware North
Islandia Properties, LLC*
Charles W. Malcomb, Esq.
Daniel A. Spitzer, Esq.
Carmine J. Castellano, Esq.
Richard L. Weisz, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000
*cmalcomb@hodgsonruss.com*
*dspitzer@hodgsonruss.com*
*ccastell@hodgsonruss.com*
*rweisz@hodgsonruss.com*

**FARRELL FRITZ, P.C.**
*Attorneys for Defendant Delaware North
Islandia Properties, LLC*
Anthony S. Guardino, Esq.
John C. Stellakis, Esq.
100 Motor Parkway, Suite 138
Hauppauge, New York 11788
(631) 547-8400
*aguardino@farrellfritz.com*
*jstellakis@farrellfritz.com*

# INTRODUCTION

Pursuant to Fed. R. Bankr. P. 9033(b), Delaware North Islandia Properties, LLC a/k/a Delaware North ("Delaware North") submits these responses to *Plaintiffs' Objections to Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law as Amplified by the Memorandum of Law in Support Thereof* ("Plaintiffs' Objections") (Dckt. No. 104) to the *Proposed Findings of Fact and Conclusions of Law* entered on December 18, 2018 (the "Proposed Findings") (Dckt. No. 100) hereby states the following:

# PRELIMINARY STATEMENT

Presented with the Bankruptcy Court's Proposed Findings granting summary judgement on the remaining causes of action and thereby upholding the Village of Islandia's Local Law No. 3 of 2017 (herein the "Local Law"), Plaintiffs were entitled to file and serve "written objections which identify ***the specific*** proposed findings or conclusions objected to and ***state grounds for such objections***." Fed. R. Bankr. P. 9033(b) (emphasis added). Instead of submitting specific objections to the Proposed Findings, Plaintiffs have merely recycled all of their arguments on summary judgment, which is improper. Plaintiffs' objections fail to identify any error of law in the Proposed Findings or any disputed fact that prevents judgment as a matter of law.

As the Bankruptcy Court properly determined: (1) Plaintiffs have raised no genuine issue of fact; (2) the contract zoning claim fails because agreements between the Village and Delaware North did not bind "the Board in advance to amend the zoning law to authorize gaming as a permitted use in the District, or otherwise to approve a permit for the VLT Facility" (Dckt. No. 100, Proposed Findings at 12); (3) the claim for spot zoning fails because the Local Law was enacted in accordance with the Village's comprehensive planning efforts; and (4) the

- 1 -

uniformity claim cannot be raised for the first time in a response to a summary judgment motion. It is respectfully submitted that the Bankruptcy Court's Proposed Findings should be adopted by the District Court in their entirety.

## STATEMENT OF FACTS

As the Bankruptcy Court stated in the Proposed Findings, the facts relied upon were undisputed or matters on which judicial notice may be taken. Accordingly, the District Court is respectfully referred to the Background Section of the Proposed Findings for the relevant facts in this matter.

## RESPONSES TO PLAINTIFFS' OBJECTIONS

### *Objection No. 1 – Findings of Fact Being Made Based on Judicial Notice of Facts*

Plaintiffs object to the Bankruptcy Court basing its Proposed Findings in part on judicially noticed facts, but in violation of the specificity requirement of Fed. R. Bankr. P. 9033(d) and 28 U.S.C. § 157(c)(1), they do not identify any specific fact (nor does their Memorandum of Law), and admit not a single fact in the Proposed Findings was actually relied upon based on judicial notice. As a judicially noticed fact by definition is one not in dispute, Fed. R. Evid. 201, Plaintiffs are in error in objecting to the use of such facts.

It appears the only such fact potentially at issue was the existence of the Hampton Inn in the Village, which Judge Craig noted she could take judicial notice of, and Plaintiffs' counsel (who raised the issue in the first place) concurred. Transcript of Summary Judgment Hearing (herein "Tr.") at 37, Dckt. No. 96. The matter was mooted when Defendants stipulated

- 2 -

to the existence of the Hampton Inn (Tr. at 150, Dckt. No. 96[1]) and no further time should be spent on this Objection.

> ***Objection No. 2 and 3 – Contract Zoning – No Contract in Advance of the Local Law Requiring the Adoption of the Local Law***
>
> ***Objection No. 4 – Contract Zoning – Agreement Could Not Be a Mitigation Agreement***
>
> ***Objection No. 5 – Contract Zoning – Amended TRA Bargained Away Village's Powers and Tied its Hands, and Was Not a Mitigation Agreement***

Objections 2 and 3 ignore Plaintiffs' own admissions that (1) neither the TRA nor the Amended TRA contain any provision binding the Village to adopt the Local Law; (2) that the TRA was entered into before the Local Law was even contemplated; and (3) that the Amended TRA was entered into months ***after*** the Local Law was adopted. In a desperate attempt to salvage their claims, Plaintiffs glom onto a baseless theory that requires the plain language of the TRA and Amended TRA be ignored in favor of some kind of alleged secret agreement that bound the Village to legislate in a certain manner. The Bankruptcy Court properly rejected these arguments because it is a bedrock principle of New York law that a municipal entity — like the Village — may only enter into an agreement by a majority vote of its governing body. Individual officials have zero authority to bind the Village to any sort of agreement in secret. The Bankruptcy Court evaluated the plain language of the only two agreements in existence — the TRA and the Amended TRA — between the Village and Delaware North, which, as Plaintiffs concede, in no manner bound the Village to take any action. As the Bankruptcy Court correctly recognized, these agreements were typical mitigation agreements common to large

---

[1]      The Unidentified Speaker in the Transcript at 150 is counsel for Delaware North.

projects, did not bind the Village to any legislative action, and are perfectly appropriate under controlling New York law. Objections 2, 3, 4, and 5 should be rejected.

The parties are agreed on the definition of contract zoning, which is "an agreement whereby a legislature binds itself, *in advance*, to exercise its zoning authority in the future for the benefit of a landowner upon the landowner's provision of a consideration." *Tuxedo Land Trust, Inc. v. Town of Tuxedo*, 34 Misc.3d 1235(A), at *13 (Sup. Ct. Orange County 2012) (emphasis added). The prohibition derives from the rule that "a legislature cannot bargain away or sell its powers," *Church v. Town of Islip*, 8 N.Y.2d 254, 259 (1960), or "make contracts that control or limit it in the exercise of its legislative powers and duties," *Collard v. Inc. Vill. of Flower Hill*, 52 N.Y.2d 594, 601 (1981).

Plaintiffs here fail in their claim because they must show four elements are present to prevail on a contract zoning claim, and they can show only the first one: (1) that an agreement exists between the legislative body and a landowner; (2) that the agreement was entered into in advance of the zoning decision; (3) that the agreement contains a specific provision wherein the legislative body binds itself to exercise its zoning authority in the future for the benefit of the landowner; and (4) that the legislative body's covenant to exercise its zoning authority in a certain manner is made in exchange for consideration. *Tuxedo Land Trust, Inc.*, 34 Misc.3d 1235(A), at *13. Here, there are two contracts between the Village and Delaware North, the TRA, originally submitted as part of Delaware North's Special Use Permit long before the Local Law was ever proposed, and the Amended TRA, signed well after the Local Law was adopted. There are no other agreements.

The Bankruptcy Court correctly relies on *DePaolo v. Town of Ithaca*, 258 A.D.2d 68 (3d Dep't 1999), where the Third Department ruled that agreements with applicants

- 4 -

concerning proposed projects are not contract zoning ***unless*** the agreement contains a specific

provision binding the legislative body to a certain course of action.

> We likewise reject petitioners' assertion that the Town Board
> engaged in illegal "contract zoning" by amending its zoning
> ordinance to accommodate the [project] in exchange for Cornell's
> granting the Town a 99-year license to use certain property as a
> public park, thereby allowing continued public access to Cayuga
> Lake. Here again, the record fails to support petitioners' claim,
> and in fact refutes it. ***Nothing in its agreement with Cornell
> committed the Town to a specific course of action with respect to
> the zoning amendment*** and, indeed, the Town expressly rejected
> language which could have arguably been so interpreted. While
> Cornell's grant of the license to the Town was conditioned upon its
> receipt of all approvals required for the project, including rezoning,
> ***no provision in the agreement obligated the Town to issue such
> approvals or approve Cornell's rezoning application***.

*Id.* at 71 (emphasis added). And that is where Plaintiffs completely fail. None of the remaining

elements required to prove contract zoning are present, as nowhere in the TRA or the Amended

TRA did the Village bind itself with respect to the exercise of its legislative power, as Plaintiffs

concede.[2] There is not a single clause in either agreement requiring the Village Board to take a

specific action in favor of the VLT Facility, be it a permit or a local law, either of which is

appropriate form of creating allowable uses. The language of the only two agreements is

certainly not in dispute, and although Plaintiffs proclaim the existence of disputed facts, they do

not identify any unsettled matters in the record.

What Plaintiffs are really doing is re-arguing that a conditional rezoning backed

by an enforceable contract is per se illegal contract zoning, an admission Judge Craig extracted

---

[2]     *See, e.g.*, Response No. 34 in Plaintiffs' Counter Statement of Material Facts (Dckt No.
        76) admitting "There is no provision in the TRA requiring the Board to take any
        legislative action."

from Plaintiffs' counsel during oral argument.[3]  But conditional zoning has long been legal in New York, including conditions backed by contracts, *see Collard*, 52 N.Y.2d at 601. Nevertheless, Plaintiffs latch on to two cases they claim confirm contract zoning has occurred, but as the Bankruptcy Court points out, neither applies to the undisputed facts.

Plaintiffs first embrace *Citizens to Save Minnewaska v. New Paltz Cent. Sch. Dist.*, 95 A.D.2d 532, 534 (3d Dep't 1983), *appeal dismissed*, 61 N.Y.2d 853 (1984), where a school board entered into an agreement under which it was required to pass a resolution supporting a tax exemption.  The clause of the contract binding the district to a legislative act in the future was fatal to the resolution.  There is simply no clause in either agreement requiring the Village to take any act.

*Levine v. Town of Oyster Bay*, 46 Misc.2d 106 (Sup. Ct. Nassau Cnty. 1964) is also misrepresented by Plaintiffs, as here, the zoning created by the Local Law went into effect upon passage of the Local Law, but in *Levine*, the zoning would not go into effect until a future event occurred.  This difference Judge Craig recognized is fatal to Plaintiffs' claim, because conditions as part of a rezoning are common and legal, *see Church,* 8 N.Y.2d at 259, but the conditional zoning of *Levine*, where the zoning only takes effect if a future event in the agreement occurs is not.  And in affirming, the Second Department addressed not only contract zoning but the spot zoning claim, offering nothing relevant to Plaintiffs' claim.  *Levine v. Town of Oyster Bay*, 26 A.D.2d 583 (2d Dep't 1966).

---

[3]     *See* November 28, 2018 Transcript, Dckt. No. 104 at 137:4-138:6, attached as Ex. A to Suffolk County OTB's Corrected Response to Plaintiffs' Objections, Dckt. No. 106.

Plaintiffs' efforts to distinguish the precedents cited by the Bankruptcy Court are unavailing.  Plaintiffs incorrectly assert that *Tyre ex rel. Dawley v. Town Bd. of Town of Tyre*, 51 Misc. 3d 665 (Sup. Ct. Seneca Cnty. 2016), *aff'd*, 140 A.D.3d 171 (4th Dep't 2016) is cited "for the proposition that the Local Law is immune from the application of the State's rule against zoning by contract enactments."  Judge Craig was pointing out that the community mitigation agreement at issue in *Tyre*, which included payments to local agencies, was required by a specific state statute, demonstrating the Legislature recognized host community mitigation agreements as a valid zoning tool.

Similarly misplaced is the criticism of *Residents for Reasonable Development v City of New York*, 128 A.D.3d 609 (1st Dep't 2015) for the proposition that "[i]t is not impermissible for a board to issue a zoning determination if unrelated local benefits are provided," (Dckt. No. 100, Proposed Findings at 13), because that case involved incentive zoning and the Local Law does not (Plaintiffs' Objections MOL at 26).  Again, the Bankruptcy Court was pointing out that the state-mandated framework for zoning — and it is that framework which Plaintiffs allege was not followed — recognized such payments as appropriate zoning tools as conditions a community can apply.

The TRA and Amended TRA are no more than a convenient highway for the Plaintiffs to argue the wisdom of allowing the VLT Facility under the guise of alleged illegal action.  As they have pointed to nothing in the arrangements committing the Village to any action outside of the use of standard zoning tools to protect and benefit the community, Objections, 2, 3, 4, and 5 should be rejected.

***Objection No. 6 – Spot Zoning – Based on Insufficiency of the Process in Adopting the Local Law***

***Objection No. 7 – Spot Zoning – -Sufficiency of the Process the Village Board used to Adopt the Local Law was not Beyond Judicial Review as to all Matters Relating to that Process Because the Amended Complaint did not Allege a SEQRA Based Claim.***

Objection No. 6 decries the process by which the Local Law was adopted, asserting "the existence or disputed issues of fact regarding the sufficiency of the process the Village Board used to adopt the Local Law in accordance with State Law prescribing the process by which zoning enactments may he considered and adopted." Plaintiffs Objection No. 6. But Plaintiffs do not identify any procedural flaw, instead asserting that an insufficient length of time had passed and too few experts were consulted, primarily demanding — without any legal support — that the Board erred in considering the voluminous information gathered in the two-year review that started with the Special Use permit application for the VLT Facility. It must be noted that this argument is a red herring. All New York requires to pass a local zoning law is to properly introduce it, refer it (in some cases) to the county planning agency for a recommendation, evaluate its potential impacts under the State Environmental Quality Review Act ("SEQRA"), and hold a public hearing before voting. *See* N.Y. Village Law Article 7. That's it. Plaintiffs assert no procedural failure and the substantive claim has no basis in law. Objection No. 6 should be rejected.

Plaintiffs' central assertion is that the experts relied upon by the Village during the Local Law review were insufficient to support the passage of the Local Law, an argument that is fatally flawed for at least three reasons. First, Plaintiffs fail to state a single reason why the review they acknowledge was insufficient, or any precedent establishing a minimum investigatory requirement. In fact, how a municipal board goes about investigating the key issues — including which issues to investigate — is left to the discretion of that board. *Save the*

- 8 -

*Pine Bush, Inc. v. Common Council of City of Albany*, 13 N.Y.3d 297, 308 (2009) ("A 'rule of reason' is applicable not only to an agency's judgments about the environmental concerns it investigates, but to its decisions about which matters require investigation") (internal citations omitted).  The review the Plaintiffs concede occurred more than satisfies state law.

Second, as the Bankruptcy Court pointed out, the Village had every right to rely on the review conducted over a two-year period, which explored the exact same use, with only the form of approval — special use permit vs. zoning change.  No changes occurred in the actual use, and in considering the Local Law, it was quite proper that the "Board relied on the material already in its file."  *Riverkeeper, Inc. v. Planning Bd. of Town of Southeast.*, 9 N.Y.3d 219, 233 (2007) (upholding a determination that a supplemental environmental impact statement was not required).

Finally, the Plaintiffs ignore the extended evaluation that actually did occur, as outlined in the Declarations of the Mayor (who was quite familiar with the comprehensive planning in the Village to the contrary of Plaintiffs' assertions) and its Deputy Mayor.  Dckt. Nos. 62-11 and 62-21.  In addition to considering the Master Plan and their knowledge of the property and the community, this included a specific determination by the Board as part of the (unchallenged) SEQRA review that the Local Law was consistent with the comprehensive planning of the community, as was noted by the Bankruptcy Court.  Dckt. No. 100, Proposed Findings at 21.  The Village Board did its job and Objection No. 6 should be rejected.

Further, Plaintiffs never challenged the sufficiency of the SEQRA review for the Local Law and cannot raise those claims now.  The Village completed SEQRA by analyzing the impacts of the Local Law, which were, of course, focused on the impacts from the only licensed VLT Facility in the Village.  The Bankruptcy Court properly found that it was completely

- 9 -

appropriate for the Village to rely upon the years of study of potential impacts from the VLT

Facility when it made its decision.  Plaintiffs' effort to assert a SEQRA claim for the first time by

rolling it into their spot zoning claim must be rejected.  Even though other factors may be

considered, the "ultimate test" in evaluating a spot zoning claim "is whether the change is other

than part of a well-considered and comprehensive plan calculated to serve the general welfare of

the community."  *Rayle v. Town of Cato Board*, 295 A.D.2d 978, 979 (4th Dep't 2002) (internal

quotation, citation omitted); *Rogers v. Village of Tarrytown*, 302 N.Y. 115, 124 (1951) (holding

that the inquiry ultimately distills to "whether the change is other than part of a well-considered

and comprehensive plan calculated to serve the general welfare of the community").  Plaintiffs

bear the burden of proving a "clear conflict" with the Comprehensive Plan.  *Meteor Enters., LLC

v. Bylewski*, 38 A.D.3d 1356, 1358 (4th Dep't 2007) ("Thus, where the [challenging party] fails

to establish a clear conflict with the comprehensive plan, the zoning classification must be

upheld."); *Infinity Consulting Grp., Inc. v. Town of Huntington*, 49 A.D.3d 813, 814 (2d Dep't

2008) (same).  Plaintiffs failed to do so because the clear wording of the Comprehensive Plan,

together with the Village's zoning regulations for the Office/Industrial ("OI") Zoning District,

demonstrate that this area of the Village was reserved for more intense uses.  Dckt. No. 100,

Proposed Findings at 25.  Because the Bankruptcy Court properly found that Plaintiffs' SEQRA

claims had been abandoned and that, as a matter of law, Plaintiffs failed to demonstrate a "clear

conflict" with the Comprehensive Plan, Objections 6 and 7 should be rejected.

### Objection No. 8 – Spot Zoning – Village was Required to Consider Other Locations to Operate a Gaming Facility in the Village

Objection No. 8 is not a model of clarity.  If Plaintiffs are contending that the

Local Law is spot zoning because only one parcel will have a VLT Facility after adoption of the

Local Law, this reasoning was soundly rejected by the Court of Appeals, which held that when

- 10 -

"an ordinance is enacted in accordance with a comprehensive zoning plan, it is not 'spot zoning,' even though it (1) singles out and affects but one small plot, or (2) creates in the center of a large zone small areas or districts devoted to a different use." *Rodgers*, 302 N.Y. at 124 (internal citations omitted). Plaintiffs' contention that the Village was required to consider other locations/properties in the Village where a VLT facility could be located was properly rejected by the Bankruptcy Court. As a first matter, no other VLT facility has been proposed; thus, it would make absolutely no sense to evaluate the specific impacts of other locations or their suitability for a gaming facility. Second, evaluating where in the community certain uses should be located is a policy decision left to the local legislative body. Even if the reviewing court would have made a different choice, the legislative enactment must nonetheless be upheld because "[t]he court will not pass on its wisdom." *Asian Americans for Equality*, 72 N.Y.2d at 132. A reviewing court may not substitute its decision for that of the legislative body. *See Rogers*, 302 N.Y. at 121; *McDonough v. Apton*, 48 A.D.2d 195, 199 (4th Dep't 1975) (if the validity of a local legislative act is "fairly debatable," the judgment of the legislature which enacted it must stand). Plaintiffs' efforts to argue that other locations may be more suitable are insufficient as a matter of law and they were properly rejected by the Bankruptcy Court

### Objection No. 9 – Spot Zoning – Local Law was Invalid for Lack of Uniformity

In their response to the summary judgement motions, Plaintiffs raised for the first time the assertion that the OI Zoning District regulations created by the Local Law lack uniformity "for each class or kind of buildings throughout each district" as required by N.Y. Village Law § 7-702. The Bankruptcy Court correctly recommended that the claim be dismissed as a claim cannot be raised for the first time "in the Plaintiffs' opposition to the motions for summary judgment." *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (stating

- 11 -

that claims raised for the first time in opposition to summary judgment "need not be considered")." Dckt. No. 100, Proposed Findings at 26.

In their Objection No. 9 and related portion of their Memorandum of Law, Plaintiffs do not deny that a lack of uniformity claim was absent from the Amended Complaint; rather, they attempt its resurrection by proclaiming there was fair notice of the uniformity claim by reference to the uniqueness of the use within the OI District.[4] But neither the Court nor the Defendants are required to be mind-readers to know a claim has been presented. But even if the uniformity claim is addressed, it clearly fails on the undisputed facts because the Local Law satisfied the requirements of N.Y. Village Law § 7-702.

Plaintiffs rely solely upon *Augenblick v. Town of Cortlandt,* 104 A.D.2d 806, 814 (3d Dep't 1984), *rev'd sub nom. Matter of Augenblick,* 66 N.Y.2d 775 (1985), where the Court of Appeals adopted Justice Lazer's dissent in voiding a zoning ordinance that singled out a specific parcel by section, block, and lot. The Local Law here does no such thing; it applies to all structures in the OI Zoning District. Still, Plaintiffs assert its invalidity because there is another hotel in the OI Zoning District that does not meet the definition in the Local Law.[5] But the definition at issue is of a Hotel/Gaming Facility,[6] not a mere hotel, and as Judge Craig notes "no other hotel was seeking to operate a VLT Facility." Dckt. No. 100, Proposed Findings at 24-25.

---

[4]     Plaintiffs' MOL at 54.

[5]     Plaintiffs' MOL at 55.

[6]     Local Law No. 3-2017 § 2.1.2, Dorman Decl. Ex. F, Dckt. No. 62-19.

In fact, even if there were a uniformity issue, the *Augunblick* dissent supports the Local Law because, as it notes, an ordinance is only "held to uniformity if the record does not disclose any reasonable basis for different treatment among similar parcels within a district," but when "specialized circumstances exist for certain property within a district the uniformity rule may be bent (6 Rohan, Zoning and Land Use Controls, § 40.10 [1]; 1 Williams, American Land Planning Law, § 31.01)." *Augenblick*, 104 A.D.2d  at 814 (J. Lazer dissenting).  Here, there is but one state-granted VLT license in the District, precisely the type of unique and "specialized circumstances" acknowledged by Judge Lazer as permitting the provisions of the Local Law. The uniformity claim fails even if it were properly before the Court, as does Objection No. 9.

### *Objection No. 10 – Spot Zoning – Village Board Retention of the Right to Amend the Village Code to Prevent Proliferation of the Unwanted Gaming Use*

The final objection presents a blatant misrepresentation of New York law, arguing that Judge Craig erred in holding the Village Board could not change the law in a manner that would limit or eliminate the gaming use in the future.  In fact, it is a cardinal rule of New York law that zoning can be changed and uses, even if legal when created, can be amortized out of existence.  Such procedures have been used to eliminate adult uses and unsightly billboards and have been continuously upheld by the courts.  Objection No. 10 should be rejected.

The basic thrust of the Objection is that by adopting the Local Law creating hotel/gaming as an as-of-right use, the Village bargained away its ability to change the law, even if the Amended TRA was breached:  "Unlike the prerogatives the Village Board had when the TRA was in place to terminate the Gaming Use if the terms of the TRA were breached by Delaware North or a successor owner of the Premises, the Village Board forfeited that right by

- 13 -

adopting the Local Law allowing a Gaming use as of right if the conditions enumerated in that Local Law are met."[7]

But, as the Bankruptcy Court pointed out "zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise," *Rodgers v. Vill. of Tarrytown*, 302 N.Y. 115, 121 (1951). A correlated principle of New York municipal law, known as the term limits rule, "prohibits one municipal body from contractually binding its successors in areas relating to governance unless specifically authorized by statute or charter provisions to do so." *Karedes v. Colella*, 100 N.Y.2d 45, 50 (2003); *see Morin v. Foster*, 45 N.Y.2d 287, 293 (1978). Zoning is an area of governance delegated by the Legislature to the Village Board, N.Y. Village Law Article 7, and no contract can preclude future zoning changes.

Zoning amendments have been repeatedly used to eliminate unwanted uses. A use of property that is no longer authorized due to rezoning, but lawfully existed prior to the enactment of the existing zoning ordinance, is a nonconforming use." *Toys R Us v. Silva*, 89 N.Y.2d 411, 417 (1996). Municipalities can allow nonconforming uses to continue, or, contrary to Plaintiffs' claim, they can be eliminated, as long as the property owner is given a reasonable opportunity to recover their investment. Thus, the New York Court of Appeals has stated "our approach to the problem of permissible restrictions on nonconforming uses has recognized that,

---

[7]     Plaintiffs' MOL at  27. *See also* Plaintiffs' MOL at 28 ("the Village Board forfeited that right by adopting the Local Law allowing a Gaming use as of right if the conditions enumerated in that Local law are met.").

while the benefit accruing to the public in terms of more complete and effective zoning does not justify the immediate destruction of substantial businesses or structures developed or built prior to the ordinance, the policy of zoning embraces the concept of the ultimate elimination of nonconforming uses, and thus the courts favor reasonable restriction of them." *Harbison v. City of Buffalo*, 4 N.Y.2d 553, 559–60 (1958) (internal citations omitted). "There is no question that municipalities may enact laws reasonably limiting the duration of nonconforming uses." *Vill. of Valatie v. Smith*, 83 N.Y.2d 396, 399 (1994). Judge Craig correctly rejected Plaintiffs' assertion that the Village could not restrict or even eliminate the hotel gaming use without creating an unconstitutional taking.

Not surprisingly, the Plaintiffs offer this Court no precedent for their sweeping assertion that the Village Board has tied its hands as to future expansion or continued by virtue of the adoption of the Local Law or entering into the TRAs. Objection No. 10 should be rejected.

## **CONCLUSION**

It is important to recognize that the Local Law was initially passed in response to yet another lawsuit filed by Plaintiffs. With the Village having passed this Law, the Plaintiffs filed the instant lawsuit — their third — seeking to substitute/subvert the actions of the Islandia elected officials with repeated litigation. It is time for these tactics to stop. Judge Craig's recommendations should be accepted and the Plaintiffs' Objections rejected because (1) they cannot point to a single fact legitimately in dispute, only conclusions they do not agree with; (2) because the Village's thorough, two-year public review created a record of the benefits and impacts of allowing gaming facilities supporting the consistency of the Hotel/Gaming use with its comprehensive planning; and (3) the Village did not improperly transfer its legislative power.

- 15 -

182

Delaware North respectfully asserts that it is entitled to judgment as a matter of law, pursuant to

Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056, dismissing Plaintiffs' first, second and fourth

causes of action as a matter of law.

Dated: January 21, 2019
      Buffalo, New York

                       **HODGSON RUSS LLP**
                       *Attorneys for Defendant Delaware North Islandia*
                       *Properties, LLC*

                       By:    s/  Charles W. Malcomb
                             Charles W. Malcomb
                             Daniel A. Spitzer
                             Carmine J. Castellano
                             Richard L. Weisz
                       140 Pearl Street, Suite 100
                       Buffalo, New York 14202
                       (716) 856-4000
                       *cmalcomb@hodgsonruss.com*
                       *dspitzer@hodgsonruss.com*
                       *ccastell@hodgsonruss.com*
                       *rweisz@hodgsonruss.com*

                            and

                       **FARRELL FRITZ, P.C.**
                       *Attorneys for Defendant Delaware North Islandia*
                       *Properties, LLC*
                       Anthony S. Guardino
                       John C. Stellakis
                       100 Motor Parkway, Suite 138
                       Hauppauge, New York 11788
                       (631) 367-0716
                       *aguardino@farrellfritz.com*
                       *jstellakis@farrellfritz.com*

- 16 -

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In re:

SUFFOLK REGIONAL OFF-TRACK
BETTING CORPORATION,

                    Adjusted Debtor

CHAPTER 9
CASE NO. 12-43503-CEC

---

JENNIFER TOMASINO, KEVIN MONTANO,
RICHARD MEYER, APRYL MEYER,

                    Plaintiffs,

     v.

INCORPORATED VILLAGE OF ISLANDIA,
BOARD OF TRUSTEES OF THE
INCORPORATED VILLAGE OF ISLANDIA,
DELAWARE NORTH ISLANDIA
PROPERTIES, LLC, a/k/a DELAWARE
NORTH, and SUFFOLK REGIONAL OFF-
TRACK BETTING CORPORATION,

                    Defendants.

Adv. Proc. No. 1-18-01033-CEC

---

## <u>CERTIFICATE OF SERVICE</u>

       I, CHARLES W. MALCOMB, an attorney, hereby certify that on this 21st day of
January, 2019, a true and correct copy of the foregoing *Defendant Delaware North Islandia
Properties LLC's Responses to Plaintiffs' Objections to the Bankruptcy Court's Proposed
Findings of Fact and Conclusions of Law*, were served via ECF upon all parties registered to
receive service via ECF in this case.

Dated:    January 21, 2019
          Buffalo, New York

                           s/ Charles W. Malcomb
                             Charles W. Malcomb

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:                                              :

                                                    :  Chapter 9

SUFFOLK REGIONAL OFF-TRACK                          :
BETTING CORPORATION,                                :  Case No.: 12-43503 (CEC)

                                                    :
Adjusted Debtor.                                    :

                                                    :

---------------------------------------------------------    :

                                                    :
JENNIFER  TOMASINO,  KEVIN  MONTANO,                :
RICHARD MEYER and APRYL MEYER,                      :

                                                    :
Plaintiffs,                                         :

                                                    :  Adv. Proc. No. 18-1033 (CEC)
        -against-                                   :

                                                    :
INCORPORATED  VILLAGE  OF  ISLANDIA,                :
BOARD OF TRUSTEES OF THE INCORPORATED               :
VILLAGE OF ISLANDIA, DELAWARE NORTH                 :
ISLANDIA PROPERTIES, LLC a/k/a DELAWARE             :
NORTH,  and SUFFOLK REGIONAL OFF-TRACK              :
BETTING CORPORATION,                                :

                                                    :
Defendants.                                         :

                                                    :

---------------------------------------------------------------x

## DECLARATION OF JARRETT M. BEHAR IN RESPONSE
## TO PLAINTIFFS' OBJECTIONS TO PROPOSED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**JARRETT M. BEHAR**, under penalty of perjury and pursuant to 28 U.S.C. § 1746,

hereby declares as follows:

1.      I am a partner with the law firm of Sinnreich Kosakoff & Messina, LLP, attorneys

for defendants Incorporated Village of Islandia and the Board of Trustees of the Incorporated

Village of Islandia (collectively, the "Village") in this action. I am fully familiar with the facts

and circumstances set forth herein.

2.      I submit this declaration on behalf of the Village in response to the plaintiff's objections to the proposed findings and fact and conclusions of law of the Bankruptcy Court.

3.      The full and complete contents of the Delaware North Islandia Properties Memorandum of Law in Response to Plaintiff's Objections to the Proposed Findings of Fact and Conclusions of Law (the "Delaware North Response") are incorporated herein by specific reference thereto. The Village repeats, reiterates, and re-asserts each and every argument set forth in the Delaware North Response with the same force and effect as if fully set forth herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 21, 2019 in Central Islip, New York.

/s/
Jarrett M. Behar

2