UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re

Suffolk Regional Off-Track Betting Corporation,

                                            Debtor.

-------------------------------------------------------------X

Jennifer Tomasino, Kevin Montano,
Richard Meyer, and Apryl L. Meyer,

                                            Plaintiffs,

      -against-

Incorporated Village of Islandia,
Board of Trustees of the Incorporated
Village of Islandia, Delaware
North Islandia Properties, LLC
aka Delaware North, and Suffolk Regional
Off-Track Betting Corporation

                                            Defendants.

-------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
19-mc-189 (JMA)

**FILED**
**CLERK**
11:21 am, Sep 21, 2021
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

      Before the Court are Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") issued by United States Bankruptcy Judge Carla E. Craig addressing Motions for Summary Judgment filed by defendants Delaware North Islandia Properties, LLC (a/k/a Delaware North), the Incorporated Village of Islandia, the Board of Trustees of the Incorporated Village of Islandia, and Suffolk Regional Off-Track Betting Corporation ("Suffolk OTB") (collectively, "Defendants"). After reviewing the objections of plaintiffs Jennifer Tomasino, Kevin Montano, Richard Meyer, and Apryl L. Meyer (collectively, "Plaintiffs"), the Court accepts Judge Craig's Proposed Findings for the reasons set forth in more detail below.

1

**BACKGROUND**

On May 11, 2012, Suffolk OTB filed a petition for relief under Chapter 9 of the Bankruptcy Code. As set forth in comprehensive detail in Judge Craig's Proposed Findings, Suffolk OTB received approval and confirmation of a Second Amended Plan in October 2014. As Judge Craig explained, "the funding and feasibility of the Plan" was dependent on revenue from the construction and operation of a video lottery terminal facility. (ECF No. 1.) The location of that facility, at the site of the former Marriott Hotel, located at 3635 Express Drive North in Islandia, New York, is the subject of the dispute presently before the Court.

Suffolk OTB's operating partner, Delaware North, is the owner of the site in question. On August 12, 2016, the Board of Trustees of the Incorporated Village of Islandia approved and issued a Special Permit to Delaware North authorizing construction and use of the site for the video lottery terminal facility. Then, on August 16, 2016, Delaware North and the Village executed a Taxpayer Relief Agreement in which Delaware North agreed to pay the village several million dollars through the year 2037 for capital improvement expenses and taxpayer relief.

Shortly thereafter, on September 13, 2016, two plaintiffs in this case, Jennifer Tomasino and Apryl Meyer, along with other residents and interested parties, initiated an Article 78 proceeding in state court to challenge the Special Permit issued to Delaware North. Ultimately, the state court vacated the Special Permit, finding that construction of a video lottery terminal facility was not a permitted use of a hotel pursuant to the Village Code.

Subsequently, the Board of Trustees of the Incorporated Village of Islandia amended the provisions of the Village Code. On November 28, 2017, the Board adopted Local Law No. 3-2017, which set forth a specific definition of a "Hotel/Gaming Facility," which would cover the proposed video lottery terminal facility and allow its construction and operation as a permitted use.

On January 12, 2018, Delaware North was granted a certificate of occupancy to allow for use of the site as a video lottery terminal facility. Then, on February 1, 2018, Delaware North and the Village executed an Amended and Restated Taxpayer Relief Agreement, which provided for a series of payments by Delaware North to the Village for capital improvement expenses and taxpayer relief.

On February 12, 2018, plaintiffs began the instant action to challenge Local Law No. 3-2017 in state court. Specifically, they argued that the Board (1) engaged in unlawful zoning by contract, (2) engaged in spot zoning, and (3) violated the requirement of Municipal Home Rule Law ("MHRL") § 23(2)(f) for a mandatory referendum. As relief, Plaintiffs sought to vacate the certificate of occupancy and pursued a permanent injunction.

Suffolk OTB subsequently moved to intervene in the action. Following the state court's approval, Suffolk OTB removed the action to the Bankruptcy Court. After motion practice before Judge Craig on a motion to dismiss, Plaintiffs amended their complaint. Thereafter, Defendants filed the instant motions for summary judgment on the claims of contract zoning and spot zoning as well as the claim for a permanent injunction. On December 17, 2018, Judge Craig recommended that Defendants' summary judgment motions be granted.

This case was originally assigned to the Honorable Joseph F. Bianco. After his elevation to the Court of Appeals, the case was transferred to the undersigned.

## DISCUSSION

Presently pending before the Court are Plaintiffs' ten specific objections to Judge Craig's Proposed Findings. (ECF No. 1-35.) Defendants have filed responses in opposition to Plaintiffs' objections. (ECF Nos. 1-36, 1-37, 1-38, 1-39.)

After conducting a <u>de novo</u> review of the record and the findings of fact and conclusions of law to which Plaintiffs have filed specific written objections, the Court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033. Having reviewed Plaintiffs' objections <u>de novo</u>, the Court accepts Judge Craig's Proposed Findings as set forth below. The Court analyzes each of Plaintiffs' objections <u>seriatim</u>.

1. **Objection 1**

Plaintiffs first object by claiming that Judge Craig "made findings of fact in the Proposed Findings based upon judicial notice of facts, [but t]he Proposed Order does not specify any finding of fact upon which judicial notice was taken. Such finding[s] of fact were improperly made." ((ECF No. 1-35 at 2.) Plaintiffs, however, identify no specific facts in Judge Craig's proposed findings of fact for which they claim judicial notice was improperly taken, and the Court is unaware of any. Each of Judge Craig's proposed factual findings was supported by admissible evidence in the record. Accordingly, this objection is meritless.

2. **Objection 2**

Plaintiffs next dispute Judge Craig's determination that Plaintiffs "failed to prove the existence of an agreement between the Village and Delaware North in advance of the Local Law No. 3-2017 ('Local Law's')'s adoption which required the Village to adopt the Local Law." (ECF No. 1-35 at 2.) Plaintiffs claim there is "evidence in the motion record showing otherwise." (<u>Id.</u> at 3.) The Court disagrees.

Only two agreements are contained in the record: the August 2016 Taxpayer Relief Agreement and the February 2018 Amended and Restated Taxpayer Relief Agreement. Neither contains any provision that bound the Village to adopt Local Law No. 3-2017. In particular, the

original Taxpayer Relief Agreement was executed over a year before Local Law No. 3-2017 was enacted on November 28, 2017 and in no way bound the Village to exercise its zoning authority in a particular way to benefit Delaware North. Additionally, the adoption of Local Law No. 3-2017 pre-dates the 2018 Amended and Restated Taxpayer Relief Agreement by three months. This later agreement therefore could not have bound the legislature to act since passage and adoption of the law preceded the agreement.

Based on the Court's review of the record, Plaintiffs' contention that there was an alternative agreement reached between the Village and Delaware North in advance of the passage of the Local Law appears to be nothing more than conjecture and speculation, which cannot defeat summary judgment. See Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 306 (2d Cir. 2008) ("[T]he non-moving party 'may not rely on conclusory allegations or unsubstantiated speculation.'"). Therefore, the Court finds Objection 2 meritless.

### 3. Objection 3

Related to Objection 2, in their third objection, Plaintiffs contend that the Bankruptcy Court made an "erroneous legal conclusion that no zoning by contract claim could be established in the absence of an express contract made in advance of the Local Law being adopted." (ECF No. 1-35 at 3.) Plaintiffs fear that by focusing on the lack of an express contract in the record, the Bankruptcy Court suggested that "no actionable zoning by contract claim could ever be established in New York" because "[a]ll that has to be done is for the local government, via a wink and a nod to informally agree to adopt a zoning enactment if the landowner agrees to execute a formal agreement after the zoning enactment is adopted." (Id. at 33.)

Plaintiffs misstate the Bankruptcy Court's analysis. The reason Judge Craig relied so heavily on the text of these contracts in analyzing Plaintiffs' claims was that they were the only

5

evidence of agreements—documentary or otherwise—made by the Village in the record. Plaintiffs' allegation that there was a "wink and nod" agreement binding the Village to adopt the Local Law lacks any evidentiary support in the record and is based on conjecture and speculation. Accordingly, this objection lacks merit.

**4. Objection 4**

Plaintiffs next object to Judge Craig's determination that "the [Amended and Restated Taxpayer Relief Agreement Between the Incorporated Village of Islandia and Delaware North Islandia Properties, LLC] was not and could not have been the basis upon which a zoning by contract claim may be predicated because it was made in accordance with New York Racing, Pari-Mutuel Wagering and Breeding Law § 1316(6) ('Section 1316(6) agreement') or was otherwise an ordinary 'mitigation agreement.'" (ECF No. 1-35 at 3-4.)

Here, Plaintiffs again misinterpret the Bankruptcy Court's reasoning. Judge Craig did not reject Plaintiffs' contract zoning claim merely because the Amended and Restated Taxpayer Relief Agreement was a mitigation agreement that complied with the requirements of N.Y. Pari-Mut. & Breed. L. § 1316(6). Rather, she performed a robust analysis and determined that, as explained earlier, the record contained no evidence that any agreement was made in advance for the Village to pass the Local Law. It was that lack of an agreement binding the Village in advance with respect to zoning—combined with the fact that the mitigation agreement was compliant with the operative laws and provided funds to the Village for permissible local purposes—that led Judge Craig to conclude that the Amended and Restated Taxpayer Relief Agreement could not be the basis of a zoning by contract claim. Consequently, the Court rejects this objection and reaches the same conclusion as Judge Craig.

6

## 5. Objection 5

Plaintiffs state that "no matter what euphemistic label is placed on the Amended TRA, the Village Board nevertheless adopted the Local Law in conjunction with an agreement whereby it agreed to bargain away its powers and tie its hands by agreeing to adopt the Local Law in the form approved in advance by Delaware North." (ECF No. 1-35 at 4.) The Court finds that this objection is simply a rephrasing of Plaintiffs' prior objections, and for the reasons explained above as to the lack of evidence in the record of any agreement by the Village to "bargain away its powers and tie its hands," the Court rejects this objection as without merit.

## 6. Objection 6

Plaintiffs argue that "the motion record evidenced the existence of disputed issues of fact regarding the sufficiency of the process the Village Board used to adopt the Local Law in accordance with the State law prescribing the process by which zoning enactments may be considered and adopted." (ECF No. 1-35 at 4-5.) Plaintiffs, however, identify no authority governing the process the Village Board should have employed and fail to explain how the Board deviated from any such standard.

> As the Bankruptcy Court explained by quoting the New York Court of Appeals:
>
> If the zoning ordinance is adopted for a legitimate governmental purpose and there is a reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end, it will be upheld. An amendment which has been carefully studied, prepared and considered meets the general requirement for a well-considered plan and satisfies the statutory requirement. The court will not pass on its wisdom.

(ECF No. 1 at 21 (quoting Asian Americans for Equal. v. Koch, 72 N.Y.2d 121, 122 (1988))).

Here, the record is clear that the Village's zoning determination satisfies the applicable procedural requirements and resulted from a plan that was "carefully studied, prepared and considered." Judge Craig recounted in exacting detail the evaluation the Village undertook with

7

respect to the site. In particular, she pointed to the SEQRA analysis and the statements of various local government officials who detailed the process they used and the many factors they considered, including consistency with the operative Master Plan and the benefits they expected for the area through increased jobs and rejuvenation of the area. (ECF No. 1 at 26-27.) Reviewing the record de novo, the Court finds the process the Village employed to be satisfactory under the governing law. Indeed, Plaintiffs' objection lacks specificity in challenging the process of the Village and fails to identify how it purportedly deviated from the operative legal standard. The Court therefore rejects Plaintiffs' sixth objection.

**7. Objection 7**

Plaintiffs next object to Judge Craig's recommendation that "the spot zone claim be summarily dismissed because the process the Village Board used to adopt the Local Law was beyond judicial review on account of the withdrawal of a SEQRA challenge to the 2016 Negative Declaration that had been made in a prior State court Article 78 proceeding and the Amended Complaint's failure to allege a SEQR[A] claim." (ECF No. 1-35 at 5.) They argue that they "were not required to state a SEQRA claim" in their amended complaint because they challenged the entire process used by the Village, which purportedly covers any claims under SEQRA. (Id.)

As an initial matter, Plaintiffs' objection is an unfair characterization of Judge Craig's decision, as she addressed the other grounds Plaintiffs cited in support of their spot zoning claim, with the exception of their SEQRA-based arguments. As Judge Craig detailed in recounting the relevant procedural history, Plaintiffs withdrew their previous challenge to the 2016 Negative Declaration and then failed to challenge the subsequent 2017 Negative Declaration in their amended complaint. In particular, she wrote:

> Though the Plaintiffs argue there is no need to separately challenge the 2017 Negative Declaration because the complaint challenges the whole process (Tr. at

8

> 175-176, ECF No. 96), this argument should be rejected. Nothing in the complaint challenges the 2017 Negative Declaration, and the challenge to the 2016 Negative Declaration was withdrawn. The only claims at issue in this case are contract zoning and spot zoning, and therefore, the determination whether the Board complied with SEQRA is beyond the scope of review.

(ECF No. 1 at 25.)

The Court agrees with Judge Craig that Plaintiffs were required to plead a SEQRA claim in their amended complaint. Plaintiffs previously explicitly raised a distinct SEQRA claim in their Article 78 proceeding based on the 2016 Negative Declaration. Here, the spot zoning claim in their Amended Complaint, which points to certain other specific deficiencies in support of that claim, says nothing about SEQRA. Plaintiffs cannot simply allege, at a general level, that there were unspecified issues with the process the Village employed. Rather, if Plaintiffs wished to challenge the 2017 Negative Declaration as part of their spot zoning claim, they were required to say so in their complaint. Plaintiffs had to identify with some specificity how the Village engaged in unlawful spot zoning by violating the requirements of SEQRA. Judge Craig analyzed the spot zoning claim in comprehensive detail, and had no obligation to consider this claim based on any purported violation of SEQRA when Plaintiffs did not place any SEQRA violation at issue in their amended complaint. Because the Court affirms Judge Craig's finding that the SEQRA claim is procedurally barred, the Court need not reach Defendants' other substantive arguments in response to Plaintiffs' objections on the SEQRA claim.

### 8. Objection 8

In Plaintiffs' eighth objection, they contend that Judge Craig "made improper and erroneous findings of fact and conclusions of law to excuse the Village Board from being required to consider other locations for a gaming facility or other use because no other hotel or other landowner was seeking to operate a Gaming Facility within the Village's borders." (ECF No. 1-

9

35 at 5.) Specifically, Plaintiffs argue that the Board should have considered the Hampton Inn as a potential location for the facility. (Id.)

Judge Craig previously rejected this argument as "irrelevant" because "no other hotel was seeking to operate a VLT Facility," and, in the event another hotel was "granted a gaming license by New York State and does not meet the requirements of Local Law No. 3-2017, the Board has the option of amending the Village Code accordingly after complying with applicable law." (ECF No. 1 at 26-27.) The Court agrees. The Village had no obligation to consider alternate hotel sites where no other video lottery terminal facility was even being proposed. Furthermore, as detailed earlier, the Village engaged in an appropriate process in which various factors were considered regarding the facility's location. The Court agrees with Judge Craig's finding on this point and denies this objection.

**9.  Objection 9**

Plaintiffs next challenge Judge Craig's recommendation of dismissal of Plaintiffs' uniformity claim because Plaintiffs' "challenge to the Local Law for want of uniformity was not specifically pled as a separate cause of action." (ECF No. 1-35 at 5-6.) Plaintiffs claim that "the Amended Complaint satisfied [Federal Rule of Civil Procedure 8's] requirement for notice-pleading sufficient to bring up for judicial review the Local Law's invalidity for want of uniformity." (Id. at 6.) Plaintiffs make essentially the same argument they did with respect to the SEQRA claim by relying on general allegations made in their amended complaint that supposedly encompassed a uniformity claim. Plaintiffs, however, explicitly referenced a uniformity claim for the first time in their opposition to summary judgment. As Judge Craig correctly noted, a claim cannot be raised for the first time in an opposition for summary judgment, as was the case here. (ECF No. 1 at 28) (citing Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010)).

10

Plaintiffs failed to comply with basic pleading requirements to put their adversaries on fair notice of their uniformity claim and the grounds on which it rests. Accordingly, this objection is meritless.

**10. Objection 10**

Finally, Plaintiffs object to the Bankruptcy Court's Proposed Finding that "the Village Board retained the option of amending the Village Code to prevent the proliferation of the unwanted gaming use in the event another hotel is granted a gaming license by New York State and in a manner that does not meet the requirements of the Local Law." (ECF No. 1-35 at 6.) Plaintiffs' argument appears to be that in contrast to Judge Craig's findings, the Board would not be able to change the applicable Local Law should the Village seek to prevent gaming in the area in the future. However, nothing in the Local Law prevents the Village from later amending its zoning to limit gaming. Judge Craig's citation to a New York Court of Appeals case bears repeating here:

> While stability and regularity are undoubtedly essential to the operation of zoning plans, zoning is by no means static. Changed or changing conditions call for changed plans, and persons who own property in a particular zone or use district enjoy no eternally vested right to that classification if the public interest demands otherwise. Accordingly, the power of a village to amend its basic zoning ordinance in such a way as reasonably to promote the general welfare cannot be questioned.

Rodgers v. Vill. Of Tarrytown, 302 N.Y. 115, 121 (1951). Nothing in the record suggests that the Village cannot later amend the Village Code to prevent future gaming use, at the site in question or otherwise. Consequently, the Court rejects this objection.

## CONCLUSION

After performing a de novo review, the Court adopts Judge Craig's Proposed Findings of Fact and Conclusions of Law in their entirety, and **GRANTS** Defendants' motion for summary judgment for the reasons set forth above.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Order and close this case.

**SO ORDERED.**

Dated: September 21, 2021
       Central Islip, New York

                                                      /s/ (JMA)
                                          JOAN M. AZRACK
                                          UNITED STATES DISTRICT JUDGE